1 | ERIC R. HAVIAN (State Bar No. 102295)
erh@pcsf.com
2 | MARY A. INMAN (State Bar No. 176059)
mai@pcsf.com
3 | HARRY P. LITMAN (State Bar No. 127202)
hlitman@litman-law.com
4 | JESSICA T. MOORE (State Bar No. 183431)
jtm@pcsf.com
5 | PHILLIPS & COHEN LLP
131 Steuart Street, Suite 501
6 | San Francisco, California 94105
Tel: (415) 836-9000
7 | Fax: (415) 836-9001

8 | BRENT N. RUSHFORTH (State Bar No. 45873)
brushforth@daypitney.com
9 | DAY PITNEY LLP
1100 New York Avenue, NW
10 | Washington, D.C. 20005
Tel: (202) 218-3900
11 | Fax: (202) 218-3910

12 | **Attorneys for South Tahoe Public Utility District**

13

14 | UNITED STATES DISTRICT COURT

15 | FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES, THE STATES OF CALIFORNIA, DELAWARE, FLORIDA, ILLINOIS, INDIANA, NEVADA, NEW MEXICO, NEW YORK, and TENNESSEE, THE COMMONWEALTHS OF MASSACHUSETTS and VIRGINIA, and THE DISTRICT OF COLUMBIA <u>ex rel</u>. JOHN HENDRIX,<br><br>         Plaintiffs,<br><br>         vs.<br><br>J-M MANUFACTURING COMPANY, INC., d/b/a JM Eagle, a Delaware corporation, and FORMOSA PLASTICS CORPORATION, U.S.A., a Delaware corporation,<br><br>         Defendants. | Case No.: ED CV-06-00055-GW(PJWx)<br><br>Hon. George H. Wu<br><br>**SOUTH TAHOE PUBLIC UTILITY DISTRICT'S NOTICE OF MOTION AND MOTION TO DISQUALIFY SHEPPARD, MULLIN, RICHTER & HAMPTON LLP FROM REPRESENTING DEFENDANT J-M MANUFACTURING COMPANY, INC.**<br><br>**Hearing Date**: June 6, 2011<br>**Time**: 8:30 a.m.<br>**Courtroom**: 10 |

1   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2        PLEASE TAKE NOTICE THAT on June 6, 2011 at 8:30 a.m. or as soon

3   thereafter as the matter may be heard, in Courtroom 10 of the above-entitled Court,

4   located at 312 N. Spring Street, Los Angeles, California, plaintiff-intervenor South

5   Tahoe Public Utility District ("South Tahoe") will and does hereby move this Court

6   for an Order disqualifying Sheppard, Mullin, Richter, and Hampton LLP

7   ("Sheppard"), and its individual attorneys, from serving as counsel to defendant J-M

8   Manufacturing Company, Inc., d/b/a JM Eagle ("J-M").

9        This motion is made following the conference of counsel pursuant to L.R. 7-

10  3, which took place on April 19, 2011.

11       This motion is brought on the following ground:

12       Sheppard's representation of defendant J-M poses an impermissible conflict

13  of interest under California Rules of Professional Conduct Rule 3-310 because

14  Sheppard currently represents plaintiff-intervenor South Tahoe in other matters.

15       This motion will be based upon this Notice of Motion and Motion, the

16  accompanying Memorandum of Points and Authorities, the supporting Declaration

17  of Brent N. Rushforth, Esq. dated May 9, 2011, together with the exhibits annexed

18  thereto, the supporting Declaration of Paul A. Sciuto dated May 9, 2011, along with

19  the papers and pleadings on file in this action, argument of counsel and upon such

20  other documents and things that the Court may deem just to consider.

21

22  DATED:  May 9, 2011                    By:    /s/  Brent N. Rushforth

23

24                                         BRENT N. RUSHFORTH
                                           (State Bar No. 45873)
25                                         brushforth@daypitney.com
                                           DAY PITNEY LLP
26                                         1100 New York Avenue, NW
                                           Washington, D.C. 20005
27                                         Tel: (202) 218-3900
                                           Fax: (202) 218-3910
28

1

ERIC R. HAVIAN
(State Bar No. 102295)
erh@pcsf.com
MARY A. INMAN
(State Bar No. 176059)
mai@pcsf.com
HARRY P. LITMAN
(State Bar No. 127202)
hlitman@litman-law.com
JESSICA T. MOORE
(State Bar No. 183431)
jtm@pcsf.com
PHILLIPS & COHEN LLP
131 Steuart Street, Suite 501
San Francisco, California 94105
Tel: (415) 836-9000
Fax: (415) 836-9001

**Attorneys for South Tahoe Public Utility District**

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES..........................................1

I.     PRELIMINARY STATEMENT ...................................................1

II.    FACTUAL BACKGROUND RELEVANT TO THIS MOTION ................2

    A.    South Tahoe is a Small Governmental Entity That Provides Water and Sewage Collection and Treatment......................................2

    B.    In 2006 South Tahoe Retained Sheppard to Represent it in Employment Matters..............................................................3

    C.    Sheppard Knew at the Time it Assumed Representation of J-M That This New Representation Would Render It Adverse to Its Longstanding Client But Chose Not to Notify South Tahoe or Seek South Tahoe's Informed Consent to the Adverse Representation .................................................................3

III.    ARGUMENT.............................................................................6

    A.    California Law Requires Sheppard's Disqualification for Simultaneous Representation of Adverse Clients...............................6

    B.    Sheppard Did Not Have its Client's Informed Written Consent to This Adverse Representation ................................................8

        1.    The Waiver is Exceedingly Broad..............................9

        2.    The Waiver is Unlimited in Temporal Scope .........................10

        3.    There was No Discussion of the Waiver With South Tahoe.....11

        4.    The Waiver Lacks Any Specificity ........................11

        5.    That the Waiver Seeks to Waive Conflicts in Matters That are Not Substantially Related Does Not Make the Waiver Informed ..............................................11

        6.    The Client is a Small Governmental Entity Without its Own Law Department..............................................12

        7.    The Interests of Justice Preclude Upholding a Broad, Unspecific Prospective Waiver That Was Never Discussed With the Client.........................................12

    C.    Sheppard Cannot Avoid Disqualification by Creating an "Ethical Wall" Long After the Conflict Arose ......................................14

IV.    CONCLUSION .....................................................................16

i

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

5

*All American Semiconductor, Inc. v. Hynix Semiconductor,*
    No. C 07-1200, 2008 U.S. Dist. LEXIS 106619 (N.D. Cal. Dec. 18, 2008) .9, 14

6

7

*California Earthquake Authority v. Metropolitan West Securities,*
    LLC, 712 F. Supp. 2d 1124 (E.D. Cal. 2010)......................................................7

8

9

*Certain Underwriters at Lloyd's, London v. Argonaut Insurance Co.,*
    264 F. Supp. 2d 914 (N.D. Cal. 2003)...............................................................7

10

11

*Chambers v. Superior Court,*
    121 Cal. App. 3d 893, 175 Cal. Rptr. 575 (Ct. App. 1981).............................14

12

13

*Concat LP v. Unilever, PLC,*
    350 F. Supp. 2d 796 (N.D. Cal. 2004).......................................................passim

14

15

*Crain v. Burroughs Corp.,*
    560 F. Supp. 849 (C.D. Cal. 1983)....................................................................5

16

17

*Flatt v. Superior Court,*
    9 Cal. 4th 275, 36 Cal. Rptr. 2d 537 (1994) ..................................................6, 7

18

19

*Fujitsu Ltd. v. Belkin International, Inc.,*
    No. 10-CV-03972-LHK, 2010 U.S. Dist. LEXIS 138407 (N.D. Cal. Dec.
    22, 2010)......................................................................................................passim

20

21

*In re County of Los Angeles,*
    223 F.3d 990 (9th Cir. 2000).............................................................................6

22

23

*Kirk v. First American Title Insurance Co.,*
    183 Cal. App. 4th 776, 108 Cal. Rptr. 3d 620 (Ct. App. 2010)...................14, 15

24

25

*Klemm v. Superior Court,*
    75 Cal. App. 3d 893, 142 Cal. Rptr. 509 (1977).................................................8

26

*Truck Insurance Exchange v. Fireman's Fund Insurance Co.,*
    6 Cal. App. 4th 1050, 8 Cal. Rptr. 2d 228 (Ct. App. 1992)................................8

27

28

ii

# TABLE OF AUTHORITIES

**Page**

*Visa U.S.A., Inc. v. First Data Corp.*,
   241 F. Supp. 2d 1100 (N.D. Cal. 2003)......................................................passim

*William Raley v. Superior Court*,
   149 Cal. App. 3d 1042, 197 Cal. Rptr. 232 (Ct. App. 1983)..........................6, 7

*Zador Corp., N.V. v. Kwan*,
   31 Cal. App. 4th 1285, 37 Cal. Rptr. 2d 754 (Ct. App. 1995)............... 11, 12, 13

OTHER AUTHORITIES

Cal. Rules Prof. Conduct, R. 3-310(C)(3) ...........................................................6, 8

Cal. Rules Prof. Conduct, R. 3-310 Comments .......................................................8

Cal. C.D. Local Rules, R. 83-3.1.2...........................................................................6

Restatement (Third) of the Law Governing Lawyers § 122 cmt. d  (2000)............12

SOUTH TAHOE PUBLIC UTILITY DISTRICT'S NOTICE OF MOTION
AND MOTION TO DISQUALIFY SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP; MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

When Sheppard took on the representation of J-M in this massive case, Sheppard knew that it stood to receive tens of millions of dollars in fees as a result; indeed, it has already received as much as $4.5 million.  Sheppard also knew that its own longstanding client South Tahoe was an intervenor and plaintiff in the case, that the fraud at the heart of this lawsuit went to the essence of one of South Tahoe's core governmental functions – installing, operating, and maintaining water and sewer lines – and that Sheppard would be defending a client alleged to have perpetrated that fraud upon South Tahoe.  Rather than simply contacting its existing client to discuss the nature of this case and seek its client's informed consent, Sheppard apparently concluded that it could not risk hearing the response to that request.  Instead, Sheppard ignored its professional responsibilities and embarked on a lucrative representation of an adverse client without the informed written consent of its existing client.

Sheppard's justification for engaging in this simultaneous representation of an adverse client rests upon a general prospective waiver paragraph in a retainer signed years earlier that gives no hint of the conflict to come.  Such general prospective waivers are inadequate under California ethics rules, which require *informed* written consent to conflicting representations.  Sheppard therefore currently stands before this Court in the position of simultaneously representing South Tahoe, a plaintiff in this matter, and J-M, the defendant, without having obtained the informed consent of its longstanding client, South Tahoe.  California law is clear under these circumstances – the rule is automatic disqualification.

That outcome is warranted.  By putting its financial interests above the interests of South Tahoe, Sheppard violated its duty of loyalty to an existing client. Such unethical behavior should not be tolerated by this Court.  Sheppard's interests

1

do not outweigh the paramount interest in the "'preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar.'"  *Fujitsu Ltd. v. Belkin Int'l, Inc.*, No. 10-CV-03972-LHK, 2010 U.S. Dist. LEXIS 138407, at *12 (N.D. Cal. Dec. 22, 2010) (quoting *State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.,* 72 Cal. App. 4th 1422, 1428, 86 Cal. Rptr. 2d 20 (Ct. App. 1999)).

## II.      FACTUAL BACKGROUND RELEVANT TO THIS MOTION

### A.      South Tahoe is a Small Governmental Entity That Provides Water and Sewage Collection and Treatment

South Tahoe is a public utility district in the Tahoe Basin that serves over 14,000 customers.  It provides potable water and sewage collection and treatment to those customers.  To carry out these functions, South Tahoe has hundreds of miles of pipe installed in the ground within its service area.  Because of the enormous costs of installation and replacement of water and sewer lines, South Tahoe has relied on the representations of manufacturers that the products South Tahoe acquires and installs for its water and sewer systems will last as long as represented, and has invested tens of millions of dollars in its infrastructure in reliance on those representations.  A significant portion of this infrastructure is the PVC pipe that was manufactured by the defendant, J-M, the world's largest PVC pipe manufacturer, which Sheppard represents in this case.  Because of J-M's fraud, this pipe will not last as long as J-M promised and will have to be replaced at substantial cost to South Tahoe.  As a result, South Tahoe's claim against J-M is in the many millions of dollars, and the outcome of this action is critical to South Tahoe.  Declaration of Paul A. Sciuto, sworn to May 9, 2011 ("Sciuto Decl.") ¶ 4.

2

**B.**   **In 2006 South Tahoe Retained Sheppard to Represent it in**
**Employment Matters**

Like many small governmental entities, South Tahoe does not have any in-house legal personnel.  Instead, it contracts with outside law firms to advise and represent it in particular matters or areas.  In 2006, South Tahoe retained Sheppard to represent it in general employment matters.  Sciuto Decl. ¶ 5, 6; Declaration of Brent N. Rushforth, Esq., sworn to May 9, 2011 ("Rushforth Decl.") ¶ 4, Ex. A (June 27, 2006 letter to Hussmann entitled "Engagement of Sheppard, Mullin, Richter & Hampton LLP") ("Engagement Letter").  Buried within the four-page, single-spaced Engagement Letter is a single paragraph providing in pertinent part that Sheppard "may currently or in the future represent one or more other clients in matters involving [South Tahoe] . . . even if the interests of the other client are adverse to those of [South Tahoe] . . . provided the other matter is not substantially related" to Sheppard's representation of South Tahoe and provided that, in the course of representing South Tahoe, Sheppard has "not obtained confidential information of [South Tahoe] material to representation of the other client."  Ex. A at ¶ 4.  This paragraph was never discussed with the client.  Sciuto Decl. ¶¶ 7, 8.

**C.**   **Sheppard Knew at the Time it Assumed Representation of J-M**
**That This New Representation Would Render It Adverse to Its**
**Longstanding Client But Chose Not to Notify South Tahoe or Seek**
**South Tahoe's Informed Consent to the Adverse Representation**

At the time J-M and its co-defendant, Formosa Plastics Corporation, U.S.A., were served with the initial complaint in this case, J-M was represented by the law firm of McDermott, Will and Emery ("McDermott").  Rushforth Decl. ¶ 5.  South Tahoe, which had been named as a plaintiff in the qui tam complaint, intervened in the case on February 5, 2010.  Rushforth Decl. ¶ 6, Ex. B (Notice of Election to Intervene).  Some time after this, McDermott withdrew as J-M's counsel, and in

3

1 March 2010 Sheppard filed a request to be substituted as counsel for J-M, which this
2 Court approved by order entered March 15, 2010.  Rushforth Decl. ¶¶ 7, 8, Ex. C
3 (Request for Approval of Substitution of Attorney), D (Order).

4      A few months ago, in the latter part of January 2011, Day Pitney LLP ("Day
5 Pitney") – counsel[1] for South Tahoe in this qui tam action – first became aware that
6 Sheppard, defendant J-M's counsel, also acts as counsel to the plaintiff, South
7 Tahoe.  Rushforth Decl. ¶ 9.  Following a detailed inquiry, Day Pitney wrote to
8 Sheppard to seek certain information regarding the conflict.  Rushforth Decl. ¶¶ 9,
9 10, Ex. E (March 4, 2011 letter to Daly and Kreindler).  By letter dated March 11,
10 2011, Sheppard conceded that it "has been representing South Tahoe for many years
11 in connection with general employment matters," noted that it had a "current
12 engagement letter" with South Tahoe, attached the Engagement Letter, and referred
13 Day Pitney to the one paragraph of the four-page Engagement Letter that mentions
14 conflicts.  In this same letter, Sheppard also represented that it had erected an
15 "ethical wall" between its lawyers representing South Tahoe and its lawyers
16 representing J-M, but it did not note the date when it had established that "ethical
17 wall."  Rushforth Decl. ¶ 11, Ex. F (March 11, 2011 letter to Rennert).

18      By letter dated March 17, 2011, Day Pitney responded and, among other
19 things, inquired when Sheppard had erected the "ethical wall" it had referred to in
20 its first response.  Rushforth Decl. ¶ 12, Ex. G (March 17, 2011 letter to Daly and
21 Kreindler).  Sheppard responded by letter dated March 23, 2011 and conceded that it
22 had not erected an "ethical wall" until after it had received opposing counsel's letter
23 of March 4, 2011 – a full year after Sheppard accepted representation of J-M directly
24 adverse to South Tahoe.  Rushforth Decl. ¶ 13, Ex. H (March 23, 2011 letter to
25 Rennert).

26
27
28

[1] Phillips & Cohen LLP represents South Tahoe as co-counsel in this action.

4

On April 19, 2011, the parties conducted a meet and confer telephone conference in connection with this matter. During that call, Sheppard lawyer Charles Kreindler stated that Sheppard had run a conflict check prior to accepting the engagement with J-M, that the conflict check showed South Tahoe to be an existing client of Sheppard, that Sheppard had located the Engagement Letter with the paragraph containing language about conflicts, and "that was that." Mr. Kreindler further stated that at no time had Sheppard notified South Tahoe of the conflict in representing J-M during the entire time they were representing J-M. Rushforth Decl. ¶ 14.

On April 22, 2011, Mr. Kreindler sent an email to Day Pitney advising that Sheppard had expended over 9,000 hours in the case to date.[2] Rushforth Decl. ¶ 15, Ex. I (April 22, 2011 email to Rushforth). Subsequently, on April 26, 2011 Mr. Kreindler spoke with an attorney from Phillips & Cohen and, in the course of that conversation, stated that Sheppard had continued to represent South Tahoe after Sheppard became counsel to J-M, South Tahoe's litigation adversary in this action. Rushforth Decl. ¶ 16.

---

[2] In that email, Mr. Kreindler attached a copy of a letter related to conflicts signed in 2002 by South Tahoe's then General Manager, who has since retired. The 2002 letter has no application here. Even assuming *arguendo* it had any binding effect in 2002, it has been superseded by the 2006 Engagement Letter that discusses the very same subject. *Crain v. Burroughs Corp.*, 560 F. Supp. 849, 852 (C.D. Cal. 1983) ("California law . . . provides that a subsequent written contract supersedes a prior written contract.") Moreover, although the 2002 waiver provides somewhat more information than the single paragraph contained in the 2006 Engagement Letter, it still fails to constitute informed consent to the conflict that in fact arose eight years later in 2010 – adverse representation in a case that goes to the heart of South Tahoe's governmental functions.

5

1  III.  **ARGUMENT**

2  A.  <u>**California Law Requires Sheppard's Disqualification for**</u>

3  <u>**Simultaneous Representation of Adverse Clients**</u>

4  State law governs motions to disqualify counsel. *In re County of Los Angeles*,

5  223 F.3d 990, 995 (9th Cir. 2000); *see also* Local Rule 83-3.1.2 (lawyers practicing

6  before this Court are subject to the California Rules of Professional Conduct). This

7  Court has discretion to disqualify counsel as an exercise of its inherent power to

8  sanction counsel for unethical conduct. *Visa U.S.A., Inc. v. First Data Corp.*, 241 F.

9  Supp. 2d 1100, 1103 (N.D. Cal. 2003) ("The right to disqualify counsel is within the

10  discretion of the trial court as an exercise of its inherent powers.") The Court's

11  overarching consideration "'must be the preservation of public trust both in the

12  scrupulous administration of justice and in the integrity of the bar.'" *Fujitsu Ltd.*,

13  2010 U.S. Dist. LEXIS 138407, at *12 (citation omitted).

14  California law prohibits an attorney from simultaneously representing two

15  clients who are adverse to each other, regardless of whether the matters in which the

16  lawyer represents the two clients are related, absent informed written consent. Cal.

17  Rules Prof. Conduct, Rule 3-310(C)(3) ("A member shall not, without the informed

18  written consent of each client . . . [r]epresent a client in a matter and at the same

19  time in a separate matter accept as a client a person or entity whose interest in the

20  first matter is adverse to the client in the first matter."); *William Raley v. Superior*

21  *Court*, 149 Cal. App. 3d 1042, 197 Cal. Rptr. 232 (Ct. App. 1983); *Flatt v. Superior*

22  *Court,* 9 Cal. 4th 275, 284-86, 36 Cal. Rptr. 2d 537 (1994). "[I]n all but a few

23  instances, the rule of disqualification in simultaneous representation cases is a per se

24  or 'automatic' one." *Flatt*, 9 Cal. 4th at 284; *see also Fujitsu Ltd.*, 2010 U.S. Dist.

25  LEXIS 138407, at *24-25 ("[I]n California, the solution to a direct, concurrent

26  conflict in client loyalties is per se disqualification. Once a client engages a lawyer,

27  that client must be able to expect undivided loyalty."). As a general rule, where one

28

6

1 member of a firm is required to decline representation, no other member of the firm

2 may accept or continue such representation. *Raley*, 149 Cal. App. 3d at 1048-49;

3 *Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914,

4 919 (N.D. Cal. 2003) ("Simply put, an attorney (and his or her firm) cannot

5 simultaneously represent a client in one matter while representing another party

6 suing that same client in another matter.").

7      The reason underlying the California courts' rigid adherence to that principle

8 is simply put and categorical:

9          A client who learns that his or her lawyer is also representing a

10         litigation adversary, even with respect to a matter *wholly unrelated* to

11         the one for which counsel was retained, cannot long be expected to

12         sustain the level of confidence and trust in counsel that is one of the

13         foundations of the professional relationship. . . . It is for that reason,

14         and not out of concerns rooted in the obligation of client

15         confidentiality, that courts and ethical codes alike prohibit an attorney

16         from simultaneously representing two client adversaries, even where

17         the substance of the representations are unrelated.

18 *Flatt*, 9 Cal. 4th at 285 (emphasis in original).

19      Given the strict nature of the prohibition under California law, the amount of

20 work undertaken for the adverse client or even a span of years where no work was

21 done at all is of no consequence. *See Cal. Earthquake Auth. v. Metro. West Secs.*,

22 LLC, 712 F. Supp. 2d 1124 (E.D. Cal. 2010) (disqualifying a firm where it had not

23 terminated its representation agreement with a previous client, even though the firm

24 had performed no work for the previous client for six years after the initial

25 consultation). Moreover, when confronted with a conflict between existing clients,

26 a lawyer may not terminate the relationship with one client to eliminate the conflict.

27

28                                              7

1 *Truck Ins. Exch. v. Fireman's Fund Ins. Co.*, 6 Cal. App. 4th 1050, 1056-59, 8 Cal.

2 Rptr. 2d 228 (Ct. App. 1992); *Fujitsu Ltd.*, 2010 U.S. Dist. LEXIS 138407, at *25.

3       Here, Sheppard accepted the engagement with J-M and not only failed to

4 obtain South Tahoe's informed written consent to that engagement but failed even to

5 notify its longstanding client that it was now representing the defendant in a case in

6 which South Tahoe sustained millions of dollars worth of damages as a direct result

7 of the defendant's fraud. Where, as here, counsel voluntarily created a conflict for

8 itself by accepting a more lucrative engagement at the expense of its loyalty to an

9 existing client, the law in California is clear and unequivocal: Sheppard is

10 disqualified from continued representation of J-M in this action.

11       **B.**   **Sheppard Did Not Have its Client's Informed Written Consent to**

12                **This Adverse Representation**

13       Sheppard contends that the single paragraph addressing conflicts that it

14 included in the Engagement Letter was sufficient to constitute a waiver of this

15 simultaneous adverse representation. This contention fails. California permits

16 simultaneous representation of adverse clients only with the client's "informed

17 written consent." Cal. Rules Prof. Conduct, Rule 3-310(C)(3).[3] A prospective

18 waiver, standing alone, cannot constitute informed written consent to a later-arising

19 conflict where, as here, it fails to adequately inform the client. "[E]ven if a

20 prospective waiver of conflict has been obtained, the attorney must request a second,

21 more specific waiver, 'if the [prospective] waiver letter insufficiently disclosed the

22 nature of the conflict that subsequently arose between the parties.'" *Concat LP v.*

23 *Unilever, PLC*, 350 F. Supp. 2d 796, 821 (N.D. Cal. 2004) (citing *Visa U.S.A., Inc.*,

24 241 F. Supp. 2d at 1106). A "generalized boilerplate waiver" will not suffice if the

25 waiver did not actually inform the client of the specific nature of the conflict and the

26 ─────────────

[3] Notwithstanding the rule, in some circumstances courts will not permit a client to
27 consent, because such consent would be neither informed nor intelligent. *See*
*Klemm v. Superior Court*, 75 Cal. App. 3d 893, 898, 142 Cal. Rptr. 509 (1977),
28 *cited in* Comments to Rule 3-310, California Rules of Professional Conduct.

1  material risks of such representation to the client.  *See id; see also Fujitsu Ltd.*, 2010

2  U.S. Dist. LEXIS 138407, at *16, n.1 (where the general prospective waiver did not

3  inform the client of the specific conflict, "the prospective waiver did not act as a

4  waiver" of that conflict); *All Am. Semiconductor, Inc. v. Hynix Semiconductor,* No.

5  C 07-1200, 2008 U.S. Dist. LEXIS 106619, at *33-34 (N.D. Cal. Dec. 18, 2008)

6  (same). Put another way, Sheppard is required to demonstrate that it

7  "'communicated information reasonably sufficient to permit the client to appreciate

8  the significance of the matter in question,'" and therefore make an informed

9  decision to consent.  *Visa U.S.A.*, 241 F. Supp. 2d at 1106 (citation omitted).

10  Sheppard cannot meet that test.

11       Although determining whether a prospective waiver constitutes informed

12  consent is a fact-specific inquiry, certain factors inform that analysis: "(1) the

13  waiver's breadth; (2) its temporal scope, i.e., whether it waived only current

14  conflicts or applied to all conflicts in the future; (3) the quality of the conflict

15  discussion between attorney and client; (4) the specificity of the waiver; (5) the

16  nature of the actual conflict, i.e., whether the attorney sought to represent both

17  clients in the same dispute or in unrelated matters; (6) the sophistication of the

18  client; and (7) the interests of justice." *Hynix Semiconductor,* 2008 U.S. Dist.

19  LEXIS 106619, at *33; *Visa U.S.A.*, 241 F. Supp. 2d at 1106 (same).  Analysis of

20  these factors demonstrates that the general, prospective waiver on which Sheppard

21  purports to rely is woefully inadequate to constitute informed consent.

22       1.   The Waiver is Exceedingly Broad

23       The first factor – breadth of the waiver – cuts strongly against Sheppard as it

24  is difficult to imagine a waiver much broader in scope than the paragraph in

25  Sheppard's 2006 Engagement Letter.  The paragraph sought South Tahoe's consent

26  to represent adverse parties in "matters involving" South Tahoe, and defined those

27  matters only as "litigation or arbitration" or, even more generally, as "proceedings."

28

9

1  The sole qualification imposed on that unlimited scope was that the matter not be
2  "substantially related" to Sheppard's representation of South Tahoe or matters in
3  which it had South Tahoe's confidential information that was material to the
4  representation of the other client.[4]   The paragraph was devoid of reference to any
5  specific representation, case, subject, matter, or adverse client, and referred only in
6  the most general terms to a hypothetical circumstance in which Sheppard might
7  come to represent other persons in the future who might be plaintiffs, or might be
8  defendants, and might in some manner be adverse to South Tahoe.  The District
9  Court for the Northern District of California has held that a similarly worded waiver
10 with unlimited language was "evidently intended to cover almost any eventuality,"
11 and therefore did not properly inform the client or permit it to give informed consent
12 to a future conflict.  *Concat LP*, 350 F. Supp. 2d at 801, 820 ("extremely broad"
13 terms of waiver provided that law firm "may continue to represent, or may
14 undertake in the future to represent, existing new clients in any matter, including
15 litigation, that is not substantially related to" its work for existing client).

16      2.      The Waiver is Unlimited in Temporal Scope

17          The second factor – temporal scope of the waiver – likewise cuts against
18 Sheppard.  The waiver provides that Sheppard "may currently or in the future
19 represent one or more other clients in matters involving" South Tahoe.  As in
20 *Concat LP*, where the waiver spoke in terms of "present or future clients" and
21 "existing or new clients," the temporal scope of the Sheppard waiver is "unlimited."
22 350 F. Supp. 2d at 801, 820.

23

24

25

26 _____
   [4] South Tahoe does not concede that the waiver even applies here, as Sheppard
27 may have acquired confidential information from South Tahoe that is material to
   its representation of J-M.  Rather, South Tahoe maintains that the waiver is
28 inadequate on its face regardless of whether Sheppard obtained material
   confidential information.
                                            10

3.   <u>There was No Discussion of the Waiver With South Tahoe</u>

The third factor – quality of the discussion about the waiver – weighs against Sheppard, as there was no discussion between Sheppard and its client South Tahoe regarding the conflicts waiver.  Rather, Sheppard addressed the Engagement Letter to the Human Resources Director without highlighting the single paragraph waiver and without benefit of prior, contemporaneous, or subsequent discussion with her or with the General Manager who signed the document.  Sciuto Decl. ¶¶ 7, 8.  Because there was no discussion, this factor also cuts against a finding of informed consent. *See Concat LP*, 350 F. Supp. 2d at 820.

4.   <u>The Waiver Lacks Any Specificity</u>

The fourth factor – specificity of the waiver – also weighs against Sheppard. As in *Concat LP*, the waiver at issue has no specificity whatsoever and is tantamount to a "blank check."  350 F. Supp. 2d at 820.  *Cf., Visa U.S.A*., 241 F. Supp. 2d at 1107 (waiver described the specific circumstances of the type of conflict that eventually arose and identified the adverse client by name); *Zador Corp., N.V. v. Kwan*, 31 Cal. App. 4th 1285, 1290, 1301, 37 Cal. Rptr. 2d 754 (Ct. App. 1995) (same).

5.   <u>That the Waiver Seeks to Waive Conflicts in Matters That are Not Substantially Related Does Not Make the Waiver Informed</u>

The fifth factor – whether the attorney sought to represent clients in unrelated matters – is the sole factor that favors Sheppard, for by its terms the waiver does not extend to matters "substantially related" to Sheppard's representation of South Tahoe.  However, satisfaction of this factor alone, or even in combination with other factors, does not support a finding of informed consent.  *See, e.g., Concat LP*, 350 F. Supp. 2d at 820 (finding that this factor favored lawyers facing disqualification because matters were unrelated but rejecting claim that prospective waiver constituted informed consent).

11

6.    <u>The Client is a Small Governmental Entity Without its Own Law
Department</u>

The sixth factor – the relative sophistication of the parties – cuts against Sheppard.  Sheppard's Engagement Letter was directed to a non-lawyer, i.e. the Human Resources Director of a public agency with no law department or city attorney on staff.  Sciuto Decl. ¶ 7.  The General Manager who signed the retainer agreement is not a lawyer.  Sciuto Decl. ¶ 8.  The waiver itself was a single paragraph buried in a four-page single-spaced legal document.  Neither the manner of its presentment, nor the personnel to whom it was presented, ensured that its legal import was understood.  Sheppard made no attempt to discuss the conflict waiver with South Tahoe and made no suggestion that South Tahoe should discuss the retainer with independent counsel.  *See* Restatement (Third) of the Law Governing Lawyers § 122 cmt. d  (2000) ("A client's open-ended agreement to consent to all conflicts normally should be ineffective unless the client possesses sophistication in the matter in question and has had the opportunity to receive independent legal advice about the consent."); *cf. Zador Corp.,* 31 Cal. App. 4th at 1290 (consent letter stated explicitly that "[w]e encourage you to seek independent counsel regarding the import of this consent . . .").  Here, South Tahoe had no reason to understand that Sheppard intended this language to permit Sheppard to litigate against it in a case critical to South Tahoe's interests where South Tahoe has many millions of dollars at stake in the litigation.  *Cf. Visa U.S.A.,* 241 F. Supp. 2d 1110 (client was a Fortune 500 company with an in-house law department of 50 lawyers).

7.    <u>The Interests of Justice Preclude Upholding a Broad, Unspecific
Prospective Waiver That Was Never Discussed With the Client</u>

The final factor – the interests of justice – does not help Sheppard.  While the Courts have acknowledged that the interests of justice prong does not always lend itself to easy analysis, *see Concat LP,* 350 F. Supp. 2d at 820, here Sheppard

12

violated its duty of loyalty to its longstanding client South Tahoe for its own financial gain; it therefore created a conflict in order to represent a client that would generate many millions of dollars in fees for the law firm. By its own admission, Sheppard did so based purportedly on the presence of a single paragraph in a four-page single-spaced engagement letter that it never explained or discussed with South Tahoe. It did so despite the fact that Sheppard, and the particular Sheppard lawyers in this case, who have been members of the California Bar for many years, knew or should have known that they were required to obtain the informed consent of a client to simultaneous adverse representation, and that broad prospective waivers like the one they seek to rely upon here are wholly inadequate under governing California law. This was no mistake and it was not a close call: Sheppard admits that it was aware of the conflict and made a conscious decision to not raise it with South Tahoe; its only possible motivation was that it did not want to risk South Tahoe saying no and thereby lose a multi-million dollar engagement. The interests of justice demand that such conduct not be condoned.

Finally, the facts of this case bear *no* resemblance to the rare occasions when California courts have found a prospective waiver to constitute informed consent of the client to a conflict. Those cases have involved specific notice to the client of the potential future conflict contemplated coupled with a concerted effort to ensure that the client's consent is fully informed. *See Visa U.S.A.,* 241 F. Supp. 2d at 1107-10 (waiver letter specifically identified potentially adverse client; complaining client knew of law firm's longstanding relationship with other client; complaining client knew that future conflict was likely to arise; law firm specifically notified client when issue arose; complaining client was Fortune 500 company that was knowledgeable and sophisticated user of legal services, including having their own 50-person legal department); *see also Zador Corp.,* 31 Cal. App. 4th at 1300 ("detailed waiver" providing that the law firm would continue to represent co-

13

1 defendant should a conflict develop; law firm advised client of right to obtain

2 separate counsel; law firm obtained further consent when conflict arose). By

3 contrast, California courts have rejected broad waivers of the type at issue here.

4 *See, e.g., Fujitsu Ltd.,* 2010 U.S. Dist. LEXIS 138407, at *16, n.1; *Hynix*

5 *Semiconductor,* 2008 U.S. Dist. LEXIS 106619, at *33-34; *Concat LP*, 350 F. Supp.

6 2d at 820.

7 **C.      Sheppard Cannot Avoid Disqualification by Creating an "Ethical**

8 **Wall" Long After the Conflict Arose**

9 Sheppard cannot avoid disqualification by implementing an "ethical wall" in

10 response to South Tahoe's concerns more than a year after Sheppard took on

11 representation of J-M directly adverse to South Tahoe. California courts have not

12 endorsed the concept of an "ethical wall" as a shield to prevent the disqualification

13 of a law firm faced with a conflict of interest except in very limited circumstances

14 not present here. *See, e.g., Chambers v. Superior Court*, 121 Cal. App. 3d 893, 175

15 Cal. Rptr. 575 (Ct. App. 1981) (allowing use of ethical wall to screen former

16 government lawyer who joined private law firm). Recently, in *Kirk v. First*

17 *American Title Insurance Co.,* 183 Cal. App. 4th 776, 108 Cal. Rptr. 3d 620 (Ct.

18 App. 2010), a California court upheld use of a screen in the limited context of a

19 lawyer receiving confidential information during a brief discussion about a

20 prospective engagement that was ultimately not pursued. Four years after the

21 litigation began, defendants' attorneys joined his law firm in a different practice

22 group and in a different office. No California case has upheld the use of an "ethical

23 wall" in a case involving simultaneous representation of adverse interests where the

24 client did not provide informed written consent to that arrangement. *See Concat,*

25 350 F. Supp. 2d at 821 ("Although an ethical wall may, in certain limited

26 circumstances, prevent a breach of confidentiality, it cannot, in the absence of an

27

28

14

1  informed waiver, cure a law firm's breach of its duty of loyalty to is client" (*citing*

2  *Visa*, 241 F. Supp. 2d at 1110)).

3       Even in the limited circumstances in which *Kirk* upheld the use of an ethical

4  wall, the court emphasized that the wall must be erected "when the conflict first

5  arises.  It is not sufficient to wait until the trial court imposes screening measures as

6  part of its order on the disqualification motion."  *Kirk*, 183 Cal. App. 4th at 810; *see*

7  *also id.* at 804.  Here, Sheppard conceded that it erected an ethical wall only "in

8  response to [Day Pitney's] initial letter" of March 4, 2011 – nearly a year after

9  Sheppard substituted as J-M's counsel and knew of the conflict.  Rushforth Decl. ¶

10  13, Ex. H.  Such a belated and ineffectual response is not a recognized solution

11  under California law to a conflict of interest arising from adverse representation.

12  *See Concat LP*, 350 F. Supp. 2d at 822 (for an ethical wall to be effective it must be

13  set up at the time when the potentially disqualifying event occurred).  Rather than

14  solving the ethical problem it created, Sheppard's erection of its so-called "ethical

15  wall" only serves to highlight the conspicuous lack thereof for over a year.

16  Sheppard's belated assurances of concern underscore its lack of loyalty and concern

17  at the time it discovered the conflict, with South Tahoe's resultant loss of the

18  confidence and trust that it was entitled to expect from its longstanding attorney-

19  client relationship with Sheppard.

20

21

22

23

24

25

26

27

28
                                    15

1 IV. **CONCLUSION**

2     For the reasons set forth above, South Tahoe respectfully requests entry of an

3 Order disqualifying Sheppard from serving as counsel for J-M in this matter.

4 DATED: May 9, 2011          By:   s/ Brent N. Rushforth

5                                   BRENT N. RUSHFORTH  (State Bar No. 45873)
6                                   brushforth@daypitney.com
                                    DAY PITNEY LLP
7                                   1100 New York Avenue, NW
                                    Washington, D.C. 20005
8                                   Tel: (202) 218-3900
                                    Fax: (202) 218-3910
9
                                    ERIC R. HAVIAN (State Bar No. 102295)
10                                  erh@pcsf.com
                                    MARY A. INMAN (State Bar No. 176059)
11                                  mai@pcsf.com
                                    HARRY P. LITMAN (State Bar No. 127202)
12                                  hlitman@litman-law.com
                                    JESSICA T. MOORE (State Bar No. 183431)
13                                  jtm@pcsf.com
                                    PHILLIPS & COHEN LLP
14                                  131 Steuart Street, Suite 501
                                    San Francisco, California  94105
15                                  Tel: (415) 836-9000
                                    Fax: (415) 836-9001
16
                                    **Attorneys for Intervenor South Tahoe**
17                                  **Public Utility District**

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I am an attorney admitted to practice in the State of California. I am over the age of 18 and not a party to this action. My business address is Day Pitney LLP, 1100 New York Avenue, NW, Suite 300, Washington, DC 20005.

On May 9, 2011 I caused to be served copies of the forgoing document on each interested party as follows:

[X] (**By Electronic Transfer to the CM/ECF System**) In accordance with Federal Rules of Civil Procedure 5(d) (3), Local Rule 5-4, and General Order 10-07, I uploaded via electronic transfer a true and correct copy scanned into an electronic file in Adobe "pdf" format of the above-listed document to the United States District Court Central District of California's Case Management and Electronic Case Filing (CM/ECF) system on this date. It is my understanding that by transmitting these documents to the CM/ECF system, they will be served on all parties of record according to the preferences chosen by those parties within the CM/ECF system. The transmission was reported as complete and without error.

[X] (**US Mail**) A true and correct copy of the document described above has also been mailed to the following parties via US Mail:

| | |
|---|---|
| Joseph A Brajevich<br>Los Angeles City Attorney's Office<br>Department of Water and Power<br>111 North Hope Street Suite 340<br>Los Angeles, CA 90012 | Michael George Colantuono and<br>Yana Welinder<br>Colantuono and Levin PC<br>11406 Pleasant Valley Road<br>Penn Valley, CA 95946-9024 |

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that I am admitted as a member of the bar of this court.

Executed on May 9, 2011, in Washington, D.C.

By: /s/ Brent N. Rushforth
Brent N. Rushforth

17