Vincent J. Marella - State Bar No. 57702
    vjm@birdmarella.com
Ekwan E. Rhow - State Bar No. 174604
    eer@birdmarella.com
Paul S. Chan - State Bar No. 183406
    psc@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT,
    NESSIM, DROOKS & LINCENBERG, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant J-M
Manufacturing Company, Inc.
d/b/a JM Eagle

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES, THE STATES OF CALIFORNIA, DELAWARE, FLORIDA, ILLINOIS, INDIANA, NEVADA, NEW MEXICO, NEW YORK, and TENNESSEE, THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA, and THE DISTRICT OF COLUMBIA _ex rel_. JOHN HENDRIX,<br><br>              Plaintiffs,<br><br>       vs.<br><br>J-M MANUFACTURING COMPANY, INC. d/b/a JM EAGLE, a Delaware corporation, and FORMOSA PLASTICS CORPORATION, U.S.A., a Delaware corporation,<br><br>              Defendants. | CASE NO. ED CV 06-00055-GW<br>Assigned to Hon. George H. Wu<br><br>**PROTECTIVE ORDER**<br><br>***[Joint Stipulation Regarding Protective Order Filed Concurrently]*** |

312242.1

Pursuant to Federal Rule of Civil Procedure 26, and the stipulation of the Plaintiffs[1] (collectively, "Plaintiffs") and Defendants J-M Manufacturing Company, Inc., d/b/a JM Eagle ("JM Eagle") and Formosa Plastics Corporation, U.S.A. ("FPC-USA") (collectively, "Defendants") (each a "Party" and collectively, "the Parties"), the Court hereby orders the parties to abide by this Protective Order.  Unless modified pursuant to the terms contained in this Order, this Order shall remain in effect through conclusion of this action and survive termination of this action.

IT IS THEREFORE ORDERED THAT:

1.    **PURPOSES AND LIMITATIONS**

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted.

_____

[1]    The State of Nevada, Commonwealth of Virginia, Alameda County Water District, City of Calexico, City of Calistoga, Calleguas Municipal Water District, Castaic Lake Water Agency, City of Chino, Dublin San Ramon Services District, City of Livermore, Los Angeles Department of Water & Power, Moulton Niguel Water District, North Marin Water District, City of Oxnard, Palmdale Water District, Paradise Irrigation District, City of Pomona, City of Ripon, City of Sacramento, City of San Bernardino, City of San Buenaventura, County of San Diego, City of San Ramon, City of Santa Cruz, City of Santa Maria, City of Santa Rosa, Soquel Creek Water District, South Tahoe Public Utility District, Spring Valley Sanitation District, City of Vallejo, Town of Yountville, City of Colton, City of Corona, Elsinore Valley Municipal Water District, Florin Resource Conservation District, Helix Water District, Padre Dam Municipal Water District, Ramona Municipal Water District, Rancho California Water District, Sweetwater Authority, Valley Center Municipal Water District, Western Municipal Water District, Irvine Ranch Water District, City of San Diego, City of San Jose, and qui tam Plaintiff, John Hendrix.

**2.      DEFINITIONS**

2.1      <u>Challenging Party</u>:  a Party that challenges the designation of information or items under this Order.

2.2      <u>"CONFIDENTIAL" Information or Items</u>:  information whether generated, stored or maintained on paper, as electronically stored information ("ESI") or stored in or as tangible things that constitute or reveal these private company Defendants' trade secrets, proprietary research and development, specifications and formulations for materials and products, contracts and communications with vendors, contracts and communications with customers other than Plaintiffs; internal testing and quality assurance procedures, results and reports; communications with testing laboratories and standards certifying organizations, financial statements and supporting accounting records, bank statements, communications between defendants and with financial institutions regarding procedures and records for receipts, disbursements, funds management, borrowing and investments; invoices and communications with vendors or with customers other than Plaintiffs, accounting and cash management records, internal engineering communications, and personnel records of present and former employees, as well as (in the case of information produced by public entities) information concerning critical infrastructure the disclosure of which is limited by applicable law, and other information qualifying for protection under F. R. C. P. 26(c)(G).

2.3      <u>Counsel (without qualifier)</u>:  Outside Counsel of Record and House Counsel (as well as their support staff).

2.4      <u>Designating Party</u>:  a Party or Non-Party that designates information or items contained in disclosures or in responses to discovery as "CONFIDENTIAL."

2.5      <u>Disclosure or Discovery Material</u>:  all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.6     Expert:  a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as an expert consultant in this action.

2.7     House Counsel:  attorneys who are employees of a Party to this action and attorneys who are not employees of a Party but who act as regular outside counsel to a Party and who are advising that Party with respect to this action. "House Counsel" does not include Outside Counsel of Record.

2.8     Non-Party:  any natural person, partnership, corporation, association, or other legal entity that is not a Party.  For purposes of this Order, a Real Party is a Non-Party.

2.9     Outside Counsel of Record:  attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm that has appeared on behalf of that party.

2.10    Party (without qualifier):  any Plaintiff or Defendant in this action, including the Relator, John Hendrix.

2.11    Producing Party:  a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.12    Professional Vendors:  persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.13    Protected Material:  any Disclosure or Discovery Material that is designated as "CONFIDENTIAL."

2.14    Real Party:  a government entity that is specifically named as a real party in interest in the Relator's operative Complaint or the exhibits thereto and on whose behalf Relator is pursuing claims but that has not intervened or been permitted to intervene in this action.  The Parties disagree on the timing of

1  identification of Real Parties; nothing in this paragraph withstanding, no Parties
2  waive, and all Parties reserve, their rights to argue or object to the timing or
3  procedure for identification of Real Parties in the litigation for purposes other than
4  protecting the confidentiality of documents as addressed in this Protective Order.

5      2.15   Receiving Party:  any Party to which a Producing Party produces or
6  serves Disclosure or Discovery Material.

7

8      **3.     SCOPE**

9      The protections conferred by this Order cover not only Protected Material (as
10  defined above) but also: (a) any information copied or extracted from Protected
11  Material; (b) all copies, excerpts, summaries, or compilations of Protected Material;
12  and (c) any testimony, conversations, or presentations by Parties or their Counsel
13  that might reveal Protected Material.  However, the protections conferred by this
14  Order do not cover any information that (a) is already in the public domain at the
15  time of disclosure; (b) becomes part of the public domain at any time, unless as a
16  result of (i) action or failure to act where there is a duty to act on the part of the
17  Receiving Party; or (ii) any breach of duty by any third party; (c) is already in the
18  possession of the Receiving Party at the time of disclosure and was not acquired
19  under (i) assurance of confidentiality directly or indirectly from the Producing or
20  Designating Party or (ii) breach of duty by any third party; or (d) is made available
21  to the Receiving Party by a third party who obtained the same by legal means and
22  without any obligation of confidence to the Producing or Designating Party.  Any
23  use of Protected Material at trial shall be governed by a separate agreement or order.
24  This Protective Order shall not apply to the production of any documents by
25  Defendant J-M to any government entity prior to February 1, 2010; it shall apply to
26  any production of the same documents by any Party subsequent to the entry of this
27  Protective Order.  In the event of conflict between this Order and any Protective
28  Order previously entered in this action, the Parties agree to meet and confer in a

312242.1

4

good faith attempt to resolve such conflict before seeking resolution from the Court. For the purposes of this section, a "conflict" arises only when a Party's compliance with this Order will preclude it from complying with any Protective Order previously entered in this action.

## 4.    DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a Court order otherwise directs.  Final disposition shall be deemed to be the later of: (a) dismissal of all claims and defenses in this action, with or without prejudice; or (b) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

## 5.    APPLICABILITY

The provisions of this Order shall apply to all Parties in this action, including, in the case of Parties other than individuals, their officers, directors, employees, and agents, their law firms and their employees, and consultants and expert witnesses, as well as any other Producing Party or Receiving Party in this action.

## 6.    DESIGNATING PROTECTED MATERIAL

6.1    <u>Exercise of Restraint and Care in Designating Material for Protection</u>. Except as provided below, each Party or Non-Party that designates information or items for CONFIDENTIAL protection under this Order shall take care to limit any such designation to only those portions of paper documents, ESI or tangible materials that contain or reveal CONFIDENTIAL information.  The Parties agree to

exercise all reasonable efforts to avoid indiscriminate, CONFIDENTIAL designations.

Prior to designating information or items for protection under this Protective Order, each Party agrees to a review of non-ESI documents, under attorney supervision, of the information proposed to be Protected Information.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

6.2   ESI Presumed Confidential.  Notwithstanding any of the above provisions, all ESI shall be presumed CONFIDENTIAL, and each Producing Party may designate ESI as CONFIDENTIAL without prior review.

6.3   Method of Designation.  A Producing Party shall designate documents and other tangible materials, including ESI, as CONFIDENTIAL at the time of production and/or inspection in a matter that is mutually acceptable and agreed to by the Parties.

6.4   Designation of Documents and Other Tangible Materials Produced by a Non-Party Other than a Real Party.  Any Party may designate as CONFIDENTIAL documents and other materials, including ESI, produced by a Non-Party other than a Real Party that (i) falls within the definition in paragraph 2.2, and (ii) contains information provided to the Non-Party by or at the direction of the Party that seeks to make the designation or is derived from such information.  Notwithstanding any of the above provisions, documents and other tangible materials, including ESI, produced by a Non-Party other than a Real Party pursuant to Rule 45 of the Federal Rules of Civil Procedure shall be deemed CONFIDENTIAL for a period of fifteen (15) business days from the date of production.

6.5   Designation of Oral Testimony.  A Party or Non-Party shall have ten (10) business days from the date of receipt from the court reporter of a final  copy of a deposition or other transcript (the "designation period") in which to  designate all

or portions of the testimony as "CONFIDENTIAL."  Such designation shall be made by sending written notice identifying the information to be so designated by page and line numbers to all counsel of record and the witness's counsel within the designation period.  During the designation period, all information disclosed in the testimony shall be deemed "CONFIDENTIAL" subject to the terms of this Order.  After the designation period has expired, any testimony not so designated shall no longer be deemed "CONFIDENTIAL."

6.6    <u>Inadvertent Failures to Designate</u>.  With the exception of testimony under Section 6.5 above, an inadvertent failure to designate Protected Material as such does not, by itself, waive the Designating Party's right to secure protection under this Order for such material.  Upon correction of a designation, the Receiving Party must make all reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

## 7.    CHALLENGING CONFIDENTIALITY DESIGNATIONS

7.1    <u>Timing and Nature of Challenges</u>.  Any Party may challenge a designation of confidentiality based on a good faith belief that disclosure of a document is necessary to the Party's prosecution or defense of this action and either (i) the document does not meet the definition set forth in Section 2.2, or (ii) no good cause exists to deem the document "Protected Material."  Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after receiving the document.

7.2    <u>Meet and Confer</u>.  The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge.  To avoid ambiguity as to whether a

challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Order.  The Parties shall attempt to resolve each challenge in good faith and must begin the process by conferring within ten business (10) days of the date of service of notice.  In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation.  A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first, unless the Designating Party has refused to meet and confer.  For the purposes of this section, failure on the part of the Designating Party to (i) respond to the Challenging Party's notice of a challenge within five business (5) days of service thereof, or (ii) participate in a meet and confer conference within ten business (10) days of service thereof after being given reasonable opportunity to do so, constitutes a refusal to meet and confer.

     7.3   <u>Judicial Intervention</u>.  If the Parties are unable to resolve a challenge through the meet and confer process described above, they may seek Court intervention by preparing and filing a joint stipulation. The joint stipulation shall contain each designation in dispute and, with respect to each such designation, the contentions, points and authorities, and supporting evidence of each Party.  The joint stipulation shall be initiated by the Designating Party and prepared as follows:

     (a)   Within the earlier of thirty-three (33) days after the initial notice of challenge or fourteen (14) days after the Parties agree that the meet and confer process will not resolve their dispute, the Designating Party, as the moving party, must serve its portion of the joint stipulation, including evidence and exhibits in support thereof, on the Challenging Party.

(b)    Within ten (10) days of receiving the Designating Party's portion of the joint stipulation, the Challenging Party shall serve its portion, including evidence and exhibits in support thereof, on the Designating Party.

(c)    After receiving the Challenging Party's portion, the Designating Party shall assemble the complete joint stipulation and send it to the Challenging Party, who shall sign it (electronically or otherwise) and return it to the Designating Party, by no later than the end of the next business day for filing by the Designating Party by no later than the following business day.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party.  Failure by the Designating Party to timely initiate the joint stipulation process as set forth in Section 7.3(a) above, or as amended by the Parties, shall automatically waive the confidentiality designation for each challenged designation.  Unless the Designating Party has waived the confidentiality designation, all parties shall continue to afford the material in question the protection to which it is entitled under the Designating Party's designation until the Court rules on the challenge.  Nothing in this Section shall abrogate the provisions set forth in Paragraph 13.3 herein.

7.4    <u>Provisional Limitation on Challenges</u>.  Each side is initially limited to one hundred (100) challenges of documents designated as CONFIDENTIAL by any Party, and a further one hundred (100) challenges of documents designated as CONFIDENTIAL by any Non-Party, subject to the following: (a) challenges to multiple substantially identical documents (<u>i.e.</u>, documents that contain the same data fields, such as identically formatted invoices or sales reports, and, for the sake of judicial economy, should be treated as a single document) will only count as a single challenge; and (b) the Parties further agree that in the event either side reaches its 100 challenge limit for documents registered CONFIDENTIAL by Parties, or its 100 challenge limit for documents registered CONFIDENTIAL by

Non-Parties, before the conclusion of the case, they will promptly meet and confer in good faith to determine how to proceed thereafter.

## 8.    ACCESS TO AND USE OF PROTECTED MATERIAL

8.1    <u>Basic Principles</u>.  A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation.  Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order.  When the litigation has been terminated, a Receiving Party must comply with the provisions of section 14 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

8.2    <u>Disclosure of "CONFIDENTIAL" Information or Items</u>.  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)    the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Attachment A;

(b)    the officers, directors, and employees (including House Counsel), of the Receiving Party (including the government entity with supervisory authority over any Receiving Party) to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Attachment A);

1  (c)  Experts (as defined in this Order) of the Receiving Party to whom

2  disclosure is reasonably necessary for this litigation and who have signed the

3  "Acknowledgment and Agreement to Be Bound" (Attachment A);

4  (d)  the Court and its personnel;

5  (e)  court reporters and their staff, professional jury or trial consultants,

6  mock jurors, and Professional Vendors to whom disclosure is reasonably necessary

7  for this litigation, all of whom must have signed the "Acknowledgment and

8  Agreement to Be Bound" (Attachment A);

9  (f)  in preparation for and during their depositions, witnesses in the action

10  to whom disclosure is reasonably necessary and to whom a copy of the Protective

11  Order is simultaneously provided.  Pages of transcribed deposition testimony or

12  exhibits to depositions that reveal Protected Material must be separately bound by

13  the court reporter and may not be disclosed to anyone except as permitted under this

14  Order;

15  (g)  the author or recipient of a document containing the information or a

16  custodian or other person who (i) otherwise possessed or knew the information, (ii)

17  obtained that information through legitimate means, and (iii) has signed the

18  "Acknowledgement and Agreement to be Bound" (Attachment A);

19  (h)  outside counsel and House counsel for, and the employee with

20  supervisory authority for the action on behalf of, a Real Party to whom disclosure is

21  reasonably necessary for this litigation, all of whom must have signed the

22  "Acknowledgement and Agreement to be Bound" (Attachment A);

23  (i)  the Relator, John Hendrix.

24  8.3  <u>Deposition Procedures</u>.

25  Any Party or deponent shall have the right to exclude from attendance at a

26  deposition or portion of a deposition where that Party's Protected Material is

27  discussed any person other than the deponent, the deponent's attorney, and persons

28

1  described in Section 8.2(b) (with a limitation of one employee per Party in
2  attendance).

3

4  **9.      PROTECTED MATERIAL SUBPOENAED OR ORDERED**
5  **PRODUCED IN OTHER LITIGATION**

6      If a Receiving Party is served with a subpoena, court order, or public records
7  request made pursuant to state or federal statute that compels disclosure of any
8  information or items designated in this action by another Party or Non-Party as
9  "CONFIDENTIAL," that Receiving Party must:

10     (a)    transmit a copy of the subpoena, court order, or public records request
11 to the Designating Party within three (3) business days of its receipt;

12     (b)    promptly notify in writing the party who caused the subpoena, court
13 order, or public records request to issue that some or all of the material covered by
14 the request is subject to this Order.  Such notification shall include a copy of this
15 Order; and

16     (c)    cooperate in good faith with respect to all reasonable procedures sought
17 to be pursued by the Designating Party whose Protected Material may be affected.

18     (d)    Upon notice from the Designating Party that it intends to seek a
19 Protective Order, the Receiving Party served with the subpoena, court order, or
20 public records request shall not produce any information designated in this action as
21 "CONFIDENTIAL" before a determination by the court from which the subpoena
22 or order issued, unless the Receiving Party has obtained the Designating Party's
23 permission.  The Designating Party shall bear the burden and expense of seeking
24 protection in that court of its confidential material, and nothing in these provisions
25 should be construed as authorizing or encouraging a Receiving Party in this action
26 to disobey a lawful directive from another court.

27     (e)    Notwithstanding any of the above provisions, nothing in paragraph 9
28 should be construed as requiring a government entity that receives a public records

request to act in contravention of the applicable public records statute; provided, however, that the government entity must assert all relevant objections to the request for disclosure of a Designating Party's personnel records, corporate financial records, corporate proprietary information, and/or trade secrets as provided, for example, in Sections 6254(b) and 6254.15 of the California Government Code, and non-California equivalents.

### 10.    A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order.  Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

### 11.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must promptly: (a) notify in writing the Designating Party of the unauthorized disclosure, including all pertinent facts related to such disclosure; (b) use its best efforts to retrieve all unauthorized copies of the Protected Material; (c) inform the person or persons to whom the unauthorized disclosure was made of all the terms of this Order; and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Attachment A.  Nothing in these provisions should be construed as prohibiting a Designating Party or Producing Party from seeking judicial relief from any Party or Non-Party for injuries arising from a violation of this Order.

**12.     INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL**

Any Party or Non-Party producing documents, electronically stored information, or things under this Order are entitled to the full protection of, and are subject to the restrictions imposed by, Federal Rule of Evidence 502(d) and (e) and Federal Rule of Civil Procedure 26(b)(5)(B), which are hereby incorporated by reference in this Order.  The Parties further hereby incorporate by reference the provisions of the Stipulated Order Regarding Inadvertent Production of Privileged Materials.

**13.     MISCELLANEOUS**

13.1    <u>Right to Further Relief</u>.  Nothing in this Order abridges (a) the right of any person to seek its modification by the Court in the future, or (b) any right, privilege, or protection available to any person under applicable law except as specifically set forth in the Protective Order.

13.2    <u>No Waiver</u>.  Neither the taking of any action in accordance with the provisions of this Order, nor the failure to object hereto, shall be construed as a waiver of any claim or defense in this action. This Order shall not be construed as a waiver of any right to object to the furnishing of information in response to discovery and, except as expressly provided, shall not relieve any Party or Non-Party of the obligation to produce information properly sought in the course of discovery. Nothing herein shall be construed to affect in any way the admissibility of any document, testimony, or other evidence at trial of this action. Nothing contained in this Order or any declaration of confidentiality or restriction hereunder shall be used or characterized by any Party as an "admission" by a Party opponent. The failure of a Party to object to or to challenge a designation by another Party of Protected Material shall not constitute an admission that the materials so designated are in fact entitled to such designation or are entitled to any legal protection.

13.3   <u>Filing Protected Material</u>.  A Party or Non-Party that seeks to file under seal any Protected Material must comply with Local Rule 79-5.  A Party or Non-Party may not attach Protected Material to, or incorporate it in, an unsealed Court filing unless it notifies the Designating Party of its intent to file the Protected Material at least five (5) days prior to the anticipated filing date so that the Designating Party may seek an Order from the Court sealing the Protected Material. No Party or Non-Party (who is bound by this Order) may attach Protected Material to, or incorporate it in, an unsealed Court filing while a petition to seal the Protected Material is pending.

13.4   <u>Inconsistent Designations</u>.  In the event a Producing Party produces two or more substantially identical copies of a document and one such copy is designated as Protected Material and other such copies are not, all such substantially identical documents shall be treated in accordance with the most restrictive designation on any copy once the inconsistent designation is known. The Producing Party shall be responsible for informing the Receiving Party(ies) of the inconsistent designation and promptly replacing with the correct designation any materials it produced without such a designation.  If a Receiving Party has actual knowledge of the inconsistent designation of Protected Information, it shall treat all copies as if designated as Protective Information.

## 14.   FINAL DISPOSITION

Within sixty (60) days after the final disposition of this action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material.  As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material.  Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to

312242.1

15

the Designating Party) by the sixty (60) day deadline that: (a) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed, and (b) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material.  Notwithstanding this provision, law firms that are Outside Counsel of Record are entitled to retain one archival copy of all pleadings (exclusive of exhibits), motion papers (other than declarations), trial and hearing transcripts (exclusive of exhibits), legal memoranda, correspondence, and attorney work product, even if such materials incidentally contain Protected Material.  Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

## 15.    GOOD CAUSE STATEMENT

A.    *Defendants*

Defendants represent that good cause exists for the entry of this Order, and the protection of materials designated CONFIDENTIAL in accordance herewith, for the following reasons:

15.1   Defendants Participate in Competitive Markets.  JM Eagle competes in the global market for PVC piping products.  FPC-USA competes in the global market for plastic resins and petrochemicals.

15.2   Proprietary Research and Development.  Defendants allocate significant time and resources to researching and developing new and/or improved products for their respective markets.  Because they gain a competitive advantage from research and development, Defendants maintain all materials related to research and development, including communications by and between research and development engineers, in strict confidence.  If Defendants' competitors were to gain access to Defendants' research and development materials, Defendants would suffer specific and irreparable harm in the form of lost competitive advantage.  For

example, a competitor could exploit Defendants' research and development efforts to improve its own competitive products or to introduce a new competitive product to the market that would reduce Defendants' market share.

15.3   <u>Specifications and Formulations for Materials and Products</u>. Defendants maintain their manufacturing specifications and standard operating procedures, including communications by and between production engineers, in strict confidence because they gain competitive advantage and increased profit margin from these materials, which, for example, enable them to reduce costs through increased productivity and elimination of waste.  If Defendants' competitors were to gain access to Defendants' manufacturing specifications and/or standard operating procedures, Defendants would suffer specific irreparable harm in the form of lost competitive advantage and lost profit.  For example, a competitor could exploit Defendants' manufacturing specifications and/or standard operating procedures to reduce its own costs and neutralize Defendants' price advantage in the market.

Likewise, JM Eagle maintains the formulations for the PVC compounds it uses to manufacture piping products in strict confidence.  In the context of PVC compound, a proprietary formulation is analogous to a "secret recipe."  JM Eagle gains a competitive advantage from keeping its competitors ignorant as to the exact ingredients, and the amounts thereof, that it uses in its PVC compound.  If a competitor were to obtain JM Eagle's proprietary formulation for PVC compound, JM Eagle would suffer specific, irreparable harm in the form of lost competitive advantage.

15.4   <u>Contracts and Communications with Vendors</u>.  To minimize costs, and thereby lower their prices to consumers and/or increase profit margin, Defendants negotiate agreements to purchase vendors' goods and services at discounted rates. These discounted rates are kept confidential so that the vendors do not lose business, for example, by charging Defendants less (or more) than they charge other

1   customers.  If Defendants' negotiated rates are made public, vendors may refuse to

2   offer further discounts to Defendants.  Accordingly, Defendants will suffer specific,

3   irreparable harm if their vendor contracts and associated communications are not

4   kept confidential.

5        15.5   Contracts and Communications with Customers Other than Plaintiffs.

6   A major component of Defendants' sales cycle is responding to requests for bids

7   received from customers.  Bid pricing depends on multiple factors.  Defendants may

8   offer some customers lower prices than others.  Maintaining the confidentiality of

9   bids permits Defendants to be flexible in terms of pricing and thereby close sales.

10  Further, Defendants use "most favored nation" status to reward the loyalty of its top

11  customers.  If Defendants' contracts with customers, and associated communications

12  are made public, Defendants will suffer specific irreparable harm in the form of lost

13  opportunity to maximize the value of sales.  For example, if Defendants' "most

14  favored nation" rates become public, all of Defendants' customers will demand

15  "most favored nation" status.

16       15.6   Internal Testing and Quality Assurance Procedures, Results, and

17  Reports.  Defendants have invested significant time and resources in developing

18  proprietary quality assurance systems.  An element of these quality assurance

19  systems is testing equipment that is integrated into Defendants' production lines and

20  generates reports that are intended for Defendants' sole use.  Defendants derive a

21  competitive advantage from their quality assurance systems because they enable

22  Defendants to quickly identify and remedy potential problems in the production line,

23  thereby maximizing productivity and minimizing waste.  Defendants maintain

24  materials related to their quality assurance systems under strict confidence to protect

25  the competitive advantage they provide.  In addition, Defendants do not publicize

26  the results of quality assurance testing to prevent their competitors from exploiting

27  the research and production-line improvement data that can be gleaned there from.

28  For example, if an adjustment to a production parameter causes a quality assurance

1  test failure, Defendants gain value from keeping such data to themselves.

2  Accordingly, if information related to their proprietary quality assurance systems is

3  publicly disclosed, Defendants will suffer specific, irreparable harm in the form of

4  lost competitive advantage.

5     15.7   Communications with Testing Laboratories and Standards Certifying

6  Organizations.  Defendants routinely share information with testing laboratories and

7  standards certifying organizations that is subject to confidentiality and non-

8  disclosure agreements.  Some of the information is related to Defendants' research

9  and development efforts and is confidential for the reasons discussed in Paragraph

10  15.2 above.  Other information is related to the certification of Defendants' products

11  and production facilities, and includes materials from which a competitor could

12  readily glean Defendants' proprietary product specifications and formulations.  For

13  the reasons discussed in Paragraph 15.3 above, Defendants' product specifications

14  and formulations must be kept confidential.

15     15.8   Financial Statements and Supporting Accounting Records.  Defendants

16  are private companies that, subject to Paragraph 15.9 below, are not required to, and

17  in fact do not, publicly disclose their financial statements or supporting accounting

18  and cash management records.  Defendants maintain such materials confidential in

19  part because they incorporate and reflect the value of the Defendants' negotiated

20  deals with vendors and customers, and therefore provide Defendants with a

21  competitive advantage for the reasons discussed in Paragraphs 15.4 and 15.5.  In

22  addition, such materials provide details about the management and strategic

23  direction of Defendants, which information will lose its intrinsic value if disclosed

24  to Defendants' competitors.  For example, Defendants' accounting records,

25  including expense reports, may reveal Defendants' efforts to assess a valuable

26  business opportunity not known to the rest of the market.

27     15.9   Communications Between Defendants and with Financial Institutions

28  Regarding Procedures and Records for Receipts, Records, Funds Management,

Borrowing, and Investments.  Defendants make some limited disclosures of the information described in Paragraph 15.8 to financial institutions in connection with certain lines of credit.  These disclosures are made subject to confidentiality and non-disclosure agreements.  Such materials are confidential for the reasons set forth in Paragraph 15.8 and their publication will cause specific, irreparable harm to Defendants in the form of lost competitive advantage, lost profit, and lost business opportunity.

15.10 Personnel Records.  As recognized in Federal Rule of Civil Procedure 5.2, individuals have a right to prevent the unnecessary disclosure of their private information.  Since Defendants' employees are not parties to this lawsuit, there would appear to be no justification to publicize otherwise private personnel records including home contact information, health insurance records, salary, performance reviews, discipline records and the like.  Disclosure of this information will cause specific harm to Defendants' employees in the form of embarrassment, potentially diminished earning capacity and job prospects, and the mental duress that accompanies an invasion of privacy.

B.   *Plaintiffs*

Plaintiffs represent that good cause exists for the protection under this Order of the following category of materials:

15.11 Critical Infrastructure.  In the wake of the terrorist attacks of September 11, 2001, the U.S. and state governments passed laws and enacted regulations governing the protection of so-called "critical infrastructure," i.e., physical and virtual assets deemed vital to the nation and the incapacity or destruction of which would have a debilitating impact on national security, public health, and/or public safety.  See generally 42 U.S.C. § 5195(c); U.S. Department of Homeland Security Presidential Directive 7: Critical Infrastructure Identification, Prioritization, and Protection; Virginia Code 2.2-3705.2 (describing exclusions from disclosure under public records act of documents implicating critical infrastructure).  Plaintiffs have

1   in their possession -- and defendants are likely to request in discovery -- certain

2   categories of information that are exempt from public disclosure under applicable

3   law because of the sensitive nature of the data contained therein.  For example,

4   geographic and geophysical information and data contained on so-called "GIS"

5   mapping systems could show the specific location of essential water and sewer pipes

6   and would, accordingly, be deemed part of the nation's "critical infrastructure."

7   Such information should not be publicly disclosed as it could be useful to a person

8   planning an attack on such critical infrastructure.  This information should therefore

9   be designated CONFIDENTIAL.

10

11          IT IS SO ORDERED.

12

13   Dated:  October 19, 2011          By:   _Patrick J. Walsh_

14                                          The Honorable Patrick J. Walsh
                                           United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTACHMENT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of _____

_____ [print or type full address],

declare under penalty of perjury that I have read in its entirety and understand the

Stipulated Protective Order that was issued by the United States District Court for

the Central District of California on _____, 2011 in the case of

United States, The States of California, Delaware, Florida, Illinois, Indiana, Nevada,

New Mexico, New York, and Tennessee, The Commonwealths of Massachusetts

and Virginia, and the District of Columbia ex rel. John Hendrix v. J-M

Manufacturing Company, Inc., d/b/a JM Eagle, and Formosa Plastics Corporation,

U.S.A., Case No. ED CV06-0055-GW.   I agree to comply with and to be bound by

all the terms of this Stipulated Protective Order and I understand and acknowledge

that failure to so comply could expose me to sanctions and punishment in the nature

of contempt.  I solemnly promise that I will not disclose in any manner any

information or item that is subject to this Stipulated Protective Order to any person

or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court

for the Central District of California for the purpose of enforcing the terms of this

Stipulated Protective Order, even if such enforcement proceedings occur after

termination of this action.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.

Date:

City and State where sworn and signed:

Printed name:

[printed name]

Signature: _____

[signature]

23