HOLLAND & KNIGHT LLP
  Richard T. Williams (State Bar No. 52896)
  Vince Farhat (State Bar No. 183794)
  Kristina S. Azlin (State Bar No. 235238)
400 South Hope Street, 8th Floor
Los Angeles, California 90071-2040
Telephone (213) 896-2400
Facsimile (213) 896-2450
Email: richard.williams@hklaw.com,
Email: vince.farhat@hklaw.com,
Email: kristina.azlin@hklaw.com,

Attorneys for Defendant
Formosa Plastics Corporation, U.S.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| UNITED STATES, THE STATES OF CALIFORNIA, DELAWARE, FLORIDA, ILLINOIS, INDIANA, NEVADA, NEW MEXICO, NEW YORK, and TENNESSEE, THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA, and THE DISTRICT OF COLUMBIA *ex rel*. JOHN HENDRIX, <br><br> Plaintiffs, <br><br> vs. <br><br> J-M MANUFACTURING COMPANY, INC., d/b/a JM Eagle, a Delaware corporation, and FORMOSA PLASTICS CORPORATION, U.S.A., a Delaware corporation, <br><br> Defendants. | CASE NO. ED CV06-00055-GW(PJWx) <br> Assigned to Hon. George H. Wu <br><br> **DECLARATION OF RICHARD T. WILLIAMS** <br><br> **IN SUPPORT OF JOINT NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT AS FAIR, ADEQUATE AND REASONABLE** <br><br> Date:                Dec. 2, 2013 <br> Time:                8:30 a.m. <br> Location:            Courtroom 10 |

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

# TABLE OF CONTENTS

**Page**

I.   PROTRACTED PROCEDURAL HISTORY OF THE ALLEGATIONS  AGAINST FPC-USA IN THIS FCA ACTION ............... 1

II.  EXTENSIVE DOCUMENT DISCOVERY SPECIFICALLY AGAINST FPC-USA ........................................................ 7

III. LIMITED ROLE OF FPC-USA ............................................... 7

IV.  THIS SETTLEMENT AGREEMENT MEETS THE CRITERIA FOR THIS COURT TO APPROVE IT AS FAIR, ADEQUATE AND REASONABLE .............................................................. 8

   A.   The Settlement Agreement Is Presumed Fair ......................... 8

      1.   Experience of Counsel ................................................ 8

      2.   Arm's Length Negotiation of Settlement ..................... 9

      3.   Sufficiency of Investigation and Discovery for Evaluation ............................................................... 10

   B.   The Strengths and Weaknesses of Plaintiffs' Case And the Risk, Complexity and Expense of Further Litigation Demonstrate That The Settlement Is Proper ....................... 11

   C.   Inadvertent Submittal Claims ........................................... 11

   D.   ANALYSIS OF STRENGTHS AND WEAKNESSES OF CLAIMS AGAINST FPC-USA IN THE STATE ACTION ............... 15

      1.   The Origins and Status of the State Action ................. 15

      2.   Claims Alleged Against FPC-USA in the State Action ............. 15

      3.   Fraud and Negligent Misrepresentation Claims ......................... 18

      4.   Strict Products Liability Claims ................................. 18

      5.   Unjust Enrichment Claims ......................................... 19

      6.   Insurance ............................................................... 20

V.   EARLY DISCOUNT FOR GLOBAL SETTLEMENT ........................ 20

VI.  THE AMOUNT OF THE SETTLEMENT ALSO DEMONSTRATES THAT THE SETTLEMENT IS PROPER .................. 20

VII. THE STAGE OF THE PROCEEDINGS, THE EXPERIENCE AND VIEWS OF COUNSEL, AND THE REACTION OF THE PARTIES TO THE PROPOSED SETTLEMENT WARRANT APPROVAL ................................................................... 22

VIII. THE SETTLEMENT AGREEMENT IS NOT THE RESULT OF FRAUD OR COLLUSION ................................................. 24

i

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

## DECLARATION OF RICHARD T. WILLIAMS

1.     I am a partner with the law firm of Holland & Knight LLP ("H&K") with 41 years of experience in civil litigation.  I have been responsible, along with other partners in my firm, for the representation of Defendant Formosa Plastics Corporation, U.S.A. ("FPC-USA") in this matter.  I am licensed to practice law in the State of California and before this Court.  I have personal knowledge of the facts stated herein, except for those stated on information and belief, which I am informed and believe are true.  I could and would testify to these facts under oath if called upon to do so.

2.     A settlement has been negotiated between counsel for the Plaintiffs and counsel for FPC-USA resolving all claims between them in this matter and also in the State Action described below. The terms have been documented in a written Settlement Agreement; a true and correct copy of the fully executed Settlement Agreement is attached hereto as Exhibit "1".

3.     On behalf of FPC-USA, for the reasons set forth below, I recommend this Court's approval of the Settlement Agreement as "fair, adequate and reasonable under all the circumstances", pursuant to 31 U.S.C. § 3730(c)(2)(B), and similar state statutes.

## I.     PROTRACTED PROCEDURAL HISTORY OF THE ALLEGATIONS AGAINST FPC-USA IN THIS FCA ACTION

4.     This *qui tam* case has passed its seventh anniversary with more than 1,700 entries on the judicial docket attesting to the vigor of battle and thus underscoring that settlement herein is the product of arms' length negotiations.  More than two years of Court proceedings after its unsealing involved just settling the pleadings as to FPC-USA, indicating: (1) The fact and legal issues are complex, and (2) FPC-USA was successful in eliminating its exposure to Plaintiffs' direct violations claims, which this Court determined, after giving Plaintiffs multiple opportunities to amend their pleadings, rested on too insubstantial a fact foundation.

1

During this process, Plaintiffs submitted four separate Amended Complaints, to each of which FPC-USA responded with a motion to dismiss; three of those motions were granted by the Court. Ultimately, all claims of direct violations of federal and state FCAs were dismissed with prejudice as against FPC-USA, as well as one claim under the "inadvertent submittal" provisions of New Mexico law.

5.      This *qui tam* civil action was filed under seal on January 17, 2006 in the United States District Court for the Central District of California entitled *U.S. ex rel. Hendrix, et al. v. J-M Mfg. Co., Inc., et al.*, No. CV 06-0055-GW ("Federal Action"), alleging violations of the federal, California, and other states' FCAs by J-M Manufacturing Company, Inc. ("J-M") (Docket No. 1).  FPC-USA was not named a defendant to the original Complaint.

6.      All proceedings in this lawsuit continued to be sealed throughout 2006-February 2010.  On information and belief, it appears that between 2006 and 2008, various demands for the production of documents were issued by various federal and state officials to J-M, that extensive investigative work was done by various government officials and by Relator's counsel, and that thousands of documents were produced to government officials by J-M.

7.      In October 2008, a First Amended Complaint was filed herein (Docket No. 41), under seal. FPC-USA was added as a defendant to four counts asserted under "inadvertent submittal" provisions in the state FCAs in California, Massachusetts, Nevada and Tennessee; no claims were alleged against FPC-USA with respect to the federal FCA or with respect to direct violation of state FCAs. FPC-USA was given no contemporary notice of this filing.  In February 2010, the First Amended Complaint was unsealed.

8.      The "inadvertent submittal" provisions, unique to a handful of state FCAs, relate to conduct of a person after someone else has filed a false invoice or claim for payment with a government entity in those states and the claim has been paid.  *See* Cal. Gov't Code § 12651(a)(8) (West 2013); Mass. Gen. Laws ch. 12, §

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

2

5B(9) (2013); NEV. REV. STAT. § 357.040(h) (2013); and TENN. CODE ANN. § 4-18-103(8) (West 2013). Under the "inadvertent submittal" provisions, a person may be held liable if that person "is a beneficiary of an inadvertent submission of a false claim to the state or a political subdivision, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery of the false claim." *E.g.*, TENN. CODE ANN. § 4-18-103(8) (West 2013). "Beneficiary" is a term neither defined nor limited in these state FCAs. A person found liable under such provisions may be subject to treble damages, a multi-thousand dollar civil penalty for each false invoice involved, and for attorney's fees and costs of prosecution; liability for two persons found liable under these state FCAs may be joint and several.

9.    The Second Amended Complaint was filed herein on February 5, 2010 (Docket No. 96), and was unsealed by the Court on February 8, 2010 (Docket No. 105), along with notice by the United States that it declined to intervene in this action (Docket No. 100). For the first time, the Second Amended Complaint added one count for direct violation of the federal FCA against FPC-USA and eleven counts for direct violation of state FCAs as well as one more count for violation of the "inadvertent submittal" provision, this time in the New Mexico FCA. *See* N.M. STAT. ANN. § 44-9-3(A)(9) (2013). The four inadvertent submittal counts against FPC-USA in the First Amended Complaint were carried forward to this Second Amended Complaint.

10.    Briefly, the Second Amended Complaint asserted that at least since January 1996, J-M has manufactured polyvinyl chloride ("PVC") pressure water pipe ("PVC pipe") whose tensile strength purportedly failed to meet industry standards specified by governmental entities for use in their water and sewer systems. FPC-USA, as a major supplier of PVC resin to J-M, the main raw material in PVC pipe, was alleged to have reduced the inherent viscosity of its PVC resin supplied to J-M, purportedly contributing to weakness in the PVC pipe.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

3

1    11.    On May 10, 2010, FPC-USA and J-M each filed Motions to Dismiss the

2   Second Amended Complaint.  (Docket Nos. 183, 188).  After multiple hearings and

3   supplemental briefing, on December 1, 2010, the Court found the Second Amended

4   Complaint insufficient as against FPC-USA and dismissed without prejudice all

5   claims alleged against FPC-USA, granting leave to Plaintiffs to file a further

6   amended complaint. (Docket No. 317).

7    12.    Between January 5, 2010 and March 10, 2010, approximately 48 states,

8   cities, and water districts formally intervened in this *qui tam* lawsuit as plaintiffs.

9   (*See* Docket Nos. 58-117).  In August and September 2010, the Intervenors moved

10  the Court for permission to file Complaints in Intervention that largely incorporated

11  the Second Amended Complaint, provided some additional transactional information,

12  and also sought to bring non-FCA and common law counts for fraud, negligent

13  misrepresentation, strict product liability, deceitful trade practices and unjust

14  enrichment against FPC-USA, and the same counts, plus breach of warranty claims,

15  against defendant J-M and also against Mr. Walter Wang, CEO of J-M.  (Docket Nos.

16  252, 253, 254).

17   13.    On December 1, 2010, and in an Order dated December 21, 2010, the

18  Court denied the Intervenors' Motions and declined to exercise supplemental

19  jurisdiction to allow non-FCA and common law claims.  (Docket Nos. 317, 321).

20   14.    Relator filed a Third Amended Complaint on January 20, 2011.  (Docket

21  No. 324).  The same counts were alleged against FPC-USA in the Third Amended

22  Complaint as in the Second Amended Complaint.  Most of the allegations, although

23  reorganized, were not substantially changed from the prior complaint.  FPC-USA

24  filed a motion to dismiss the Third Amended Complaint on February 10, 2011.

25  (Docket No. 333).

26   15.    In its tentative ruling issued May 2 (Docket No. 398), and in a final

27  order issued May 9, 2011 (Docket No. 401), the Court granted FPC-USA's motion to

28  dismiss <u>with prejudice</u> thirteen counts in the Third Amended Complaint alleging

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

4

direct violations by FPC-USA of the federal and state FCAs. The Court concurrently granted without prejudice FPC-USA's Motion to Dismiss the five remaining counts brought under the "inadvertent submittal" provisions in the FCAs of California, Massachusetts, Nevada, New Mexico and Tennessee in the Third Amended Complaint. The Court gave Relator until May 23 to file a Fourth Amended Complaint with respect to these inadvertent submittal claims.

16.    On May 23, 2011, Relator filed the Fourth Amended Complaint. (Docket No. 412). It enlarged some allegations and proffered supporting exhibits with respect to the five inadvertent submittal claims against FPC-USA in the Fourth Amended Complaint, the only claims pleaded against FPC-USA. On June 6, 2011, FPC-USA filed its motion to dismiss the Fourth Amended Complaint (Docket No. 423) and also filed a motion to strike selected allegations. (Docket No. 424). Following an offer of additional proof by Relator and additional briefing and argument, the Court denied FPC-USA's motion to dismiss on October 24, 2011. (Docket No. 498).

17.    On November 7, 2011, the Court granted dismissal with prejudice of one of the unique "inadvertent submittal" ("I/S") counts, alleged under New Mexico law as time-barred and not retroactive. (Docket No. 515).

18.    Following additional briefing, the Court granted in part and denied in part FPC-USA's motion to strike selected allegations on December 8 and in an Order dated December 15, 2011. (Docket Nos. 553, 564). The Court ordered a Fifth Amended Complaint be filed by December 23, 2011, conforming to the Court's prior rulings, and that FPC-USA filed its Answer to the Fifth Amended Complaint by January 20, 2012.

19.    The Fifth Amended Complaint was filed December 23, 2011. (Docket No. 570). FPC-USA filed its Answer on January 20, 2012. (Docket No. 579). These are the operative pleadings with respect to FPC-USA in this *qui tam* lawsuit.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

5

20.     Beginning in May 2011, continuing with statements from the parties in June 2011 (Docket Nos. 431, 432, 433), and with multiple memoranda and hearings thereafter, the Court decided upon bifurcation of this action, issuing its Order on December 7, 2011 (Docket No. 551) specifying that the first phase of discovery and trial would be limited to falsity of J-M's representations, their materiality and J-M's scienter, while other issues, including claims, any benefit to FPC-USA and damages, would be deferred to a later second phase.

21.     In light of the bifurcation Order and after filing its Answer to the Fifth Amended Complaint, FPC-USA attempted to narrow and eliminate the remaining four inadvertent submittal claims against it in this action through motions filed May 11, 2012:

(a)     A motion for partial summary judgment challenging claims under the Massachusetts FCA as time-barred prior to October 10, 2002 (Docket No. 639);

(b)     A motion for partial summary judgment challenging claims under the Nevada FCA as time-barred prior to July 1, 2002 (Docket No. 641);

(c)     A motion to dismiss the Fifth Amended Complaint because of prior public disclosures made in June 2000 in *U.S. ex rel. Stan Price v. J-M Mfg. Co., Ltd.*, No. 2:00-cv-01755-EBC (E.D. La. Oct. 19, 2001) for lack of subject matter jurisdiction (Docket No. 640); and

(d)     A motion for judgment on the pleadings or, in the alternative, for summary judgment dismissing the I/S claims as not applicable to persons who played no role in the filing of false claims (Docket No. 646).

The two statute of limitations motions were vacated, taken off calendar, without prejudice to being raised in Phase Two proceedings on July 9, 2012.  (Docket No. 672).  The public disclosure bar was denied without prejudice on September 10, 2012.  (Docket No. 707).  The motion for judgment on the pleadings or for summary

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

6

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

judgment interpreting the I/S statutes as inapplicable to persons not involved in the filing of false claims was denied without prejudice to being raised in Phase Two proceedings on February 11, 2013. (Docket No. 785).

## II.   EXTENSIVE DOCUMENT DISCOVERY SPECIFICALLY AGAINST FPC-USA

22.    Beginning in February 2011, the Plaintiffs requested production of more than 40 categories of documents dating back to 1996 from FPC-USA, covering all of its PVC resin and PVC compound transactions with J-M, its corporate records and relationships with J-M, the spinoff in November 2005 of J-M from ownership by FPC-USA, insurance policies, customer specifications for PVC resin, and customer complaints, among other topics. In response, FPC-USA has produced approximately 700,000 documents, more than 2,000,000 pages, of paper and electronic information to Plaintiffs. Further, J-M's extensive document production includes many communications with FPC-USA, as well. Accordingly, the Plaintiffs have substantial information about FPC-USA from which to evaluate their claims against FPC-USA.

## III.   LIMITED ROLE OF FPC-USA

23.    The documents produced to Plaintiffs confirmed the very limited role of FPC-USA with respect to PVC pipe manufactured and marketed by J-M. Accordingly, on August 26, 2013, all Plaintiffs, FPC-USA and J-M, acting through counsel, stipulated to the following facts (Docket No. 1550):

(a)    FPC-USA did not make or sell any of the PVC pipe at issue in this case;

(b)    FPC-USA did supply some of the PVC resin and PVC compound used by J-M to make pipe;

(c)    FPC-USA did not submit any claims for payment to any of the government purchaser Plaintiffs concerning the PVC pipe at issue in this case, nor any of the PVC resin and/or PVC compound used by J-M to make that pipe;

7

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

(d)    FPC-USA did not make any representations to any of the government purchaser Plaintiffs concerning the PVC pipe at issue in this case or any of the PVC resin and/or PVC compound used by J-M to make that pipe;

(e)    The Exemplar Plaintiffs had no contact whatsoever with FPC-USA in relation to the public works projects at issue in the Phase One trial.

## IV.   THIS SETTLEMENT AGREEMENT MEETS THE CRITERIA FOR THIS COURT TO APPROVE IT AS FAIR, ADEQUATE AND REASONABLE

### A.   The Settlement Agreement Is Presumed Fair

24.    A presumption of fairness arises where: (1) counsel is experienced in similar litigation; (2) the settlement was reached through arm's length negotiations; (3) investigation and discovery are sufficient to allow counsel and the court to act intelligently. *In re Heritage Bond Litig.*, No. 02-ML-1475DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005); *U.S. ex rel. Resnick v. Weill Med. Coll. of Cornell Univ.,* No. 04-cv-3088, 2009 WL 637137, at *1-4 (S.D.N.Y. Mar. 5, 2009). Those conditions are met here.

#### 1.   Experience of Counsel

25.    Counsel for FPC-USA are experienced in litigating and resolving complex actions, including cases governed by the "fair, reasonable and adequate" standard such as class actions.  For example, in 1986, I represented the Air Transport Association of America and its member air carriers in designing and negotiating settlement of the distribution of more than one billion dollars in escrowed funds representing crude oil overcharges in violation of federal price controls. I negotiated that settlement with representatives of the U.S. Department of Energy, several states' Attorneys General (representing all 50 states), and counsel for major oil refiners, gasoline retailers, and farmer cooperatives, among others.  I helped obtain court approval of the settlement as "fair, reasonable and adequate" in *In re The Dep't of*

8

*Energy Stripper Well Exemption Litig., MDL No. 378,* 653 F.Supp. 108 (D. Kan. 1986).

26.    More recently, and before this Court, Kristina Azlin and I represented Harris Corporation in settling and obtaining approval of a class action settlement under FED. R CIV. P. (e) on February 8, 2010, in *NV Sec., Inc. v. Fluke Networks, Inc.*, No. 2:05-cv-04217-GW (C.D. Cal. Feb. 8, 2010).  In addition, my partner Vince Farhat is a former Assistant U.S. Attorney ("AUSA") in the Central District of California.  As an AUSA, Vince successfully litigated and resolved numerous civil and criminal cases, and prosecuted corporate defendants in parallel FCA and criminal fraud investigations.

27.    The lawyers for Plaintiffs in this *qui tam* case include Eric Havian of the law firm of Phillips & Cohen, one of the most experienced firms in the United States in FCA litigation, and Kirk Dillman of the law firm McKool Smith Hennigen, with extensive class action experience.

## 2.    Arm's Length Negotiation of Settlement

28.    The settlement was reached after weeks of arms' length negotiation with effective assistance by former Chief Magistrate Judge Edward A. Infante (Ret.) as mediator.  Following a day-long mediation on May 29, 2013, there were numerous telephone conferences between each side and the mediator; FPC-USA's advocacy to the mediator was vigorous.  After apparent impasses in negotiations, the mediator presented a proposal for settlement of compensatory damages claims, and both sides agreed on July 16, 2013 to that proposal of $22,500,000.  After further negotiations and another impasse with respect to a compromise of attorneys' fees and costs, Judge Infante made a second mediator's proposal of $5,500,000, which was accepted by both sides on August 5, 2013.  Counsel for Plaintiffs and FPC-USA then exchanged multiple drafts of non-monetary provisions for the Settlement Agreement, negotiating face to face and then through numerous telephone and email communications.  As

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

9

part of these negotiations, it was agreed that the settlement payments would be made directly and promptly into an interest-bearing escrow account.

29.    On September 11, 2013, FPC-USA signed the Settlement Agreement; the Court was informed of multiple Plaintiffs' signatures and of the Settlement on September 13.  The Court approved the negotiated conditional dismissal without prejudice of claims against FPC-USA on September 13, 2013, and on September 17, 2013, all settlement payments were deposited in escrow by FPC-USA at U.S. Bank in an interest-bearing account.  FPC-USA was thereupon relieved from participation in the Phase One trial now underway.  The Settlement Agreement is now fully-executed.

### 3.    Sufficiency of Investigation and Discovery for Evaluation

30.    Plaintiffs' counsel has been investigating this case since its filing seven years ago.  In addition to examining hundreds of thousands of documents produced by J-M, including documents covering its transactions and relationships with FPC-USA, Plaintiffs requested and have received approximately 700,000 documents directly from FPC-USA, more than 2,000,000 pages of electronic and paper information.  Plaintiffs have participated in several dozen depositions over the past two years; through these and other investigative activities, Plaintiffs have had an ample occasion to evaluate the claims they have pleaded against FPC-USA and to determine appropriate parameters for settlement of those claims with FPC-USA.

31.    On behalf of FPC-USA, my colleagues and I have examined the documents FPC-USA produced, many of those produced by J-M, and we have attended or read transcripts from most of the depositions in this action; we have investigated exhaustively potential defenses, weaknesses and limitations in the claims asserted against FPC-USA and have been in close and frequent communication with our client about our analysis. I believe we and FPC-USA are well positioned to evaluate settlement with the Plaintiffs.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

DECLARATION OF RICHARD T. WILLIAMS IN SUPPORT OF JOINT MOTION FOR
APPROVAL OF SETTLEMENT AS FAIR, ADEQUATE AND REASONABLE

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

**B.** **The Strengths and Weaknesses of Plaintiffs' Case And the Risk, Complexity and Expense of Further Litigation Demonstrate That The Settlement Is Proper**

32.     The Court's bifurcation of proceedings has resulted in a Phase One trial currently underway involving five exemplar Plaintiffs and whether J-M made false representations that were material and were made with scienter.

33.     The outcome of the Phase One trial is unknown as of this writing. If Plaintiffs prevail, even in part, an additional phase of discovery and motion practice will commence and potentially lead to a Phase Two trial at some future date.  Unless FPC-USA's motion for judgment on the pleadings or for summary judgment (Docket No. 646) were to be promptly granted, FPC-USA would face exhaustive discovery on issues on questions of the nature and scope of its knowledge of false claims and on questions of damages, among other issues.  Discovery has already lasted two years; it would certainly be no less in Phase Two and likely would be greater.  Trial involving all the Plaintiffs and hundreds of Real Parties in Interest, all their false claims, and all the remaining issues, including damages, would be extraordinarily complex and lengthy.  As the legal issues involved in the claims against FPC-USA are largely matters of first impression, extensive post-trial motions and appeals by the unsuccessful side would be inevitable.

**C.** **Inadvertent Submittal Claims**

34.     The present *qui tam* case as pleaded against FPC-USA is inherently complex because it involves legal claims under "inadvertent submittal" provisions in state FCAs that have not been judicially interpreted, nor tested for constitutionality. FPC-USA vigorously contests any liability under these provisions.  Nonetheless, FPC-USA faces large litigation risks, given that Plaintiffs seek to impose joint and several liability for false claims on FPC-USA and its PVC resin was a principal ingredient in millions of feet of J-M's PVC pipe at issue; the risks are great, even if only a small portion of claims against FPC-USA are ultimately successful.

11

35. For their part, Plaintiffs face multiple burdens in their claims against FPC-USA in this action, including the following:

(a) Prevailing in the Phase One trial against J-M to demonstrate a predicate, that "false claims" occurred, to "inadvertent submittal" liability;

(b) Defeating FPC-USA's summary judgment and statutes of limitations motions in Phase Two (*see* Docket Nos. 640, 642, 646);

(c) Establishing the timing, source and content and scope of FPC-USA's knowledge of particular false claims presented to individual Plaintiffs, as to which Plaintiffs FPC-USA allegedly should have made disclosures;

(d) Establishing that FPC-USA actually received a monetary benefit from funds paid by Plaintiffs to contractors upon particular false claims;

(e) Establishing an appropriate measure of damages under the "inadvertent submittal" provisions of state FCAs; and

(f) Surviving constitutional challenges to excessive liability and penalties relative to the monetary benefit purportedly received by FPC-USA for violation of the "inadvertent submittal" provisions.

36. Over a year ago, FPC-USA filed its motion for judgment on the pleadings or in the alternative for summary judgment ("Statutory Construction Motion") arguing that the inadvertent submittal provisions do not apply to FPC-USA as a matter of law. (*See* Docket No. 646). Attached hereto as Exhibit "2" is a true and correct copy of the Statutory Construction Motion (without its supporting exhibits).

37. If granted, the Statutory Construction Motion would have resulted in the complete dismissal of FPC-USA from this *qui tam* lawsuit. However, Plaintiffs convinced the Court to defer ruling on the Statutory Construction Motion until after the Phase One trial. In my view, Plaintiffs' insistence on deferring ruling on this key issue is partly an acknowledgment of the strength of the Statutory Construction Motion.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

12

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

38.    As shown in the Statutory Construction Motion, the Inadvertent Submittal statutes do not apply to third parties such as FPC-USA who do not submit claims to government entities.  (*See* Exhibit 2).  Based on the statutory language and structure of the inadvertent submittal statutes read in context of the legislative history and FCA scheme, proof of liability under the inadvertent submittal provisions requires that:

(a)    The defendant submitted a false claim for payment to a government entity;

(b)    The defendant's submission of the false claim was "inadvertent," in that the "falsity" of the claim was not then known by the defendant;

(c)    The defendant "subsequently discovered" that the claim it had submitted was false;

(d)    The defendant is a "beneficiary" of the submitted claim; and

(e)    The defendant failed to report to the government entity, within a reasonable time after discovery of the falsity, that the claim was false.

39.    In the Statutory Construction Motion, FPC-USA submitted an appendix containing legislative history of the inadvertent submittal provisions.  The legislative history, although scant, confirms that these provisions apply only to those who themselves "inadvertently submitted" a false claim.  (*See* Docket No. 646 (with attached Requests For Judicial Notice of Legislative History)).  Moreover, if accepted by the Court, Plaintiffs' interpretation of the inadvertent submittal provisions would raise serious constitutional objections.  As discussed in the Statutory Construction Motion, Plaintiffs' interpretation of the inadvertent submittal provisions would be impermissibly vague, would violate guarantees of equal protection of the laws, and would violate the Constitutional prohibitions against Excessive Fines and Ex Post Facto punishments.  (*See* Exhibit 2).

40.    Even if this action proceeds to Phase Two and the Court does not grant FPC-USA's Statutory Construction Motion, I am confident Plaintiffs would fail to

13

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

meet their burden of proof under the inadvertent submittal provisions.  As set-forth in FPC-USA's opposition to Plaintiffs' 2011 "Offer Proof", Plaintiffs' factual theory as to how and why FPC-USA should be liable under the inadvertent submittal provisions falls far short of showing that FPC-USA ever "discovered" any false claims to any of the Real Parties or Intervenors in this case, or that it truly "benefited" from such false claims.  (*See* Docket No. 488).  If Phase Two discovery is ever undertaken, the evidence will show that FPC-USA did not "discover" any "false claims" related to J-M's pipe such that it could have, or should have, made disclosures; and, indeed, had no way of doing so.  (*Id.*).

41.    For all the foregoing reasons, Plaintiffs faced a very large litigation risk of little or no recovery against FPC-USA on their inadvertent submittal claims.  In any event, absent settlement, Plaintiffs also faced a large future multi-year litigation expense to prove the factual bases for FPC-USA's liability and to overcome the above-described legal challenges.  For its part, simply because J-M sold a very large volume of PVC pipe during the period 1996-2005, when FPC-USA owned J-M's stock, absent settlement FPC-USA faced multiple years of heavy expense for discovery and Phase Two trial, post-trial and appellate proceedings, and a modest, but non-zero, litigation risk of some liability to some Plaintiffs under the inadvertent submittal statutes. Further, as explained below, insurance coverage for FPC-USA in this *qui tam* lawsuit was denied by a ruling of the Superior Court in a declaratory relief action brought by FPC-USA's insurance carriers; thus, the cost of settlement of the Federal Action is borne by FPC-USA alone, making the continuing expense and risks of litigation even more unattractive.

//

//

//

//

//

14

### D. ANALYSIS OF STRENGTHS AND WEAKNESSES OF CLAIMS AGAINST FPC-USA IN THE STATE ACTION

#### 1. The Origins and Status of the State Action

42.     On April 19, 2011, a civil action entitled *The State of Nev., et al. v. J-M Mfg. Co., Inc., Formosa Plastics Corp., U.S.A. and Walter Wang* was filed in the Superior Court of California for Los Angeles County by the States of Nevada, New Mexico and Virginia and by numerous California cities, water districts and counties, and designated Case No. BC 459943 ("State Action").  On June 23, 2011 Plaintiffs served a First Amended Complaint upon FPC-USA, identical to the original Complaint except for the addition of five California municipal entities, bringing their total number to 52.  Attached hereto as Exhibit "3" is a true and correct copy of the First Amended Complaint in the State Action.

43.      On June 21, 2011, Plaintiffs filed a motion to stay all proceedings in the state action pending resolution of the federal *qui tam* lawsuit. All parties agreed to the motion and the stay was ordered; the stay remains in effect today, and no further pleadings or motions have been filed nor has discovery taken place in the State Action.

44.     As is described in the First Amended Complaint in the State Action at Paragraphs 18-21 (Exhibit 3 hereto), all the claims brought in the State Action were initially sought to be brought in this *qui tam* lawsuit, the Federal Action. All the Plaintiffs in the State Action are Intervenors or Real Parties in Interest in the Federal Action.  The same transactions, dating from 1996 to the present, for the same PVC pressure pipe products for potable water are at issue in the State Action as in the Federal Action.

#### 2. Claims Alleged Against FPC-USA in the State Action

45.      As appears after Paragraph 523 in the First Amended Complaint in the State Action (Exhibit 3 hereto), all of the 24 various tort claims alleged against FPC-USA in the State Action are simultaneously pleaded against Defendants J-M

15

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

Manufacturing Company, Inc. ("J-M") and sometimes also against J-M's chief executive officer, Defendant Walter Wang:

- **Count I** - Negligent Misrepresentation (By California Localities Against All Defendants)

- **Count II** - Intentional Misrepresentation (By California Localities Against All Defendants)

- **Count III** - Fraudulent Concealment (By California Localities Against All Defendants)

- **Count IV** - Civil Conspiracy to Defraud (By California Localities Against All Defendants)

- **Count IX** - Strict Liability for Defective Products (By California Localities Against J-M and FPC-USA)

- **Count X** - Unjust Enrichment (By California Localities Against All Defendants)

- **Count XI** - Violations of Nevada's Deceptive Trade Practices Act (By Nevada Against All Defendants)

- **Count XII** - Negligent Misrepresentation (By Nevada Against All Defendants)

- **Count XIII** - Intentional Misrepresentation (By Nevada Against All Defendants)

- **Count XIV** - Fraudulent Concealment (By Nevada Against All Defendants)

- **Count XV** - Civil Conspiracy to Defraud (By Nevada Against All Defendants)

- **Count XX** - Strict Liability for Defective Products (By Nevada Against J-M and FPC-USA)

- **Count XXI** - Unjust Enrichment (By Nevada Against All Defendants)

- **Count XXII** - Violations of New Mexico's Unfair Practices Act (By New Mexico Against All Defendants)

- **Count XXIII** - Negligent Misrepresentation (By New Mexico Against All Defendants)

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

16

**DECLARATION OF RICHARD T. WILLIAMS IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT AS FAIR, ADEQUATE AND REASONABLE**

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

- **Count XXIV** - Intentional Misrepresentation (By New Mexico Against All Defendants)

- **Count XXV** - Fraudulent Concealment (By New Mexico Against All Defendants)

- **Count XXVI** - Civil Conspiracy to Defraud (By New Mexico Against All Defendants)

- **Count XXXI** - Strict Liability for Defective Products (By New Mexico Against J-M and FPC-USA)

- **Count XXXII** - Unjust Enrichment (By New Mexico Against All Defendants)

- **Count XXXIII** - Intentional Misrepresentation (By Virginia Against All Defendants)

- **Count XXXIV** - Fraudulent Concealment (By Virginia Against All Defendants

- **Count XXXV** - Civil Conspiracy to Defraud (By Virginia Against All Defendants)

- **Count XL** - Unjust Enrichment (By Virginia Against All Defendants)

For purposes of discussion and analysis, we are grouping these 24 claims by category of tort:

46. **Fraud Claims**: Counts II, III, IV, XIII, XIV, XV, XXIV, XXV, XXVI, XXXIII, XXXIV, and XXXV

47. **Negligent Misrepresentation Claims**: Counts I, XII,  and XXIII

48. **Strict Liability for Defective Products Claims**: Counts IX, XX, and XXXI

49. **Deceptive Trade Practices Claims**: Counts XI and XXII

50. **Unjust Enrichment Claims**: Claims X, XXI, XXXII, and XL

51. For each type of legal claim, I assess below the elements, the prospects for proof of liability, FPC-USA's risk of exposure to liability, and FPC-USA's affirmative defenses. Separately, I examine potential damage exposure.

17

### 3.    Fraud and Negligent Misrepresentation Claims

52.    Affirmative misrepresentation and fraud claims, and negligent misrepresentation claims require, *inter alia*, proof of the "who, what, when, where and how" of each false or misleading statement by FPC-USA to each Plaintiff and the actual, justifiable reliance by each Plaintiff on each purported FPC-USA misrepresentation, for each time period surrounding each purported time period. Required also will be testimony of former employees of FPC-USA and Plaintiffs for each time period for each alleged utterance of a misrepresentation.

53.    Plaintiffs' concealment theory, in addition to the above, also requires the proof of a duty owing from FPC-USA to Plaintiffs. Plaintiffs' negligent misrepresentation theory requires the additional element of proving that they are in the class of persons entitled to rely on any representation made by FPC-USA. On top of the above, in a conspiracy claim plaintiffs must show that there was an agreement between FPC-USA and J-M (affecting only the post-2005 years) to engage in fraud against plaintiffs.

54.    Against the foregoing Plaintiffs' stipulation in the *qui tam* lawsuit with FPC-USA, must be considered: All the Plaintiffs acknowledge that FPC-USA made no representation to them concerning PVC pipe, PVC resin or PVC compound. Extensive document discovery from FPC-USA and ten Plaintiffs supports the factual accuracy of this voluntary, agreed-upon statement of fact. The very absence of dealings and communications between FPC-USA and the Plaintiffs means these fraud-based claims cannot be established and proven.

### 4.    Strict Products Liability Claims

55.    Each Plaintiff must prove that there was a defect in the PVC pipe it received or in the PVC compound used to make that pipe, which defect of design or manufacture, was the proximate cause of a non-economic loss resulting from injury to person or property other than the defective PVC pipe itself.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

18

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

56.    Much of the evidence presented by Plaintiffs against J-M during Phase One proceedings involves: (1) Pipe manufacturing processes that physically transformed FPC-USA's raw materials in ways that diminished their properties of tensile strength (that is, extrusion too hot and too fast), and (2) Choices by J-M in combining FPC-USA's PVC resin with additives from other suppliers diminished the properties of the resulting PVC compound. That same evidence is an impediment to demonstrating defective design or manufacturing of FPC-USA's PVC resin. FPC-USA would be permitted to present alternative causation for injury shown to have been associated with each purportedly defective product.

57.    In addition, the Court will also have to address variations among state laws as to these state law claims, the defenses available under each jurisdiction thereto, and the respective measure and proof of damages. For example, claims under Nevada law must show that FPC-USA's PVC resin and compound were "unreasonably dangerous" as well as that the particular product defect caused a plaintiff's injury. *Fyssakis v. Knight Equip. Corp.,* 108 Nev. 212, 214 (1992).

### 5.    Unjust Enrichment Claims

58.    Unjust enrichment claims require a prior relationship between the Plaintiffs and the defendant. However, the stipulation of Plaintiffs and FPC-USA is that there were no representations or dealings between them. Absent a prior relationship, claims against a raw materials supplier by customers of finished products are generally held to be too attenuated to support unjust enrichment recovery.  Apart from the foregoing, recovery would require tracing funds from the Plaintiffs back to FPC-USA and would be limited to restitution of Plaintiffs' money that actually reached FPC-USA. Recovery would therefore be expensive, as well as unlikely.

59.    The claims against FPC-USA in the State Action have not been tested by pleading motions and are nowhere near trial-ready; extensive discovery would be necessary.  FPC-USA has defended itself energetically, and is capable of continuing

19

to do so through trial and the appellate process.  In sum, for both sides, there is considerable risk in further litigation of the State Action claims, absent this settlement which provides Plaintiffs with a substantial, certain and timely recovery.

### 6.    Insurance

60.    For the years 1996 through May 31, 2007, FPC-USA and J-M were co-insured under the same commercial insurance policies.  In 2010, certain insurers filed an action in Los Angeles County Superior Court against J-M and FPC-USA seeking declaratory relief that they had no obligation to provide coverage to FPC-USA for the Federal *Qui Tam* Action.  *See Nat'l Union Fire Ins. Co. of Pittsburgh Pa., et al. v. J-M Mfg. Co., Inc., et al.*, No. BC 444309 (*Super. Ct. for Los Angeles Cnty*, filed Aug. 24, 2010).  On or about July 24, 2012, the Superior Court granted summary judgment against FPC-USA and in favor of the insurance carriers.  Although the Superior Court found there was no insurance coverage for the Federal *Qui Tam* Action, insurance coverage for the California State Action has not been litigated.

## V.    EARLY DISCOUNT FOR GLOBAL SETTLEMENT

61.    This is a "global" settlement resolving the claims against FPC-USA in both the Federal *Qui Tam* Action and the State Action.  In light of the above-described risk, expense, complexity, and likely duration of both cases and any appeals thereafter, recovery of $22,500,000 in cash for the Plaintiffs is an excellent result.  The compromise of attorneys' fees and costs of investigation for $5,500,000, or 24.4% of the damages settlement is very much in line with the award of attorneys' fees in other class action settlements.

## VI.    THE AMOUNT OF THE SETTLEMENT ALSO DEMONSTRATES THAT THE SETTLEMENT IS PROPER

62.    The damages settlement amount herein of $22,500,000 is substantial.  The law firm of Gibson Dunn has published its 2013 Mid Year False Claims Act Update online and therein summarized 22 of the largest FCA settlements in 2013.  *See* Gibson Dunn, *2013 Mid-Year False Claims Act Update* (July 10, 2013),

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

20

Holland & Knight LLP
400 South Hope Street, 8ᵗʰ Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

1    http://www.gibsondunn.com/publications/pages/2013-mid-year-false-claims-act-

2    update.aspx (a true and correct copy of the print out of which is attached as Exhibit

3    "4" hereto).  I have compared each of the 22 civil damages settlement amounts with

4    the $22,500,000 amount paid under the Settlement Agreement in this case. This civil

5    damages settlement payment is larger than those in 14 FCA settlements in 2013, the

6    same as in one other case, close in amount (within $4 million) of three other FCA

7    settlements in 2013, and smaller than only four FCA settlements in 2013.

8    63.    I have also examined recent settlements of class actions, in particular,

9    settlements of securities class actions, which are regularly accumulated and studied.

10   In this I have consulted the work of Dr. Renzo Comolli, Sukaina Klein, Dr. Ronald I.

11   Miller and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation:*

12   *2012 Full-Year Review*, NERA ECONOMIC CONSULTING (Jan. 29, 2013), *available at*

13   http://www.nera.com/nera-files/PUB_Year_End_Trends_01.2013.pdf.

14   Pertinent pages are attached hereto as Exhibit "5".  By comparison to federal

15   securities litigation class action settlements, the damages settlement amount herein is

16   <u>larger</u> than average. The 2012 study shows, at Figure 29, a comparison between

17   settlement amounts and aggregate investor losses.  Where investor losses are between

18   $200 million and $5 billion, settlement amounts average between 1.1% to 2.7% of

19   investor losses, that is, between $5.4 and $55 million). These are settlements by the

20   person making purportedly false or fraudulent representations in connection with the

21   purchase or sale of securities covered by the federal securities laws. The present

22   settlement is between FPC-USA, a peripheral actor that did not make representations

23   to the Plaintiffs, and government entities that had no dealings with FPC-USA.

24   64.    Further, in the present case, Plaintiffs have rarely suffered physical

25   failures in their PVC pipes but are seeking damages principally for the potential

26   reduced future lifespan of those pipes. The contribution, if any, of FPC-USA to that

27   reduced lifespan for pipe acquired by any particular Plaintiff is unproved.

28

**DECLARATION OF RICHARD T. WILLIAMS IN SUPPORT OF JOINT MOTION FOR
APPROVAL OF SETTLEMENT AS FAIR, ADEQUATE AND REASONABLE**

65.    The settlement payment is in cash, already deposited in escrow, not a payment in kind. As the court remarked in *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009), a payment in cash "is a good indicator of a beneficial settlement."

66.    In the present case, and for the same reasons indicated above, Plaintiffs have appropriately accepted a discounted amount against FPC-USA, for settlement in advance of trial has relieved them of uncertainty and expense, and permitted a recovery years in advance of the end of litigation absent settlement.

## VII.    THE STAGE OF THE PROCEEDINGS, THE EXPERIENCE AND VIEWS OF COUNSEL, AND THE REACTION OF THE PARTIES TO THE PROPOSED SETTLEMENT WARRANT APPROVAL

67.    Plaintiffs' counsel investigated this litigation from its inception in January 2006, working closely with counsel for the United States and various states. Numerous witnesses were interviewed; hundreds of thousands of documents were collected and reviewed. On the basis of this investigation, claims were added in 2008, and in 2010 and thereafter in Amended Complaints herein against FPC-USA for direct violations of the federal and state FCAs and for "inadvertent submittal" violations of several state FCAs.

68.    Subsequent to unsealing of this litigation in early 2010, four separate motions to dismiss the amended complaints were filed by FPC-USA and granted in whole or in part by the Court, testing the Plaintiffs' allegations and dismissing with prejudice counts for direct violations by FPC-USA of federal and state FCAs.  In addition to these occasions for both sides' re-evaluations of their positions, Plaintiffs requested and have received approximately 700,000 documents from FPC-USA, more than two million pages of electronic and paper information, including all sales revenues of FPC-USA from transactions with J-M and communications related thereto.  Plaintiffs have also taken dozens of depositions.  Settling this case upon the eve of the Phase One trial meant that within the past couple months, Plaintiffs and

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

22

FPC-USA prepared and exchanged pretrial memoranda of their positions, as well as witness and exhibit lists. The more than 1700 entries in the Court's docket shows the vigor of the protracted litigation battle.

69.    This effort supports approval of this settlement, just as in *Wilson v. Airborne, Inc.*, No. EDCV 07-770-VAP, 2008 WL 3854963, at *7 (C.D. Cal. Aug. 13, 2008) ("Defendants have produced some 600,000 documents, and Plaintiff's counsel also reviewed information concerning Airborne sales revenue in connection with the settlement negotiations… The discovery conducted supports a conclusion that the parties entered into the settlement agreement with enough information concerning the facts of the case to support a fair, adequate, and reasonable compromise.")

70.    In this case, all counsel have sufficient information to make informed decisions about settlement, and, by this joint motion for approval, recommend it, acknowledging that every settlement is a compromise. This settlement provides the Plaintiffs with an immediate benefit and eliminates the risk that, given the circumstances of this case, the Plaintiffs could ultimately recover less than they will under this Settlement Agreement from FPC-USA**.**

71.    The reaction of the plaintiffs or class members to a settlement is a significant factor in assessing its fairness and adequacy. Here, even though each governmental Plaintiff has detailed procedures for internal reviews and approval of this settlement, Plaintiffs' counsel won signatures from three-fourths of the Plaintiffs within two weeks after submitting the Settlement Agreement for execution. All of the Plaintiffs and Intervenors have now executed the Settlement Agreement. Copies of the Settlement Agreement, as part of these moving papers, are also being mailed to more than 300 real parties in interest; a proof of service reflecting that mailing will be filed with the Court.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

## VIII.  <u>THE SETTLEMENT AGREEMENT IS NOT THE RESULT OF FRAUD OR COLLUSION</u>

72.     None of the "red flags" that may hint at collusion in the settlement process are present here:

- No disproportionate cash award to Plaintiffs' counsel coupled with a cosmetic non-cash recovery to Plaintiffs;
- No "clear sailing" arrangement enabling payment to Plaintiffs' counsel of an excessive fee in exchange for accepting an unfair settlement;
- No reversion of settlement money to FPC-USA (absent total failure of the settlement)

73.     The Plaintiffs will receive payment of $22,500,000 in compromise of damages claims; after the damages settlement was negotiated, by separate negotiations, a compromise amount of $5,500,000 for Plaintiffs' Attorneys Fees and Costs was agreed upon. That fee amount, 24.4 percent of the damages settlement payment, is consistent with other settlements and not disproportionate.  No portion of the settlement will revert to FPC-USA, absent a total failure of the settlement.

74.     This settlement also manifests each of the signals indicating the absence of fraud or collusion:

- The participation of an experienced mediator, Hon. Edward A. Infante (Ret.), who spent hours in separate conferences with Plaintiffs and FPC-USA, broke impasses and made Mediator's Proposals, which the parties accepted.
- Oversight of negotiations by governments. The Attorneys General of Nevada and Virginia have been active Plaintiffs throughout this litigation and have been in frequent communication with Plaintiffs' counsel during settlement negotiations. These Attorneys General were among the very first Plaintiffs to sign the Settlement Agreement.

24

- The enthusiasm and rapidity with which more than 40 additional intervenor Plaintiffs executed the Settlement Agreement in September and October is another indicator of its fairness and adequacy.

This declaration is executed under penalty of perjury in Los Angeles, California this 25th day of October 2013.

By: _____
Richard T. Williams

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

**DECLARATION OF RICHARD T. WILLIAMS IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT AS FAIR, ADEQUATE AND REASONABLE**

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 400 S. Hope St., 8th Floor, Los Angeles, California 90071.

On October 28, 2013, I served the document described as **DECLARATION OF RICHARD T. WILLIAMS IN SUPPORT OF JOINT NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT AS FAIR, ADEQUATE AND REASONABLE** on the interested parties in this action as follows:

> **[X]** (**BY Electronic Transfer to the CM/ECF System**) In accordance with Federal Rules of Civil Procedure 5(d) (3), Local Rule 5-4, and the U.S. District Court of the Central District's General Order governing electronic filing, I uploaded via electronic transfer a true and correct copy scanned into an electronic file in Adobe "pdf" format of the above-listed documents to the United States District Court Central District of California' Case Management and Electronic Case Filing (CM/ECF) system on this date.  It is my understanding that by transmitting these documents to the CM/ECF system, they will be served on all parties of record according to the preferences chosen by those parties within the CM/ECF system.  The transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on October 28, 2013, Los Angeles, California.

By: _____ //S//
                    Kristina S. Azlin

DECLARATION OF RICHARD T. WILLIAMS IN SUPPORT OF JOINT MOTION FOR
APPROVAL OF SETTLEMENT AS FAIR, ADEQUATE AND REASONABLE