1  ERIC R. HAVIAN (State Bar No. 102295)
   erh@pcsf.com
2  MARY A. INMAN (State Bar No. 176059)
   mai@pcsf.com
3  HARRY P. LITMAN (State Bar No. 127202)
   hlitman@litman-law.com
4  JESSICA T. MOORE (State Bar No. 183431)
   jtm@pcsf.com
5  PHILLIPS & COHEN LLP
   100 The Embarcadero, Suite 300
6  San Francisco, California 94105
   Tel: (415) 836-9000
7  Fax: (415) 836-9001

8  **Attorneys for Plaintiffs**

9

10              **UNITED STATES DISTRICT COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

12  UNITED STATES, THE STATES          CASE NO. ED CV06-00055-GW(PJWx)
    OF CALIFORNIA, DELAWARE,           Assigned to Hon. George H. Wu
13  FLORIDA, ILLINOIS, INDIANA,
14  NEVADA, NEW MEXICO, NEW            **DECLARATION OF ERIC R.**
    YORK, and TENNESSEE, THE           **HAVIAN**
15  COMMONWEALTHS OF
16  MASSACHUSETTS AND                  **IN SUPPORT OF JOINT MOTION**
    VIRGINIA, and THE DISTRICT         **FOR APPROVAL OF SETTLEMENT**
17  OF COLUMBIA *ex rel*. JOHN         **AS FAIR, ADEQUATE AND**
    HENDRIX,                           **REASONABLE**
18
19                    Plaintiffs,
20
21  vs.                                Date:        Dec. 2, 2013
                                       Time:        8:30 a.m.
22  J-M MANUFACTURING                  Location:    Courtroom 10
23  COMPANY, INC., d/b/a JM Eagle,
    a Delaware corporation, and
24  FORMOSA PLASTICS
    CORPORATION, U.S.A., a
25  Delaware corporation,
26
27                    Defendants.
28

# **TABLE OF CONTENTS**

**Page**

I.   PROCEDURAL HISTORY OF THE ALLEGATIONS
     AGAINST FPC-USA IN THIS FCA ACTION ............................................. 2

II.  EXTENSIVE DOCUMENT DISCOVERY SPECIFICALLY
     AGAINST FPC-USA ................................................................................. 4

III. THIS SETTLEMENT AGREEMENT MEETS THE CRITERIA
     FOR THIS COURT TO APPROVE IT AS FAIR, ADEQUATE
     AND REASONABLE ................................................................................. 5

     A.  The Settlement Agreement Is Presumed Fair ................................. 5

         1.  Experience of Counsel ............................................................. 5

         2.  Arm's Length Negotiation of Settlement with Mediator
             Infante ...................................................................................... 5

         3.  Sufficiency of Investigation and Discovery for
             Evaluation ................................................................................. 6

     B.  The Risk, Complexity and Expense of Further Litigation
         Demonstrate that the Settlement is Proper ................................... 7

     C.  Inadvertent Submittal Claims ....................................................... 7

IV.  EARLY DISCOUNT FOR GLOBAL SETTLEMENT ............................... 8

V.   THE STAGE OF THE PROCEEDINGS, THE EXPERIENCE
     AND VIEWS OF COUNSEL, AND THE REACTION OF THE
     PARTIES TO THE PROPOSED SETTLEMENT WARRANT
     APPROVAL .............................................................................................. 8

VI.  THE SETTLEMENT AGREEMENT IS NOT THE RESULT OF
     FRAUD OR COLLUSION ......................................................................... 9

i

## DECLARATION OF ERIC R. HAVIAN

1.      I am a partner with the law firm of Phillips & Cohen and have been practicing law for 32 years.  For the last nineteen years, I have focused my practice on whistleblower litigation, including Federal False Claims Act litigation.  Together with the law firms of Day Pitney LLP and McKool Smith Hennigan, P.C. I have been responsible, along with other partners in my firm, for the representation of the Relator John Hendrix and 29 governmental intervenors in this matter.  I am licensed to practice law in the State of California and before this Court.   I have personal knowledge of the facts stated herein, except for those stated on information and belief, which I am informed and believe are true.  I could and would testify to these facts under oath if called upon to do so.

2.      A settlement has been negotiated between counsel for the Plaintiffs and counsel for Defendant Formosa Plastics Corporation, U.S.A ("FPC-USA") resolving all claims between them in this matter and also in the Superior Court of California case *The State of Nev., et al. v. J-M Mfg. Co., Inc., Formosa Plastics Corp., U.S.A. and Walter Wang,* Case No. BC 459943 ("State Action"), which was filed in Los Angeles County in 2011 by the States of Nevada, New Mexico and Virginia and by numerous California cities, water districts and counties, and asserts various additional statutory and common law claims against FPC-USA.  The terms have been documented in a written Settlement Agreement; a true and correct copy of the fully executed Settlement Agreement is attached hereto as Exhibit "1".

3.      On behalf of the Plaintiffs I represent, as well as all Plaintiffs who signed the settlement agreement, for the reasons set forth below, I recommend this Court's approval of the Settlement Agreement as "fair, adequate and reasonable under all the circumstances", pursuant to 31 U.S.C. § 3730(c)(2)(B), and similar state statutes.

**DECLARATION OF ERIC R. HAVIAN IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT AS FAIR, ADEQUATE AND REASONABLE**

# I. PROCEDURAL HISTORY OF THE ALLEGATIONS AGAINST FPC-USA IN THIS FCA ACTION

4.    This case was first filed in January 2006 and was unsealed in February 2010.  There are more than 1,700 entries on the judicial docket attesting to the vigor of battle and thus underscoring that settlement herein is the product of arms' length negotiations.  More than two years of Court proceedings after its unsealing involved settling the pleadings as to FPC-USA.  Plaintiffs submitted four separate Amended Complaints, to each of which FPC-USA responded with a motion to dismiss; three of those motions were granted by the Court.  Ultimately, all claims of direct violations of federal and state FCAs were dismissed with prejudice as against FPC-USA, as well as one claim under the "inadvertent submittal" provisions of New Mexico law.

5.    This *qui tam* civil action was filed under seal on January 17, 2006 in the United States District Court for the Central District of California entitled *United States ex rel. Hendrix , et al. v. J-M Manufacturing Company, Inc., et al.*, No. CV 06-0055-GW, alleging violations of the federal, California, and other states' FCAs  by J-M Manufacturing Company, Inc. ("J-M")(Dkt # 1).  FPC-USA was not named a defendant to the original Complaint.

6.    All proceedings in this lawsuit continued to be sealed from 2006 to February 2010.

7.    In October 2008, a First Amended Complaint was filed herein (Dkt # 41), under seal (and was later unsealed).  FPC-USA was added as a defendant to four counts asserted under "inadvertent submittal" provisions in the state FCAs in California, Massachusetts, Nevada and Tennessee.  In February 2010, the First Amended Complaint was unsealed.

8.    The "inadvertent submittal" provisions of the four state statutes can be found at: CAL. GOV'T CODE § 12651(a)(8) (West 2013); MASS. GEN. LAWS ch. 12, § 5B(9) (2013); NEV. REV. STAT. § 357.040(h) (2013); and TENN. CODE ANN. § 4-18-103(8) (West 2013).  Under the "inadvertent submittal" provisions, a person may be

2

1    held liable if that person "is a beneficiary of an inadvertent submission of a false

2    claim to the state or a political subdivision, subsequently discovers the falsity of the

3    claim, and fails to disclose the false claim to the state or the political subdivision

4    within a reasonable time after discovery of the false claim".  A person found liable

5    under such provisions may be subject to treble damages, a multi-thousand dollar civil

6    penalty for each false claim, and for attorney's fees and costs of prosecution; liability

7    for two persons found liable under state FCAs may be joint and several.

8          9.    The Second Amended Complaint added one count for direct violation of

9    the federal FCA against FPC-USA and eleven counts for direct violation of state

10   FCAs as well as one more count for violation of the "inadvertent submittal"

11   provision, this time in the New Mexico FCA.  *See* N.M. STAT. ANN. § 44-9-3(A)(9)

12   (2013).  The four inadvertent submittal counts against FPC-USA in the First

13   Amended Complaint were carried forward to this Second Amended Complaint.

14         10.   On May 10, 2010, FPC-USA and J-M each filed Motions to Dismiss the

15   Second Amended Complaint (Dkt # 183, 188).  After multiple hearings and

16   supplemental briefing, on December 1, 2010, the Court found the Second Amended

17   Complaint insufficient as against FPC-USA and dismissed without prejudice all

18   claims alleged against FPC-USA, granting leave to Plaintiffs to file a further

19   amended complaint.  (Dkt # 317).

20         11.   Between January 5, 2010 and March 10, 2010, approximately 50 states,

21   cities, and water districts formally intervened in this *qui tam* lawsuit as plaintiffs.  *See*

22   Dkt # 58-117.

23         12.   A Third Amended Complaint was filed on January 20, 2011.  (Dkt #

24   324).  The same counts were alleged against FPC-USA in the Third Amended

25   Complaint as in the Second Amended Complaint.   FPC-USA filed a motion to

26   dismiss the Third Amended Complaint on February 10, 2011.  (Dkt # 333)

27         13.   In its final order issued May 9, 2011 (Dkt #401), the Court granted FPC-

28   USA's motion to dismiss with prejudice as to the thirteen counts in the Third

3

**DECLARATION OF ERIC R. HAVIAN IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT AS FAIR, ADEQUATE AND REASONABLE**

Amended Complaint alleging direct violations by FPC-USA of the federal and state FCAs.  The Court concurrently granted without prejudice FPC-USA's Motion to Dismiss the five remaining counts brought under the "inadvertent submittal" provisions in the FCAs of California, Massachusetts, Nevada, New Mexico and Tennessee in the Third Amended Complaint.  The Court gave Relator until May 23 to file a Fourth Amended Complaint  with respect to these inadvertent submittal claims.

14.    On May 23, 2011, Relator filed the Fourth Amended Complaint.  (Dkt # 412).  On June 6, 2011, FPC-USA filed its motion to dismiss the Fourth Amended Complaint (Dkt # 423) and also filed a motion to strike selected allegations.  (Dkt # 424).  Following an offer of additional proof by Relator and additional briefing and argument, the Court denied FPC-USA's motion to dismiss on October 24, 2011.  (Dkt #498).

15.    On November 7, 2011, the Court granted dismissal with prejudice of one of the "inadvertent submittal" ("I/S") counts, alleged under New Mexico law, on the basis it was time-barred. (Dkt # 515).

16.    The Court ordered a Fifth Amended Complaint be filed by December 23, 2011, conforming to the Court's prior rulings, and that FPC-USA filed its Answer to the Fifth Amended Complaint by January 20, 2012.

17.    The Fifth Amended Complaint was filed December 23, 2011 (Dkt # 570).  FPC-USA filed its Answer on January 20, 2012.(Dkt # 579). These are the current pleadings with respect to FPC-USA in this *qui tam* lawsuit.

18.    On December 7, 2011(Dkt # 551), the Court issued an order bifurcating the Action.

## II.    EXTENSIVE DOCUMENT DISCOVERY SPECIFICALLY AGAINST FPC-USA

19.    Pursuant to discovery requests, FPC-USA has produced approximately 700,000 documents, more than 2,000,000 pages, of paper and electronic information

4

1  to Plaintiffs.  Further, J-M's extensive document production includes communications

2  with FPC-USA, as well.  Plaintiffs have substantial information about FPC-USA and

3  counsel believes are in a position to evaluate the strength and weaknesses of their

4  claims against FPC-USA.

5

6  **III.    THIS SETTLEMENT AGREEMENT MEETS THE CRITERIA FOR**

7  **THIS COURT TO APPROVE IT AS FAIR, ADEQUATE AND**

8  **REASONABLE**

9  **A.    The Settlement Agreement Is Presumed Fair**

10  20.    A presumption of fairness arises where: (1) counsel is experienced in

11  similar litigation; (2) the settlement was reached through arm's length negotiations;

12  (3) investigation and discovery are sufficient to allow counsel and the court to act

13  intelligently. *In re Heritage Bond Litig.*, No. 02-ML-1475DT, 2005 WL 1594403, at

14  *2 (C.D. Cal. June 10, 2005); *U.S. ex rel. Resnick v. Weill Med. Coll. of Cornell*

15  *Univ.,* No. 04-cv-3088, 2009 WL 637137, at *1-4 (S.D.N.Y. Mar. 5, 2009).  Those

16  conditions are met here.

17  **1.    Experience of Counsel**

18  21.    The lawyers for Plaintiffs in this qui tam case include me and my law

19  firm, Phillips & Cohen, one of the most experienced firms in the United States in

20  FCA litigation, and Stuart Rennert and Brent Rushforth of McKool Smith Hennigan,

21  and Elizabeth Sher of Day Pitney, all of whom have substantial experience in

22  litigating and trying FCA cases and/or other complex commercial litigation.

23  **2.    Arm's Length Negotiation of Settlement with Mediator**

24  **Infante**

25  22.    The settlement was reached after weeks of arms' length negotiation with

26  effective assistance by former Chief Magistrate Judge Edward A. Infante (Ret.) as

27  mediator.  Following a day-long mediation on May 29, 2013, there were numerous

28  telephone conferences between each side and the mediator; Plaintiffs' advocacy to

5

the mediator was vigorous.  After apparent impasses in negotiations, the mediator presented a proposal for settlement of compensatory damages claims, and both sides agreed on July 16, 2013 to that proposal of $22,500,000.  After further negotiations and another impasse with respect to a compromise of claims for attorneys' fees and costs, Judge Infante made a second mediator's proposal of $5,500,000, which was accepted by both sides on August 5, 2013.  Counsel for Plaintiffs and FPC-USA then exchanged multiple drafts of non-monetary provisions for the Settlement Agreement, negotiating face to face and then through numerous telephone and email communications.  As part of these negotiations, it was agreed that the settlement payments would be made directly and promptly into an interest-bearing escrow account.

23.    On September 11, 2013, FPC-USA signed the Settlement Agreement; the Court was informed of multiple Plaintiffs' signatures and of the Settlement on September 13.  The Court approved the negotiated conditional dismissal without prejudice of claims against FPC-USA on September 13, 2013, and on September 18, 2013, all settlement payments were deposited in escrow by FPC-USA at U.S. Bank in an interest-bearing account.  FPC-USA was thereupon relieved from participation in the Phase One trial now underway on the condition that if the settlement agreement were not fully executed FPC-USA would be bound by the Court's Orders and Judgments to the same degree and extent as if FPC-USA had been an active party litigant since the entry of the Order of Conditional Dismissal Without Prejudice.  The Settlement Agreement is now fully-executed.

### 3.    Sufficiency of Investigation and Discovery for Evaluation

24.    Plaintiffs' counsel has been investigating this case prior to its filing seven years ago.  In addition to examining hundreds of thousands of documents produced by J-M, including documents covering its transactions and relationships with FPC-USA, Plaintiffs requested and have received approximately 700,000 documents directly from FPC-USA, more than 2,000,000 pages of electronic and

6

paper information.  Plaintiffs have participated in several dozen depositions over the past two years; through these and other investigative activities, Plaintiffs have had an opportunity to evaluate the claims they have pleaded against FPC-USA and to determine appropriate parameters for settlement of those claims with FPC-USA.

### B.      The Risk, Complexity and Expense of Further Litigation Demonstrate that the Settlement is Proper

25.    The outcome of the Phase One trial is unknown as of this writing.  If Plaintiffs prevail, even in part, an additional phase of discovery and motion practice arguably will commence and potentially lead to a Phase Two trial or some other proceedings at some future date.  If FPC-USA were still a defendant, unless FPC-USA's motion for judgment on the pleadings or for summary judgment (Dkt # 646) were to be promptly granted, FPC-USA would face exhaustive discovery on questions of the nature and scope of its knowledge of false claims and on questions of damages, among other issues.

### C.      Inadvertent Submittal Claims

26.    Plaintiffs understand that the claims they have asserted against FPC-USA in this action are not without risks, including the following:

(a)    Prevailing in the Phase One trial against J-M to demonstrate a predicate, that "false claims" occurred, to "inadvertent submittal" liability;

(b)    Defeating FPC-USA's summary judgment and statutes of limitations motions in Phase Two (*See* Dkt # 640, 642, 646);

(c)    Establishing that FPC-USA actually received a monetary benefit from funds paid by Plaintiffs to contractors upon particular false claims; and

(d)    Surviving any other motions that FPC-USA may bring to the calculation, amount, or propriety of any damages amount for violation of the "inadvertent submittal" provisions.

7

DECLARATION OF ERIC R. HAVIAN IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT AS FAIR, ADEQUATE AND REASONABLE

27.    Plaintiffs further understand that there would be additional expense, timing issues, and other hurdles to be overcome in obtaining a damages award from FPC-USA.

## IV.    EARLY DISCOUNT FOR GLOBAL SETTLEMENT

28.    This is a "global" settlement resolving the claims against FPC-USA in both the Federal *Qui Tam* Action and the State Action.  In light of the above-described risk, expense, complexity, and likely duration of both cases and any appeals thereafter, recovery of $22,500,000 in cash is a result that Plaintiffs believe to be fair, adequate, and reasonable under all the circumstances.  The compromise of attorneys' fees and costs of investigation for $5,500,000, or 24.4% of the damages settlement, is in line with the award of attorneys' fees in other similar settlements.

## V.    THE STAGE OF THE PROCEEDINGS, THE EXPERIENCE AND VIEWS OF COUNSEL, AND THE REACTION OF THE PARTIES TO THE PROPOSED SETTLEMENT WARRANT APPROVAL

29.    Plaintiffs' counsel investigated this litigation prior to its inception in January 2006.  Numerous witnesses were interviewed; hundreds of thousands of documents were collected and reviewed.  On the basis of this investigation, claims were added in 2008, and in 2010 and thereafter in Amended Complaints herein against FPC-USA for direct violations of the federal and state FCAs and for "inadvertent submittal" violations of several state FCAs.

30.    Subsequent to unsealing of this litigation in early 2010, four separate motions to dismiss the amended complaints were filed by FPC-USA and granted in whole or in part by the Court, dismissing with prejudice counts for direct violations by FPC-USA of federal and state FCAs.  In addition to these occasions for both sides' re-evaluations of their positions, Plaintiffs requested and have received approximately 700,000 documents from FPC-USA, more than two million pages of

8

electronic and paper information, including all sales revenues of FPC-USA from transactions with J-M and communications related thereto. Plaintiffs have also taken dozens of depositions. Settling this case upon the eve of the Phase One trial meant that within the past several months, Plaintiffs and FPC-USA prepared and exchanged pretrial memoranda of their positions, as well as witness and exhibit lists. The more than 1700 entries in the Court's docket shows the vigor of the protracted litigation battle.

31.     In this case, all counsel have sufficient information to make informed decisions about settlement, and, by this joint motion for approval, recommend it, acknowledging that every settlement is a compromise. This settlement provides the Plaintiffs with an immediate benefit and eliminates the risk that, given the circumstances of this case, the Plaintiffs could ultimately recover less than they will under this Settlement Agreement from FPC-USA.

32.     The reaction of the plaintiffs or class members to a settlement is a significant factor in assessing its fairness and adequacy. Here, all of the Plaintiffs and Intervenors have now executed the Settlement Agreement. Copies of the Settlement Agreement, as part of these moving papers, are also being mailed to more than 300 real parties in interest.

## VI.     THE SETTLEMENT AGREEMENT IS NOT THE RESULT OF FRAUD OR COLLUSION

33.     None of the "red flags" that may hint at collusion in a settlement process is present here:

- no disproportionate cash award to Plaintiffs' counsel coupled with a cosmetic non-cash recovery to Plaintiffs;
- no "clear sailing" arrangement enabling payment to Plaintiffs' counsel of an excessive fee in exchange for accepting an unfair settlement; and

9

- no reversion of settlement money to FPC-USA (absent total failure of the settlement)

34.     The Plaintiffs will receive payment of $22,500,000 in compromise of damages claims; only after the damages settlement was negotiated and agreed upon, by separate negotiations, a compromise amount of $5,500,000 for Plaintiffs' Attorneys Fees and Costs was agreed upon.  That fee amount, 24.4 percent of the damages settlement payment, is not disproportionate.  No portion of the settlement will revert to FPC-USA, absent a total failure of the settlement.

35.     This settlement also manifests each of the signals indicating the absence of fraud or collusion:

- the participation of an experienced mediator, Hon. Edward A. Infante (Ret.), who spent hours in separate conferences with Plaintiffs and FPC-USA, broke impasses and made Mediator's Proposals, which the parties accepted;
- oversight of negotiations by governments.  The Attorneys General of Nevada and Virginia have been active Plaintiffs throughout this litigation and have been in frequent communication with Plaintiffs' counsel during settlement negotiations.  These Attorneys General were among the very first Plaintiffs to sign the Settlement Agreement; and
- more than 40 additional intervenor Plaintiffs executed the Settlement Agreement in September and October.

This declaration is executed under penalty of perjury in Los Angeles, California this 28th day of October 2013.

By: _____

Eric R. Havian

10

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 400 S. Hope St., 8th Floor, Los Angeles, California 90071.

On October 28, 2013, I served the document described as **DECLARATION OF ERIC R. HAVIAN IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT AS FAIR, ADEQUATE AND REASONABLE** on the interested parties in this action as follows:

> **[X]** (**BY Electronic Transfer to the CM/ECF System**) In accordance with Federal Rules of Civil Procedure 5(d) (3), Local Rule 5-4, and the U.S. District Court of the Central District's General Order governing electronic filing, I uploaded via electronic transfer a true and correct copy scanned into an electronic file in Adobe "pdf" format of the above-listed documents to the United States District Court Central District of California' Case Management and Electronic Case Filing (CM/ECF) system on this date.  It is my understanding that by transmitting these documents to the CM/ECF system, they will be served on all parties of record according to the preferences chosen by those parties within the CM/ECF system.  The transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on October 28, 2013, Los Angeles, California.

By: _____//S//_____
Kristina S. Azlin

11

#26198923_v1