Terry W. Bird - State Bar No. 049038
    twb@birdmarella.com
Ekwan E. Rhow - State Bar No. 174604
    eer@birdmarella.com
Paul S. Chan - State Bar No. 183406
    psc@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT,
    NESSIM, DROOKS & LINCENBERG, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant
J-M Manufacturing Company, Inc.
d/b/a JM Eagle

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES, THE STATES OF CALIFORNIA, DELAWARE, FLORIDA, ILLINOIS, INDIANA, NEVADA, NEW MEXICO, NEW YORK, and TENNESSEE, THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA, and THE DISTRICT OF COLUMBIA ex rel. JOHN HENDRIX,<br><br>Plaintiffs,<br><br>vs.<br><br>J-M MANUFACTURING COMPANY, INC. d/b/a JM EAGLE, a Delaware corporation, and FORMOSA PLASTICS CORPORATION, U.S.A., a Delaware corporation,<br><br>Defendants. | CASE NO. ED CV 06-00055-GW(PJWx)<br><br>*Assigned to Hon. George H. Wu*<br><br>**DEFENDANT J-M MANUFACTURING COMPANY, INC.'S OPPOSITION TO PLAINTIFFS' AND DEFENDANT FORMOSA PLASTICS CORPORATION, U.S.A.'S JOINT MOTION FOR APPROVAL OF PROPOSED SETTLEMENT; DECLARATION OF PAUL S. CHAN**<br><br>Date:          December 19, 2013<br>Time:          8:30 a.m.<br>Courtroom:  10 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I   ARGUMENT ............................................................................................. 3

   A.   According To Plaintiffs' Own Assertions Regarding FPC's Involvement And The Damages Owed, The Settlement Amount Is Woefully Inadequate. ............................................................. 3

   B.   Plaintiffs' Theory Of The Case Has Drastically Changed Since The Mediation And Settlement Negotiations; Thus, The Settling Parties Could Not Have Understood The Import Or Consequences Of The Settlement Terms At The Time of Settlement. ........................................................................................ 7

   C.   If The Court Will Not Deny The Motion On The Basis Of These Fatal Defects, Then This Court's Evaluation Of The Proposed Settlement Agreement Should Be Continued Until The Close Of Phase Two. ...................................................................................... 8

II   CONCLUSION ..................................................................................... 11

3052453.5

i

DEFENDANT J-M'S OPPOSITION TO PLAINTIFFS' AND DEFENDANT FORMOSA PLASTICS CORPORATION, USA'S JOINT MOTION FOR APPROVAL OF SETTLEMENT

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Boyd v. Bechtel Corp.,*
    485 F. Supp. 610 (N.D. Cal. 1979)...........................................................................3

*In re LivingSocial Mktg. & Sales Practice Litig.,*
    11-CV-0745, 2013 WL 1181489 (D.D.C. Mar. 22, 2013)......................................3

*In re Prudential-Bache Energy Income Partnerships Sec. Litig.,*
    815 F. Supp. 177 (E.D. La. 1993) .........................................................................10

*Luevano v. Campbell,*
    93 F.R.D. 68 (D.D.C. 1981) ...................................................................................7

*Synfuel Technologies, Inc. v. DHL Express (USA), Inc.,*
    463 F.3d 646 (7th Cir. 2006) ..................................................................................4

*U.S. ex rel. Nudelman v. Int'l Rehab. Associates, Inc.,*
    CIV.A. 00-1837, 2004 WL 1091032 (E.D. Pa. May 14, 2004), at *1 ..............11

*U.S. ex rel. Schweizer v. Oce N. Am.,*
    CIV. 06-648 RCL, 2013 WL 3776260 (D.D.C. July 19, 2013).................3, 4, 11

**FEDERAL STATUTES**

31 USC § 3730(b)(1) ...................................................................................................6

DEFENDANT J-M'S OPPOSITION TO PLAINTIFFS' AND DEFENDANT FORMOSA PLASTICS CORPORATION, USA'S JOINT MOTION FOR APPROVAL OF SETTLEMENT

# I

## INTRODUCTION

Conspicuously absent from the Motion brought by Plaintiffs and Defendant Formosa Plastics Corporation, U.S.A. ("FPC") (collectively, the "Settling Parties") is any mention of FPC's involvement in the alleged acts and omissions at issue in this litigation.   Yet, according to Plaintiffs' own allegations, FPC was centrally involved: Plaintiffs allege FPC owned and controlled J-M during the relevant time period; that FPC provided substandard resin and compound to J-M; and that FPC had intimate knowledge of and involvement in various other alleged acts and omissions.  Given that counsel for Plaintiffs have publicly pronounced that damages in this case are in the range of ***billions of dollars***, Plaintiffs' proposed settlement with FPC for $22.5 million is a pittance of what it should be under Plaintiffs' own theory of damages.  Accordingly, the "Settlement Agreement and Mutual Release" that the Settling Parties submit for this Court's review ("Proposed Settlement Agreement") is neither fair nor adequate nor reasonable.

Furthermore, as this Court has repeatedly acknowledged, Plaintiffs' theory of their case has shape-shifted throughout this litigation and even during trial – including ***after*** the Settling Parties had entered into their Proposed Settlement Agreement.  By definition, the Settling Parties could not have meaningfully and intelligently assessed the risk and expense of proceeding to trial before agreeing to the terms of the Proposed Settlement Agreement – because Plaintiffs' theory of the case was not even settled nor defined at the time of the settlement.

At the very minimum, this Motion is premature, because (1) there remain numerous unanswered questions as to exactly what was and was not decided by the Phase One verdict with respect to both Defendants' potential liability and (2) the scope and contours of Phase Two – which is intended to include a determination of the scope and measure of damages – has yet even to be defined.  The jury's Phase One finding that J-M falsely represented "uniform compliance" with certain industry

standards is ambiguous and undefined as to what extent FPC may bear responsibility for any such liability.  Questions that remain unanswered include: Was the jury's finding about a lack of "uniform compliance" based upon J-M's use of substandard resin or compound supplied by FPC?  Was the jury's finding based upon alleged misconduct by J-M that was directed, controlled and/or authorized by FPC? Because the Phase One verdict is silent as to these types of questions, and no discovery has been conducted on these issues, it is impossible to meaningfully assess whether the proposed settlement is fair or reasonable relative to FPC's potential exposure in this action.[1]

Likewise, because the Court and parties have yet to even determine the scope and contours of Phase Two – which is intended to address the issues of causation and damages – it is premature to attempt to assess the reasonableness or fairness of the proposed settlement.  The Phase One verdict was entered in favor of five enumerated Plaintiffs only.  It remains unclear what, *if any*, effect the liability finding will have on the remaining 40-plus intervening Plaintiffs, or the relator and the numerous Real Parties the relator purports to represent.  And neither the parties nor the Court have yet to even address the potential scope of Phase Two damages – *e.g.*, what is the appropriate measure of purported damages. It is simply impossible to meaningfully assess the reasonableness of the proposed $22.5 million settlement against this backdrop of uncertainty about Defendants' total potential exposure.

This is not the typical instance of a settlement agreement that can be enforced with or without a good faith judicial determination.   J-M's critical right to indemnification from FPC is at stake.[2]   The Court's scrutiny here is not an

---

[1]  To be clear, the verdict does not support a False Claims Act liability finding, as will be explained in J-M's post-trial motions that will be filed at a later date.

[2]  Also conspicuously absent from the Settling Parties' Motion is any recognition that J-M is a party to this action whose interests are severely impacted by any settlement between the Settling Parties.

3052453.5

2

"intrusion upon what is otherwise a private consensual agreement," as the Settling Parties would have the Court believe.  (Mtn. at 7.)  This Court's assessment of the fairness, adequacy and reasonableness of the settlement – both as to the Settling Parties and as to J-M − is an essential term of the Proposed Settlement Agreement, which is void without the Court's approval (pursuant to paragraphs 7.4 and 10.4).  Indeed, the Court is called upon to conduct a thorough evaluation of all relevant facts before making this determination.  *See Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 617 (N.D. Cal. 1979) ("The court should independently weigh and evaluate each of these factors as applied to the case before it.  A mere 'rubber stamp' or 'boilerplate' approval is inadequate.")  J-M submits that the Court cannot find that the Proposed Settlement Agreement is fair, adequate or reasonable – at least not until it has determined the scope of the Phase One verdict and heard and considered the argument and evidence to be presented at the Phase Two trial.[3]

J-M urges the Court to impose a sense of fairness and equity by declining to legitimize the Proposed Settlement Agreement.  In the alternative, this Court's findings as to the Proposed Settlement Agreement should be deferred until the conclusion of the Phase Two trial.

## II

## ARGUMENT

A. **According To Plaintiffs' Own Assertions Regarding FPC's Involvement And The Damages Owed, The Settlement Amount Is Woefully Inadequate.**

As the Settling Parties emphasize in their Motion, the Court must strongly

---

[3]   The Court's discretion here is broad and this is a relatively unsettled area of law. *See In re LivingSocial Mktg. & Sales Practice Litig.,* 11-CV-0745, 2013 WL 1181489 (D.D.C. Mar. 22, 2013). In fact, a June 2013 case deciding similar issues that is relied on by the Settling Parties noted that these issues were of first impression. *See U.S. ex rel. Schweizer v. Oce N. Am.,* CIV. 06-648 RCL, 2013 WL 3776260 (D.D.C. July 19, 2013).

DEFENDANT J-M'S OPPOSITION TO PLAINTIFFS' AND DEFENDANT FORMOSA PLASTICS CORPORATION, USA'S JOINT MOTION FOR APPROVAL OF SETTLEMENT

consider the amount to be paid by FPC in determining the fairness of the Settlement. (Mtn. at 13.)  Indeed, "the terms of the settlement in relation to the strengths of plaintiffs' case" is a decisive factor in determining the fairness of a settlement.  *U.S. ex rel. Schweizer v. Oce N. Am.*, CIV. 06-648 RCL, 2013 WL 3776260 (D.D.C. July 19, 2013); *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (deeming this one "the most important factor" in determining fairness and finding that the district court erred by not attempting to quantify the value of the case).

Here, the settlement amount bears virtually no relation to the extent of FPC's alleged involvement in the purported activities at the heart of this lawsuit.[4] Plaintiffs themselves assert that FPC had ownership and control of and overlap with J-M, as well as knowledge of and direct involvement in the acts and omissions at issue. Specifically, Plaintiffs allege that FPC owned and operated J-M prior to and during the relevant time period in this action (1996-2005).  The operative Fifth Amended Complaint ("FIFAC") states that "[f]or 23 of [the past 30] years, FPC was the sole owner of J-M and FPC employees and officers were involved in key aspects of J-M's business."  FIFAC ¶ 4; *see also* FIFAC ¶¶ 38-39.  Also, Plaintiffs allege that "FPC intertwined J-M's business operations with its own," even after FPC sold the company.  FIFAC ¶¶ 48-57.  For example, according to Plaintiffs, FPC loaned J-M money and the two companies occupied the same office building until 2008. FIFAC ¶¶ 48, 52.

Plaintiffs further allege that, during the relevant period, FPC had knowledge of all of the following:

> (a) J-M sold large quantities of PVC water and sewer pipe with the intention that this pipe ultimately would be purchased and acquired by government users, including the Real Parties named in this case; (b) J-

---

[4]  Of course, J-M disputes any of the liability theories asserted by Plaintiffs.  But assuming *arguendo* that they have any merit – which they do not – FPC's involvement is substantial.

M did in fact sell large quantities of PVC water and sewer pipe ultimately purchased and acquired by government users, including the Real Parties named in this case; (c) some of these government users experienced problems with this pipe and claims were made for reimbursement; (d) FPC was involved with several of these claims and had been told and was aware that the reason why these government users experienced problems with this pipe was because J-M's representations on the pipe itself concerning the quality of the pipe were false; (e) J-M pipe was stamped with the UL mark, but FPC was told that none of J-M's pipe had satisfied the UL requirements for some time, and that J-M was, as of 2003, incapable of satisfying those requirements for any of its C900, C905, or ASTM D2241 pipe; and (f) despite this knowledge, FPC did nothing to stop false claims from being submitted to the government entities, including the Real Parties.

FIFAC ¶ 58. And Plaintiffs provide elaborate details to support these allegations. *See, e.g.,* FIFAC ¶¶ 66, 90-129. Plaintiffs go so far as to say that "FPC was directly involved in the formulation, testing, and sale of inferior, non-compliant products" and "FPC had first-hand knowledge that J-M was submitting false claims to the Real Parties." FIFAC ¶¶ 409-413. These allegations are, of course, central to Plaintiffs' False Claims Act cause of action.

Pursuant to Plaintiffs' allegations, FPC was far from a passive beneficiary of J-M's purported acts and omissions; FPC was allegedly an active perpetrator intimately involved with the day-to-day decision-making of the company. Therefore – again by Plaintiffs own assertions – FPC rightfully bears as much, if not more, of the responsibility for any purported damages Plaintiffs allegedly incurred.

When compared to Plaintiffs' own allegations about FPC's role in the alleged misconduct, the $22.5 million figure on which the Settling Parties somehow agreed is a paltry fraction of the damages that Plaintiffs themselves expect the Phase Two trial jury to award to them. Plaintiffs' counsel has repeatedly proclaimed that the damages owed total ***billions of dollars***. For example, Plaintiffs' lead counsel Eric Havian recently alleged:

States and water districts that are covered by this lawsuit spent $2.2 billion to buy JM Eagle during the 10-year period JM was lying about the long-term strength of the pipe . . . Those entities now are entitled to recover a substantial portion of that cost plus the cost to replace the shoddy pipe much sooner than expected. ***This likely will mean damages could total billions of dollars*** because it's expensive and

1    disruptive to replace water pipe.

2    Declaration of Paul S. Chan ("Chan Decl."), at Ex. A (PR Newswire, *JM Eagle*

3    *Faces Billions In Damages After Jury Finds JM Liable For Fraud For Making And*

4    *Selling Faulty Water System Pipes,* 11/15/13) (emphasis added); *see also* Chan

5    Decl., at Ex. B (Engineering News-Record, *Jury Finds Pipemaker JM Eagle Liable*

6    *In False Claims Suit,* 11/19/13) ("There was ***$2.2-billion*** worth of product sold

7    within the window to the plaintiffs at issue, but that doesn't cover the real damage

8    here . . .If the pipe will not last as long as it is reputed to last, our clients are gonna

9    have to replace it much sooner, and the replacement cost is much larger.")

10   (emphasis added); Chan Decl., at Ex. C (NY Times, *Jury Finds Pipe Maker*

11   *Defrauded Governments,* 11/15/13 ("This pipe is buried under the streets of every

12   major city in the country . . .  JM sold ***billions and billions*** of this pipe over those 10

13   years . . .It is enormously disruptive and terribly expensive to replace these pipes.")

14   (emphasis added).

15   Plaintiffs' valuation of their alleged damages in the billions of dollars dwarfs

16   the amount for which they settled with FPC.  Given that − according to Plaintiffs

17   themselves − FPC owned and controlled the company during the relevant time

18   period and had intimate knowledge of and involvement in the acts and omissions at

19   issue, this amount is facially inadequate and unreasonable.  This settlement amount

20   is unfair to J-M, which would be forced to alone pay all purported damages ordered

21   at the Phase Two trial – without regard to FPC's involvement in the alleged acts and

22   omissions.   The Proposed Settlement Agreement, with these glaring inequities,

23   should not be endorsed by the Court.[5]

24   _____

25   [5]   Even with the Court's approval, pursuant to 31 USC § 3730(b)(1), the Proposed

26   Settlement Agreement is not valid unless and until the U.S. Attorney General's
     consent is given.  The Settling Parties have provided no evidence of such consent.

27   Indeed, the Attorney General should oppose the settlement, as FPC is not paying its

28   fair share of the purported damages.

**B.** **Plaintiffs' Theory Of The Case Has Drastically Changed Since The Mediation And Settlement Negotiations; Thus, The Settling Parties Could Not Have Understood The Import Or Consequences Of The Settlement Terms At The Time of Settlement.**

The Settling Parties could not possibly have reached a fair, adequate and reasonable settlement, because they did not have sufficient information regarding the strength of Plaintiffs' case or the risks and expense involved in proceeding with litigation. *Luevano v. Campbell,* 93 F.R.D. 68, 86 (D.D.C. 1981).

Initially, it should be noted that issues pertaining to FPC were expressly moved to Phase Two of this lawsuit. Furthermore, at the time the Settling Parties negotiated the Proposed Settlement Agreement, Plaintiffs had not even decided on their theory of the case. Indeed, as this Court has repeatedly acknowledged, Plaintiffs' theory of the case transformed throughout this action and continued to evolve and change even during the Phase One trial. *See, e.g.,* Chan Decl., at Ex. D (Tr. 10/25/13, at 7526:12-13 ("The plaintiffs' theory of this case has in some part been evolving."); Tr. 10/25/13, at 7527:17-19 ("Subsequently the plaintiffs' theory kind of shifted more akin to the City of Pomona vs. Superior Court type of situation. . ."); Tr. 10/25/13, at 7528: 22-7529:3 ("And that was the understanding of the court kind of at the time of the motions in limine. However, at trial it appears that what the plaintiffs are seeking to use to establish the False Claims Act is not an obvious set of standards such as a falsely stamped radio tube or changing the formula as to fixed percentages of copper, tin, lead and zinc for pipe."); Tr. 10/25/13, at 7529:18-21 ("At trial the plaintiffs have raised a lot of things, but in the end, at some point in time, they will have to tie down and go forward with that which they claim is the basis for their False Claims Act contention."); Tr. 11/4/13, at 7742:9-16 ("The problem was that when this case was being litigated back then, the plaintiffs' theory was different back then and it wasn't this crystal clear thing that you think it is now. It was different back then. And it was, frankly, simpler in a way, I suppose, if you

1   could take it conceptually, but that's not the way that it was tried here."); Tr.

2   11/4/13, at 7744:6-13 ("Well, but the problem is you didn't attempt to litigate it in

3   that particular fashion.  While the plaintiffs are arguing various things, in essence, I

4   always thought this case was a false certification case.  But you have not litigated it

5   in that fashion.").)

6       Indeed, until Plaintiffs' closing-closing argument, the words "uniform

7   compliance" had never even been uttered throughout the seven-week trial.  Yet, this

8   was ultimately the sole theory of falsity that Plaintiffs' counsel urged the jury to fill

9   in on the verdict form, and was the sole finding of falsity entered on the form.  What

10  this finding about a lack of "uniform compliance" with certain industry standards

11  means with respect to FPC's potential responsibility or exposure for the acts and

12  omissions at issue in the case remains a mystery. For example, portions of the

13  standards at issue implicate the compound that FPC provided.

14      Plaintiffs' ongoing changes to their theory of liability – up to and including in

15  their closing-closing argument – means that the Settling Parties could not have

16  meaningfully and intelligently agreed to the terms of the Proposed Settlement

17  Agreement at the time the settlement was reached ***prior to*** trial.  This fact also

18  renders the settlement unreasonable and defeats the instant Motion.

19  **C.    If The Court Will Not Deny The Motion On The Basis Of These Fatal**

20        **Defects, Then This Court's Evaluation Of The Proposed Settlement**

21        **Agreement Should Be Continued Until The Close Of Phase Two.**

22      The foregoing problems with the Proposed Settlement Agreement are fatal to

23  the instant Motion.  However, to the extent this Court is unable to deny the Settling

24  Parties' Motion at this time, J-M urges the Court to postpone this determination until

25  the close of the Phase Two trial.

26      As noted above, numerous unanswered questions remain as to precisely what

27  was and was not decided by the Phase One verdict with respect to both J-M and

28  FPC's potential liability.  Depending on how one construes the jury's Phase One

3052453.5                                    8

finding – that J-M falsely represented "uniform compliance" with certain industry standards – that finding could very well implicate FPC directly in the acts and omissions at issue.  For example, was the jury's finding about a lack of "uniform compliance" based upon standards that relate to J-M's use of allegedly substandard resin or compound supplied by FPC?  Was the jury's finding based upon JM 90 compound that allegedly was improperly processed by FPC before it was sold to J-M?  And/or was the jury's finding based upon some other alleged misconduct by J-M that was directed, controlled and/or authorized by FPC?  Because the Phase One verdict is silent on these types of questions, and the Court has yet to construe the reach and impact of the Phase One verdict, it is impossible to meaningfully assess whether the proposed settlement is fair or reasonable relative to FPC's potential exposure in this action.

Moreover, because the Court and parties have yet to even determine the scope and contours of Phase Two – which is intended to address the issues of causation and damages – it is especially premature to attempt to assess the reasonableness or fairness of the proposed settlement.  The Phase One verdict was entered as to five Plaintiffs only.  The Court has not yet determined what, if any, effect the verdict will have on the remaining 40-plus intervening Plaintiffs, or the relator and the numerous Real Parties he purports to represent.

Likewise, neither the parties nor the Court have yet to even address the potential scope or measure of Phase Two damages.  At a bare minimum, Phase Two will need to involve a Plaintiff-by-Plaintiff analysis of any purported actual injuries suffered, and discovery of the value received by each Plaintiff from J-M pipe that is already in the ground and has been performing for over a decade.  But it has not yet been determined whether that analysis will include only the five Plaintiffs who are the subject of the Phase One trial, or forty-five Plaintiffs, or some other number of Plaintiffs.  As such, the potential measure and extent of damages in the case is completely unsettled.  It is impossible to meaningfully and intelligently assess the

reasonableness of the proposed $22.5 million settlement against this complete uncertainty about Defendants' total potential exposure.

The fairness of the Proposed Settlement Agreement can only be assessed once all of the parties and the Court have a clear understanding of *inter alia* FPC's role in the acts and omissions at issue, the extent of J-M's liability and the proper scope of damages to Plaintiffs.  As stated above, FPC was the owner of J-M during the relevant time period; thus, further discovery regarding FPC's role in causing Plaintiffs' alleged damages should be permitted.  Moreover, it remains unclear how the Phase One jury's findings affect J-M and FPC's respective liability, and this issue could have a significant impact on the Court's determination of whether the Proposed Settlement Agreement's terms are fair.  Likewise, the parties have not had the opportunity to conduct discovery on the complex damages issues in this case.

A determination that the Proposed Settlement Agreement is somehow fair, adequate and reasonable at this stage would be premature.  Continuances of such determinations are routinely ordered by district courts in similar circumstances.  As one district court found:

> Today, while this Court neither explicitly approves nor explicitly disapproves the settlement before it, it has no intention whatsoever of rewriting the settlement agreement. ***Instead, the Court merely defers ruling on the fairness of the compromise.*** This Court has the discretion to control discovery and the presentation of evidence before arriving at its ultimate decision on fairness.  [citation omitted.] ***Surely that discretion encompasses a court's decision to defer ruling on fairness because of an insufficiency of evidence.*** The Asbestos Lit. court approved the settlement in that case after several fairness hearings, and after the Court was satisfied that the record was sufficiently extensive to support an informed judgment.  [citation omitted.]  On the contrary, after hearing the evidence presented on February 9 and 10, 1993, this Court desires more information, not only from state agencies as their investigations progress, but also from further discovery involving the proponents of and objectors to the settlement.

*In re Prudential-Bache Energy Income Partnerships Sec. Litig.,* 815 F. Supp. 177, 182-83 (E.D. La. 1993) (emphasis supplied).  At the barest minimum, J-M should be permitted to conduct discovery regarding the facts affecting the settlement, as

3052453.5

10

provided for by the case law.  *See U.S. ex rel. Schweizer v. Oce N. Am.,* CIV. 06-648 RCL, 2013 WL 3776260 (D.D.C. July 19, 2013) ("A court may, for example, determine that the government has not adequately explained its reasoning behind the settlement, and may order some limited discovery prior to a § 3730(c)(2)(B) hearing."); *see also U.S. ex rel. Nudelman v. Int'l Rehab. Associates, Inc.,* CIV.A. 00-1837, 2004 WL 1091032 (E.D. Pa. May 14, 2004), at *1 n. 1.

The Proposed Settlement Agreement is plainly unfair, inadequate and unreasonable.  However, if this Court is unable to evaluate the Proposed Settlement Agreement at this time, then the instant Motion should be continued until the conclusion of the Phase Two trial.

## III

## CONCLUSION

In light of the foregoing, the instant Motion should be denied and the Proposed Settlement Agreement should be found to be unfair, inadequate and unreasonable.  In the alternative, this Court's evaluation of the Proposed Settlement Agreement should be continued until the conclusion of the Phase Two trial.

DATED:  December 6, 2013          BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS & LINCENBERG, P.C.

By:  _____/S/ Paul S. Chan_____
Paul S. Chan
Attorneys for Defendant J-M Manufacturing Company, Inc. d/b/a JM Eagle

3052453.5

11

DEFENDANT J-M'S OPPOSITION TO PLAINTIFFS' AND DEFENDANT FORMOSA PLASTICS CORPORATION, USA'S JOINT MOTION FOR APPROVAL OF SETTLEMENT

## DECLARATION OF PAUL S. CHAN

I, Paul S. Chan, declare as follows:

1.     I am an active member of the Bar of the State of California and a Principal with Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg, A Professional Corporation, attorneys of record for Defendant J-M Manufacturing Company, Inc. d/b/a JM Eagle in this action.  I make this declaration in support of Defendant J-M Manufacturing Company, Inc.'s Opposition To Plaintiffs' And Defendant Formosa Plastics Corporation, U.S.A.'s Joint Motion For Approval Of Proposed Settlement.  Except for those matters stated on information and belief, I make this declaration based upon personal knowledge and, if called upon to do so, I could and would so testify.

2.     Attached as Exhibit A is a true and correct copy of an article entitled *JM Eagle Faces Billions In Damages After Jury Finds JM Liable For Fraud For Making And Selling Faulty Water System Pipes*, dated November 15, 2013, available at http://www.prnewswire.com/news-releases/jm-eagle-found-liable-for-fraud-for-making-and-selling-faulty-water-system-pipes-formosa-plastics-agrees-to-pay-225-million-settlement-231992131.html (as of December 6, 2013).

3.     Attached as Exhibit B is a true and correct copy of an article entitled *Jury Finds Pipemaker JM Eagle Liable in False Claims Suit*, dated November 19, 2013, available at http://enr.construction.com/products/materials/2013/1119-jury-finds-pipemaker-jm-eagle-liable-in-false-claims-suit.asp (as of December 6, 2013).

4.     Attached as Exhibit C is a true and correct copy of an article entitled *Jury Finds Pipe Maker Defrauded Governments*, dated November 15, 2013, available at http://dealbook.nytimes.com/2013/11/15/jury-finds-pipe-maker-defrauded-governments/?_r=0 (as of December 6, 2013).

/ / /

/ / /

/ / /

3052453.5

DEFENDANT J-M'S OPPOSITION TO PLAINTIFFS' AND DEFENDANT FORMOSA PLASTICS CORPORATION, USA'S JOINT MOTION FOR APPROVAL OF SETTLEMENT

5.     Attached as Exhibit D is a true and correct copy of certain excerpts of the certified transcript of the trial in this action for October 25, 2013 and November 4, 2013.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I executed this declaration on December 6, 2013, at Los Angeles, California.

*/S/ Paul S. Chan*
Paul S. Chan

DEFENDANT J-M'S OPPOSITION TO PLAINTIFFS' AND DEFENDANT FORMOSA PLASTICS CORPORATION, USA'S JOINT MOTION FOR APPROVAL OF SETTLEMENT