CYNTHIA E. HUDSON
Chief Deputy Attorney General of Virginia
KIVA BLAND PIERCE
Assistant Attorney General
KPierce@oag.state.va.us
OFFICE OF THE ATTORNEY GENERAL
COMMONWEALTH OF VIRGINIA
900 East Main Street
Richmond, Virginia 23219
Tel: (804) 786-2071
Fax: (804) 371-8718

**Attorneys for Commonwealth of Virginia**
**(AND OTHER ATTORNEYS AS LISTED ON THE DOCKET)**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES, THE STATES OF CALIFORNIA, DELAWARE, FLORIDA, ILLINOIS, INDIANA, NEVADA, NEW MEXICO, NEW YORK, and TENNESSEE, THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA, and THE DISTRICT OF COLUMBIA ex rel. JOHN HENDRIX, <br><br>Plaintiffs, <br><br>v. <br><br>J-M MANUFACTURING COMPANY, INC., d/b/a JM Eagle, a Delaware corporation, and FORMOSA PLASTICS CORPORATION, U.S.A., a Delaware corporation, <br><br>Defendants. | Case No.  ED CV-06-00055-GW <br><br>Hon.  George H.  Wu <br><br>**JOINT STIPULATION RE: COMMONWEALTH OF VIRGINIA'S MOTION FOR PROTECTIVE ORDER** <br><br>Hearing Date: Dec. 8, 2016 <br>Time: 8:30 am <br>Location: Courtroom 10 <br><br>Phase 2 Exemplar Plaintiffs Damages Discovery Cutoff: November 1, 2016 <br>Pretrial Conference: February 23, 2017 <br>Trial: March 7, 2017 |

# **TABLE OF CONTENTS**

I.     PLAINTIFF COMMONWEALTH OF VIRGINIA'S INTRODUCTION ................................................................................. 1

II.    DEFENDANT J-M'S INTRODUCTION ................................. 3

III.   PLAINTIFF COMMONWEALTH OF VIRGINIA'S ARGUMENT ........... 4

    A.    The Discovery at Issue ........................................................ 4

    B.    Legal Standard ...................................................................... 5

    C.    This Court Should Issue a Protective Order ......................... 6

        1.    The Notice Improperly Seeks Privileged Communications .......................................................... 7

        2.    The Only Arguably Non-Privileged Information Sought by J-M in its Notice Has Already Been Obtained by J-M in Previous Discovery, as Much as Six Years Ago ...................................................... 10

        3.    J-M Fails to State How or Why This Discovery is Relevant ........................................................................ 12

    D.    Conclusion ............................................................................ 12

IV.   DEFENDANT J-M'S ARGUMENT ................................................. 13

    A.    J-M Is Not Seeking Privileged Information ......................... 13

    B.    Prior Discovery Did Not Provide The Information Sought By The Deposition Topics ...................................................... 14

    C.    The Deposition Topics Are Relevant To Damages ............... 15

    D.    Conclusion ............................................................................ 15

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Bickler v. Senior Lifestyle Corp.*,
5
   266 F.R.D. 379 (D. Ariz. 2010) ................................................................. 9

6

*Furey v. Wolfe*,
7
   2011 U.S. Dist. LEXIS 16465 (E.D. Pa. Feb. 18, 2011) ......................... 9

8

*Hatamian v. Advanced Micro Devices, Inc.*,
9
   2016 WL 2606830 (N.D. Cal. May 6, 2016) ............................................ 9

10

*K.C.R. v. Cnty. of L.A.*,
11
   2014 U.S. Dist. LEXIS 98276 (C.D. Cal. July 14, 2014) ....................... 5

12

*Kline v. Berry*,
   2012 U.S. Dist. LEXIS 87161 (D.D.C. June 25, 2012) .......................... 9
13

*Nutratech, Inc. v. Syntech Int'l, Inc.*,
14
   242 F.R.D. 552 (C.D. Cal. 2007) ............................................................. 5

15

*Securities and Exchange Commission v. Jasper*,
16
   2009 WL 1457755 (N.D. Cal. May 26, 2009) ................................. 5, 6, 10

17

*Shelton v. Am. Motors Corp.*,
18
   805 F.2d 1323 (8th Cir. 1986) ............................................................... 10

19

*In re Subpoena Issued to Dennis Friedman*,
20
   350 F.3d 65 (2d Cir. 2003) ................................................................. 6, 10

21

*U.S. v. Gonzalez*,
22
   669 F.3d 974 (9th Cir. 2012) ................................................................... 8

23

*Villaflor v. Equifax Information*,
   2010 WL 2891627 (N.D. Cal. July 22, 2010) ................................... 6, 10
24

**Statutes**
25

California False Claims Act .......................................................................... 7
26

Virginia Fraud Against Taxpayers Act ................................ 7, 8, 9, 11, 12, 14
27

28

1

**Other Authorities**

Fed. R. Civ. P. 26 .................................................................................1, 2, 5, 10

Fed. R. Civ. P. 30 .................................................................................2, 4, 5, 11

# I.      PLAINTIFF COMMONWEALTH OF VIRGINIA'S INTRODUCTION

J-M's Fourth 30(b)(6) Notice of Deposition ("Notice") of Plaintiff Commonwealth of Virginia ("Plaintiff" or "Virginia") seeks the discovery of attorney client privileged communications between the City of Norfolk and its counsel of record in this matter, the Office of the Attorney General of the Commonwealth of Virginia ("the OAG").  Even construing the Notice in the most favorable light to J-M, the only arguably non-privileged information sought in the Notice has been previously obtained by J-M in this action, as long as six years ago. This is a textbook example of a deposition notice that is improper and for which the Court should grant protection pursuant to Federal Rule of Civil Procedure 26(c).

Despite attempts by Plaintiff to understand how J-M could believe it is entitled to privileged communications between an attorney and its client concerning their very communications in this case, J-M has provided no explanation, and contends that Plaintiff should be required to attend the deposition and invoke privilege to every question that seeks privileged information.  Indeed, during a meet and confer on October 14, 2016, despite being informed that counsel for the Commonwealth would claim privilege over all communications with its political subdivisions (including Norfolk) related to the litigation, J-M insisted that it wanted a witness to be present to invoke the privilege and further commented that if the Commonwealth refused to answer questions based on the privilege assertion, J-M would argue to the jury what it deemed appropriate about the Commonwealth's invocation of the privilege.  J-M has provided no authority for the proposition it is entitled to argue anything to the jury about a proper invocation of the attorney-client privilege by a party.  As best as Plaintiff can speculate, J-M is conflating the right against self-incrimination in the Fifth Amendment to the United States Constitution with an invocation of attorney-client privilege.  Although in certain circumstances the former may give rise to adverse inferences, the latter is an absolute bar to

1

1  disclosure for which it would be improper for the jury to be presented with any

2  "argument" about the invocation.

3        Furthermore, the two portions of the notice that arguably seek non-privileged

4  information – namely when and how the Commonwealth of Virginia learned of the

5  *qui tam* lawsuit pending before the Court, and when and how the City of Norfolk

6  learned of it, already have been the subject of discovery in this action.  Indeed, J-M

7  obtained discovery on the first subject matter more than six years ago when the

8  Commonwealth answered the question in response to an interrogatory, and J-M

9  questioned the Rule 30(b)(6) witness of the Commonwealth of Virginia on behalf of

10 the City of Norfolk on the second subject matter more than three years ago, and

11 again in August of this year.  J-M does not contend that the Plaintiff's answers or

12 deposition testimony were insufficient; simply put, J-M's repetitive requests for

13 discovery it already has is harassment, and a protective order pursuant to Rule 26(c)

14 should be granted on these grounds as well.[1]

15       J-M's bald attempt to improperly breach Plaintiffs' attorney-client privilege

16 and also obtain discovery it already has should be rejected by this Court, and the

17 Commonwealth of Virginia should not be required to respond to the Notice.  J-M's

18 groundless pursuit of privileged communications constitutes good cause for the

19 issuance of a protective order under Rule 26(c).  Accordingly, the Commonwealth of

20 Virginia respectfully requests that the Court enter an order pursuant to Rule 26(c)

21 protecting it from responding to J-M's Fourth 30(b)(6) Notice of Deposition to the

22 Commonwealth of Virginia.

23

24

25 [1] As discussed below, J-M also has not explained how the discovery it seeks, even if
26 it were not absolutely privileged, is even relevant to the upcoming damages trial.  It clearly is not.

27

28                                              2

## II.     DEFENDANT J-M'S INTRODUCTION

J-M is not seeking discovery of attorney-client privileged communications between the City of Norfolk and Virginia's OAG.  To the contrary, the plain language of the three deposition topics and the related requests for production demonstrates that the categories of information and documentation sought by J-M are not confined to the Virginia OAG's actions and communications.  Rather, J-M is seeking information and documentation relating to Virginia's actions and communications, including those of its representatives and agencies beyond just the OAG.  Virginia simply has not proven that only its OAG acted on its behalf in all areas covered by the three deposition topics and the related document requests, and thus has not shown that J-M is seeking only attorney-client privileged communications.

Moreover, even assuming *arguendo* that the OAG is the only Virginia agency whose communications and actions are covered by the three deposition topics and related document requests, Virginia still must show that those communications and actions are in fact privileged (as opposed to, say, unprotected business communications).  Virginia simply has not established that.

In sum, J-M is entitled to Virginia's deposition testimony on the three topics, and documents responsive to the related document requests, because Virginia has not demonstrated that all responsive information and documents are actually protected by the attorney-client and/or work product privileges.

Moreover, Virginia's assertion that any non-privileged communications and documents encompassed within the deposition topics and related document requests have been covered in prior discovery is false.  As its prior interrogatory responses and deposition testimony reveal, the categories of information and documentation sought by these topics and requests have not been sufficiently addressed.

3

1    And Virginia's objection based on relevance is not a basis for a protective

2  order. In any event, it is baseless because the topics and related requests are tailored

3  to obtain information directly relevant to the damages issues in the Phase 2 trial:

4  namely, (i) whether Virginia and Norfolk actually had any concerns about the J-M

5  pipe (which concerns are now part of the basis for their demand for replacement

6  costs), (ii) whether they did anything at all to mitigate their alleged damages, and

7  (iii) the reasons why they apparently did not have any such concerns and why they

8  apparently did nothing to mitigate (as revealed in their communications at the times

9  in question).

10    For all these reasons, J-M respectfully requests that the Court deny Plaintiff's

11  motion for a protective order.

12  **III.   PLAINTIFF COMMONWEALTH OF VIRGINIA'S ARGUMENT**

13    **A.    The Discovery at Issue**

14    Virginia is requesting a protective order with respect to just one of three

15  separate Rule 30(b)(6) notices served by J-M on the Commonwealth of Virginia on

16  September 27, 2016, with only a little over a month of fact discovery remaining in

17  Phase 2.[2] (*See* Declaration of Elizabeth J. Sher, Exs. A–C.)  Without belaboring J-

18  M's tardiness in scheduling depositions, it is clear from both the text of the Notice-

19  at-issue here, and communications with J-M's counsel, that J-M seeks information

20  directly from the Commonwealth of Virginia's Office of the Attorney General,

21  counsel of record here.  The parties' attempt to meet and confer yielded no

22  compromise.  J-M refuses to withdraw its Notice or accept the fact that it has already

23  obtained discovery of the only arguably non-privileged portions of its Notice.  J-M's

24  ─────────────

[2] At the same time, J-M also noticed the deposition of Kristen Lentz, the Director of
25  the Department of Utilities for the City of Norfolk.  The Plaintiff is producing,
subject to objections, a witness for the two other Rule 30(b)(6) notices, and Ms.
26  Lentz will also appear for deposition.

27

28                                          4

1  counsel's insistence on proceeding with this deposition also seems to be motivated

2  by a misunderstanding of the rules of evidence.  (*See* Sher Decl. at ¶ 9.)

3  **B.    Legal Standard**

4       A party may "obtain discovery regarding any non-privileged matter that is

5  relevant to any party's claim or defense and proportional to the needs of the case[.]"

6  Fed. R. Civ. P. 26(b).  Discovery, however, is not unlimited.  "A court can limit

7  discovery if it determines, among other things, that the discovery is: (1)

8  unreasonably cumulative or duplicative; (2) obtainable from another source that is

9  more convenient, less burdensome, or less expensive; or (3) the burden or expense

10  of the proposed discovery outweighs its likely benefit." *K.C.R. v. Cnty. of L.A.*, 2014

11  U.S. Dist. LEXIS 98276, at *7 (C.D. Cal. July 14, 2014).

12       Even more, and upon a showing of good cause, the Court may "issue an order

13  to protect a party or person from annoyance, embarrassment, oppression, or undue

14  burden or expense, including one or more of the following: (A) forbidding the

15  disclosure of discovery" and/or "(D) forbidding inquiry into certain matters, or

16  limited the scope of disclosure or discovery to certain matters." Fed.  R.  Civ.  P.

17  26(c).  Good cause is met when the moving party makes a clear showing of a

18  particular and specific need for a protective order.  *Nutratech, Inc. v. Syntech Int'l,*

19  *Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007).

20       Further, district courts within the Ninth Circuit's purview have held that Rule

21  30(b)(6) deposition notices which, as a practical matter, seek the testimony of

22  opposing counsel are "generally disfavored" and must meet a heightened showing of

23  need for the deposition. *See, e.g., Securities and Exchange Commission v. Jasper*,

24  2009 WL 1457755, at *2-4 (N.D. Cal. May 26, 2009) (granting protective order

25  where 30(b)(6) notice sought "the practical equivalent of an examination of the

26  SEC's attorneys," stating that such depositions "generally are disfavored," and

27  holding that noticing party failed to meet heightened standard for deposing opposing

28

5

counsel); *Villaflor v. Equifax Information*, 2010 WL 2891627,  at *2-3 (N.D. Cal. July 22, 2010) (granting protective order where 30(b)(6) notice "in practice" sought deposition of opposing counsel, and holding that noticing party failed to meet heightened standard for deposing opposing counsel).

In particular, under such circumstances, courts have held that the noticing party must show—under the majority approach—that "(1) no other means exist to obtain the information; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Jasper*, 2009 WL 1457755, at *3 (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)).  Alternatively, under the slightly more flexible minority approach, courts have held that the noticing party must make the requisite showing that several factors weigh in favor of deposing opposing counsel, such factors including "(1) the need to depose the lawyer, (2) the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation; (3) the risk of encountering privilege and work product issues; and (4) the extent of discovery already conducted." *Jasper*, 2009 WL 1457755, at *3 (referring to approach adopted *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65 (2d Cir. 2003)).  The Ninth Circuit has not yet adopted either the majority or minority approach.  Unless an adequate showing under these applicable standards is made, a protective order should be entered against a deposition notice seeking the deposition of counsel.

## C.    This Court Should Issue a Protective Order

This Court should issue a protective order that precludes J-M from deposing Virginia regarding the topics listed in J-M's Notice.  First, J-M's Notice plainly and improperly seeks privileged information shared between Plaintiff and its attorneys.  Second, J-M has already asked for—and received—this discovery from the Plaintiff, thus making the Notice itself duplicative of previous discovery in this case.  The information provided in 2010 is no different now.  J-M has learned exactly what it

6

1 | seeks.  Third, the topics listed in J-M's Notice lack relevance to the damages phase
2 | of this case.  J-M has not explained any basis for relevance of the topics contained in
3 | its Notice.  For the reasons described in detail below, Plaintiff satisfies its showing
4 | of good cause for the issuance of a protective order.

### 1.    The Notice Improperly Seeks Privileged Communications

On their face, Topics 1-3 in the Notice plainly seek privileged attorney-client communications between the Virginia Attorney General and the City of Norfolk. (*See, e.g.*, Sher Decl., Ex. C at 5 (Topic 3: "YOUR COMMUNICATIONS with NORFOLK RELATING TO the ACTION and/or J-M PVC PIPE.").) This is wholly improper under generally accepted legal principles of this District.

The Virginia Fraud Against Taxpayers Act ("VFATA") vests the Virginia Attorney General's office with the responsibility to legally represent the entire Commonwealth, including all of its political subdivisions, when it investigates and intervenes in a *qui tam* action initiated under the VFATA.  Unlike other state false claims act statutes (like the California False Claims Act, for example), the VFATA does not otherwise provide for possible delegation of investigation or intervention responsibility to municipalities or political subdivisions of the State.  As a result, from the very beginning of being notified of a *qui tam* action filed pursuant to VFATA, the Virginia Attorney General's office has an attorney-client relationship with *all* of the Commonwealth Virginia, including all of its municipalities and political subdivisions.

Under the VFATA, the Commonwealth of Virginia and the City of Norfolk are one and the same,[3,4] and the Virginia Attorney General is vested with the

---

[3] Under the Virginia Fraud Against Taxpayers Act, "Commonwealth" is defined as "the Commonwealth of Virginia, any agency of state government, and *any political subdivision of the Commonwealth*." Va. Code § 8.01-216.2 (emphasis added).

7

authority to represent the Commonwealth in all civil matters, including under the VFATA.[5] The Virginia Attorney General's office and the City of Norfolk, a political subdivision of the Commonwealth, have maintained the confidentiality of this relationship and the City of Norfolk has sought and received legal advice from the Virginia Attorney General on numerous occasions during the pendency of this case. Furthermore, the Virginia Attorney General has made an appearance and is counsel of record for the Commonwealth, including the City of Norfolk, in this action.

Accordingly, J-M's request for "all communications" between the Virginia Attorney General's Office and the City of Norfolk about this case during its pendency is nothing less than a request for all communications between an attorney and his client about this case during its pendency. In fact, J-M's notice is the functional equivalent of Virginia serving a notice on J-M seeking all communications between J-M's current counsel of record and J-M about this case. J-M's notice to Plaintiff is therefore improper and should not be permitted to proceed.

The OAG is the investigative authority for all of Virginia's FCA matters. J-M is not entitled to learn the inner workings of the OAG and its decision making and investigation processes or actions during the investigation and prosecution of this action. For J-M to claim to the contrary is nonsense. Indeed, as the

---

[4] Even if J-M were to argue that the Commonwealth of Virginia and the City of Norfolk are not one and the same under the VFATA, the communications between the Commonwealth of Virginia and the City of Norfolk relating to this case are also not discoverable on the grounds that they are subject to the common interest privilege. *See, e.g., U.S. v. Gonzalez*, 669 F.3d 974, 979-81 (9th Cir. 2012) (finding common interest privilege).

[5] All legal service in civil matters for the Commonwealth, including the conduct of all civil litigation, shall be rendered and performed by the Attorney General. Va. Code § 2.2-507.

8

1  Commonwealth's attorney of record, the OAG consistently communicates with one
2  of its clients, the City of Norfolk, about this case.  To allow inquiry into
3  communications between attorney and client that are plainly privileged would both
4  directly contradict the statutory scheme of legal representation for the City of
5  Norfolk set forth in the VFATA, and completely undermine the very core of the
6  attorney-client privilege.

7        Topics 1 and 2 (with two exceptions discussed in Section 2 below for which J-
8  M has already been provided the discovery) suffer from the same infirmity.  Topic 1
9  seeks a witness on all "actions [the Virginia Attorney General took] upon learning of
10 the action." (Sher Decl., Ex. C at 5.)  But the actions that the Attorney General took
11 as part of its investigation of this action are privileged and represent the work
12 product of the Attorney General.  They are not discoverable.  *See, e.g., Kline v.*
13 *Berry*, 2012 U.S. Dist. LEXIS 87161, at *5-9 (D.D.C. June 25, 2012) (denying
14 deposition as to investigator general's practices and procedures); *Furey v. Wolfe*,
15 2011 U.S. Dist. LEXIS 16465, at *23-25 (E.D. Pa. Feb. 18, 2011) (denying
16 deposition regarding subject matter protected by deliberative process privilege);
17 *Bickler v. Senior Lifestyle Corp.*, 266 F.R.D. 379, 382-85 (D. Ariz. 2010); *Hatamian*
18 *v. Advanced Micro Devices, Inc.*, 2016 WL 2606830, at *3 (N.D. Cal. May 6, 2016).

19        Similarly Topic 2 of the Notice seeks information about "the Circumstances
20 under which you first informed Norfolk about the action . . . ." (Sher Decl., Ex. C at
21 5.)  However, disclosure of this information would reveal the manner in which the
22 Virginia Attorney General determined to conduct its investigation of this case and
23 the substance of its communications with the City of Norfolk, both of which are
24 protected by the attorney-client privilege and work product doctrine.  As discussed
25 in Section 2 below, J-M has already received what it is arguably entitled to receive
26 on these subjects in previous discovery, and it is not entitled to attorney-client
27 communications or the work product of counsel in connection with this case.

28

9

Moreover, J-M's Notice in its entirety is fatally flawed because J-M has not made the requisite showing that it would be proper under these circumstances to depose attorneys at the OAG, which is what the Notice seeks as a practical matter. *See Jasper*, 2009 WL 1457755, at *2-4 (granting protective order where 30(b)(6) notice, as a practical matter, improperly sought deposition of counsel); *Villaflor*, 2010 WL 2891627, at *2-3 (same). J-M's Notice is subject to either at least one of the heightened standards that district courts have adopted in the Ninth Circuit— either the majority approach under *Shelton* or the minority approach under *In re Subpoena Issued to Dennis Friedman*—because the Notice requests testimony on facts known only to Virginia's counsel within the OAG, and therefore necessarily encompasses attorney-client communications and attorney work product.

J-M has not made any such showing, let alone one that could meet either of these applicable standards. Nor could J-M make such a showing, given that there are less intrusive discovery methods to obtain the information J-M seeks that J-M has failed to use. Therefore, J-M's Notice is improper because J-M has made no showing that attorneys at the OAG should be deposed.

For these reasons, Virginia should be protected from providing deposition testimony on all three of the topics of J-M's notice that call for communications clearly protected by the attorney client privilege and work product doctrine, and the Court should grant Virginia's request for a protective order pursuant to Rule 26(c).

**2.    The Only Arguably Non-Privileged Information Sought by J-M in its Notice Has Already Been Obtained by J-M in Previous Discovery, as Much as Six Years Ago.**

Even if one were to accept that any portion of J-M's Notice seeks non-privileged information, it is plainly evident that J-M has obtained the very discovery it seeks in this notice, in at least one instance almost six years ago. More specifically, J-M's First Set of Interrogatories, served in *2010*, sought the very same

1 | information contained in Topic 1 of the Notice. (*Compare* Sher Decl., Ex. D at 10
2 | (Interrogatory No. 12: "Describe with particularity the circumstances under which
3 | YOU learned about the ACTION, including when and from whom YOU learned
4 | about the ACTION, and the identity of all COMMUNICATIONS containing this
5 | information.") *with* Sher Decl., Ex. C at 5 (Topic 1: "The circumstances under which
6 | YOU first became aware of the ACTION, including, but not limited to, how and
7 | when YOU first became aware of the ACTION and YOUR actions upon learning of
8 | the Action.").)

9 |      Virginia served Responses and Objections to J-M's Interrogatories on
10 | November 18, 2010. (*See* Sher Decl., Ex. E.)  Six years later, the answer that was
11 | given then is no different than the answer today: "the Attorney General of Virginia
12 | was served with a copy of a qui tam lawsuit under the Virginia Fraud Against
13 | Taxpayers Act styled *U.S. et al. ex rel. Hendrix v. J-M Manufacturing Company,*
14 | *Inc. et al.,* that had been filed in federal court in the Central District of California
15 | …on January 18, 2006." (Sher Decl., Ex. E at 19.)  J-M does not contend that it has
16 | ever (until this late date) objected, followed up, or pushed back on this answer after
17 | it received Virginia's response, and the parties proceeded through the Phase 1 trial
18 | with no further discussion on this issue.

19 |      Topic 2 of the Notice also duplicates previous discovery. (*See* Sher Decl., Ex.
20 | C at 5 (Topic 2: "The circumstances under which YOU first informed NORFOLK
21 | about the ACTION, including, but not limited to, how and when YOU informed
22 | NORFOLK about the Action.").)  As recently as August of this year, J-M questioned
23 | the Commonwealth's Rule 30(b)(6) witness David Speer, and he answered questions
24 | on this very subject. (*See* Sher Decl., Ex. F (08/09/16 Speer Dep. at 25:2-6 (Q (J-M
25 | Counsel: "[A]s I understand your prior testimony, you first learned of this lawsuit
26 | roughly in March of 2010; is that correct?" A: "Yes, sir.") and 26:24-27:8 ("A: The
27 | city was contacted by, I believe it was a representative from the Virginia Attorney

11

General's Office, regarding …Virginia's and Norfolk's participation into this lawsuit[.]").) Norfolk has also provided this information in response to J-M's Interrogatory No. 108. (Sher Decl., Ex. G at 29 ("Plaintiff-Intervenor learned about this action and the facts set forth in the various complaints herein, no later than March 2010."). J-M does not explain why it needs another deponent to testify to the exact same information, or at a minimum examine a witness on questions that J-M has already had ample opportunity to ask, other than to intrude on the attorney-client privilege and work product of the Commonwealth and impose unnecessary burdens on Virginia.

For these reasons the Court should preclude deposition testimony as to Topics 1 and 2 for the additional reason that all non-privileged information that the topics arguably call for has been provided.

### 3. J-M Fails to State How or Why This Discovery is Relevant

Moreover, J-M fails to state how the Notice is relevant at all to the Damages phase of this case. None of these topics impact what the Commonwealth's damages are under the VFATA. And in Virginia's meet-and-confer with J-M's counsel, J-M did not explain the relevance of this information. The Court should grant Virginia protection from this Notice because it seeks information that is wholly irrelevant to the upcoming damages trial.

### D. Conclusion

J-M admits that it intends to seek confidential and privileged communications between Virginia through the OAG and the City of Norfolk. Moreover, J-M's effort to depose counsel is improper here, and there is no relevance for the information sought. Virginia respectfully requests that the Court issue a protective order protecting it from J-M's deposition Notice.

12

## IV.   DEFENDANT J-M'S ARGUMENT

### A.   J-M Is Not Seeking Privileged Information

J-M is not seeking privileged communications and documents.  Topic 1 seeks to depose Virginia's 30(b)(6) witness about, among other things, "YOUR (i.e., **Virginia's**) actions upon learning of the ACTION," which are not limited to the actions taken by its OAG.  Topic 2 asks about the circumstances under which **Virginia** first informed Norfolk about the present lawsuit, which are not necessarily limited to communications between its OAG and Norfolk.  And Topic 3 covers **Virginia's** communications with Norfolk about the lawsuit and the J-M pipe, which again is not limited to only communications between its OAG and Norfolk.

Consequently, J-M is not seeking any privileged communication or protected work product.  Nor is J-M seeking to depose attorneys within Virginia's OAG.  If in fact all of the information sought by the deposition topics and related document requests is privileged and/or protected work product, then J-M recognizes it would be barred from obtaining such information and documentation.  However, Virginia has not established that.  Indeed, Virginia does not contend that *only* the OAG acted on its behalf upon learning about the lawsuit or that *only* the OAG communicated with Norfolk on its behalf about the lawsuit and the J-M pipe.

Moreover, Virginia does not assert that all of the pertinent communications and documentation were made for the purpose of providing legal advice.  There could be communications between Virginia and Norfolk not involving the OAG, or even communications involving the OAG that are not protected by the attorney client privilege and work product doctrine.  Unless and until Virginia establishes that all pertinent information and documentation is actually privileged and/or protected work product, it cannot obtain an order barring J-M from deposing its witness on the three deposition topics or barring J-M from obtaining the related documentation.

13

## B.   Prior Discovery Did Not Provide The Information Sought By The Deposition Topics

Topics 1 and 2 have not been covered in prior discovery.  Contrary to Virginia's assertion that Topic 1 was already answered by its written response to a prior interrogatory, the actual response (quoted below) makes clear that it is not responsive to Topic 1:

> "Virginia will assume this Interrogatory seeks to know the date when the Attorney General of Virginia was served with a copy of a qui tam lawsuit under the Virginia Fraud Against Taxpayers Act styled *US. et al. ex rei. Hendrix v. J-M Manufacturing Company, Inc. et al.*, that had been filed in federal court in the Central District of California. Subject to and without waiving those objections, Virginia responds as follows: The Attorney General of Virginia was served with a copy of that qui tam lawsuit on January 18, 2006." (Sher Decl., Ex. E at 19.)

Topic 1, however, is not limited to the date on which the OAG was served with a copy of the qui tam complaint filed in this action.  Rather, Topic 1 encompasses the circumstances under which Virginia first became aware of the lawsuit and its actions upon learning of the lawsuit.  Virginia has never produced a witness to provide the information sought by this topic; it must do so now.

Virginia is also incorrect when it contends that Topic 2 was covered by its prior interrogatory response and recent deposition testimony.  The quoted interrogatory response, "Plaintiff-Intervenor (i.e., Virginia) learned about this action and the facts set forth in the various complaints herein, no later than March 2010" (Sher Decl., Ex. G at 29), does not say anything about how or when Virginia informed Norfolk about the lawsuit.  And the deposition testimony quoted by Virginia in support of this motion was actually provided by Norfolk's agent, not Virginia's.  While such testimony reveals when **Norfolk** thought it had first learned about the lawsuit, it does not speak to **Virginia's** recollection of the circumstances under which Virginia first informed Norfolk about the lawsuit.  J-M is entitled to obtain such information from Virginia directly.

14

## C.    The Deposition Topics Are Relevant To Damages

All of the topics at issue are relevant to the damages phase of this case, particularly with respect to Virginia's (lack of) concern about the J-M pipe and its (failure to) mitigate its alleged damages or take any other precautionary measures. That Virginia learned about the lawsuit and sat on such knowledge for a long period of time before informing Norfolk demonstrates that their purported concern now – a basis for their request for replacement costs in Phase 2 – is disingenuous.  Similarly, their failure to take any actions to mitigate their purported damages in all this time is also inconsistent with their damages theory. J-M is entitled to discover these communications and actions (or failures to act) with regard to mitigation and Virginia's purported concerns about the J-M pipe in order to build J-M's Phase 2 trial defense.

## D.    Conclusion

For the reasons set forth above, Virginia's motion for a protective order should be denied.

DATED: November 17, 2016    By:  /s/  Elizabeth J. Sher

ELIZABETH J. SHER (Admitted Pro Hac Vice)
esher@daypitney.com
DAY PITNEY LLP
1 Jefferson Road
Parsippany, New Jersey  07054
Tel: (973) 966-6300
Fax: (973) 966-1015

CYNTHIA E. HUDSON
Chief Deputy Attorney General of Virginia
KIVA BLAND PIERCE
Assistant Attorney General
KPierce@oag.state.va.us
OFFICE OF THE ATTORNEY GENERAL

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMMONWEALTH OF VIRGINIA
202 North Ninth Street
Richmond, VA 23219
Tel: (804) 786-2071
Fax: (804) 371-8718

ERIC R. HAVIAN (State Bar No. 102295)
ehavian@constantinecannon.com
HARRY P. LITMAN (State Bar No. 127202)
hlitman@verizon.net
CONSTANTINE CANNON LLP
4 Embarcadero Center, 14th Floor
San Francisco, California 94111
Tel:  (415) 766-3589
Fax:  (650) 636-9709

STUART RENNERT (Admitted Pro Hac Vice)
srennert@mckoolsmith.com
McKOOL SMITH HENNIGAN P.C.
1999 K. Street, N.W. Suite 600
Washington, D.C. 20006
Tel: (202) 370-8300
Fax: (202) 370-8344

THOMAS B. WATSON (State Bar No. 181546)
KIRK DILLMAN (State Bar No. 110486)
twatson@mckoolsmithhennigan.com
kdillman@mckoolsmithhennigan.com
McKOOL SMITH HENNIGAN P.C.
One California Plaza
300 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Tel: (213) 694-1200
Fax: (213) 694-1234

**Attorneys for Commonwealth of Virginia**

16

DATED: November 17, 2016

By: /s/ Paul S. Chan

EKWAN E. RHOW (State Bar No. 174604)
eer@birdmarella.com
PAUL S. CHAN (State Bar No. 1834060
psc@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS & LINCENBERG, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Tel:  (310) 201-2100
Fax: (310) 201-2110

DAVID BERNICK (Admitted Pro Hac Vice)
dbernick@paulweiss.com
Paul Weiss Rifkind Wharton & Garrison
1285 Avenue of the Americas
New York NY 10019-6064
Tel:  (212) 373-3405
Fax: (212) 492-0405

**Attorneys for Defendant J-M Manufacturing Co., Inc., d/b/a JM Eagle**

17