ADAM PAUL LAXALT
Attorney General
SUSAN K. STEWART (State Bar No. 174985)
Deputy Attorney General
SStewart@ag.nv.gov
Attorney General's Office
100 North Carson Street
Carson City, Nevada 89701-4717
Tel: (775) 684-4173
Fax: (775) 684-1108

**Attorneys for State of Nevada
(AND OTHER PLAINTIFFS/ATTORNEYS AS LISTED ON THE DOCKET)**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES, THE STATES OF CALIFORNIA, DELAWARE, FLORIDA, ILLINOIS, INDIANA, NEVADA, NEW MEXICO, NEW YORK, and TENNESSEE, THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA, and THE DISTRICT OF COLUMBIA <u>ex rel</u>. JOHN HENDRIX,<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>J-M MANUFACTURING COMPANY, INC., d/b/a JM Eagle, a Delaware corporation, and FORMOSA PLASTICS CORPORATION, U.S.A., a Delaware corporation,<br><br>　　　　　　　Defendants. | Case No. ED CV-06-00055-GW(PJWx)<br><br>Honorable George H. Wu<br><br>**EXEMPLAR PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE NEW OPINIONS OF J-M'S EXPERT PAUL BRAITHWAITE**<br><br><br>Date:　July 19, 2018<br>Time:　9:30 a.m.<br>Ctrm:　9D |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 19, 2018, at 9:30 A.M., or as soon thereafter as this matter can be heard, in Courtroom 9D in the United States Courthouse located at 350 W. 1st Street, Los Angeles, California 90012, the Honorable George H. Wu presiding, the Exemplar Plaintiffs will move, pursuant to Federal Rule of Evidence 702 and the Order of the Court dated April 23, 2018, for an order excluding certain testimony of J-M's expert witness Paul Braithwaite. This Motion is based on this Notice, Plaintiffs' Memorandum in Support, the Declaration of Anna K. Milunas and accompanying Exhibits, such matters of which this Court may take judicial notice, and other matters and arguments as may be presented to this Court in connection with this Motion.

**Local Rule 5-4.3.4(a)(2)(i) Compliance: Filer attests that all other signatories listed concur in the filing's content and have authorized this filing.**

Respectfully submitted,

DATED: June 21, 2018        By:   */s/ Susan K. Stewart*
                                  ADAM PAUL LAXALT
                                  Attorney General
                                  SUSAN K. STEWART (State Bar No. 174985)
                                  Deputy Attorney General
                                  SStewart@ag.nv.gov
                                  Attorney General's Office
                                  100 North Carson Street
                                  Carson City, Nevada  89701-4717
                                  Tel: (775) 684-4173 / Fax: (775) 684-1108

                                  **Attorneys for State of Nevada**

| | | |
|---|---|---|
| 1 | DATED:  June 21, 2018 | By: */s/ Elizabeth J. Sher* |
| 2 | | ELIZABETH J. SHER (Admitted Pro Hac Vice) |
| 3 | | esher@daypitney.com<br>DAY PITNEY LLP |
| 4 | | 1 Jefferson Road |
| 5 | | Parsippany, New Jersey 07054<br>Tel: (973) 966-6300 / Fax: (973) 966-1015 |
| 6 | | |
| 7 | | CYNTHIA E. HUDSON<br>Chief Deputy Attorney General of Virginia |
| 8 | | PETER BROADBENT |
| 9 | | Assistant Attorney General<br>PBroadbent@oag.state.va.us |
| 10 | | OFFICE OF THE ATTORNEY GENERAL |
| 11 | | COMMONWEALTH OF VIRGINIA<br>202 North Ninth Street |
| 12 | | Richmond, VA 23219 |
| 13 | | Tel: (804) 786-6055 / Fax: (804) 786-1991 |
| 14 | | **Attorneys for Commonwealth of Virginia** |
| 15 | | |
| 16 | DATED:  June 21, 2018 | By: */s/ Eric R. Havian* |
| 17 | | ERIC R. HAVIAN (State Bar No. 102295)<br>ehavian@constantinecannon.com |
| 18 | | HARRY P. LITMAN (State Bar No. 127202) |
| 19 | | hlitman@verizon.net<br>CONSTANTINE CANNON LLP |
| 20 | | 150 California Street, Suite 1600 |
| 21 | | San Francisco, California 94111<br>Tel:  (415) 639-4001 / Fax:  (415) 639-4002 |
| 22 | | |
| 23 | | ELIZABETH J. SHER (Admitted Pro Hac Vice) |
| 24 | | esher@daypitney.com<br>DAY PITNEY LLP |
| 25 | | 1 Jefferson Road |
| 26 | | Parsippany, New Jersey 07054<br>Tel: (973) 966-6300 / Fax: (973) 966-1015 |
| 27 | | |
| 28 | | |

STUART M. RENNERT (Admitted Pro Hac Vice)
srennert@mckoolsmith.com
McKOOL SMITH HENNIGAN P.C.
1999 K. Street, N.W. Suite 600
Washington, D.C. 20006
Tel: (202) 370-8300 / Fax: (202) 370-8344

KIRK D. DILLMAN (State Bar No. 110486)
kdillman@mckoolsmithhennigan.com
THOMAS B. WATSON (State Bar No. 181546)
twatson@mckoolsmithhennigan.com
McKOOL SMITH HENNIGAN P.C.
One California Plaza
300 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Tel: (213) 694-1200 / Fax: (213) 694-1234

**Attorneys for Commonwealth of Virginia, Calleguas Municipal Water District, Palmdale Water District and South Tahoe Public Utility District**

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ..................................................................................... 1

II. FACTS ....................................................................................................... 2

III. BRAITHWAITE'S NEW OPINIONS SHOULD BE STRICKEN ............... 3

    A. New Opinion No. 1: Lehmann's Purported Failure to Define Insurance Coverage ........................................................................... 4

    B. New Opinion No. 2: Lehmann's Purported Failure to Consider Appropriate Ratemaking and Pricing Techniques ................. 5

    C. New Opinion No. 3: Lehmann's Purported Failure to Establish or Estimate a Market Price ..................................................... 6

    D. New Opinion No. 4: Purported Misapplied Testing Data Contrary to Actuarial Standard of Practice No. 38 ............................... 7

    E. New Opinion No. 5: A Hypothetical Insurance Policy Is Not an Appropriate Measure of Damages..................................................... 8

    F. Braithwaite Relies on Scores of New Documents and Sources Not Available to or Relied on by Letourneau ........................ 9

IV. CONCLUSION ......................................................................................... 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs move to strike[1] certain opinions of Defendant J-M Manufacturing, Inc.'s ("J-M") substitute expert, Paul Braithwaite, on the grounds that the new opinions (i) exceed the scope of those offered by J-M's former actuarial expert, Charles Letourneau, (ii) are based on new data on which Letourneau did not rely, and (iii) violate the Court's April 23, 2018 Order.

On April 23, 2018, in response to Letourneau's refusal to participate further in these proceedings, the Court ordered that J-M could substitute Paul Braithwaite as an actuarial expert, but only to the extent that he offered opinions on the same "subject matter that Letourneau previously addressed." (*See* 4/23/18 Civ. Mins. [Dkt. 2454] at 1.) The new opinions expressed in the April 27, 2018 expert report of Paul Braithwaite exceed the scope of permissible opinions and are a blatant attempt by J-M to get a "second bite at the apple" months after the close of expert discovery.[2] In addition to the procedural and substantive prejudice these new opinions impose, Braithwaite's new opinions levy a substantial and costly burden on Plaintiffs and their expert in order to prepare a response. This also undermines the premise of the Court's order accepting Defendant's representation to the Court that the impact of

---

[1] Plaintiffs expressly reserve the right to seek to exclude in the future any opinion offered by Braithwaite on the basis that it violates the *Daubert* standard. Based on the timing of his report, Mr. Braithwaite's opinions were not included in the parties' Daubert motions set for hearing on June 21, 2018. Once the Court resolves this motion, Plaintiffs will take the deposition of Mr. Braithwaite on the opinions and subject matters the Court rules he may offer, and following the deposition Plaintiffs will file a motion in *limine* to exclude such of his opinions, if any, that Plaintiffs believe are contrary to that ruling or that are subject to exclusion on *Daubert* grounds.

[2] *See* 4/23/18 Civ. Mins. [Dkt. 2454] at 1 ("Braithwaite can only discuss the subject matter that Letourneau previously addressed, and anything falling outside of that subject matter will be stricken.")

"incremental costs" would be minimal. (*See* 4/23/18 Civ. Mins. [Dkt. 2454] at 5.)[3] Braithwaite's new opinions, as set forth herein, violate the Court's Order and should be stricken.

## II. FACTS

J-M's former actuarial expert, Charles Letourneau issued a Report and Surrebuttal Report on November 18, 2016 and April 14, 2017, respectively. (*See* 11/18/16 Letourneau Rpt. [Dkt. 2367-3 at 133], 4/14/17 Letourneau Surrebuttal Rpt. [Dkt. 2367-3 at 157].) Expert discovery closed on July 21, 2017. (*See* 6/20/17 Order Modifying Deadlines [Dkt. 2328].) On April 23, 2018, the Court permitted J-M to substitute Paul Braithwaite so long as he limited his opinions to the same subjects previously addressed by Letourneau: "Braithwaite can only discuss the subject matter that Letourneau previously addressed, and anything falling outside of that subject matter will be stricken." (4/23/18 Civ. Mins. [Dkt. 2454] at 1.)

On April 27, 2018, Braithwaite issued a report containing five new and expanded opinions that venture far beyond the subject matters offered by J-M's former actuarial expert, Charles Letourneau. (4/27/18 Braithwaite Rpt. (Declaration of Anna Milunas ("Milunas Decl."), Ex. A).) Specifically, Braithwaite's report offers new opinions on Steve Lehmann's purported (1) failure to prepare a detailed insurance policy with defined coverage terms (Section III, pp. 4-5[4]); (2) failure to consider special techniques for commercial lines ratemaking (Section V, pp. 11-12); (3) failure to conduct a market study or establish a realized marked price (Section VI, pp. 13-14); (4) misapplication of data from Paschal and Edwards (Section VII, pp. 16-17); as well

---

[3] Plaintiffs hereby request that the Court order now that all costs associated with Braithwaite's substitution, including but not limited to Plaintiffs' deposition fees, witness preparation fees, expert fees and costs, and legal fees and costs, be borne by J-M.

[4] All section references are to Mr. Braithwaite's Report, dated April 27, 2018, attached as Exhibit A to the Milunas Declaration.

1  as (5) an opinion that an insurance policy is not a reliable measure of economic
2  damages (Section X, pp. 22-24).  In addition, Braithwaite reviewed and relied on
3  scores of documents, testimony, and expert opinions that were not relied upon by
4  Letourneau or ever incorporated into his opinions.  (*Compare id.* at p. A-iv (App. B)
5  *with* Letourneau Rpt. at App. B [Dkt. 2367-3 at 152] and Letourneau Surrebuttal Rpt.
6  at Materials Relied on [Dkt.2367-3 at 163].)

7        The parties met and conferred on the subject matter of this motion, from May 9
8  to May 15, 2018, but were unable to reach a resolution.  (*See* 05/09/18 Letter from A.
9  Milunas to D. Bernick (Milunas Decl., Ex. B); 05/15/18 Ltr. from D. Bernick to A.
10 Milunas (Milunas Decl., Ex. C).)

11 **III.  THE COURT SHOULD STRIKE BRAITHWAITE'S NEW OPINIONS**

12       Under the Court's Order, J-M's substituted expert is only permitted to offer
13 opinions on the same subjects upon which J-M's former expert offered opinions.
14 Applicable case law from multiple jurisdictions confirms the correctness of the
15 Court's Order.  *See Great American Restaurant Co. v. Domino's Pizza LLC*, 2010
16 U.S. Dist. LEXIS 52631, at *4-7 (E.D. Tex. May 28, 2010) (recognizing importance
17 of limiting the scope of a substitute expert's testimony to prevent the reopening of
18 discovery and to prevent causing prejudice to the opposing side); *Roberts v. Galen of*
19 *Va., Inc.*, 325 F.3d 776, 782-84 (6th Cir. 2003) (allowing substitution of an expert
20 witness, but affirming district court's grant of a motion in limine to restrict the
21 substitute's testimony to the scope of the former's); *Dennis v. Sherman*, 2010 U.S.
22 Dist. LEXIS 106502, at *31-32 (W.D. Tenn. Oct. 4, 2010) (granting defendants'
23 motion in limine to restrict the testimony of plaintiff's replacement expert to the scope
24 of the former expert's opinions because it strikes a "'sensible compromise [that]
25 allow[s] [the party] to replace its expert without unfairly surprising [its opponent] with
26 unexpected new opinions.'"); *Adams v. Cooper Indus.*, 2007 U.S. Dist. LEXIS 99057
27 (E.D. Ky. Apr. 5, 2007) (striking substitute expert's testimony to the extent it went
28 beyond the scope of former expert's testimony); *Baumann v. Am. Family Mut. Ins.*

*Co.*, 278 F.R.D. 614, 616 (D. Colo. 2012) (substitute expert's opinions "should not stray from the subject matter" of the original expert's opinions, and if the substitute attempts to address new material, the opponent may file a motion to exclude that testimony); *CSITRO v. Buffalo Tech.*, 2009 U.S. Dist. LEXIS 7426, at *6-7 (E.D. Tex. Feb. 3, 2009) (allowing substitute expert report but not a substitute expert: "[E]ven if McNair were to adopt some of Bagby's prior opinions, McNair could not purport to have reached those opinions in the same way."); *Kallassy v. Cirrus Design Corp.*, 2006 U.S. Dist. LEXIS 34347, at *6 n.3 (N.D. Tex. May 30, 2006) (although not addressing the question of replacement expert testimony, evaluating the Federal Rules of Evidence regarding expert testimony and noting, "Particularly instructive is the parenthetical [in the advisory committee notes to Rule 701] 'noting that 'there is no good reason to allow what is essentially surprise expert testimony.' [sic] and that 'the Court should be vigilant to preclude manipulative conduct designed to thwart the expert disclosure and discovery process[.]'" (internal citations omitted)).

Thus, each of Braithwaite's new opinions – opinions that exceed the scope of Letourneau's – should be excluded.

### A. New Opinion No. 1: Lehmann's Purported Failure to Define Insurance Coverage

J-M's substituted expert opines for the first time – nine months after the close of expert discovery – that Lehmann's actuarial opinions are wholly unreliable because Lehmann did not prepare and propose a specific, detailed insurance policy to accompany Lehmann's proposed indicated premium. (Braithwaite Rpt. at 5-6 (Milunas Decl., Ex. A).)

J-M's former expert Letourneau never opined that it was necessary for an actuary to draft a comprehensive insurance policy in order to properly estimate a premium, nor did Letourneau ever challenge the reliability of Lehmann's opinions due to the absence of a discussion or consideration of specific policy language. In fact, during his deposition, Letourneau was explicit that (i) it is not the job of an actuary to

draft insurance policy terms and (ii) actuarial estimates, like the one performed by Lehmann, do not take the form of an insurance policy. (Letourneau Dep. Tr. at 66:20-67:13 (Milunas Decl., Ex. D).) Letourneau also opined that Lehmann's proposed coverage was akin to self-insurance and that "self-insured entities do not issue insurance policies." (Letourneau Rpt. [Dkt. 2367-3 at 137].)

J-M is not now permitted to use Braithwaite in order to present a new and contrary opinion that Lehmann's failure to draft a specific insurance policy renders Lehmann's actuarial opinions unreliable. The fact remains that Lehmann's report specifies what losses his proposed premium covers and Letourneau never opined as to any defect in this regard. Accordingly, this new and contradictory opinion by Braithwaite violates the Court's Order and should be stricken.

### B. New Opinion No. 2: Lehmann's Purported Failure to Consider Appropriate Ratemaking and Pricing Techniques

Braithwaite also offers a new opinion that Lehmann's premium calculations are flawed due to his purported failure to undertake "special techniques" for commercial lines ratemaking that Braithwaite claims include (1) consideration of concrete policy terms and conditions, (2) a developed market price, and (3) specific credibility techniques. (Braithwaite Rpt. at 11-12 (Milunas Decl., Ex. A).) Braithwaite also criticizes Lehmann's use of the "pure premium formula." (*Id*.)

Letourneau's prior reports and deposition testimony are devoid of any opinion that Lehmann should have considered other "special" commercial pricing techniques, nor did Letourneau offer any opinion as to such specific commercial pricing considerations that Braithwaite now says should have been considered. With respect to ratemaking, Letourneau's challenge to Lehmann's opinions centered only on Lehmann's alleged failure to consider the J-M Eagle warranty and on the "zero" value he assigned to Plaintiffs' "observed experience." (Letourneau Rpt. at 6-8 [Dkt. 2367-3 at 140-142].) Further, in direct conflict with Braithwaite, Letourneau stated in his surrebuttal that his ratemaking criticisms are "not based on [Lehmann's] use of the

5

pure premium formula." (Letourneau Surrebuttal Rpt. at 1 [Dkt.2367-3 at 158].) The fact that Letourneau opined generally that Lehmann used a "non-standard approach" and relied on "non-standard data" does not permit Braithwaite to now opine that that specific and "special" commercial pricing techniques must have been used by Lehmann. (*See* 05/15/18 Ltr. from D. Bernick (Milunas Decl., Ex. C) (citing Letourneau Rpt. at 4 [Dkt. 2367-3 at 137] and suggesting Letourneau's reference to "non standard" approaches opened the door to Braithwaite's new testimony).) Braithwaite's opinions on these issues far exceed those offered by Letourneau and are not permitted.

### C. New Opinion No. 3: Lehmann's Purported Failure to Establish or Estimate a Market Price

Braithwaite also asserts that Lehmann's premium calculations are unreliable because he failed to establish a proper market price as a result of not conducting a full marketplace study that specifically identified: (1) actual market rates for a pipe replacement policy, (2) insurance companies willing to quote a premium for Lehmann's proposed policy, and (3) similarly situated plaintiffs that have self-funded or sought from an insurer an insurance policy to protect against the risk of pipe failure. (Braithwaite Rpt. at 13-14 (Milunas Decl., Ex. A).)

Letourneau, however, never opined that Lehmann should have canvassed the insurance marketplace to identify willing insurers or parties with experience insuring similar risks with failing pipe, nor did Letourneau opine that Lehmann's failure to do so rendered his premium calculation unreliable. Rather, the extent of Letourneau's opinion with respect to the insurance marketplace was that Lehmann allegedly failed to investigate existing rates for *warranty* insurance (Letourneau Rpt. at 4-5 [Dkt. 2367-3 at 137-38]), that 100-year terms are "not used in property and casualty insurance," and that "it would be incumbent on Mr. Lehmann to show, through an approved rate filing [with the CA Dept. of Insurance] that policies with a 100-year term are used and are available in the property and casualty insurance industry."

6
EXEMPLAR PLAINTIFFS' MOTION TO EXCLUDE NEW OPINIONS OF PAUL BRAITHWAITE

1367828

(Letourneau Surrebuttal Rpt. at 2 [Dkt. 2367-3 at 159].)  As a *substituted* expert, Braithwaite should not be permitted to insist upon Lehmann's purported need to rely on specific marketplace data that Letourneau himself never identified.

### D. New Opinion No. 4: Purported Misapplied Testing Data Contrary to Actuarial Standard of Practice No. 38

Braithwaite also offers a new opinion in paragraph 52 of his report that challenges the statistical reliability of the testing data from James Paschal and Dale Edwards as a means of estimating future pipe failure rates.  Specifically, he opines that there is no basis to assume that "every stick of pipe that does not meet certain test standards will fail" (Braithwaite Rpt. at 16 (Milunas Decl., Ex. A)), that Lehmann's assumptions were inconsistent with the opinions and deposition testimony of Paschal and Edwards (*id.*), and that Lehmann's reliance on that data was a substantial deviation from Actuarial Standard of Practice 38.  (*Id.* at 17.)

While Letourneau did previously offer a critique that Lehmann's opinions were contrary to ASOP No. 38 because Lehmann allegedly failed to *document* his understanding of the Paschal and Edwards engineering models (Letourneau Rpt. at 11-13 [Dkt. 2367-3 at 144-46]; Letourneau Surrebuttal Rpt. at 2-4 [Dkt. 2367 at 159-61]), Letourneau's only suggestion that Paschal and Edwards' tests were not statistically reliable was confined to a single canned reference at deposition that was clearly uttered at the behest of J-M's lawyers[5].  (*See* Letourneau Dep. Tr. at 176:18-25, 177:1-25, 178:1-3, 7-16 (Milunas Decl., Ex. D).)  Braithwaite's opinions on ASOP 38 now far exceed the limited comment Letourneau made at his deposition, which notably did not incorporate a review of Paschal and Edwards' models or the bulk of

---

[5] Because that opinion was not disclosed in either of his written disclosures, it did not form a portion of his admissible expert opinions under Rule 26 and is subject to exclusion.  Fed. R. Civ. P. 26(a)(2), (e); *see also* Fed. R. Civ. P. 37(c)(1); *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("[E]xclusion is an appropriate remedy . . . .").

7
EXEMPLAR PLAINTIFFS' MOTION TO EXCLUDE NEW OPINIONS OF PAUL BRAITHWAITE

their deposition testimony, which Braithwaite asserts to have done.[6] And, while Plaintiffs do not object to Braithwaite offering an opinion, however inaccurate, on the purported failure to document Lehmann's understanding of the models pursuant to ASOP 38, under the Court's Order, Braithwaite is not permitted to exceed the scope of Letourneau's opinions and offer new opinions on the entirely separate issue of the statistical reliability of Paschal or Edwards' tests. These expanded opinions pertaining to ASOP 38 must be excluded.

### E. New Opinion No. 5: A Hypothetical Insurance Policy Is Not an Appropriate Measure of Damages

In the final section of his report, Braithwaite introduces a new opinion on the appropriateness of an insurance policy as a measure of damages. (Braithwaite Rpt. at 22-24 (Milunas Decl., Ex. A).) Specifically, he opines that an insurance policy is not an appropriate measure of damages, that "Mr. Lehmann offered no precedent for using the cost of an insurance policy as a measure of damages," and that the insurance damages measure is misaligned with the damages sought by Plaintiffs. (*Id*.)

Setting aside the fact that Braithwaite is unqualified to render an opinion on what constitutes economic damages (a legal question reserved for the Court), it is without question that this opinion was never offered by J-M's predecessor expertLetourneau. Additionally, Braithwaite's opinion on this issue is cumulative of the opinions offered by J-M's economics and damages expert Daniel Fischel. Accordingly, Braithwaite should be foreclosed from offering any opinion on this issue, and this portion of his report should be stricken.

---

[6] At his deposition Letourneau stated that he did not independently assess or assign a level of credibility to either of Paschal or Edwards' test results. (*See* Letourneau Dep. Tr, at 153:22-154:7 (Milunas Decl., Ex. D).) Further, when asked at his deposition whether he intended to offer an opinion on this issue, he sidestepped the issue and later admitted that he did not perform any actuarial analysis of the issue. (*See id*. at 191:11-192:7; 193:2-5).

### F. Braithwaite Relies on Scores of New Documents and Sources Not Available to Or Relied on by Letourneau

J-M's substitute expert relies on reports, deposition testimony, and pleadings that were not relied on by Letourneau. (*Compare* Braithwaite Rpt. at p. A-iv, App. B (Milunas Decl., Ex. A), *with* Letourneau Rpt. at App. B [Dkt. 2367-3 at 152], and Letourneau Surrebuttal Rpt. at Materials Relied on [Dkt. 2367-3 at 163].) The fact that Braithwaite relies upon materials that were available to Letourneau but that Letourneau expressly declined to rely upon, further demonstrates that Braithwaite's opinions go well beyond the scope of Letourneau's opinions. A substitute expert should not be permitted to use or rely upon materials that were available but not relied upon by the predecessor expert through the date of his withdrawal from this matter. To the extent that there are any materials that became available after Letourneau's withdrawal, Plaintiffs do not object to Braithwaite relying upon them as long as they are not used to render new opinions beyond the scope of Letourneau's opinions.[7] To hold otherwise would fly in the face of the Court's Order and permit J-M to take unfair advantage of its own negligence: allowing the formulation of new opinions by a new expert because, as the Court will recall, J-M failed to pay its prior expert in a reasonable and timely manner.

### IV. CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court issue an order precluding Defendant's expert Braithwaite from offering new opinions that

---

[7] While some of the material that Braithwaite purports to rely upon (in particular the recent summary judgment briefing) was not available to Letourneau at the time Letourneau wrote his expert reports, virtually all of it was available to Letourneau prior to J-M first notifying the Plaintiffs and the Court on February 22, 2018 that a substitution might be necessary. Accordingly, the language and spirit of the Court's April 23rd Order dictate that Braithwaite not be permitted to rely upon any materials that pre-date February 22, 2018 unless Letourneau relied upon them, and in no event be permitted to render new opinions based on material that post-date February 22, 2018.

(1) Lehmann purportedly failed to prepare a detailed insurance policy with defined coverage terms; (2) Lehmann purportedly failed to consider special techniques for commercial lines ratemaking; (3) Lehmann purportedly failed to conduct a market study or establish a realized marked price; (4) Lehmann misapplied data from Paschal and Edwards; and (5) Lehmann's work does not represent a reliable measure of economic damages.  Consistent with the Court's April 23, 2018 Order, Plaintiffs also request all fees and costs incurred in connection with the preparation of this motion,[8] as well as all other fees arising from Braithwaite's substitution.  A proposed order consistent with the relief requested herein is attached.

**Local Rule 5-4.3.4(a)(2)(i) Compliance:  Filer attests that all other signatories listed concur in the filing's content and have authorized this filing.**

Respectfully submitted,

DATED:  June 21, 2018         By:  */s/ Susan K. Stewart*
                              ADAM PAUL LAXALT
                              Attorney General
                              SUSAN K. STEWART (State Bar No. 174985)
                              Deputy Attorney General
                              SStewart@ag.nv.gov
                              Attorney General's Office
                              100 North Carson Street
                              Carson City, Nevada  89701-4717
                              Tel: (775) 684-4173 / Fax: (775) 684-1108

                              **Attorneys for State of Nevada**

---

[8] *See* 4/23/18 Civ. Mins. [Dkt. 2454] at 7, n.3.

| | | |
|---|---|---|
| 1 | DATED: June 21, 2018 | By: */s/ Elizabeth J. Sher* |

ELIZABETH J. SHER (Admitted Pro Hac Vice)
esher@daypitney.com
DAY PITNEY LLP
1 Jefferson Road
Parsippany, New Jersey 07054
Tel: (973) 966-6300 / Fax: (973) 966-1015

CYNTHIA E. HUDSON
Chief Deputy Attorney General of Virginia
PETER BROADBENT
Assistant Attorney General
PBroadbent@oag.state.va.us
OFFICE OF THE ATTORNEY GENERAL
COMMONWEALTH OF VIRGINIA
202 North Ninth Street
Richmond, VA 23219
Tel: (804) 786-6055 / Fax: (804) 786-1991

**Attorneys for Commonwealth of Virginia**

DATED: June 21, 2018        By: */s/ Eric R. Havian*

ERIC R. HAVIAN (State Bar No. 102295)
ehavian@constantinecannon.com
HARRY P. LITMAN (State Bar No. 127202)
hlitman@verizon.net
CONSTANTINE CANNON LLP
150 California Street, Suite 1600
San Francisco, California 94111
Tel: (415) 639-4001 / Fax: (415) 639-4002

ELIZABETH J. SHER (Admitted Pro Hac Vice)
esher@daypitney.com
DAY PITNEY LLP
1 Jefferson Road
Parsippany, New Jersey 07054
Tel: (973) 966-6300 / Fax: (973) 966-1015

| | |
|---|---|
| 1 | STUART M. RENNERT (Admitted Pro Hac Vice) |
| 2 | srennert@mckoolsmith.com |
|   | McKOOL SMITH HENNIGAN P.C. |
| 3 | 1999 K. Street, N.W. Suite 600 |
|   | Washington, D.C. 20006 |
| 4 | Tel: (202) 370-8300 / Fax: (202) 370-8344 |
| 5 | |
| 6 | KIRK D. DILLMAN (State Bar No. 110486) |
|   | kdillman@mckoolsmithhennigan.com |
| 7 | THOMAS B. WATSON (State Bar No. 181546) |
|   | twatson@mckoolsmithhennigan.com |
| 8 | McKOOL SMITH HENNIGAN P.C. |
| 9 | One California Plaza |
|   | 300 South Grand Avenue, Suite 2900 |
| 10 | Los Angeles, CA 90071 |
| 11 | Tel: (213) 694-1200 / Fax: (213) 694-1234 |

**Attorneys for Commonwealth of Virginia, Calleguas Municipal Water District, Palmdale Water District and South Tahoe Public Utility District**