1   ADAM PAUL LAXALT
2   Attorney General
    SUSAN K. STEWART (State Bar No. 174985)
3   Deputy Attorney General
    SStewart@ag.nv.gov
4   Attorney General's Office
5   100 North Carson Street
    Carson City, Nevada 89701-4717
6   Tel: (775) 684-4173
7   Fax: (775) 684-1108

8   **Attorneys for State of Nevada**
9   **(AND OTHER PLAINTIFFS/ATTORNEYS AS LISTED ON THE DOCKET)**

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 12  UNITED STATES, THE STATES OF | Case No. ED CV-06-00055-GW(PJWx) |
| 13  CALIFORNIA, DELAWARE, | |
|     FLORIDA, ILLINOIS, INDIANA, | Hon. George H. Wu |
| 14  NEVADA, NEW MEXICO, NEW | |
| 15  YORK, and TENNESSEE, THE | |
|     COMMONWEALTHS OF | |
| 16  MASSACHUSETTS AND VIRGINIA, | **PLAINTIFFS' SUPPLEMENTAL** |
| 17  and THE DISTRICT OF COLUMBIA | **MEMORANDUM OF LAW IN** |
|     <u>ex rel</u>. JOHN HENDRIX, | **OPPOSITION TO J-M'S MOTION** |
| 18  | **FOR JUDGMENT AS A MATTER** |
| 19             Plaintiffs, | **OF LAW** |
| 20      v. | |
| 21  J-M MANUFACTURING COMPANY, | Date: TBD |
|     INC., d/b/a JM Eagle, a Delaware | Time:  9:30 a.m. |
| 22  corporation, and FORMOSA | Location:  Courtroom 9D |
| 23  PLASTICS CORPORATION, U.S.A., | |
|     a Delaware corporation, | Phase 2 Damages |
| 24  | |
| 25             Defendants. | |
| 26 | |
| 27 | |
| 28 | |

## I.    INTRODUCTION

In response to the Court's instruction, Plaintiffs submit this Supplemental Memorandum of Law summarizing their theory of damages, together with a listing and explanation of the specific evidence presented at trial that supports the theory. (2/20/19 Hrg. Tr. at 26:1-15.)

At trial Plaintiffs' damage theory was benefit of the bargain, meaning the difference between the price Plaintiffs paid for the pipe, which was undisputed at trial, and the value of the pipe they received.  As a result of rulings following the close of evidence, Plaintiffs proffered two methods of quantifying the value of the pipe they received: (1) that because the pipe would fail early and need to be replaced at great expense, it had little to no value; and (2) that because no reasonable municipality would purchase noncompliant pipe, it had little to no market value.

As detailed more specifically below, the evidence Plaintiffs were permitted to present to the Jury in support of this theory fell generally into the following categories:

- J-M sold to Plaintiffs non-compliant pipe that lacked the long-term strength and durability of compliant pipe.
- That non-compliance with industry standards was material to Plaintiffs.
- Plaintiffs specified compliant pipe for each of the 26 projects, and they would not have knowingly accepted or paid for non-compliant J-M pipe.
- A significant percentage of J-M's non-compliant pipe will not last as long as compliant pipe and will fail prematurely.
- Plaintiffs did not get the product or the value that they bargained and paid for; instead, they received uncertainty and risk.
- Given the uncertainty, expected premature failures, and "lottery" nature of their sticks of buried pipe, Plaintiffs will incur significant capital

1

SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO J-M'S MOTION FOR JUDGMENT AS A MATTER OF LAW

expenditures to replace pipe that is predicted to fail prematurely, as well as to replace entire pipe lines since break-by-break repairs do not allow Plaintiffs to meet the standard of service they are required to meet.

- The significant cost of replacing pipe that is predicted to fail prematurely will swamp the cost of the pipe itself, thereby entitling Plaintiffs to recoup the full cost of the buried sticks of pipe.

In adjudicating J-M's renewed motion for judgment as a matter of law, the only question for the Court is whether the Phase 2 Jury would have a "legally sufficient evidentiary basis" to find for Plaintiffs on the question of Plaintiffs' entitlement to damages. Fed. R. Civ. P 50(a); *Dugan v. Nance*, 2013 U.S. Dist. LEXIS 177076, at *12 (C.D. Cal. Dec. 16, 2013) (court applies the same standard in deciding a JMOL motion as it would summary judgment).[1]  In deciding whether to grant judgment as a matter of law, "[t]he evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007) (reversing district court's granting of motion).

Based on the evidence that was presented, a reasonable jury could have concluded that the pipe Plaintiffs purchased had less value than the pipe they were

---

[1] The Court has already denied J-M's Motion for Summary Judgment seeking the same relief. <u>United States v. J-M Mfg. Co., Inc.</u>, 2018 WL 1801258, at *13 (C.D. Cal. Apr. 12, 2018) ("it will be up to the jury to weigh the evidence presented by Plaintiffs, *i.e.* testimony that a municipality would never pay for non-compliant pipe, with that of Defendant, *i.e.* the pipe has performed admirably to date, and come to a conclusion as to the value of the non-compliant pipe").  And the Court has expressly said that it will not reconsider its Summary Judgment ruling in connection with this motion, (*see* 2/2/2019 Tent. Op. "the Court notes at the outset that it will not use the JMOL hearing or briefing to reconsider any prior rulings made during the pendency of this case. This includes rulings regarding . . .  motions for summary judgment.) Thus the ***only*** way that J-M could succeed on its JMOL motion is to identify specific evidence ***not offered at trial*** that the Court relied on in denying Summary Judgment. *See Dugan*, 2013 U.S. Dist. LEXIS 177076, at *12.

2

SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO J-M'S MOTION FOR JUDGMENT
AS A MATTER OF LAW

1   promised and thus that J-M's fraud caused at least some compensable damage to

2   Plaintiffs.  J-M's renewed motion for judgment as a matter of law thus must be

3   denied.

4   **II.    DESCRIPTION OF PLAINTIFFS' DAMAGES THEORIES**

5          It is settled law that "'[o]rdinarily the measure of the government's damages

6   [under the FCA] would be the amount that it paid out by reason of the false

7   statements over and above what it would have paid if the claims had been truthful.'"

8   *United States v. Mackby*, 339 F.3d 1013, 1018 (9th Cir. 2003) (citation omitted),

9   *cert. denied*, 541 U.S. 936 (2004).  *See also United States v. Woodbury,* 539 F.2d

10  370, 379 (9th Cir. 1966) ("The measure of damages the United States is entitled to

11  recover under the FCA is the amount of money the government paid out by reason of

12  the false claims over and above what it would have paid out if the claims had not

13  been false or fraudulent."); *United States v. Sci. Applications Int'l Corp.*, 626 F.3d

14  1257, 1278 (D.C. Cir. 2010) ("In calculating FCA damages, the fact-finder seeks to

15  set an award that puts the government in the same position as it would have been if

16  the defendant's claims had not been false."); *United States v. Rogan*, 459 F. Supp. 2d

17  692, 720 (N.D. Ill. 2006) (citing both *United States ex rel. Compton v. Midwest

18  Specialties*, 142 F.3d 296 (6th Cir. 1998) and *United States ex rel. Roby v. Boeing

19  Co.,* 302 F.3d 637 (6th Cir. 2002)) (internal citations and quotations omitted).

20         Thus, the appropriate damages inquiry is straightforward.  Once liability has

21  been established, the finder of fact determines (1) the amount of money the

22  government paid out by reason of the false claims versus (2) what it would have paid

23  out if the claims had not been false or fraudulent.  *See Rogan,* 2006 WL 8427270, at

24  *21 ("FCA damages typically are liberally calculated to ensure that they afford the

25  government complete indemnity for the injuries done to it. . . The computation of

26  damages does not have to be done with mathematical precision but, rather, may be

27  based upon a reasonable estimate of the loss." (quoting both *United States ex rel.*

28

SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO J-M'S MOTION FOR JUDGMENT AS A MATTER OF LAW

*Compton,* 142 F.3d at 304 and *United States ex rel. Roby,* 302 F.3d at 646) (internal quotation marks omitted)).

While reserving their objections to the Court's prior rulings limiting their case and damage theories at trial, Plaintiffs submit they offered more than sufficient evidence for a reasonable jury to conclude that the price Plaintffs paid for their J-M pipe far exceeded any purported value it had.

**A.    Plaintiffs Presented Evidence that the Pipe Is Worth Less Because It Is Predicted to Fail Prematurely and Will Need to Be Replaced Earlier and at Great Expense.**

Plaintiffs presented evidence regarding (a) the lifespan of compliant pipe; (b) the diminished lifespan of J-M pipe; and (c) the substantial costs Plaintiffs are likely to incur when they are required to repair or replace J-M's non-compliant pipe prematurely, costs that would swamp the remedy that the Court ultimately permitted Plaintiffs to pursue, namely the cost of the pipe itself.   (See Sher Decl., Exs. 1, 2, and 3).[2]  In addition, Plaintiffs introduced evidence that the predicted failures of J-M pipe would require them to replace all of the J-M pipe in their pipelines, further supporting Plaintiffs' entitlement to the total cost of the pipe they purchased.  *See* Sher Decl., Ex. 7.

A jury could have concluded from all of this evidence that the true "value" of J-M's pipe was severely diminished due to the need to expend significant sums to replace it far earlier than the 100 years that standards-complaint pipe should last.[3]

_____

[2] Plaintiffs consistently testified that they relied on their retained experts to quantify and calculate their damages.  *See* Sher Decl., Ex. 6.

[3] J-M's claim that Plaintiffs ***subsequently*** received value from using the pipe in the intervening years is not an argument about the market price for non-compliant pipe. It is an argument for offset, which is J-M's burden to establish.  *Humane Soc'y*, 2013 WL 4713557, at *16  ("Following the general principle that "the burden of any uncertainty in the amount of damages should be borne by the [alleged breaching party]," the Court agrees with the United States that it is Cattleman's burden to

1   Indeed, a jury could have concluded that these increased risks and repair costs

2   associated with using the pipe meant that it had little or no value in the market.  *See*

3   *United States v. Mackby*, 339 F.3d 1013, 1019 (9th Cir. 2003) (noting "Congress

4   specifically rejected a 'no harm, no foul' argument"); *Humane Soc'y*, 2013 WL

5   4713557, at *8 ("some courts find where it is impossible to determine the value of

6   nonconforming goods, the court must award the full amount of the government's

7   payment for the goods as the appropriate measure of damages.").

8          J-M's sole objection to this argument is that because the pipe has worked

9   properly for some period of time, Plaintiffs cannot prove as a matter of law that the

10  anticipated repair costs would result in a reduced or zero market value for the pipe.

11  J-M's position is factually unsound and contrary to governing law.  *See United*

12  *States ex rel. Roby v. Boeing Co.*, 302 F.3d 637, 647-48 (6th Cir. 2002) (assessing the

13  value of a helicopter delivered with defective hears at "zero," notwithstanding that

14  the Army had already gotten many hours of us of it).  When the government's costs

15  to repair and replace a fraudulently supplied goods is greater than the cost or

16  conceivable value of the goods themselves, a party may argue for zero value.  *Sci.*

17  *Applications Int'l Corp.*, 626 F.3d at 1278-80 (noting that "the government remains

18  free to argue that the value of SAIC's advice and assistance was completely

19  compromised by the existence of undisclosed conflicts, making the full amount paid

20  to SAIC the proper measure of damages").  Moreover, where damages are

21  impossible to quantify for nonconforming goods, the government also can argue that

22  there is no established value.  *United States ex rel. Humane Soc'y of the U.S.*, 2013

23  WL 5753784, at *8 ("some courts find where it is impossible to determine the value

24  of nonconforming goods, the court must award the full amount of the contract).

25  _____

26  prove" offset) (quoting *Adray v. Ardy–Mart, Inc.*, 76 F.3d 984, 989 (9th Cir.1996).
    Despite J-M's arguments, the Court has already confirmed this.  (*See* 2/22/18 Hrg.

27  Tr. at 31:5-7 ("[I]nsofar as anything such as offsets and things of that sort, that is
    defense burden.  That is just a given.").

28

SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO J-M'S MOTION FOR JUDGMENT AS A MATTER OF LAW

1
2

**B.    Plaintiffs Presented Evidence that Plaintiffs Would Not Have Paid for Non-Compliant Pipe**

3    Plaintiffs also introduced evidence that they would not have purchased J-M's
4  pipe had they known it was non-compliant with industry standards, and that the
5  market price of pipe that was not manufactured or tested to "assure that it uniformly
6  complied in terms of long-term strength and durability" was little or nothing.  *See*
7  Sher Decl., Ex. 5.  This was further supported by the Phase 1 materiality finding
8  (given to the Phase 2 Jury) that neither Plaintiffs, nor any reasonable municipality,
9  would have purchased J-M pipe had they known the truth.  *J-M Mfg.*, 2018 WL
10  705532, at *10.[4]  This evidence supports a claim for damages that is well-established
11  in the FCA case law. *United States ex rel. Compton v. Midwest Specialties*, 142 F.3d
12  296, 304 (6th Cir. 1998) ("The record demonstrates that the brake shoe kits delivered
13  by Midwest to the Army were completely valueless, . . . because none of them came
14  with the quality assurance of a product that had been subjected to periodic
15  production testing.") (emphasis added); *United States ex rel. Humane Soc'y of U.S.*
16  *v. Hallmark Meat Packing Co.*, 2013 WL 5753784, at *13 (C.D. Cal. Apr. 30, 2013)
17  (full contract price available for goods unavailable for government purchase without
18  false certifications); *United States ex rel. Feldman v. Van Gorp,* 697 F.3d 78, 92 (2d
19  Cir. 2012); *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008).
20
21

22  _____
[4] In addition, Plaintiffs proffered an expert, Rafael Ortega, who offered such
23  opinions in his Phase 2 expert report and would have testified that Plaintiffs do not
24  and cannot acquire pipe that does not uniformly comply with the standards, had the
Court not disallowed his testimony on relevance grounds.  A summary of what Mr.
25  Ortega would have said is contained in his expert report and an excerpt is attached at
26  Sher Decl., Ex. 4.  Similarly, the Court did not permit Mr. Cathcart to testify
concerning his opinion that no licensed professional engineer for an agency could
27  allow non-compliant pipe to be used in agency  projects, as explained in his Phase 2
28  expert report at 1.1-1.2.

6

1    Based on all of this evidence, the Phase 2 Jury was entitled to conclude that

2  Plaintiffs had suffered at least some damage from J-M's proven fraud.

3  **Local Rule 5-4.3.4(a)(2)(i) Compliance:  Filer attests that all other signatories**

4  **listed concur in the filing's content and have authorized this filing.**

5                                         Respectfully submitted,

6

7  DATED:      2/28/2019          By: /s/ Susan K. Stewart

8

9                                         ADAM PAUL LAXALT
                                         Attorney General
10                                        SUSAN K. STEWART (State Bar No. 174985)
                                         Deputy Attorney General
11                                        SStewart@ag.nv.gov
12                                        Attorney General's Office
                                         100 North Carson Street
13                                        Carson City, Nevada  89701-4717
14                                        Tel: (775) 684-4173
                                         Fax: (775) 684-1108
15

16                                        **Attorneys for State of Nevada**

17  DATED:      2/28/2019          By:  /s/  Elizabeth J. Sher
18                                        ELIZABETH J. SHER (Admitted Pro Hac Vice)
                                         esher@daypitney.com
19                                        DAY PITNEY LLP
20                                        1 Jefferson Road
                                         Parsippany, New Jersey 07054
21                                        Tel: (973) 966-6300
22                                        Fax: (973) 966-1015

23                                        CYNTHIA E. HUDSON
24                                        Chief Deputy Attorney General of Virginia
                                         PETER E. BROADBENT
25                                        Assistant Attorney General
26                                        PBroadbent@oag.state.va.us
                                         OFFICE OF THE ATTORNEY GENERAL
27                                        COMMONWEALTH OF VIRGINIA

28

SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO J-M'S MOTION FOR JUDGMENT
AS A MATTER OF LAW

202 North Ninth Street
Richmond, VA 23219
Tel: (804) 786-6055
Fax: (804) 786-1991

ERIC R. HAVIAN (State Bar No. 102295)
ehavian@constantinecannon.com
HARRY P. LITMAN (State Bar No. 127202)
hlitman@verizon.net
CONSTANTINE CANNON LLP
4 Embarcadero Center, 14th Floor
San Francisco, California 94111
Tel:  (415) 766-3589
Fax:  (650) 636-9709

STUART RENNERT (Admitted Pro Hac Vice)
srennert@mckoolsmith.com
McKOOL SMITH HENNIGAN P.C.
1999 K. Street, N.W. Suite 600
Washington, D.C. 20006
Tel: (202) 370-8300
Fax: (202) 370-8344

KIRK DILLMAN (State Bar No. 110486)
kdillman@mckoolsmithhennigan.com
THOMAS B. WATSON (State Bar No. 181546)
twatson@mckoolsmithhennigan.com
McKOOL SMITH HENNIGAN P.C.
One California Plaza
300 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Tel: (213) 694-1200
Fax: (213) 694-1234

**Attorneys for Commonwealth of Virginia**

8

DATED:      2/28/2019            By: /s/  Elizabeth J. Sher

ELIZABETH J. SHER (Admitted Pro Hac Vice)
esher@daypitney.com
DAY PITNEY LLP
1 Jefferson Road
Parsippany, New Jersey 07054
Tel: (973) 966-6300
Fax: (973) 966-1015

ERIC R. HAVIAN (State Bar No. 102295)
ehavian@constantinecannon.com
HARRY P. LITMAN (State Bar No. 127202)
hlitman@verizon.net
CONSTANTINE CANNON LLP
4 Embarcadero Center, 14th Floor
San Francisco, California 94111
Tel:  (415) 766-3589
Fax:  (650) 636-9709

STUART RENNERT (Admitted Pro Hac Vice)
srennert@mckoolsmith.com
McKOOL SMITH HENNIGAN P.C.
1999 K. Street, N.W. Suite 600
Washington, D.C. 20006
Tel: (202) 370-8300
Fax: (202) 370-8344

KIRK DILLMAN (State Bar No. 110486)
kdillman@mckoolsmithhennigan.com
THOMAS B. WATSON (State Bar No. 181546)
twatson@mckoolsmithhennigan.com
McKOOL SMITH HENNIGAN P.C.
One California Plaza
300 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Tel: (213) 694-1200
Fax: (213) 694-1234

**Attorneys for Calleguas Municipal Water District, Palmdale Water District, and South Tahoe Public Utility District**

SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO J-M'S MOTION FOR JUDGMENT AS A MATTER OF LAW