UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 06-55-GW-PJWx | Date | October 1, 2020 |
|---|---|---|---|

| Title | *United States of America, et al. v. J-M Manufacturing Company, Inc.* |
|---|---|

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Terri A. Hourigan | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Elizabeth J. Sher | David M. Bernick |
| Kirk Dillman | Shoshana Bannett |
| Susan K. Stewart | Frank Fletcher |
| Eric R. Havian | |
| Harry Litman | |
| Ellen Head | |
| Peter Broadbent | |

**PROCEEDINGS:**   **HEARING ON CIVIL PENALTIES**

Court hears oral argument. The Tentative circulated and attached, is adopted as the Court's Final Ruling. The Court sets a hearing on Plaintiffs' motion for attorneys' fees for December 21, 2020 at 8:30 a.m. Plaintiffs initial brief is to be filed by November 2, 2020. Defendant's response is to be filed by November 23, 2020. Plaintiffs' reply will be due on or before December 7, 2020.

:   30

Initials of Preparer   JG

<u>United States et al v. J-M Manufacturing Company, Inc.</u>; Case No. 5:06-cv-00055-GW-(PJWx)
Tentative Ruling on Civil Penalties

## I. Background[1]

This False Claims Act/*qui tam* ("FCA") lawsuit was originally brought on behalf of over 190 federal, state, and local governmental entities. *See United States et al v. J-M Manufacturing Company, Inc.* Case No. 5:06-cv-00055-GW-(PJWx), 2020 WL 4196880, *1 (C.D. Cal. June 6, 2020). Five entities from California, Nevada and Virginia were selected as exemplar plaintiffs and a "Phase One" trial was conducted on three elements required to establish liability under a FCA claim, *i.e.* falsity, materiality, and scienter.[2] *Id.* The jury in the Phase One trial returned a verdict in favor of the five exemplar plaintiffs. Eventually, a Phase Two trial was conducted on the issue of actual damages.[3] During the Phase Two trial, the parties stipulated that the Court would adjudicate the issue of civil penalties. The Phase Two jury could not reach a verdict on actual damages and the Court declared a mistrial. *See* ECF No. 2765. Defendant J-M Manufacturing Company, Inc. ("J-M") filed a Renewed Motion for Judgment as a Matter of Law ("JMOL"). *See* ECF No. 2809. The parties agreed that the Court should not decide the issue of civil penalties until after ruling on the JMOL. *See* ECF Nos. 2807, 2820, n. 1 at 3 of 4. On June 5, 2020, this Court granted the JMOL. *See* 2020 WL 4196880, *41.

In response to the Court's request (*see* ECF No. 2880), the parties filed a Joint Status Report (*see* ECF No. 2881) wherein they, *inter alia*, noted that they had already briefed a number of issues in regards to civil penalties and this Court had already made certain rulings on those issues which were located at the following entries in the case docket: ECF Nos. 2638, 2639, 2699, 2675, 2678, 2680, 2681, 2735, 2741 and 2754. *See* Attachment A, ECF No. 2881-1. The Court asked for final cross-motions on the civil penalties which the parties have provided in addition to a joint

---

[1] The following abbreviations are used for the filings: (1) Plaintiffs' Brief on Phase One Verdict ("Pl. Verdict Br."), ECF No. 2393; (2) Court Ruling on Phase One Verdict ("Phase One Ruling"), ECF No. 2414; (3) Court Ruling on Defendant's JMOL ("JMOL Ruling"), ECF No. 2880; and (4) Defendant's Brief on Civil Penalties ("J-M Br."), ECF No. 2886.

[2] The five Exemplar Plaintiffs are: (1) Calleguas Municipal Water District in California; (2) City of Norfolk, Virginia; (3) City of Reno, Nevada; (4) Palmdale Water District in California; and (5) South Tahoe Public Utility District in California.

[3] Under most FCA statutes, the prevailing plaintiff is entitled to: (1) actual damages arising from the false claim (which is, in turn, subject to a multiplier), and (2) civil penalties in a set range as to each false claim. *See e.g.* 31 U.S.C. § 3729(a)(1).

stipulation addressing the number of penalties and relevant dates of claims.  *See* ECF Nos. 2885, 2886, 2888, 2895, 2896, 2902.

In the Joint Stipulation re: Civil Penalties ("Stipulation"), it is stated that: "The parties stipulate to a total of 26 claims for payment – one claim per project – for the purposes of civil penalties."[4]  *See* Stipulation at 1, ECF No. 2902 at page 2 of 6.  The 26 claims were delineated as follows: "1 claim for Calleguas Municipal Water District (CA); 2 claims for Norfolk (VA); 2 claims for Reno (NV); 8 claims for Palmdale Water District (CA), and 13 claims for South Tahoe Public Utility District (CA)."  *Id.*  It was further stated that: "[t]he parties stipulate that all 26 claims are pre-2007 for purposes of determining the applicable statutory penalty ranges."  *Id.* at 2.

## II.  Applicable Law

As to FCA civil penalties, the language in the California statute differs from the Nevada and Virginia enactments.  Under the California False Claims Act ("CFCA"), civil penalties are imposed based upon each false claim that is submitted to the governmental entity.  During the applicable time period herein, California Gov. Code § 12651(a) provided that: "A person who commits any of the following acts . . . *may* be liable to the state or political subdivision for a civil penalty of up to ten thousand dollars ($10,000) *for each false claim*[.]" Cal. Gov. Code. § 12651(a)(2) (effective to Oct. 12, 2007) (emphasis added).  Thus, under the CFCA, civil penalties are only based upon the number of false claims not upon the number of false records or statements made.  *See Fassberg Construction Co. v. Housing Authority of City of Los Angeles*, 152 Cal.App.4th 720, 736-37 (2007).[5]

---

[4] The Plaintiffs stated that they were agreeing to the stipulation after an adverse ruling on their contention that the number of claims for purposes of the imposition of civil penalties as to the Reno, Nevada and Norfolk, Virginia entities should be based on the number of J-M pipes they received which were stamped with the C900 or C905 mark.  *See* Stipulation at 2, n.1.  Although entering the Stipulation, Plaintiffs reserved their right to appeal that ruling.  *Id.*

[5] As stated in *Fassberg*,:

> The California False Claims Act distinguishes a "claim" from a "record or "statement." The term "claim" is defined in Government Code section 12650, subdivision (b)(1), quoted *ante*, without reference to the terms "record" or "statement." The terms "record" and "statement" are not defined in the act. Section 12651, subdivision (a) describes eight prohibited acts for which treble damages may be awarded, four of which refer to either "a false claim" or "a false record or statement." The statute imposes treble damages on a person who "(1) Knowingly presents or causes to be presented to an officer or employee of the state or of any political subdivision thereof, *a false claim* for payment or approval. [¶] (2) Knowingly makes, uses, or causes to be made or used *a false record or statement* to get a false claim paid or approved by the state or by any political subdivision [****].  (*Ibid.*, italics added.)

2

Additionally, during the relevant period herein, the CFCA stated that a person violating the statute "*shall* be liable to the state or to the political subdivision for three times the amount of damages which the state or the political subdivision sustains because of the act of that person." *See* Cal. Gov. Code § 12651(a) (effective in 2006), *as quoted in Thompson Pacific Construction, Inc. v. City of Sunnyvale*, 155 Cal.App.4th 525, 546 n.6 (2007).  In 2007, the CFCA was amended in regards to civil penalties to read in relevant part that a person "may be liable to the state or political subdivision for a civil penalty of *not less than five thousand dollars* (*$5,000*) and not more than ten thousand dollars ($10,000) for each false claim."  *See* Stats 2007 ch 577 § 5, 2007 Cal. AB 1750 (emphasis added).  In 2009, the CFCA was again amended to make the imposition of a civil penalty mandatory by changing "may" in the text to "shall" and also changing "for each false claim" to "for each violation."  *See* Stats 2009 ch 277 § 2, 2009 Cal. AB 1196.

The applicable Nevada False Claims Act statute ("NFCA") − which was in effect during the relevant time period herein – is Nevada Rev. Stat. 357.040.  Section 357.040 stated that:

> a person who, with or without specific intent to defraud, does any of the following listed acts is liable to the State or a political subdivision, whichever is affected, for three times the amount of damages sustained by the State or political subdivision because of the act of that person, for the costs of a civil action brought to recover those damages and for a civil penalty of not less than $2,000 or more than $10,000 for each act:
>
> (a)  Knowingly presents or causes to be presented a false claim for payment or approval.
>
> (b)  Knowingly makes or uses, or causes to be made or used, a false record or statement to obtain payment or approval of a false claim.

Effective on July 1, 2007, the minimum civil penalty was increased to $5,000.  *See* 2007 Nev. Stat. 454, 2007 Nev. SB 529.

The applicable Virginia False Claims Act statute ("VFCA") – which was in effect during

---

> Government Code section 12651, subdivision (a) states that a person who commits any of the "acts" listed in subdivision (a) is liable for treble damages.  Those "acts" include knowingly presenting "a false claim" and knowingly presenting "a false record or statement to get a false claim paid or approved," as stated ante.  The statute states, however, that a civil penalty may be imposed not for each "act," but for "each false claim." (*Ibid*.)  We construe the statute in accordance with the plain meaning of the statutory language. (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190.)  Section 12651, subdivision (a) clearly distinguishes "a false claim" from "a false record or statement" and authorizes a civil penalty only for "each false claim."  Section 12655, subdivision (c) states that the California False Claims Act "shall be liberally construed and applied to promote the public interest," but no liberal construction can alter the plain meaning of the statute in this regard.

152 Cal.App.4th at 736-37 (footnotes omitted.).

3

the relevant time period herein – is Va. Code Ann. § 8.01-216.3 which stated that:

> A. Any person who:
>> 1. Knowingly presents, or causes to be presented, to an officer or employee of the Commonwealth a false or fraudulent claim for payment or approval;
>>
>> 2. Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Commonwealth; * * * *
>
> shall be liable to the Commonwealth for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages sustained by the Commonwealth.

In 2007, the civil penalty range was increased from $5,000-$10,000 to $5,500-$11,000. *See* 2007 Va. Acts ch 569, 2006 Va. SB 1183.

**III. Discussion**

    A. <u>The number of penalties</u>

Given the language of the CFCA during the period covered by this litigation and the holdings of the California courts on the issue (*see, e.g.*, *Fassberg*, 152 Cal.App.4th at 736-37), Plaintiffs have conceded that, as to the California plaintiff agencies, the pre-2010 CFCA only authorized a civil penalty for each false claim submitted by J-M. *See* Plaintiffs' Submission of Authorities Regarding the Jury's Determination of the Number of Statutory Penalties, ECF No. 2638 at pages 7-8 of 10.

As to the Reno, Nevada and Norfolk, Virginia entities, Plaintiffs originally sought an award of civil penalties of between $5,000 and $11,000 for *each* of the 2519 pieces of pipe from J-M that they had received which were stamped with an AWWA C900 or C905 mark and used in one of their projects.[6] After extensive briefing and a number of hearings on the issue, the Court ruled that placement of "C900" or "C905" on a segment of pipe by J-M was not a presentment of false or fraudulent claim for payment nor a false record or statement to get a payment of a false claim because: (1) the Phase One jury verdict did not find that the AWWA C900/905 stamp on the pipe constituted a false claim, record or statement; (2) there was no testimony from any Reno, Nevada or Norfolk, Virginia witness that they had relied on any stamp or mark on the J-M pipe; and (3) none of the contracts involved as to the exemplar Plaintiffs required that J-M mark the pipe to indicate or represent compliance with the AWWA standards − indeed, as to this latter point,

---

[6] The range of civil penalties under Plaintiffs' position would be between $12,595,000 and $27,709,000. *See* ECF No. 2754 at 4.

Section 6.3 of the AWWA Standards for C900 and C905 pipe states that "[t]he manufacturer shall, if so specified by the purchaser, furnish an affidavit that all delivered products comply with the requirements of this standard and of the purchaser" (*see* Trial Exhibits AWWA-004 and AWWA-007), but none of the exemplar Plaintiffs requisitioned that specification.[7] *See* Ruling on Civil Penalties at 2-3, ECF No. 2754 at pages 3-4.

In light of the consensus as to the California law and the Court's ruling on the stamping of J-M pipe in regards to Reno, Nevada and Norfolk, Virginia, the Plaintiffs stipulated to one claim per project − which totals 26 − as the number of claims that would be the subject of the Court's ruling on civil penalties. *See* 11/14/2018 Trial Transcript at 47-48, ECF No. 2858.

> B. <u>Whether J-M in fact made any false or fraudulent claim and is therefore liable under the FCA</u>

To prevail on an FCA claim, a plaintiff must prove three elements: "(1) a 'false or

---

[7] The Plaintiffs have not located and this Court has not found any case which held that each mechanical marking of a product with a purportedly misleading mark can give rise to a separate imposition of an FCA civil penalty. However, there is one case where the defendant did intentionally apply a false mark of compliance on hundreds of its supplied goods but that misfeasance was not used to impose hundreds of individual civil penalties.

In *United States v. Bornstein*, 361 F. Supp. 869 (D. N.J. 1973), a contractor obtained a contract to provide radio kits for the federal government, where the kits were required to contain certain electron tubes which were to have been inspected at their place of manufacture and marked with a code which indicated compliance with specifications and the inspection requirement. *Id.*, 361 F.Supp. at 871-72 n.2. In turn, the contractor subcontracted with the defendant to supply those tubes. In providing those items, defendant obtained tubes from sources which did not meet the specification/inspection requirements, but the defendant had them falsely marked as being compliant. *Id.* Defendant was shown to have made three separate shipments to the contractor of a total of 397 falsely marked tubes with 21 packing lists where each shipment included a "certificate of compliance" confirming the specifications and testing. *Id.* at 872-74. The contractor submitted 35 invoices to the United States which in turn issued eight vouchers in payment. *Id.* at 873. The operative FCA statute at the time required a $2,000 "forfeiture" from "Any person . . . [1] who shall . . . cause to be made . . . or cause to be presented, for payment or approval, to . . . any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, or any department . . . thereof, knowing such claim to be false, fictitious, or fraudulent, [2] or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any . . . voucher . . . claim, certificate, affidavit . . . knowing the same to contain any fraudulent or fictitious statement . . . ." *Id.* at 874. The government sought 38 forfeitures which included: (1) *one* forfeiture for the act of acquiring non-compliant tubes and falsely branding them and (2) 35 forfeitures for each of the invoices submitted by the contractor to the United States. *Id.* at 878. The district court denied forfeiture as to the mismarking explaining that "since the Act proscribes the submission of fraudulent claims for payment to the United States, the Court does not reach the question whether falsely branding the tubes in and of itself constitutes a violation of the Act." *Id.* However, the court did award $70,000 for the 35 invoices that were submitted to the United States. *Id.* at 879.

On review by the Third Circuit Court of appeals (*see* 504 F.2d 368) and on certiorari to the Supreme Court (423 U.S.303), even though it was noted that each of the tubes had been "falsely marked," neither the Third Circuit nor the Supreme Court considered whether the false marking of each tube could be considered as creating a basis for the imposition of a separate civil penalty for each tube so marked.

5

fraudulent' claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with knowledge that the claim was false." *United States v. Mackby*, 261 F.3d 821, 826 (9th Cir. 2001) (citing 31 U.S.C. § 3729(a)(1)).  In Phase One of the bifurcated trial – the liability phase – the jury "found for the Exemplar Plaintiffs on all three issues and as to all of the 26 projects identified."  Phase One Ruling at 2.  Specifically, the jury found that: "(1) [J-M] represented that it 'uniformly' complied with AWWA C905 and UL1285 . . . ; (2) J-M's statements of uniform compliance were knowingly false; and (3) the misrepresentations were material."  *Id.*

Despite the Phase One jury's findings that all three FCA elements were met, J-M argues that the Court's JMOL ruling precludes an award of civil penalties.  According to J-M, this Court "reject[ed] the factual predicates of the Phase One finding of falsity" and therefore the Phase One jury's finding of liability must be "deemed modified to render it consistent with the subsequent [JMOL] ruling."  J-M Br. at 2, 6.  Essentially, J-M argues that it is not liable for any FCA violation.

Simply stated, J-M misreads this Court's JMOL ruling.  The Court did not actually nor implicitly set aside the Phase One jury's finding as to the falsity element.  The Court merely held that, accepting the Phase One jury's finding of liability under the FCA, the Plaintiffs failed to establish a basis for determining or calculating the amount of actual damages under the FCA statutes.  In so doing, it did not find that actual damages could never be proven.  Rather it concluded that, "Plaintiffs failed to provide evidence at the Phase Two trial from which a reasonable jury could make a finding of an award of actual damages under the FCA that would not be erroneous as a matter of law, be totally unfounded and/or be purely speculative."  *See* 2020 WL 4196880, *41.

Additionally, a plaintiff's inability to establish actual damages does not detract from its ability to meet the requirements for an FCA claim, including the falsity element.  As has been frequently noted, a qui tam/FCA plaintiff need not prove that the government will suffer any monetary harm in order to state a claim under the FCA.  *See, e.g., Bly-Magee v. California*, 236 F.3d 1014, 1017 (9th Cir. 2001) ("[A] qui tam plaintiff need not prove that the federal government will suffer monetary harm to state a claim under the FCA.").

Base on the above, the Court rejects J-M's contention that "the Court's JMOL Ruling (Dkt. 2880) precludes any finding that there were any false claims for payment."  *See* ECF No. 2902 at 3 of 6.

6

C. <u>The appropriate amount for civil penalties</u>

The federal and state FCAs all leave it within the court's discretion to fix the amount of the civil penalties within the statutory range. *See, e.g.*, *Cook Cnty v. United States ex rel. Chandler*, 538 U.S. 119, 132 (2003). In determining the amount, courts look to the totality of the circumstances. "[T]here is no defined set of criteria by which to assess the proper amount of civil penalties." *United States ex rel Miller v. Bill Harbert Intern. Const., Inc.*, 501 F.Supp.2d 51, 56 n.5 (D.D.C. 2007). Some factors (which courts have considered) include "the egregiousness of the conduct, the government's monetary damages, any other damages that the government might have incurred, the right of the government to be made completely whole, and general fairness," as well as "the gravity of the offense, a defendant's acceptance of responsibility or lack of remorse, the need for deterrence, and possible recidivism." *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, 488 F.Supp.2d 719, 741-42 (N.D. Ill. 2007).

This case presents factors weighing towards both leniency and discipline. In its JMOL ruling, the Court found that Exemplar Plaintiffs had not shown sufficient evidence of *any* actual damages. This greatly weighs in favor of lower penalties. On the other hand, the conduct at issue here was not an isolated incident that affected only obscure and unimportant government functions. It spanned roughly a decade and potentially impacted a huge swath of the country, including critical infrastructure and water systems. Furthermore, J-M continues to insist – even now in its briefing here on civil penalties – that the Phase One jury's finding on falsity was incorrect. *See United States v. Saavedra*, 661 F. App'x 37, 46 (2d Cir. 2016) (finding that defendant's PR statements spinning an adverse jury verdict as "a very significant vindication" constituted "a disturbing refusal to accept responsibility" that cut in favor of higher FCA penalties). Based on these competing considerations, the Court finds that a mid-range figure would be an appropriate amount here.

As stated in the Stipulation, the relevant ranges for the penalties are:

| State | Statute | Penalties Range |
|---|---|---|
| Nevada | <u>Nev. Rev. Stat. Ann. § 21 357.040(1)</u> | $2000-$10,000 |
| California | <u>Cal. Gov. Code § 12651</u> | Up to $10,000 |
| Virginia | Va. Code. Ann. § 8.01-216.3 | $5,000-$10,000 |

7

*See* Stipulation at 2. Based on the foregoing discussion, the Court sets civil penalties of $6,000 per California FCA violation, $8,000 per Virginia FCA violation, and $7,000 per Nevada FCA violation.

### IV. Conclusion

For the reasons stated above, the Court awards civil penalties totaling $192,000 as follows:

1) 22 claims for California projects @ $6,000 = $132,000
2) 2 claims for Virginia projects @ $8,000 = $ 16,000
3) 2 claims for Nevada Projects @ $7,000 = $ 14,000

8