# EXHIBIT A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE GEORGE H. WU, U.S. DISTRICT JUDGE

UNITED STATES OF AMERICA,

        Plaintiff,

  vs.                              Case No. EDCV-06-55-GW

J-M MANUFACTURING COMPANY, INC.,

        Defendants.
_____/


REPORTER'S TRANSCRIPT OF
MOTION FOR ATTORNEY'S FEES
MONDAY, FEBRUARY 1, 2021
11:00 A.M.
LOS ANGELES, CALIFORNIA

_____

TERRI A. HOURIGAN, CSR NO. 3838, CCRR
FEDERAL OFFICIAL COURT REPORTER
350 WEST FIRST STREET, ROOM 4311
LOS ANGELES, CALIFORNIA  90012
(213) 894-2849

1  not just pre-intervention help by the relator, it explicitly
2  contemplates post-intervention help.
3              And in fact, the Justice Department guidelines
4  on determining how much of a relator's reward to get to the
5  relator, explicitly consider how much help the relator's
6  attorneys provided during the litigation.
7              So, it is not uncommon for relator's counsel
8  to -- even with intervening cases -- to devote a huge number of
9  hours post-intervention, and that is exactly what Congress
10 anticipated when it past the statute.
11             There is a great deal of legislative history
12 on this as well as there is case law that discusses it, the
13 *Kelly* case, and the Ninth Circuit discusses it.  The
14 *Abbott-Burdick* case discusses it, and we could cite many other
15 cases to the Court for that particular proposition.
16         THE COURT:  Well, I do cite the *Abbott-Burdick* case
17 to say that there is contemplation of participation by relator
18 after the government intervenes, but I would think that it
19 would be a situation where there would be some sort of
20 expressed relationship that is recognized.
21             So that is what I'm saying; in other words, I
22 don't see a situation where if we have a governmental entity
23 that intervenes, it would have to be either some form of
24 coordination or whatever, otherwise, you would have different
25 captains of the ship, so to speak.

1   MR. HAVIAN:  That's true, Your Honor.
2   THE COURT:  I mean, I indicated if you have that,
3 you know, then, I would say that that would cover the issue.
4   MR. HAVIAN:  Okay.  So just so -- and we're happy to
5 present that either to Your Honor or to the special master, but
6 we certainly can present testimony from us and the governmental
7 entity that did intervene as to what the division of work was
8 going to be between what we would do essentially as counsel for
9 the relator and the tasks we would do for the government.
10   The short answer is we contemplated a very
11 small amount of effort would be extended on behalf of the
12 government entities, in fact, that was why we only charged them
13 5 percent.
14   They paid the relator 28 percent, recognizing
15 he was going to do the lion's share, or we would do the lion's
16 share of the work on behalf of him.
17   You have an example of how that worked in the
18 case of Reno, Nevada.
19   THE COURT:  Okay.  Let me ask, for example, ofttimes
20 some of the payments that were submitted was under the -- the
21 pleadings caption only showed, at least I think they only
22 showed, a state or governmental attorney drafted those papers.
23   So I would presume that work would not be
24 billed.
25   MR. HAVIAN:  We would not seek any -- Your Honor, I

1  think that the way things will pan out in front of the special
2  master is it will become quite clear the government attorneys
3  did very minimal work on the case.
4              I think typically we put all of our names on
5  the signature box, and we can go back and check that.  I would
6  find it peculiar if we didn't, and so yes, the government
7  lawyers' names were certainly there, but in terms of the hours
8  put in, they were minimal.
9              That was in fact what happened, and the way
10 these cases typically work is we have many other cases we have
11 talked a lot about.
12             The *Armenta* case in the past, which was a
13 somewhat similar case, they all pretty much work the same way.
14             We go in, we say:  We are representing the
15 relator, and we are charging the relator for the bulk of work
16 we are going to do.  We will also represent your interests, if
17 you wish, and if you want to intervene, we will pick up the
18 work for you, but it will be fairly minimal.  The work you will
19 have to do will be fairly minimal, and the work we will do will
20 incrementally be a very small amount of work, because we are
21 going to have to do opposing motions, taking discovery, all of
22 those things we would do, whether you intervened or didn't
23 intervene, and whether we represented you or didn't represent
24 you.  So we are going to charge a modest amount for that as a
25 contingency of five percent.

1    But you can see how this works in the case of
2    Nevada, Reno.  We did not represent them.  They represented
3    themselves.  Nonetheless, we did virtually all of the work that
4    benefited Nevada, Reno.
5    Their lawyers did occasionally do some things,
6    and, of course, we're not going to bill for that time.  And I
7    will give you one example, Ms. Stewart, who is not on the call
8    today, defended some of the depositions, I believe, on behalf
9    Reno, Nevada.  We also attended, but she took the lead role on
10   those.
11   So that is some pretty discrete work and that
12   would be the exception.  She might have spent some time
13   reviewing a draft of something we wrote, but it was always the
14   case, virtually 100 percent of the time that we wrote it.
15   And, you know, the vast majority of the work
16   we did benefited everybody, frankly, because everybody had --
17   for instance, when we opposed J-M's many motions to overturn
18   the Phase One verdict, we filed those briefs on behalf of
19   everyone, and they benefited everyone.
20   It would be impossible to try to tease out how
21   much of that work benefited the Commonwealth of Virginia, how
22   much of it benefited the relator, all of these entities had
23   exactly the same interests in most of these issues.
24   There were a few exceptions, and we would note
25   those, and we might not seek fees for those.

1   THE COURT: Let me just pick an example of
2   something; for example, if I looked at one of the more recent
3   filings, if you look at Docket Number 29-20, which is the
4   plaintiff's response to J-M's sur-reply in further support of
5   the plaintiff's entitlement to the attorney's fees, the
6   attorneys that are listed, well, the attorneys that are listed
7   in the cover is just Ms. Stewart and Mr. Ford from the Nevada
8   Attorney General's Office.
9   　　　　Although, Ms. Sher also signed off on part of
10  it, and there are other plaintiff's attorneys listed
11  thereafter.
12  　　　　How would something like that be treated,
13  then?
14  　　MR. HAVIAN: Your Honor, I will note that on the
15  same caption -- go head, Beth.
16  　　MS. SHER: I was going to explain, Your Honor. This
17  is Elizabeth Sher.
18  　　　　The way that we did all of the papers that
19  Mr. Havian alluded to, and partly was a result of conversation
20  we had with you a long time ago, was that we would use Nevada
21  with the first named, and we would use Nevada as the named put
22  in the upper left of the caption, so that it would be clear on
23  whose side plaintiff's side was being filed.
24  　　　　Because it was being filed on everyone's
25  behalf, if that was the case, we would put their names as well

1  on the caption, so it would be clear for whose benefit the
2  pleading was being filed.
3              So in the early days, you not only saw those
4  names, but you also saw the names of counsel who were
5  representing other parties, like Best Best and Krieger or
6  Ms. Lisboska for San Jose.
7              When it got to the time when we were only
8  dealing with the five exemplar plaintiffs, and we put the names
9  of the counsel who were representing those particular
10 plaintiffs on the record, so Ms. Stewart would be listed as
11 counsel for Nevada, but it isn't a reflection of who did the
12 work.
13         THE COURT: All right.  Well, as I have indicated, I
14 would not preclude the situation whereby if the intervenors --
15 not the intervenors -- but the relator's counsel have an
16 understanding insofar as the division of work and the recovery
17 of attorney's fees, then, you know, that is something that, as
18 the case has indicated, you can have that situation.
19             I would just simply, however, require that
20 that be delineated in some fashion so that is intelligible so
21 somebody can understand who gets to do what and what is
22 recoverable in that regard.
23         MR. BERNICK: Your Honor, can I speak to that?
24         THE COURT: Sure.
25         MR. HAVIAN: Excuse me, Mr. Bernick, if I could

1  finish, and I will respond very quickly, I will turn it over to
2  you.
3              I just want to point out, Your Honor, that on
4  the first page of the pleading you point to -- it does say
5  right underneath the signature block for the State of Nevada,
6  it says "attorneys for the state of Nevada, paren, and other
7  plaintiff's attorneys as listed on the docket, and the
8  signature block at the end.
9          THE COURT:  I see that, I did notice that.
10             Again, it's just a question as to what the
11 understanding is so that it's clear to whomever is going to
12 have the obligation to look at all of the stuff at some point
13 in time, what is and what is not recoverable.
14         MR. HAVIAN:  We would be happy to provide that, Your
15 Honor.
16         THE COURT:  All right, Mr. Bernick?
17         MR. BERNICK:  Yes.  So I don't think it's really up
18 to counsel to decide, particularly after the fact under any
19 circumstances how to allocate their time so that it maximizes
20 the recovery directly against the defendant as opposed to their
21 being able to be paid out of the proceeds that go to the
22 intervenors, who are the only parties who are going to get the
23 proceeds.
24             The relator is not going to get proceeds here
25 of any kind of recovery that there was.

1 So, Your Honor, in the tentative, two things:

2 One, is Your Honor was crystal clear that the
3 only attorney's fees recoverable are those performed for the
4 relator personally.  That is what it says.

5 It also says, this is reflected in the
6 billing, which is as it should be.

7 So, I'm kind of curious, No. 1, whether there
8 was any billing to the relator here or whether all of the bills
9 actually went to the intervenors.

10 It's the billing that should control.

11 And then further, Your Honor has made that
12 distinction, not simply as a matter of convention, but what the
13 law actually says from the statute is saying.

14 Your Honor now has a tentative that says it is
15 only the relator that can recover attorney's fees, it's not
16 anybody else.

17 And if that distinction means anything, it
18 means the services must really be performed for the relator
19 personally, not for the benefit of the intervenors.

20 So, if that distinction is going away, you
21 know, that legal analysis in the tentative is wrong.

22 And being back in the position where I know
23 Your Honor suggests in the tentative that the outcome of the
24 tentative was there would be a fairly modest recovery from Day
25 Pitney firm.

1          So there would have to be work that would be
2   done for those plaintiffs who the governmental entities did not
3   intervene in this case.
4          The problem is very, very complicated in this
5   situation because there are so many different parties and
6   different, I guess, variations, but I do agree with Mr. Havian,
7   that, you know, if there are -- if there is an arrangement
8   between the intervening governmental entity and the relator,
9   relator's counsel, that goes towards this issue --
10         MR. BERNICK:  Well, Your Honor, let me just make two
11  quick points.
12         THE COURT:  Yes.
13         MR. BERNICK:  No. 1, if you take a look at your
14  tentative at the beginning in the middle of the page that says,
15  "this case presents a slight wrinkle," and you continue on to
16  the top of page 10, it says exactly what I said, which is it's
17  only for those matters that are billed to the relator that the
18  fees can be recovered from the defendant and explains exactly
19  why; that is No. 1.
20         So, Mr. Havian says that is made up and all of
21  the usual kind of rhetoric that characterizes this case, I'm
22  just saying your tentative says exactly what I said and the
23  opposite of what he said.
24         No. 2, Your Honor also makes a point that we
25  made in the briefs, which is that the only fees that can be

1                    Your Honor has said they can also consider
2    public awareness.
3                    So it seems to me that Your Honor ought to
4    clarify -- it's not strict proportionality but it is
5    proportionality.
6                    Your Honor believes that obviously the award
7    or the absence of award is consequential says, "well, we should
8    also consider greater awareness, but the test should be
9    proportionality to those things."  Right now, there is no test
10   in the opinion.
11            THE COURT:  Well, that is a problem because --
12            MR. BERNICK:  It's a very difficult -- Your Honor,
13   if I could finish, and I will shut up.
14            THE COURT:  Sure.
15            MR. BERNICK:  Yes, so it doesn't say that there is a
16   proportionality rule.  It just leaves the lodestar and
17   reasonableness, and that is not tied to any outcome.
18                    And then the further problem is how in the
19   world is the special master going to determine proportionality
20   to awareness?
21                    Even if there is -- there is no evidence in
22   the case of any award -- there is no record that anybody is
23   aware that the standards were violated and this is a big deal.
24   There has been minimal coverage of the thing.
25            THE COURT:  Well, actually I would disagree with

1  What they now want to say, I'm sorry, so what
2  they now want to say and Your Honor seems to be convinced of is
3  that even though the judgment is against them, they can still
4  get attorney's fees because they won on certain issues.
5          THE COURT:  No, counsel.
6          MR. BERNICK:  Okay.
7          THE COURT:  You are mischaracterizing the situation.
8  Again, I don't know how many times I can repeat this to you.
9  You are mischaracterizing the situation.  They prevailed on
10 liability and they prevailed on civil penalties, they did not
11 prevail on actual damages.
12         MR. BERNICK:  Fine, so.
13         MR. HAVIAN:  Your Honor, we have cited cases.
14         MR. BERNICK:  In the outcome of the case, the
15 judgment is for $160,000, that is what the judgment is for.
16 There is no other relief, that is what now has to go into the
17 analysis that Your Honor recognizes is required under *Hensley*,
18 which is to the extent the plaintiff's success is a crucial
19 factor in determining the proper amount of an award of
20 attorney's fees.
21         They lost all aspects of this case, the
22 penalties stuff, which we also disagree.  That becomes the
23 touchstone of what benefit that accrued to this litigation.
24         They now want to come in with two orders of
25 magnitude more -- three, four, or five orders of magnitude more

1        MR. BERNICK:  No, we bore the risk of loss, and we
2  paid attorney's fees throughout, we bore the risk of loss, and
3  the loss was very, very significant.
4        THE COURT:  Let me stop you.  The only attorney's
5  fees -- let me stop you, the only attorney's fees we're talking
6  about at this point in time, Mr. Bernick, is at the Phase One
7  primarily, where it's clear there is no argument that the
8  defendant lost it, hands down.
9             There is no argument there that your client
10 lost, hands down.
11            Now, if you want to argue something else about
12 now, about -- they are asking for attorney's fees, if they are
13 asking for everything they have done in this case, which they
14 clearly are not at this point in time.
15       MR. BERNICK:  It is called the Rules Enabling Act,
16 which says the fact of bifurcation can't change legal rights.
17            And of course, fees and costs are legal
18 rights, and then most prominently it is the law school fact
19 that if you try a case, you have to win on all issues before
20 you win.  And in this case --
21       MR. HAVIAN:  Your Honor, I'm just concerned that --
22       MR. BERNICK:  They won on three issues, but all of
23 this is very simple.
24            We're asking for the Court to be clear on what
25 the test is, what is the proportionality test.