

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

**HONORABLE GEORGE H. WU, U.S. DISTRICT JUDGE**

UNITED STATES OF AMERICA,
et al,

                    Plaintiff,

    vs.                       Case No. CV 06-055-GW

J-M MANUFACTURING COMPANY,
INC.,

                    Defendants.
_____/

**REPORTER'S TRANSCRIPT OF**
**TELEPHONIC HEARING ON MOTION FOR**
**ATTORNEY'S FEES**
**THURSDAY, JUNE 3, 2021**
**11:00 A.M.**
**LOS ANGELES, CALIFORNIA**

_____

**TERRI A. HOURIGAN, CSR NO. 3838, CCRR**
**FEDERAL OFFICIAL COURT REPORTER**
**350 WEST FIRST STREET, ROOM 4311**
**LOS ANGELES, CALIFORNIA  90012**
**(213) 894-2849**

```
 1                    APPEARANCES OF COUNSEL:

 2

 3    FOR THE PLAINTIFF:  COMMONWEALTH OF VIRGINIA, CALLEGUAS
      MUNICIPAL WATER DISTRICT, PALMDALE WATER DISTRICT, SOUTH
 4    TAHOE PUBLIC UTILITY DISTRICT

 5        CONSTANTINE CANNON LLP
          BY:  ERIC R. HAVIAN
 6             HARRY LIMAN
          Attorneys at Law
 7        150 California Street, Suite 1600
          San Francisco, California  94111
 8
          DAY PITNEY LLP
 9        BY:  BETH SHER
          Attorney at Law
10        1 Jefferson Road
          Parsippany, New Jersey  07054
11
          MCKOOL SMITH HENNINGAN P.C.
12        BY:  Kirk Dillman
          Attorney at Law
13        One California Plaza
          300 South Grand Avenue, Suite 2900
14        Los Angeles, California  90071

15

      FOR THE DEFENDANT:  J-M MANUFACTURING COMPANY, INC.
16
          PAUL WEISS RIFKIND WHARTON and GARRISON LLP
17        BY:  DAVID M. BERNICK
          Attorney at Law
18        1285 Avenue of the Americas
          New York, New York  10019
19

20

21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**

1   APPEARANCES (Cont.)

2

3   **FOR THE DEFENDANT:   J-M MANUFACTURING COMPANY, INC.**

4       BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG and RHOW
        BY:  PAUL S. CHAN
5       Attorney at Law
        1875 Century Park East 23rd Floor
6       Los Angeles, California  90067

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      LOS ANGELES, CALIFORNIA; THURSDAY, APRIL 1, 2021

2                      11:00 A.M.

3                       --oOo--

4           THE COURT:  All right.  Let me call the matter as to

5  *J-M Manufacturing.*

6               For the plaintiffs, we have -- Javier got me a

7  list of appearances, so Mr. Litman, Ms. Sher and Mr. Dillman.

8               And then for the defense, we have Mr. Bernick

9  and who else, Javier?

10          THE COURTROOM DEPUTY:  Mr. Chan.

11          MR. CHAN:  Paul Chan also present.

12          THE COURT:  We are here for issues *vis a vis* the

13  attorney's fees.  I have seen the parties' joint statement re

14  procedure and schedule.

15               I guess there is some fundamental issues.  I

16  see the fundamental issues of whether or not the Court is going

17  to attempt to make a ruling on certain threshold legal issues

18  before the submission or before the gathering even of certain

19  information or materials *vis a vis* attorney's fees.

20               And then the other issue is in regards to the

21  sample fee application, which would lead to the creation of the

22  fee application, whether or not the issues that arise from

23  block billing -- which are also to my mind related to the

24  reasonableness of the billing, whether or not those, to what

25  extent those items can be further defined or delineated.

1          Those are two groups of issues that I think

2     are in front of me at this point in time.

3          Let me ask both sides, do both sides agree

4     with that characterization or is there something else that I

5     should be ruling on today?

6          MS. SHER:  For plaintiffs, Your Honor, this is

7     Elizabeth Sher.  We think those are two the primary issues.

8          THE COURT:  For defense?

9          MR. BERNICK:  I agree, I think probably -- if I have

10    the liberty of using my own words, I would phrase them a little

11    bit differently, but those are the issues.

12          THE COURT:  Thank you.

13          Insofar as the first issue is concerned, I do

14    understand the J-M's statement, but I think even though there

15    might have been an initial understanding that there would be a

16    submission of a full fee application to the special master, and

17    thereafter, the parties would litigate some further issues, it

18    seems to me that that probably is going to put the cart before

19    the horse.

20          It seems to me that there are certain of these

21    legal issues I really have to define before the case goes to

22    the special master, because the special master won't be asked

23    to answer those issues.  And also, the answers to some of these

24    issues are going to determine what is contained in the fee

25    applications themselves or itself, so therefore, I really need

**UNITED STATES DISTRICT COURT**

1    to resolve those issues before it goes to the special master.

2                For example, the issue in regards to whether

3    or not the Virginia statute is applied retroactively.  It seems

4    to me that if I say that it is not applied retroactively, well

5    then, the plaintiff's counsel will not be spending a lot of

6    time trying to collect all of the information about that area

7    or the Court would not allow any discovery in regards to that

8    area if discovery should be requested, because again, they

9    would just be out.

10               So it seems to me that I should answer the

11   legal questions of that sort before we try to finalize the fee

12   application and present it to the special master.

13          MR. BERNICK:  Your Honor, this is David Bernick, on

14   the issue of retroactivity.

15               I think I agree with Your Honor.  I think it's

16   a purely legal issue, and it's not going to be formed by the

17   factual materials we're talking about here.  Otherwise --

18          THE COURT:  Okay, sorry?

19          MR. BERNICK:  I was going to address the other

20   issue, but go ahead.

21          THE COURT:  I was going to address the other issue

22   -- well not the other, other issue along the lines of threshold

23   legal issues, because the other one that is raised in regards

24   to whether or not the relator's counsel may recover attorney's

25   fees for work performed on behalf of the relator, but which

```
1    also benefited the individual government entities.

2                    That is one I think I also should rule on, but

3    that one will depend upon the production of these agreements

4    and the supporting declarations, et cetera, et cetera, and

5    after the Court reviews it, then obviously the defense will

6    have to review it.

7                    And if the defense is in disagreement with

8    what the Court tentatively thinks about those agreements, then

9    we would have to have briefing on that, and also, you know, a

10   hearing on that issue as well.

11                   So I would think that that one also is

12   something that should be done prior to the submission of the

13   fee applications to the special master.

14          MR. BERNICK:  If I could respond to that, Your

15   Honor?

16          THE COURT:  Yes.

17          MR. BERNICK:  Here are my thoughts.  So, I think a

18   couple of things on that.

19                   But first of all, just from reading out that

20   proposition where the word is "for the benefit of the relator

21   with incidental benefits or value to the intervening parties,"

22   it's really, in a way, that is a characterization or it's an

23   argument; it's not actually a test.

24                   And I don't know what it means, and it could

25   easily be framed exactly the opposite way around.  You could
```

1    say, well, the real beneficiary here are the intervening

2    parties, and there may be an incidental benefit to the relator,

3    it would be equally ambiguous, so that is Point 1.

4                    Point 2 is that I think that in any of that,

5    if the plaintiffs want to get their application under review at

6    an early date, we were never going, I think, to have a complete

7    record that deals with the legal issue until we have not only

8    the application and not only the declarations and the like from

9    the plaintiffs, but we are going to need discovery here.

10                    In fact, they have declarations that make some

11   kind of statement of what they think the arrangement was

12   outside of the engagement -- the letter agreements for

13   engagement, it's going to present a factual issue and I suspect

14   the letters are as well.

15                    So what I would think is that on a parallel

16   track that they give us the materials they have said they are

17   going to give us, we're going to need discovery on those, and

18   depending upon what the materials say they believe the

19   arrangement was, we are then going to have to go throughout the

20   application and determine really what was for the benefit of

21   the relator and with incidental benefit to the intervenors

22   or --

23              THE COURT:  Let me interrupt you for a second,

24   Mr. Bernick.  I think I understand what you are saying.  You

25   are saying that basically even if -- because the determination

```
 1    is going to have to be made insofar as whether or not there was
 2    some sort of agreement, but to whose benefit it inures and
 3    things of that sort, and we also need to do discovery on, et
 4    cetera, et cetera.
 5            Therefore, we also need to know what is being
 6    done by the particular attorney that -- well, we wouldn't
 7    reserve that, because that would be all part and parcel of the
 8    steps that are already going to be collected anyway.
 9            So in that sense, we could decide the issue
10    maybe before the thing goes to the special master, but we could
11    be processing it along during this period of time before the
12    special master gets a crack at the stuff.
13            MR. BERNICK:  Right.
14            THE COURT:  Let me ask Ms. Sher for the plaintiff,
15    do you have a disagreement with that aspect or that point?
16            MS. SHER:  I do, Your Honor.
17            It's because when this issue has been
18    discussed in the past, as I understood it, and I confess I'm
19    understanding it less today, but when the issue was discussed
20    in the past, Mr. Bernick took the position for J-M that if work
21    benefited a governmental entity once they intervened, that
22    relator's counsel could no longer collect fees.
23            And we took the position, and it's been
24    briefed in earlier submissions that we did, that everything
25    that relator's counsel did as is typical in False Claims Act
```

1    litigation was for the benefit of the relator and would have

2    been done for the relator whether or not the party intervened

3    or didn't, that there were some tasks that were allocated in

4    cases where, whether they were our client or our co-counsel,

5    they undertook certain tasks for themselves and their clients,

6    but that in general, the proposition -- the legal issue that we

7    were discussing and have been discussing is not whether

8    something is incidental or benefited this one more or this one

9    less, it was the basic proposition as it had been stated in the

10   past, if something was -- once a party intervened, if something

11   was done that for that party, whether it was taking a

12   deposition, answering discovery, whatever it might be, that

13   those fees would not be recoverable because it was being done

14   by a party on behalf of the party who had intervened.

15            We took the legal position, and though he said

16   it's sustainable, that everything that is being done by

17   relator's counsel in this context is recoverable to the extent

18   that it was done for relator, by definition it would benefit

19   the other parties that intervened, the relationship with those

20   parties and the understanding, which we will put in writing as

21   the Court has requested, was that relator's counsel would, as

22   they usually do, do the bulk of the work on behalf of relator,

23   and that it would be presented as a unified whole.

24            When we took the deposition of two dozens J-M

25   employees over the course of time, we would have done that work

1    regardless of whether a particular entity intervened, because

2    all of that work benefited the relator and was necessary to

3    getting to the Phase 1 liability trial and ultimate judgment.

4                    And that is going to be true, we maintain, for

5    virtually everything that was done with small exceptions, that

6    we would acknowledge as we went.

7                    So it's our position that this general

8    concept, which is pretty fundamental, should be answered in

9    advance and doesn't require any factual detail because the

10   assumption that both sides are working with is that what we did

11   was for the benefit of the relator, there were parties that

12   intervened, it also benefited them, and therefore, J-M is

13   saying it's not recoverable; we're saying it is.

14                   And that legal issue, if the Court were to

15   agree with J-M and conclude that anything that benefited one of

16   the government entities was not recoverable, then well, I can't

17   say there would no fee application, it would be a very minor

18   fee application at that point, because there is virtually

19   nothing or a very small amount that was done that only

20   benefited the government entities and not the relator.

21                   That is how the statute is set up, that is how

22   we proceeded, that is how our arrangements for our clients

23   were, and for example, the state of Nevada was set up.

24                   In our view, that issue should be decided up

25   front as a legal issue without reference to particular tasks on

 1   a particular day and who they benefited more, whether this

 2   deposition or sitting and defending a deposition of a

 3   particular entity or particular person or taking it, for

 4   example, is going to benefit all of the parties on the

 5   plaintiff's side of the ledger, but it's being done by

 6   relator's counsel for the benefit of the relator.

 7               I don't want to argue that whole motion now.

 8   I understand that is not the point, but that is why we're

 9   saying that issue is virtually dispositive of the fee

10   application going forward, in our view.

11               Then, if the Court doesn't agree with J-M and

12   says that you still look at individual paths and determine for

13   whose benefit it was done, if it was solely -- had nothing to

14   do with the relator and was solely for the benefit of a

15   particular entity, which is hard to imagine, but possible, I

16   suppose, then okay, that might not be recoverable in that

17   circumstance or it might be.

18               But that would be the subject of the later

19   review of the detailed time entries.  We just don't think that

20   it's necessary.

21               The last thing we want to go through, what we

22   tried to explain no matter how we do this, is virtually

23   impossible to do in the way that the Court would prefer with

24   the level of detail, to go through that whole exercise then

25   have the Court conclude it's not recoverable because the work

1  was done for the benefit of the intervenors and not the

2  relator.  Then we have wasted months of effort on an issue that

3  could be decided without reference to the detail.  That is

4  plaintiff's position.

5          THE COURT:  I guess the plaintiff's position is that

6  there is a fundamental legal issue that should be resolved

7  before getting into the more detailed -- I guess woodwork

8  stuff, which is, if we have an intervenor, a governmental

9  entity, can the work that is done by the relator still be paid

10 or recoverable by the relator's counsel, even if it inures to

11 the benefit of the governmental entity since it's -- so long as

12 it inures to the benefit of the relator as well.  I guess that

13 is the issue?

14         MS. SHER:  That is.

15         THE COURT:  I mean, I kind of agree with that,

16 because again, if I do say that it's not, they are not going to

17 get that, then we have basically eliminated large portions of

18 the billing as to certain periods of time, so, I would agree.

19         MR. BERNICK:  Your Honor, before you go on with

20 this, may I be heard on that?

21         THE COURT:  Sure.

22         MR. BERNICK:  Yeah, so Ms. Sher is very ably making

23 lots and lots of assumptions about what the facts are, how the

24 facts emerge after we make the discovery of the declarants, and

25 how the law works, that it's a clean legal issue, precisely as

1    she characterizes it, so it should be decided now, if they are

2    out, they are out, if they are in, they are completely in.

3                    And I don't know where that comes from, this

4    was not -- this is a not a situation where things are decided

5    on the pleadings.  This is factual -- this is a factual

6    application.

7                    And instead of making all of these assumptions

8    so you have abstract issues, Ms. Sher and Your Honor needs to

9    wait and see what the record is going to be and all of the

10   things that she talked about, what the arrangement is,

11   et cetera, et cetera, et cetera.  We don't have to decide it

12   now for the same reason that we asked the Court to decide the

13   matter of proportionality that they should get some part of a

14   $162,000.

15                   Your Honor said, no, we want to go through and

16   make them file the application and do all the rest of that and

17   proportionality is down the road.

18            THE COURT:  No.  She's making the argument that

19   there is a fundamental legal issue as to whether or not they

20   are entitled to anything at all as to this area.

21                   They agree that once, if the Court says you

22   are entitled to something, then the extent of what they are

23   entitled to, will have to be litigated in more detail.

24            MR. BERNICK:  No, no, no, but she's assuming to the

25   contrary.

1              Her oral argument assumes she's right in

2    characterizing what the facts are as well as the law.

3              THE COURT:  No.  I think -- well, let me ask

4    Ms. Sher, I thought you want to argue the fundamental issues.

5              MR. BERNICK:  Your Honor, no, no --

6              THE COURT:  Let me stop, Mr. Bernick.

7              I'm asking Ms. Sher, I want to make sure I

8    understand her argument.  I want to ask Ms. Sher, what is your

9    argument here?

10             MS. SHER:  Your Honor stated the argument that

11   Mr. Bernick doesn't like, but we don't view it as containing

12   factual assumptions.

13             If the Court reads the -- if the legal issue

14   is to assume, even without declarations or what have you, the

15   Court could assume that we did things that we're going to put

16   in declarations for the benefit of the relator that also

17   benefited the other parties.

18             It seems to me that is a given, but we will

19   put in declarations that say that.

20             We will also put in declarations about what

21   expectation was of the workflow, which again, doesn't

22   necessarily require discovery because they are going to say

23   something under oath, and the time sheets themselves eventually

24   will support who did what on whose behalf.

25             J-M's counsel were present at, at least

1    50 percent of what we did, including on both sides of discovery

2    and depositions and everything else, so they know who was doing

3    the work, they know who was present at the deposition.  None of

4    this is actually a secret.

5              So from our perspective, I think the Court has

6    stated correctly, we view this as a legal issue.

7              If Mr. Bernick wants to concede that or

8    abandon the argument that he's made every time we have talked

9    about this issue, which is that if a government entity

10   intervenes that somehow negates relator's counsel's right to

11   get fees, then maybe it's not a fundamental legal issue because

12   we agree that we would be entitled to fees, assuming they were

13   reasonable, they would be recoverable regardless of whom they

14   benefited.

15             But, if he's maintaining the same argument he

16   has made before, which obviously his right to do, but for us

17   that is a strictly legal issue under the False Claims Act as to

18   whether or not the way the Act is written and the way it was

19   carried out when relator's counsel continues to do the work on

20   behalf of the relator, which also benefits and works with the

21   other parties in the case, including multiple clients in many,

22   many cases, does that somehow negate, as a matter of law, the

23   ability to obtain fees?

24             And our view is that legal issue is

25   fundamental to what application we then make, whether it's to

```
 1    you or a special master or anyone else.

 2              MR. BERNICK:  Your Honor, if the argument -- the

 3    same argument that Ms. Sher made at length just now, and it

 4    hasn't gotten any better.

 5                   The fact of saying, this is what the issue is

 6    going to be, and it's fundamental, does not take itself.

 7                   This is not -- this is a case where they are

 8    going to come in with their own declarations, it's going to say

 9    that here is what the deal was, here is what the deal was.  We

10    don't know what those declarations are going to say.

11              THE COURT:  Well, let me just stop -- let me just

12    stop, let me ask this general question, let me stop and ask

13    this general question.

14                   I presume that if we had a situation where you

15    had a governmental entity that does not intervene and the

16    relator litigates that governmental entities' right to recover

17    under the False Claims Act, that the relator's attorney's fees

18    would be recoverable if the relator is successful.

19                   I presume the answer to that question is yes,

20    isn't it?

21              MR. BERNICK:  If the relator remains in control of

22    the litigation, the answer is yes.

23              THE COURT:  Okay.  So, therefore, the issue is if we

24    have a governmental entity that intervenes and the relator is

25    still doing work in the matter, can the relator's attorneys
```

1    recover attorney's fees in that situation?

2            MR. BERNICK:  If you just listen to the words you

3    said, "in that situation."

4            THE COURT:  Yes.

5            MR. BERNICK:  The situation is a factual situation.

6                We don't know what those facts are.  We're

7    going to learn what those facts are.

8            THE COURT:  No, but I agree with you on that.  I

9    agree with you on that, but the question is really is, isn't

10   that an issue that can be put up for resolution prior to the

11   submission to the special master?

12           MR. BERNICK:  Well, yeah, I agree with that.

13           THE COURT:  Okay.  Then the question is, again, I

14   just think that that is an issue that we should resolve,

15   because if in fact, as it turns out, that my answer to that

16   question is going to be no, then the plaintiff's counsel is not

17   going to have to do as much in terms of putting together a fee

18   application, because it's going to be a lot smaller than it

19   otherwise would be.

20           MR. BERNICK:  I totally get it, I'm not sure,

21    but Ms. Sher wants to brief the issue now.

22           THE COURT:  No.  I think she recognizes the fact

23   that it's an issue of law, but the issue of law itself may

24   revolve around the engagement agreements and things of that

25   sort.  I think that is the defense position.

```
 1            MR. BERNICK:  I don't -- I don't -- like all issues,

 2    it's like anything you would decide, yeah, if it requires

 3    development of a factual record, that record may then enable

 4    the Court to find what is then an issue of law, assuming that

 5    the way the factual predicates of that issue of law are not

 6    disputed, right?

 7            THE COURT:  I think Ms. Sher would agree with that.

 8    Am I putting words in your mouth, Ms. Sher?

 9            MS. SHER:  Sorry, I didn't know if you were asking.

10    In general, that would be true.

11                 In this context, I maintain that the factual

12    issues are not necessary to the resolution of the first level

13    issue, which is if the relator's counsel is doing work, other

14    entities have intervened, all of those are undisputed, no

15    amount of discovery is going to change that.

16                 Some of those entities are also clients of the

17    relator's law firms.  No dispute as to that either at this

18    point.  We're talking undisputed facts.

19                 Then the question is as a matter of law does

20    that -- just that alone -- prohibit the relator's counsel from

21    requesting counsel's fees, that is one of the positions --

22            MR. BERNICK:  Your Honor, this is the third time

23    that we have been through this.

24                 She is just saying what she thinks the facts

25    are going to be.  And I don't know what the facts are going to
```

**UNITED STATES DISTRICT COURT**

1  be, Your Honor, Your Honor doesn't know what the facts are

2  going to be, and we're far from --

3          THE COURT:  Let me stop you, Mr. Bernick.  I think

4  that a lot of what she just said, I don't think anybody is

5  disputing.  I don't think that anybody disputes that,

6  you know --

7          MR. BERNICK:  Hang on, hang on.  It's not the point.

8  The point is that -- the point is that she is just saying that

9  those are the facts.

10              There are a lot of other facts that will be

11  there that are of relevance to this, including what the

12  arrangement was.

13              Their essential position is that the relator

14  and the intervenors and their counsel get together and make an

15  arrangement about who is going to do what, and that arrangement

16  should be taken to the bank and be dispositive of who gets what

17  in terms of the fees.

18              We completely disagree with that proposition,

19  right?

20              But at this point in time, we don't even know

21  that that is what the agreement is and what it is based on, so

22  we need to find out.

23              This is not going to make anything faster,

24  they got to get the materials submitted, we will take a look at

25  them, and then we will talk come to the Court and we will talk

1    about it.

2              THE COURT:  I'm not going to require the plaintiffs

3    to give me a full fee application prior to my resolution of

4    that issue, because as I have already indicated --

5              MR. BERNICK:  That is what -- that is obviously Your

6    Honor's prerogative, we are not arguing that point.  We are

7    just not, we don't know what the record is going to look like.

8                   If the record says it makes no difference what

9    is actually done, and whether it does benefit the relator and

10   it does benefit the intervenor, because we have already decided

11   amongst the plaintiff's counsel and the relators and the

12   intervenors -- we have already decided on our own what benefits

13   the relator and what benefits the intervenors, and the Court is

14   required to defer to our factual agreements, then I suppose

15   under those circumstances there is no point in looking at

16   anything because they have already decided what it is that

17   benefits the relator and what benefits the intervenors.

18                   And, Your Honor, it is immune to Your Honor's

19   review, maybe it's their proposition.

20                   I don't know, but there is no point in arguing

21   but this, just make their submission, I'm not suggesting that

22   Your Honor should be required to make a full application.

23                   I'm not saying that, in fact right now, they

24   are not prepared to make a full application.  They are saying

25   they are not going to make the full application.

1          THE COURT:  Let me stop you, Mr. Bernick.  That is

2     the next issue.

3          MR. BERNICK:  They are pretty much related, right?

4     I mean, if they are already done and they are not going to do

5     anymore, then Your Honor could probably take all of this stuff

6     up now in connection what we're going to do is to file a motion

7     to strike their application.

8          THE COURT:  You don't have to argue hyperbole,

9     Mr. Bernick.

10          MR. BERNICK:  It is not hyperbole at all.  They are

11     refusing to submit an application.

12          THE COURT:  We haven't gotten to that issue yet,

13     Mr. Bernick, so I have to delve into that issue.

14          MR. BERNICK:  Okay.  I'm being inpatient here,

15     sorry, go ahead.

16          THE COURT:  Well, everybody is getting a little

17     inpatient, given the length of this litigation.

18               So as I see it, there are two ways, I guess,

19     we could approach it at this point in time.

20               I suppose we could approach it by indicating

21     this is a legal issue that should be resolved beforehand, and

22     earlier, the better.

23               The question is should it be done after the

24     engagement agreements and the supporting declarations are

25     produced, or should it be done based upon what it could be,

```
 1    like an offer of proof as to, you know, generally what those

 2    engagement agreements would say, et cetera.

 3                    I guess, Ms. Sher would be in favor of doing

 4    like an offer of proof type of thing, whereas Mr. Bernick would

 5    probably want to have the actual agreements in, supporting

 6    declarations.

 7             MR. BERNICK:  Well, I want to make it simple.

 8             THE COURT:  Let me stop, let me ask Ms. Sher first,

 9    then I will ask Mr. Bernick.

10             MS. SHER:  Your Honor, I was going to suggest,

11    perhaps to Mr. Bernick's surprise, that it would make sense to

12    me if we are going to make this legal argument, almost in the

13    nature of a summary judgment or declaratory judgment motion on

14    a legal issue that to the extent the relationships and the

15    facts and the engagement agreements are relevant, they would be

16    put in as part of that motion.  We will file it under seal,

17    obviously, but they would be part of the submission, because I

18    think there is no disputed fact as to what they say or what the

19    arrangements were.

20                    I think that the notion of taking discovery of

21    all of this and trying to say, yes, you said this, but didn't

22    you actually attend that deposition or something, is creating

23    the second litigation within a litigation, that the case law

24    says a fee application is not supposed to give rise to.

25                    I also recognize that if we were to say
```

1   something or put something in there that was contradicted by

2   the facts or that the defendant knew not to be the case, they

3   would be able to put in their contradicting declaration.

4           If the Court found on looking at this, that it

5   wasn't resolvable as a matter of law on the facts that are

6   stated, leaving aside the then ultimate review of the entries

7   and what gets done with them in terms of the reasonableness and

8   the ultimate recovery, then the Court is going to say, we're

9   not -- that the Court isn't prepared to say as to a particular

10  item or a particular category or what have you, that it is or

11  isn't recoverable, but the Court should be able to make a

12  determination because it is the fundamental position we have

13  taken all along, whether Mr. Bernick likes hearing it for the

14  fourth time or not, that everything that plaintiff's counsel

15  did was for the benefit of the relator.

16          If no party had intervened, we would

17  presumably have done the same thing.

18          MR. BERNICK:  Well --

19          MS. SHER:  Please don't groan at me.

20          MR. BERNICK:  Well, let me stop.

21          THE COURT:  Let me stop, Mr. Bernick.  Don't

22  interrupt her, she is about to complete her thought.

23          MR. BERNICK:  God bless.

24          THE COURT:  Ms. Sher, what is the remainder of your

25  thought?

1            MS. SHER:  The remainder of my thought is that the

2      process, as it always does on a motion where somebody is

3      arguing that it can be decided as a matter of law with whatever

4      supporting materials they put in, if the Court were to

5      determine that it was not possible to decide it as a matter of

6      law because there were factual issues, as with any kind of

7      summary judgment motion, the Court would tell us that.

8                  We are confident, based on what we know --

9      what we believe to be undisputed facts that that won't be the

10     case, and the Court would be able to make the decision without

11     discovery and without anything other than these materials that

12     we recognize are relevant to what the relationship was.

13            THE COURT:  All right.

14            MS. SHER:  We are prepared to put them as part of

15     this application, so we can get the issue decided before we

16     have to put together a fee application.

17            THE COURT:  Okay.  All right.  The only

18     qualification there is that if you are analogizing it to a

19     summary judgment motion, the opposing party can always make a

20     response that they are unable to reply because they need to do

21     discovery on relevant issues, but putting that aside.

22                  Let me ask Mr. Bernick, what is your response

23     to Ms. Sher's thoughts?

24            MR. BERNICK:  Very simple.  You can't move, you can

25     move for summary judgment, but the motions for summary judgment

1    does not end -- does not, by itself, create any barrier

2    whatsoever.  It's simply they are going first.  You can't grant

3    summary judgment, unless --

4              THE REPORTER:  I didn't get the last part.

5              THE COURT:  I didn't catch that, you can't grant

6    summary judgment because what?

7              MR. BERNICK:  I now said it --

8              THE COURT:  For some reason, Mr. Bernick, we can't

9    hear you.  You said, I'm not granting summary judgment because

10   what?

11             MR. BERNICK:  Well, if I can't be heard, I

12   appreciate you pointing that out.  I will try to speak up a

13   little bit better.  I'm on a cell phone, I'm in a room where if

14   I use the conference call, it's impossible.

15                  What I'm saying is there is no such thing as a

16   motion for summary judgment that bars discovery that is related

17   to that motion, there is no such thing.

18                  So, they file a motion -- if they file a

19   motion for declaration, and then move for summary judgment, I

20   guess, that is what they are talking about, I don't even know

21   that is --

22             THE REPORTER:  He is breaking up and there is other

23   noise.

24             THE COURT:  Let me stop, Mr. Bernick, you are a

25   little bit -- Mr. Bernick, let me stop you for a second.  Let

1   me indicate this, you are slightly wrong in the sense that, you

2   know, unless barred by the Court and barred by a rule of

3   Federal of Civil Procedure, a party can make a motion for

4   summary judgment on any issue that is capable or resolved by

5   motion for summary judgment, and, you know, again, if the

6   opposing party will either respond by opposing it or the

7   opposing party can say, I cannot respond because I need to do

8   discovery and indicate what discovery needs to be done.

9               So, I mean, that is normally the procedure,

10  and so I would presume that if -- this is not exactly a motion

11  for summary judgment, this is just simply a motion, but I think

12  the same law would apply.

13              In other words, the plaintiff would be making

14  the motion on the issue, and if it's determined that there are

15  no legal -- material factual disputes, then the Court will

16  resolve the legal issue, but if the Court makes a determination

17  that there are material issues of facts in dispute such that

18  the legal issue cannot be answered, then I just indicate I

19  can't answer the legal issue.

20              MR. BERNICK:  Your Honor, I --

21              MS. SHER:  Your Honor, could I say something?

22              THE COURT:  Let me stop Ms. Sher.  I directed that

23  question to Mr. Bernick.

24              MR. BERNICK:  I don't know why I'm getting excited

25  because if Your Honor wants to go forward with the process as

**UNITED STATES DISTRICT COURT**

1    described, I'm completely comfortable with that.

2              If that is process where plaintiffs comes

3    forward with their view of the world, their set of facts, and

4    we're not entitled to discovery of facts before a determination

5    is made on the law, I'm not aware of anything --

6         THE COURT:  Well, no, let me stop you.  She's

7    indicating she is going to be supplying with her motion, with

8    the plaintiff's motion, the agreements and the supporting

9    declarations, and so you will have that.

10        MR. BERNICK:  No.  That is the facts that they

11   believe they want -- they believe are dispositive.

12             And no declaration can be taken as being true

13   for purposes of deciding anything on summary judgment.

14        THE COURT:  Well, Mr. Bernick, that is not really

15   true in the sense that usually what happens is a person makes a

16   motion for summary judgment, the other party has a decision as

17   to how they are going to oppose that.

18             And as I have indicated, they can either say,

19   we cannot oppose it at this point in time because we need to do

20   discovery, or they could decide well, they can oppose it, and

21   they can supply their own evidentiary materials in support of

22   their position.

23        MR. BERNICK:  No, no.  When the facts are totally

24   within -- Your Honor, if Your Honor is going to rule, I'm not

25   -- (incomprehensible.)

```
 1              THE COURT:  I'm not making a ruling, Mr. Bernick.
 2   I'm just indicating in terms of what procedurally is going to
 3   be done, and if you are indicating that the defendant can't
 4   respond because it's in a tither because it doesn't know what
 5   to do at that point in time, you can tell me.
 6              MR. BERNICK:  We will respond -- but we're entitled
 7   to discovery on factual submissions.
 8              THE COURT:  Obviously, you would be entitled to
 9   discovery if there is a factual issue that needs or requires
10   discovery on.
11                   In other words, if you are not satisfied with
12   the agreements that were provided, if you are not satisfied
13   with the declarations that are provided, then you can indicate
14   you need to do discovery on those matters, that is not a
15   problem.
16              MR. BERNICK:  That is fine.  That is fine.
17              THE COURT:  Okay.  All right.
18                   Let me ask Ms. Sher, is there any problem with
19   that?
20              MS. SHER:  No, Your Honor.  I just was trying to
21   make the point, which I thought was going to shortcut some of
22   this, but I was using summary judgment as an analogy, I wasn't
23   suggesting anything else.
24              THE COURT:  We understand that.
25              MR. BERNICK:  I don't know -- what rule is governing
```

**UNITED STATES DISTRICT COURT**

1  what we're doing now?

2          THE COURT:  The discretion of the Court to entertain

3  motions for attorney's fees.

4          MR. BERNICK:  No, I need a procedural rule.

5          THE COURT:  The standard rules that apply to

6  motions.

7          MR. BERNICK:  Well, that is -- I mean, Your Honor I

8  just --

9          THE COURT:  I think, Mr. Bernick, you are formalist,

10  that is the problem.

11          MR. BERNICK:  Well, I know, well, it may be, but I

12  have been doing it for many, many years, and it generally tends

13  to be successful.

14          THE COURT:  Well, Mr. Bernick, I have been doing

15  this for many, many years too, and I have been doing this for

16  many, many years as a judge.

17          MR. BERNICK:  Well you asked me, I'm just saying you

18  can call it formalism, you can call me anything you want.  I'm

19  not really arguing -- I'm arguing because people are looking

20  down the road and saying, well, this is how it's all going to

21  work, and I disagree with that.

22          THE COURT:  No, we are not necessarily sure it's

23  going to work, it's just that it seems to me that this way

24  actually accomplishes something more definitely than putting it

25  off later on after doing a lot of other stuff.

```
 1              MR. BERNICK:  I'm not asking to put it off.  I'm not

 2    asking to put it off.  I'm happy that things are going forward.

 3    I'm just not happy when people say, well, we are going to do

 4    this, and then Your Honor is going to rule on that, and we

 5    don't get an opportunity to find out facts that are important.

 6              THE COURT:  We have already indicated, Mr. Bernick,

 7    you will have an opportunity to do discovery if discovery is

 8    required.

 9              If I make the determination that the discovery

10    is not required, well then, I would have made a determination,

11    and I will explain the reasons why I would rule that way, and

12    then if I'm wrong, you can take it on appeal, and if I'm right,

13    then I'm right.

14              MR. BERNICK:  Absolutely.  Absolutely.

15              THE COURT:  All right.

16              MR. BERNICK:  All right.  We have to go through the

17    process.

18              THE COURT:  I'm getting hungry right now, because

19    it's getting near 12, and that will make me really cranky.

20              So I just want to discuss briefly the issue of

21    scheduling insofar as this aspect is concerned and whether or

22    not we would be doing the same schedule for the two issues,

23    which I do not think would be appropriate.

24              I think I would see doing the amendment, the

25    2007 amendments to the Virginia statute, and that could be done
```

 1   fairly quickly, whereas this other one will take a much longer

 2   period of time.

 3                  So I would propose two different schedules.

 4   Does either side disagree?

 5              MR. BERNICK:  No.

 6              MS. SHER:  Fine with plaintiffs, Your Honor.

 7              THE COURT:  Let me just ask, why don't you guys get

 8   together and propose two different schedules and suggest them

 9   to me for these two particular motions, and I will take a look

10   at it, and I will get back to you.

11                  But I want you guys to talk amongst yourselves

12   first rather than me proposing any sort of dates, because I

13   don't know what your schedules are.

14              MS. SHER:  That's fine, Your Honor.

15              MR. BERNICK:  Fine.

16              THE COURT:  Now, then the other issue is this issue

17   as to, I guess, the plaintiffs are taking the position that

18   they cannot give me what I want in regards to resolving the

19   issue that we have termed block billing, but encompasses a lot

20   more than just the term itself would suggest.

21                  And these are the things that I think I talked

22   with plaintiff's counsel on, I guess it was May the -- May

23   the 17th.

24                  I still don't understand how the special

25   master would be able to do certain things that the special

```
 1   master we would be requiring the special master to do without
 2   further explication from the plaintiff's counsel.
 3                 Because again, referring to the plaintiff's
 4   samples submission for attorney's fees application, which is
 5   Docket Number 2957, you know, if that is all that the special
 6   master gets, I don't understand how the special master would be
 7   able to do the tasks that he or she would be asked to do, which
 8   would, amongst other things, be a determination as to the
 9   reasonableness of the amount of time that is spent by
10   plaintiff's counsel on something.
11                 Now, I do understand that in certain
12   situations there is sometimes a statement that, well, because
13   of an inability to be more specific, you just do a percentage
14   time of thing.
15                 But I don't even understand how that could be
16   done here, given the breadth and the amount of stuff that is
17   done.  We're not talking about just one thing, we're talking
18   about hundreds of different assignments.
19            MS. SHER:  Right.  That is the problem with both
20   sides of this.
21                 In other words, presumably the special master
22   would look at us and say, in order for me to do what I need to
23   do, I don't need you to be dividing things into thousands of
24   categories because we can't allocate the time in those cases as
25   we talked about.
```

1          But I do want you to do the best you can, for

2    example, to tell me everything that was related to the trial,

3    everything that was related to dispositive motions, everything

4    that was related to depositions, or you know, some sort of

5    broader category.

6          Then he looks to see if the plaintiffs

7    participated in a total of what is likely to be by the time

8    we're done, I don't remember -- 75 depositions fact and expert

9    and whatever else, and that they were worked on over this

10   period of time with a total amount of these number of hours,

11   but can't tell specifically which lawyer put in exactly how

12   many hours on that particular deposition.

13          Then the special master, who presumably is

14   experienced just like the Court, would say, all right, it's not

15   unreasonable in a case of this size with 75 depositions for

16   there to be, whatever the right number is 2000 hours -- I'm

17   making this up -- put into that sort of thing.

18          But the question is, you know, so as a result

19   of that because you can't say exactly who put in which, then

20   they make, in their discretion, a decision as to a percentage

21   and say the fact we can't tell exactly which person did which

22   tasks means that we're going to assume that there was some

23   level of inefficiency, or what have you, and they pick a

24   number, which seems justified based on the total of number of

25   hours, the work that was accomplished, excuse me, and how many

```
 1   people were performing it in light of the number of parties,

 2   the number of things --

 3                THE COURT:  Let me stop you.  First of all, how

 4   would the initial number come up?

 5                In other words, let's assume, for example, 75

 6   depositions were taken.  First of all, how do we know that

 7   there were 75 deposition taken, unless it's put in somebody's

 8   billing records?

 9                MS. SHER:  Because it is, Your Honor.

10                That's why we gave you the sample detailed

11   time summary.  That summary lists -- I don't know the number

12   off the top of my head -- even in that one quarter there was a

13   list of more than 25 depositions that we were either taking or

14   preparing for, and we listed exactly what they were.

15                And then the detail is there, if somebody

16   wants to go check and see, so we can basically say okay, you

17   can tell from our records there were 25 -- to make up a number

18   -- depositions worked on during this time period, and we know

19   that because you can search the time records and search for the

20   word "deposition" or "depose" and pull up all of the line

21   entries that would tell you which lines somebody was working on

22   a deposition.

23                THE COURT:  Let me just ask, why can't the

24   plaintiffs do that then?

25                That's why I don't understand, if you are
```

1    saying it can be done, why aren't the plaintiffs doing that?

2           MS. SHER:  Your Honor, we have never refused to do

3    anything.  This has been a situation, where after the last

4    hearing, which was two weeks ago, we immediately went back and

5    started figuring out ways to try and do what the Court had

6    said.

7           What we have said so far, and I think it's

8    what we tried to say in the joint submission, is that the level

9    of granularity for every task that we listed in that multipage

10   detailed summary try and link each of the hundreds of time

11   entries to each of those 160 tasks that that was going to yield

12   something that was not going to be particularly helpful,

13   because by the time you are done saying there were hundreds of

14   time entries, all of which contained eight or nine tasks

15   themselves in some cases or four tasks or whatever it was, we

16   are just mixing and matching.

17          But the sort of thing that I just proposed,

18   which would be the next level to see if it was doable, to

19   basically say, okay, we can search, as I said, for the word

20   "deposition" and "depose."  And we can basically, say okay,

21   based on these time records for these three law firms during

22   this quarter, these are the number of entries or these are the

23   entries, because it's easy to do, we could all do it that

24   relate to depositions.

25          And the summary tells you whose deposition,

1    and what was being done during that period of time, and so,

2    because that's how we derived the summaries in the first place.

3            THE COURT:  That's the point, if you can do that, I

4    don't understand why you can't just indicate that was what was

5    done.

6                In other words, for example, if you could put

7    all of the things you are referring to which were the exhibits

8    of the hours and things of that sort on to some sort of

9    computer program and such that it would be like Word Perfect or

10   Word, you put in a search term and it would pop up all of the

11   times insofar as these individual records are concerned, time

12   records, that the word "deposition" is used or if there is a

13   name of a witness, the witness's name is there, so you could do

14   that.

15               The difficulty would be putting it on a

16   computer program, but once it's done, it would be very easy to

17   get the information.

18       MS. SHER:  I'm sorry, Your Honor.  The question is

19   the level of granularity.  It can be -- it's not a question of

20   putting it in a program, it be can a format that can be

21   searched.

22               But if we're searching for a 160 different

23   tasks, and you do that -- this is only one quarter, right --

24   and there are hundreds of entries just for this one quarter,

25   you have seen that in Exhibits 2, 3, and 4 that we attached to

1  the submission, we can do that, and we can say, okay, the

2  following line items all have the word "deposition" or "depose"

3  in it, but then we can't do the next step which is to say those

4  equate to X hours because each of these entries is almost

5  always a block-billed task.

6          THE COURT:  Well, let me ask you, how would you get

7  an estimate as to how much time it took to do the 75

8  depositions, I mean, unless you do something of that sort.  On

9  what basis will the plaintiffs be saying that the 75

10  depositions took X number of hours?

11         MS. SHER:  What I'm saying is that we can't.  We can

12  give an estimate in part based on how long we know in general

13  it takes or took, I should say, to prepare and present

14  witnesses, right?  We know how many hours we spent at the

15  depositions, we know how many times we met with the witnesses

16  before that, so we can give ballpark in that regard.

17              But the issue with block billing, which

18  everybody has fully acknowledged, is that it is subject to some

19  discounting because you can't do it at the level that you are

20  talking about.

21              On the other hand, somebody who is experienced

22  with complex litigation and looks at time records and sees that

23  there are 75 depositions that took place, and there is 400

24  lines of code that implicate 15 different lawyers over the

25  course of that time taking depositions, can decide whether that

1    is a reasonable number of people working on those 75

2    depositions over that period of time.

3                    Then if they say, but I can't tell whether

4    this particular deposition somebody spent, you know, had one

5    extra person on, or spent an extra day that they shouldn't have

6    spent, that is where the discretion and the discounting takes

7    place.

8                    Yes, there is some element of randomness to it

9    or arbitrariness, but that is the cost of block billing.  And

10   the cases that we have looked at, including the ones that have

11   gone up on appeal, the Court basically says it sounds

12   reasonable, that is something that was done in an effort to

13   account for complex litigation that was done over a period of

14   years involving all of these hundreds of tasks that were done,

15   and they have some sense of what that costs.

16                   And frankly, and I think we said this before,

17   one check on that or one additional factor that can be used is

18   to look at the defendant's billing records.

19                   And if in doing the exact same thing,

20   participating in the same number of depositions, being involved

21   with the same number of motions, if the defendant's total

22   costs, because I'm assuming from Mr. Bernick's position they

23   did not block bill so they would be able to tell you we

24   attended those same 75 depositions, but we spent only

25   70 percent of the plaintiffs spent, well, that gives you a

 1    really good indication as one way of making a decision that

 2    somewhere between 70 percent and the 100 percent is the

 3    haircut, so to speak.

 4                    There is an example, the plaintiffs and the

 5    defendants were in this together from the beginning, so that is

 6    one way of demonstrating that if they think our fees were so

 7    unreasonable or that we had too many people or whatever along

 8    the way, and they are pretty aware of who was where when,

 9    because they were there too, and they had their own fees.

10                    You would be able to look at their fees, and

11    say, hey, the defendants were able to accomplish exactly the

12    same type of work, the same amount of briefing, the same type

13    of whatever for some percentage of what the plaintiffs did, and

14    that gives you a floor or a hook or whatever word you want to

15    use to make a reasonable assumption about what discounts should

16    be taken off the plaintiff's fees.

17                    And we recognize that the cases allow that.

18    We have to live with it, we can't go back and reconstruct our

19    fees.

20                    THE COURT:  Well, all I can say when I was

21    practicing when dinosaurs ruled the earth, we were obligated to

22    bill in terms of a tenth of an hour and to describe each 10th

23    of an hour separately.

24                    MS. SHER:  And we described every 10th of an hour.

25                    THE COURT:  No, but you described it in terms of a

 1   group of things rather than each individual one, and that is

 2   the problem.

 3              MS. SHER:  We recognize that.

 4              THE COURT:  You do 10.8 hours for like about seven

 5   different things.  I mean, again, what can I say?

 6                   But it seems to me that, frankly, is this --

 7   let me ask plaintiff's counsel, is this material on some sort

 8   of computer program such that one can conduct searches?

 9              MS. SHER:  The time entries can be put in an Excel

10   program that would allow the text of it to be searched, yes.

11              THE COURT:  Well, that is something that I will

12   require.

13              MR. BERNICK:  Your Honor, can I make a suggestion?

14              THE COURT:  Yes.

15              MR. BERNICK:  Okay.  So first, I think that the

16   reality of this is that if their own clients asked them to do

17   it, it would be done in a heartbeat.  It doesn't take word

18   searching or anything.

19                   Let's assume you got 100 tasks.  You go

20   through, you have got 150 pages of time entries, you can

21   literally create a spreadsheet and go through by hand and

22   complete the spreadsheet -- it might take a day or two -- I

23   mean, it's not that impossible to do.

24                   Now, there may be things where they can't make

25   a determination.  They just say that, they say that we can't

1    define the number of hours for X tasks, or they say, here are

2    hours that were spent, and we really can't allocate them, as I

3    indicated the last time and they can just accumulate them.

4                    But I think it's a false issue that is being

5    created.  What they really want to do is they don't want to do

6    that at all.  They want to have a general description that

7    says, we got a lot of people that are working real, real hard,

8    and so, maybe we spent a little bit too much time, let's see

9    what the defendants have to say, then you kind of rough it out.

10   That is not a evidence-based determination, and that is the

11   problem here.

12                   But they can solve this problem for practical

13   purposes by going ahead and doing the work, but complaining

14   that it's impossible, because it's not impossible.

15                   You can go through with each one of those

16   tasks, you don't need to do word searches, you just need to be

17   systematic and going through that, and then at the end of the

18   day they can also do something apparently they are prepared --

19   they would be prepared to do if they have a choice, which is to

20   say, well for 75 depositions, how many hours -- there is 75

21   depositions -- how many hours are you asking for?

22                   If they believe that -- if they believe that

23   well, you know, they have been reasonable, and all of the rest

24   of that, they got the time sheets, they don't have to parse the

25   time sheets, they can say there is 75 depositions and here is

**UNITED STATES DISTRICT COURT**

```
 1   how much time we think is reasonable that was spent on those
 2   depositions, they can do that.  But not to have --
 3             MS. SHER:  We can't do that.
 4             MR. BERNICK:  Excuse me, may I finish?
 5             MS. SHER:  I apologize, go ahead.
 6             MR. BERNICK:  So I don't know what else to say, I
 7   will take that up, but Ms. Sher indicates if they can't
 8   actually say how much time they spent in preparing and taking
 9   75 depositions, it's not knowable, and all they can do is say
10   here is the aggregate amount of time we spent during this
11   period of time, here is the aggregate amount of time that J-M
12   spent during this time, even though they are recovering the
13   fees, not us, we're not obliged to provide that information,
14   and it's not relevant.  The question is whether they spent the
15   time.
16             If they can't do that, Your Honor, if we just
17   take what Ms. Sher said to the bank today that they can't come
18   up with the total time they spent in preparing and defending or
19   taking the 75 depositions, it's not up to the Court to solve
20   that problem by kind of cooking the number.
21             How is the Court supposed to do that
22   reasonably if the plaintiffs can't do it reasonably?  That is
23   the definition of abuse of discretion.
24             We don't have to wait for the special master
25   to be dragged in on it, if that's what they're going to do,
```

```
 1   they can't do any better than Your Honor, and Your Honor has to

 2   take a position just like it is on -- well, I won't say it.

 3          THE COURT:  Well, also the other problem is what

 4   happens if I determine that 75 of certain number of the

 5   depositions should not have taken?

 6          MR. BERNICK:  But you have to figure out how much

 7   money -- how much time that is.

 8               I think that the plaintiffs -- what I would

 9   propose is we're happy to move to deny the application because

10   they haven't given the Court -- they haven't given us enough

11   information, and I think that they can.

12          THE COURT:  Let me indicate to Mr. Bernick, I'm not

13   going to fall for that one.

14          MR. BERNICK:  No, no, well, it's not a question of

15   falling for that.

16          THE COURT:  I would get reversed on that one.

17          MR. BERNICK:  Excuse me, they are actually -- what

18   they are really doing -- this is a negotiation.  They want to

19   push you so hard that they can't get it done, if you accept

20   less, because they are threatening appellate review.

21               So take the appellate review, if they can't

22   tell you the amount of time --

23          THE COURT:  Let me stop you, Mr. Bernick, that is

24   not what they are trying to do.

25               I'm not perceiving it in that fashion.  They
```

**UNITED STATES DISTRICT COURT**

1   have given me these exhibits and the exhibits have information

2   on them.

3                    Now, you know, it's going to be difficult

4   because of the block billing issue, but again, the problem is

5   is that there are so much -- again, it wouldn't be a problem --

6   this block billing issue wouldn't be a problem if this was a

7   smaller case.  If it was a small case, I could generally say,

8   yes, I understand that, I have a sense, you know, et cetera, et

9   cetera.

10                   But when there are so many issues involved, so

11   many attorneys involved, you know, and there is not one

12   attorney who is doing the stuff, most of the time it's groups

13   of attorneys that are doing it, you know, again, this problem

14   was not created by the Court.

15                   This is something that normally, in my

16   experience, the applications for attorney's fees are very

17   specific.  I have never had something where somebody has been

18   asked to make an estimation about substantial amounts of work.

19                   MS. SHER:  I understand that, Your Honor, but that's

20   why in some of the prior submissions we were careful to

21   emphasize that block billing is permitted under Ninth Circuit

22   law.  It is not grounds for striking.

23                   THE COURT:  I agree.  That's not why I'm buying

24   Mr. Bernick's argument because I'm not going to strike it.  I

25   agree 100 percent, but I think -- the question is again, the

1   whole point of this exercise is to determine what attorney's

2   fees are reasonable.

3                  And the problem is the block billing prevents

4   -- adopting a block billing just on its face, if that would

5   prevent a determination of reasonableness, well then I think

6   the Circuit may say that block billing is not appropriate if

7   you cannot make a determination about reasonableness because of

8   block billing, so that's my position.

9        MS. SHER:  I understand.  The Ninth Circuit has said

10  in multiple cases that it can determine an issue of

11  reasonableness, but then uses --

12       THE COURT:  Let me stop.  When the Ninth Circuit

13  says it can, does the Ninth Circuit actually do that or does it

14  send it back to the District Court to do?

15       MS. SHER:  In all of the cases I have seen so far,

16  Your Honor, the Court has done it already at the trial level,

17  and --

18       THE COURT:  Well, in that case, that is fine.  So

19  you are saying I could send this off to the Ninth Circuit for

20  the Ninth Circuit to do the estimation, the reasonableness

21  based on block billing, so I'm perfectly willing to do that, I

22  have no problems doing that.

23                  I will send it to the Circuit to do that, and

24  in other words, gather all you want, and we don't need the

25  special master.

1          I could send it up to the Circuit, and say,

2   hey, I have been told that this is a function of the Appellate

3   Courts now, so I'm willing to agree with that based upon the

4   representations of the Ninth Circuit decisions, and you give me

5   the bottom-line figure.  It would save us a lot of money down

6   here.

7          MS. SHER:  No, Your Honor.  What I said was in all

8   of the cases that we have seen, the trial Court made the

9   decision and exercised its discretion and in virtually every

10   case that discretion was approved by the Ninth Circuit on

11   review, because it was an abuse of discretion standard, and

12   they looked at what the Courts did, whether they applied a

13   10 percent, a 20 percent, a 30 percent, whatever the particular

14   Court said, and the Court basically confirmed that given the

15   fact that that was not an abuse of discretion.

16          My only point is that -- and they don't

17   distinguish between complex cases or not complex cases or

18   anything else.  When there is this situation, the Ninth Circuit

19   law has said that, at least all of the cases that we have seen,

20   that it is not prohibited, but it has a consequence and the

21   trial Court exercises its discretion.

22          We will do the best we can and presumably the

23   special master may have experience with this sort of thing

24   because block billing is not as uncommon perhaps as the Court

25   experienced in private practice, so they make decisions.

1           And if there are things that we can do before

2  the special master in order to actually put things in buckets

3  or do something that makes some sense, then we can do that.

4           If you want to see what we mean right now and

5  we could take one topic, whatever the topic is, in this one

6  quarter, so we're talking about a subset of a subset, but

7  basically say, let's find all of the entries that refer to a

8  motion of any kind, let's make a bucket for motions, and we can

9  show you that we can search the word "motion" and we can pull

10  all of the entries or put an indication of all of the entries

11  that deal with motions, that part isn't really difficult.

12           The problem is that it's not going to solve

13  the very problem that you have identified, which is once we do

14  that and you go look at those -- I'm making it up -- 40 entries

15  that refer to motion practice, you are going to see exactly

16  what you have seen already, which is the 10.8 hours, maybe

17  there is a single entry and all it says is work on motion, and

18  great, all 10.8 hours count.

19           Where they are block billed in certain

20  circumstances, you are not going to be able to allocate it and

21  neither are we.  It would be making it up after the fact, and

22  that wouldn't be ethical.

23           So in the circumstances where it's one or even

24  two tasks, and you can tell somebody worked on that motion all

25  day and checked in with the Court on the schedule for a

1  hearing, chances are the vast majority of that time was spent

2  on a motion, and there was a five-minute call with the Court to

3  find out what the timing is.

4         THE COURT:  If one makes that table together, let's

5  assume we have a motion for a fairly simple motion about

6  whether or not the Court should take judicial notice of

7  something.  Let assume that we have in your example, let's

8  assume we have five attorneys who worked on that simple motion,

9  and there are 40 entries for that motion, I think the fact that

10  you have delineated that for me or for the special master would

11  be very, very informative because we can make a determination

12  as to whether or not there was overbilling in that particular

13  situation, whether or not that was reasonable or not

14  reasonable.

15         All I'm saying is that I don't mind, initially

16  the special master will have the tasks and subject to my

17  further review, as to determination of reasonableness, but I

18  want the special master to have as much stuff as possible for

19  the special master to make the determination.

20         I accept the fact that block billing has not

21  been prohibited in the Circuit, and I understand that, I'm not

22  saying it should be excluded, but, in order for the exercise of

23  a reasonable award of attorney's fees in a block billing

24  situation, all of the available information that can be gleaned

25  should be gleaned.

1          MS. SHER:  Understood, Your Honor.  We are starting

2    with all of -- we are starting with all of the raw data, all of

3    the data is there, every detail time entry.

4               What we're talking about now is ways to try

5    and categorize it in order to determine reasonableness of

6    various types of tasks.

7               And all we have said so far is that trying to

8    do it for every tiny little task that exists, whether it's a

9    big task or a little task, is not necessarily going to make it

10   any easier whether for the special master or for you.

11              There may be ways to group things which is

12   what we would hope the special master would look at this stuff

13   and say, let's use these six buckets, or let's try to do it

14   this way or that way because he or she will have the same

15   ability to have the data and sort it or search it and get a

16   sense of what we're talking about.

17              But the idea of if we had done the summary,

18   and in the summary, we basically said in two pages, here is six

19   categories of things we did, written discovery, oral discovery,

20   motion practice, interactions with the Court, and et cetera,

21   et cetera, okay, now, we only have four or six categories, and

22   we can search those words and pull what would be hundreds of

23   entries under each of those categories.

24              I'm not sure that that is necessarily going to

25   help, but there may be ways that we can do this through the

1    searching function that would help, and that is presumably what

2    we thought the special master, once he looked at the general

3    raw data, everything is there, what is the best way to try to

4    do this, given the limitations of block billing and the fact

5    that we essentially had a full blown trial with five plaintiffs

6    and two and then one defendant over the course of years.

7              THE COURT:  Let me ask you, why, for example, if you

8    can do it, I'm not sure you are indicating you can, assuming

9    there is 75 depositions, why can't you indicate the entries as

10   to each deposition, which you can do, as to which attorneys

11   worked on what days they worked.  Why can't you do that,

12   because that way, you know, for example, if there is a

13   deposition of one witness, if there is only one attorney that

14   worked, then you could say, okay, what days did that attorney

15   work, and can you more or less glean a general notion as to a

16   time frame, and you know, do things of that sort.

17              It seems to me that is something that would be

18   much more helpful than just simply saying there is 75

19   depositions and 2500 hours spent on those.

20              MS. SHER:  That's what I was trying to suggest, Your

21   Honor, that there may be some categories and some sorting that

22   wouldn't result, and let's just assume for the sake of argument

23   there are 500 time entries, let's assume there are 500 times

24   entries, and many of them have multiple things within them, all

25   I'm going to be doing or we would be doing in many cases is

1    pulling or implicating or listing the same time entry five

2    different places, right, and that information is already there

3    because somebody can just search for the word and sort the data

4    by that term.

5            THE COURT:  The problem is that you are basically

6    talking a data bank, and maybe the special master is going to

7    do additional stuff, but it seems to me the preliminary stuff

8    should be done for the special master.

9            In other words, again, if there are 75

10   depositions, the special master should be referenced as to the

11   dates and the attorneys that did the work on it.

12           That is not going to be that hard for you guys

13   to put, and then you are going to presumably have some sort of

14   estimate, and so he or she, the special master can decide

15   whether or not, gee, that estimate seems reasonable or

16   unreasonable in terms of the estimate in terms of the amount,

17   then he can make a determination thereafter, and say, well is

18   that total amount of time that the plaintiff is proffering

19   reasonable or not reasonable for the particular task involved.

20           MS. SHER:  In many cases it will be difficult to do

21   an accurate estimate because of the block billing, in certain

22   cases, there won't be, right?

23           THE COURT:  That's what I don't understand, in other

24   words, you are saying that because of block billing you can't

25   do an estimate.  That is the problem -- does the Ninth Circuit

1   say that you are not required to give a reasonable estimate

2   because you have block billed?  Is that what the Ninth Circuit

3   has said?

4         MR. BERNICK:  Your Honor, can I answer that for just

5   a second?  I don't think, because it is a false issue that is

6   being posed.

7         I'm not aware of any case where the Ninth

8   Circuit has addressed the question of the situation where there

9   was block billing, that the Court instructed the applicant to

10  tell the Court of those block billed items, how much are they

11  asking for as their proposal.

12        And then the trial Court -- if the plaintiffs

13  refused, and it went up to the Ninth Circuit, and the Ninth

14  Circuit said, that is okay, they can refuse.

15        So I think the simple question and the answer

16  is, we don't need to be sent down a rabbit hole of word

17  searches.

18        We should have for each of the tasks, they are

19  asked for a reasonable number of hours and billing that they

20  are seeking for that task.

21        I mean, it's a minimum.  You can't say, well,

22  the Court is going to find reasonableness, but we can't tell

23  you what number is reasonable for these tasks?

24        Just tell them now, we got the data, we got

25  all of the time sheets and all of the rest of that, for each of

1   these tasks tell the Court how much you are asking for, how

2   many hours that is and who spent the hours.  They can figure it

3   out, that is their burden.

4           MS. SHER:  No, we can't.

5           MR. BERNICK:  No, no, no, you can figure out what

6   you are applying for as being reasonable on a task based.  You

7   can't say -- we can't tell you how much we're asking for on a

8   task basis, the whole theory is reasonable, and the Court has

9   to decide what is reasonable by tasks if it wants.

10          I don't think that that -- I don't think that

11   there is any precedent on that.  You can ask plaintiffs that

12   are asking for the money, how many hours and what the fees are

13   for, you know, each of these depositions.

14          They can go through the time sheets and make

15   their own judgment.  They are not being asked to make a factual

16   representation about what components of the block billing

17   actually were incurred for each one of these things, they don't

18   have to.

19          They have to say -- but, they do have to say

20   what they are applying for for that deposition as a reasonable

21   application.

22          And the Court doesn't have to supply that

23   reasonableness assessment for them, it's theirs to perform

24   that.

25          MS. SHER:  One of the problems that we're going to

1   face in this process however it goes is that, I imagine,

2   plaintiffs and the defendant will define tasks differently.  So

3   the defendants want the tasks to be as granular as possible for

4   reasons that are obvious, including the amount of work it

5   would take to do so, then have the ability to nit pick at each

6   one of them.

7                   And the plaintiffs have already indicated,

8   because in many cases because of the block billing, that tasks

9   can't be allocated in exactly the way you are talking about.

10                  There are entries, for example, when using the

11  depositions as the example, Your Honor, where somebody may

12  write on a given day, prepare for deposition or prepare to take

13  deposition of J-M witness, and it doesn't say which one.

14                  We can guess, except there might have been

15  three depositions that week.  So that kind of an entry would

16  end up in an other or miscellaneous or whatever bucket saying

17  we know it was for a deposition, but we can't tell you which

18  one it was for.

19          MR. BERNICK:  May I respectfully -- you are

20  anticipating things here.

21          MS. SHER:  I know exactly --

22          THE COURT:  Let me stop counsel.  You can argue

23  amongst yourselves later on.

24                  Let me indicate to Ms. Sher.  Let me stop you,

25  Mr. Bernick.  I'm going to talk to Ms. Sher at this point in

1    time.

2                    Let me talk to Ms. Sher, I'm going to require,

3    in other words, I'm going to require a certain level that you

4    refer to as granularity, I don't know if you are referring to

5    grains of sand, I don't know what it is you are referring to.

6                    But again, if there are 75 depositions, I want

7    as to each deposition, the persons who you are claiming worked

8    on that deposition and the dates of their entries.

9                    If you are going to say that this reference to

10   working on depositions refers to this particular, you know,

11   deponent, again, that is your -- the plaintiff's best

12   evaluation of what that evidence means.  And if the defense

13   wants to object to that, the defense can, but I want that

14   level.

15                   And then I want you to give me an estimate as

16   to the amount of time you are claiming for that deposition,

17   because that way I can make, and the special master can make a

18   reasonable determination and decision insofar as whether or not

19   the time was actually spent and whether or not the actual time

20   supposedly spent was reasonable.

21                   Otherwise, you are just basically guessing,

22   and you are basically saying we should be allowed to speculate

23   as to the amount of time that it took us to do these things.

24                   And the last time I looked, you cannot base an

25   attorney's fees application on speculation.

1          MS. SHER:  I think we face the same problem, Your

2     Honor.

3                So rather than going round to round, to be

4     perfectly honest, I understand what you are saying.  I think we

5     need to think about it and figure out what we can reasonably

6     do.  We are obviously not refusing to do this.

7                THE COURT:  Let me ask you, Ms. Sher, the thing that

8     I don't understand, you have already indicated you can put this

9     on something like on Excel computer type thing.  And so you can

10    plug in the words, like, deposition, and it will pop out every

11    single time that the word "deposition" is used, let's say

12    "deposition within five of some witness's name," you can do it

13    in that fashion, which would even more specific.

14                If you can do that, then you are going to come

15    up with a list of every time that particular phrase is used, so

16    you can look at it, and say, okay, so for May 6th, there was

17    this attorney and this attorney worked on that, et cetera,

18    et cetera.

19                And so you can have a list of the entries as

20    to each, for example, deposition.

21                If you have that, I don't understand why,

22    after you have that, you cannot make a reasonable estimation or

23    the best estimation you can as to the amount of time it took to

24    do that deposition, prepare for it, and to take it or defend

25    it.

1          MS. SHER:  Because, at least, in some instances

2     where it's not clear, that would amount to speculation on our

3     part.

4               I don't remember eight years ago whether in an

5     entry that -- and I'm making this up -- but that I may have

6     where I both prepared for a deposition and worked on a brief,

7     whether I spent on that ten-hour entry, 5 and 5, 4 and 6, 3 and

8     7.

9          THE COURT:  We are not asking for that.  Let me stop

10    you.  If you cannot recall, what do you expect a special master

11    to do?

12         MS. SHER:  To look at the entry, look at the total

13    that is being requested for whether it's depositions as a whole

14    or discovery as a whole.

15         THE COURT:  But, in other words, they would have no

16    basis to make a judgment call on that.

17              In other words, while you object to

18    granularity, you are basically saying, you know, ten items,

19    discovery, 20,000 hours, motion practice in court 300 hours.

20              I mean, how is a special master or the Court

21    supposed to evaluate that, unless you provide some of this

22    background stuff?

23         MS. SHER:  Your Honor, I understand the issue.  And

24    I think that at this point the best thing for us to do is to go

25    back and figure out what we can reasonably do that is

```
 1   consistent with the kind of categorization -- I will use that
 2   word rather than granularity -- that you are talking about.
 3              And what I said earlier was in some cases
 4   there are categories that would make sense and be easier to
 5   estimate, certain time periods when things were happening, the
 6   trial is best example, right.  I don't know how granular you
 7   are going to want us to be, but you were present, you knew what
 8   we were doing day and night getting ready and participating in
 9   a trial.  That is very different than the hundreds of tasks
10   that were being done during discovery over the course of months
11   and months and months.
12              So in some cases the categorization or the
13   accumulation is not that difficult, but in many cases it is
14   very difficult, and figuring out or guessing how many of the
15   particular hours is allocated where, arguably would be subject
16   to criticism that we are speculating, you don't know for sure,
17   to use my example of the ten hours, you know, whether it was 5
18   and 5, 6 and 4, and 7 and 3, you said you are not asking for
19   that.
20              THE COURT:  No, let me put it this way, if there is
21   a big dispute we can turn to defense counsel and ask, how much
22   time did you spend on it.  Since they supposedly have billed in
23   terms of for every 10th of an hour, they can say, we only spent
24   five hours on that one, we only spent 200 hours on that one.
25              I mean, as you indicated, there is a check
```

**UNITED STATES DISTRICT COURT**

1   from the defense side on that, if the defense wants to raise

2   it.

3           MR. BERNICK:  Your Honor, let me separate.  The

4   issue of what the defense has done is, you know, we are not

5   seeking fees for the defense, and I don't know how the bills

6   work, I don't know any of that stuff, but what I do know, is

7   the plaintiffs, just as you have indicated, Your Honor,

8   Ms. Sher said, well, we're going to have to speculate and we

9   can't be required to speculate.

10          Well, the fact is that they are making the

11  application for it to be paid, so they have to make a request.

12          If they are saying, we can't do it because of

13  speculation, then the answer is we can't do it, because it's

14  speculation.

15          But they have to make the ask and it has to be

16  a reasonable ask.  That's kind of where all of this comes to

17  rest is that they can go through whatever exercise they want,

18  but whatever it is they need to make and ask, and the

19  precedents are quite clear in complex cases, the Courts require

20  that it be granular, that it have granularity.

21          I'm not here to argue about whether it's by

22  motion or something like that, that is the plaintiff's

23  obligation to decide in the first instance, but they can't

24  simply punt on a theory or use the fact that it's speculative

25  as a shield from avoiding their obligation and make an ask,

```
 1   it's a reasonable ask, and it has a foundation for it and has
 2   sufficient granularity for the Court to make a determination on
 3   reasonableness, whatever the granularity might be.  So it's
 4   kind of like this category error here.
 5              It's that the inability they say, I will take
 6   them at face value that they don't remember what went into each
 7   of the block billing things, they just can't remember.  Well
 8   that is fine, if they want to say that and say that is their
 9   position, they still have to make the application.  They still
10   have to have a reasonable basis for it.
11              THE COURT:  Also, let me just add something else,
12   you know, in the plaintiff's submission at 2957, the plaintiffs
13   were very granular insofar as what they have listed.  You have
14   listed document production, you list those particular
15   categories, you have written discovery, you have itemized the
16   written discovery, the depositions, you have itemized
17   depositions and the date they occurred and the name of the
18   witness, the factual investigation, I mean, you listed all of
19   this stuff.  You have included I think -- I don't expect you to
20   get any more granular than what you have given me in Exhibit 1.
21   I just simply need to know when selecting these particular
22   tasks, who were the attorneys that were involved and the dates
23   that they did the tasks and then an estimate, you know, to the
24   best of your ability as to the total amount of time it took on
25   those matters during the period of time that we're talking
```

 1    about.

 2                    So I don't see -- given what you have already

 3    provided -- I don't see why it's that much more difficult to do

 4    that which the Court indicates that it feels you can do.

 5            MS. SHER:  All I can say, Your Honor, is having

 6    spent time over the last two weeks trying to go back and match

 7    individual time entries to each of those things, is in some

 8    cases is there are time entries that -- because those tasks are

 9    not -- let me start over.

10                    Those tasks are not complete in a sense that

11    every single item that is on a time sheet so that quarter of

12    2012, relates to one of those categories.  Those were the major

13    things that were done.

14                    There are lots and lots and lots of other

15    tasks that weren't summarized in a summary.

16            THE COURT:  Let me ask that for you to even say that

17    you would have to know that there were additional tasks that

18    were done, and so on that basis, you would say, well, in

19    addition to these tasks that we have listed, there were some

20    other tasks.

21                    And so, again, the thing I don't understand if

22    you can't recall specifically, then on what basis are you going

23    to be making a claim for those fees?

24            MS. SHER:  We specifically recall the work that was

25    done because it's all listed in detail, as you have seen.

1          So there is no issue as to what work was done

2   by whom on what day.

3          The issue for purposes of the fee application

4   that we have been discussing the last several times we have

5   talked is how do you take that information and present it in a

6   way that meets some categorization or organization that we are

7   trying to figure out how to do.

8          We have concluded that doing it for every one

9   of the -- in this case -- more than 160 tasks that were laid

10  out in that one summary, and knowing that every quarter is

11  going to have a different summary with a different set of tasks

12  is going to generate, by the time we're done, thousands of

13  pages of there is a task here and all of the lines numbers or

14  whatever it is that go with it, and is going to take not the

15  day or two that Mr. Bernick suggested, because we have actually

16  been doing that and try to see how long it takes, and it takes

17  an inordinate amount of time to take each of these things and

18  search them, because we were so detailed in the time summary in

19  the first place.

20         If all we had done was use big broad

21  categories, maybe it would be different.  I'm not suggesting

22  that there aren't ways that we might be able to categorize this

23  information.

24         The question is are we going to do that in the

25  first instance for, you know, all of these categories one time

1    and the Court concludes, okay, that worked.  I mean, it might

2    have taken three weeks to do it, but that is fine, not go and

3    do that for the other 36 quarters or whatever it is that we're

4    seeking time for.

5              We would object to that, but obviously, that

6    is something that I suppose the Court could order, and we

7    decide what we can do and what we can't do.

8              What we're trying to find is what makes the

9    most sense.  We keep speculating about what the special master

10   is going to need or is going to want or what have you, and

11   maybe we're right, maybe he's going to want or she is going to

12   want that level of detail or some other level of detail.  And

13   maybe the special master is going to look at a categorization

14   and say, if you took this many depositions and this many people

15   participated in it, then that amount of work that was done

16   during that quarter seems reasonable to me.

17             THE COURT:  Well, let me ask you, if you are going

18   to be doing something so general, why do we need a special

19   master at all?

20             In other words, if you are going to say you

21   took 75 depositions, and you are going to estimate the amount

22   of time as being 2000 hours or 2500 hours, why do we need a

23   special master at that point, I could do that, if you are just

24   saying that is all you are going to give me.

25             MS. SHER:  Your Honor, I'm not saying that is all

1   we're going to give you.

2               What I'm saying is that I don't think we have

3   figured out yet.  We have eliminated -- we have suggested that

4   something doesn't make a lot of sense, because it's not

5   necessarily going to be helpful in the way that the Court wants

6   it to be.

7               And all I'm suggesting is that, first of all,

8   we need to look at it and figure out what it is that we think

9   we can do in this circumstance.

10              But if what the Court is saying, for example,

11  is to a number of categories, not necessarily all 160

12  individual tasks, or maybe it is, I don't know, that we want to

13  know which attorney worked on those categories and what the

14  basic -- you know, what you would be seeking in that situation,

15  we can go back and look at that and see if that makes sense and

16  advances the ball without requiring us to do something that

17  would not be justifiable or would not be sustainable.

18           THE COURT:  Well, let me put it this way, for

19  example, if we have, let's take an example of a deposition, you

20  know, like the first deposition is Matt Knudsen, you know

21  again, tell me the attorneys who worked on that deposition and

22  the dates they worked on the deposition and an estimate as to

23  the amount of time that you are going to be asking for for that

24  deposition, then I would leave it up to the defense to respond

25  to that, and say, well that is not reasonable or that is

1    reasonable.

2                   In other words, that is, I think, sufficient

3    for the defendant to respond to in some way, shape, or form.

4    Not simply that you took 28 depositions during that period of

5    time and the total amount of time that it took to do the

6    depositions was, you know, X number of hours.

7                   MS. SHER:  I understand what the Court is saying.  I

8    think that we need to go back and look at the data,

9    particularly, the representatives from each of the three firms

10   who are immersed in the data and figure out to what extent that

11   can be done, and what it would look like when we did it.

12                  THE COURT:  All right.  We will leave that for

13   resolution on a future date to be discussed.

14                   So you guys are going to give me a timetable

15   for the two separate motions that we have discussed earlier,

16   and when do you think you can give me that timetable?

17                  MS. SHER:  Sorry, Your Honor, I don't even know what

18   day it is today.

19                  THE COURT:  You know, Ms. Sher, I hope you are

20   getting double pay or triple pay.

21                  MS. SHER:  I hope you remember that thought, Your

22   Honor.

23                  THE COURT:  Yeah, but unfortunately, I am probably

24   taking that time for Mr. Dillman or Mr. Havian so they are not

25   going to remember to remind me of that.

1          MS. SHER:  I see.

2          MR. BERNICK:  I'm very hurt, Your Honor that you are

3     not saying the same thing about me.

4          THE COURT:  I will take the time from Mr. Bernick

5     for you, Ms. Sher, as well.  Is that what you wanted me to say,

6     Mr. Bernick?

7          MS. SHER:  Even better.  It's really just a question

8     of people's availability to talk.  I'm sure we can get back to

9     you by Tuesday, Your Honor.

10         THE COURT:  In other words, you will give me

11    something by the 8th, and I will put you back down just to

12    confirm the dates on the 10th at whatever time you guys want to

13    do it.

14              Do you want to do it at 11 o'clock again on

15    the 10th?

16         MS. SHER:  That's fine, Your Honor.

17         THE COURT:  Great.  Thank you, everybody.  Have a

18    very nice day.

19         MR. BERNICK:  Thank you.

20          (The proceedings concluded at 12:43 p.m.)

21                           *  *  *

22

23

24

25

**UNITED STATES DISTRICT COURT**

1          **CERTIFICATE OF OFFICIAL REPORTER**

2

3    COUNTY OF LOS ANGELES    )
                             )
4    STATE OF CALIFORNIA     )

5

6            I, TERRI A. HOURIGAN, Federal Official Realtime

7    Court Reporter, in and for the United States District Court for

8    the Central District of California, do hereby certify that

9    pursuant to Section 753, Title 28, United States Code that the

10   foregoing is a true and correct transcript of the

11   stenographically reported proceedings held in the

12   above-entitled matter and that the transcript page format is in

13   conformance with the regulations of the judicial conference of

14   the United States.

15

16   Date:  June 6, 2021

17

18

19                        /s/ TERRI A. HOURIGAN
                 _____
20                 TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
                        Federal Official Court Reporter
21

22

23

24

25

**UNITED STATES DISTRICT COURT**

| **$** |
| --- |
| **$162,000** [1] - 14:14 |

| **/** |
| --- |
| **/s** [1] - 68:19 |

| **0** |
| --- |
| **06-055-GW** [1] - 1:7 |
| **07054** [1] - 2:10 |

| **1** |
| --- |
| **1** [5] - 2:10, 4:1, 8:3, 11:3, 61:20 |
| **10** [1] - 47:13 |
| **10.8** [3] - 41:4, 48:16, 48:18 |
| **100** [3] - 40:2, 41:19, 45:25 |
| **10019** [1] - 2:18 |
| **10th** [5] - 40:22, 40:24, 59:23, 67:12, 67:15 |
| **11** [1] - 67:14 |
| **11:00** [2] - 1:15, 4:2 |
| **12** [1] - 31:19 |
| **1285** [1] - 2:18 |
| **12:43** [1] - 67:20 |
| **15** [1] - 38:24 |
| **150** [2] - 2:7, 41:20 |
| **160** [4] - 36:11, 37:22, 63:9, 65:11 |
| **1600** [1] - 2:7 |
| **17th** [1] - 32:23 |
| **1875** [1] - 3:5 |

| **2** |
| --- |
| **2** [2] - 8:4, 37:25 |
| **20** [1] - 47:13 |
| **20,000** [1] - 58:19 |
| **200** [1] - 59:24 |
| **2000** [2] - 34:16, 64:22 |
| **2007** [1] - 31:25 |
| **2012** [1] - 62:12 |
| **2021** [3] - 1:14, 4:1, 68:16 |
| **213** [1] - 1:25 |
| **23rd** [1] - 3:5 |
| **25** [2] - 35:13, 35:17 |
| **2500** [2] - 51:19, 64:22 |
| **28** [2] - 66:4, 68:9 |
| **2900** [1] - 2:13 |
| **2957** [2] - 33:5, 61:12 |

| **3** |
| --- |
| **3** [4] - 1:14, 37:25, 58:7, 59:18 |
| **30** [1] - 47:13 |
| **300** [2] - 2:13, 58:19 |
| **350** [1] - 1:24 |
| **36** [1] - 64:3 |
| **3838** [2] - 1:23, 68:20 |

| **4** |
| --- |
| **4** [3] - 37:25, 58:7, 59:18 |
| **40** [2] - 48:14, 49:9 |
| **400** [1] - 38:23 |
| **4311** [1] - 1:24 |

| **5** |
| --- |
| **5** [4] - 58:7, 59:17, 59:18 |
| **50** [1] - 16:1 |
| **500** [2] - 51:23 |

| **6** |
| --- |
| **6** [3] - 58:7, 59:18, 68:16 |
| **6th** [1] - 57:16 |

| **7** |
| --- |
| **7** [2] - 58:8, 59:18 |
| **70** [2] - 39:25, 40:2 |
| **75** [20] - 34:8, 34:15, 35:5, 35:7, 38:7, 38:9, 38:23, 39:1, 39:24, 42:20, 42:25, 43:9, 43:19, 44:4, 51:9, 51:18, 52:9, 56:6, 64:21 |
| **753** [1] - 68:9 |

| **8** |
| --- |
| **894-2849** [1] - 1:25 |
| **8th** [1] - 67:11 |

| **9** |
| --- |
| **90012** [1] - 1:25 |
| **90067** [1] - 3:6 |
| **90071** [1] - 2:14 |
| **94111** [1] - 2:7 |

| **A** |
| --- |
| **A.M** [2] - 1:15, 4:2 |
| **abandon** [1] - 16:8 |

**ability** [4] - 16:23, 50:15, 55:5, 61:24
**able** [10] - 24:3, 24:11, 25:10, 32:25, 33:7, 39:23, 40:10, 40:11, 48:20, 63:22
**ably** [1] - 13:22
**above-entitled** [1] - 68:12
**absolutely** [2] - 31:14
**abstract** [1] - 14:8
**abuse** [3] - 43:23, 47:11, 47:15
**accept** [2] - 44:19, 49:20
**accomplish** [1] - 40:11
**accomplished** [1] - 34:25
**accomplishes** [1] - 30:24
**account** [1] - 39:13
**accumulate** [1] - 42:3
**accumulation** [1] - 59:13
**accurate** [1] - 52:21
**acknowledge** [1] - 11:6
**acknowledged** [1] - 38:18
**Act** [4] - 9:25, 16:17, 16:18, 17:17
**actual** [2] - 23:5, 56:19
**add** [1] - 61:11
**addition** [2] - 62:19
**additional** [3] - 39:17, 52:7, 62:17
**address** [2] - 6:19, 6:21
**addressed** [1] - 53:8
**adopting** [1] - 46:4
**advance** [1] - 11:9
**advances** [1] - 65:16
**aggregate** [2] - 43:10, 43:11
**ago** [2] - 36:4, 58:4
**agree** [16] - 5:3, 5:9, 6:15, 11:15, 12:11, 13:15, 13:18, 14:21, 16:12, 18:8, 18:9, 18:12, 19:7, 45:23, 45:25, 47:3
**agreement** [2] - 9:2, 20:21
**agreements** [11] - 7:3, 7:8, 8:12, 18:24, 21:14, 22:24, 23:2,

23:5, 23:15, 28:8, 29:12
**ahead** [4] - 6:20, 22:15, 42:13, 43:5
**al** [1] - 1:5
**allocate** [3] - 33:24, 42:2, 48:20
**allocated** [3] - 10:3, 55:9, 59:15
**allow** [3] - 6:7, 40:17, 41:10
**allowed** [1] - 56:22
**almost** [2] - 23:12, 38:4
**alone** [1] - 19:20
**ambiguous** [1] - 8:3
**amendment** [1] - 31:24
**amendments** [1] - 31:25
**AMERICA** [1] - 1:5
**Americas** [1] - 2:18
**amount** [22] - 11:19, 19:15, 33:9, 33:16, 34:10, 40:12, 43:10, 43:11, 44:22, 52:16, 52:18, 55:4, 56:16, 56:23, 57:23, 58:2, 61:24, 63:17, 64:15, 64:21, 65:23, 66:5
**amounts** [1] - 45:18
**analogizing** [1] - 25:18
**analogy** [1] - 29:22
**ANGELES** [4] - 1:15, 1:25, 4:1, 68:3
**Angeles** [2] - 2:14, 3:6
**answer** [9] - 5:23, 6:10, 17:19, 17:22, 18:15, 27:19, 53:4, 53:15, 60:13
**answered** [2] - 11:8, 27:18
**answering** [1] - 10:12
**answers** [1] - 5:23
**anticipating** [1] - 55:20
**anyway** [1] - 9:8
**apologize** [1] - 43:5
**appeal** [2] - 31:12, 39:11
**appearances** [1] - 4:7
**APPEARANCES** [2] - 2:1, 3:1
**Appellate** [1] - 47:2
**appellate** [2] - 44:20, 44:21

**applicant** [1] - 53:9
**application** [30] - 4:21, 4:22, 5:16, 6:12, 8:5, 8:8, 8:20, 11:17, 11:18, 12:10, 14:6, 14:16, 16:25, 18:18, 21:3, 21:22, 21:24, 21:25, 22:7, 22:11, 23:24, 25:15, 25:16, 33:4, 44:9, 54:21, 56:25, 60:11, 61:9, 63:3
**applications** [3] - 5:25, 7:13, 45:16
**applied** [3] - 6:3, 6:4, 47:12
**apply** [2] - 27:12, 30:5
**applying** [2] - 54:6, 54:20
**appreciate** [1] - 26:12
**approach** [2] - 22:19, 22:20
**appropriate** [2] - 31:23, 46:6
**approved** [1] - 47:10
**APRIL** [1] - 4:1
**arbitrariness** [1] - 39:9
**area** [3] - 6:6, 6:8, 14:20
**arguably** [1] - 59:15
**argue** [5] - 12:7, 15:4, 22:8, 55:22, 60:21
**arguing** [5] - 21:6, 21:20, 25:3, 30:19
**argument** [13] - 7:23, 14:18, 15:1, 15:8, 15:9, 15:10, 16:8, 16:15, 17:2, 17:3, 23:12, 45:24, 51:23
**arise** [1] - 4:22
**arrangement** [6] - 8:11, 8:19, 14:10, 20:12, 20:15
**arrangements** [2] - 11:22, 23:19
**aside** [2] - 24:6, 25:21
**aspect** [2] - 9:15, 31:21
**assessment** [1] - 54:23
**assignments** [1] - 33:18
**assume** [10] - 15:14, 15:15, 34:22, 35:5, 41:19, 49:5, 49:7,

49:8, 51:22, 51:23
**assumes** [1] - 15:1
**assuming** [5] -
14:24, 16:12, 19:4,
39:22, 51:8
**assumption** [2] -
11:10, 40:15
**assumptions** [3] -
13:23, 14:7, 15:12
**attached** [1] - 37:25
**attempt** [1] - 4:17
**attend** [1] - 23:22
**attended** [1] - 39:24
**attorney** [7] - 9:5,
45:12, 51:13, 51:14,
57:17, 65:13
**Attorney** [4] - 2:9,
2:12, 2:17, 3:5
**ATTORNEY'S** [1] -
1:14
**attorney's** [11] -
4:13, 4:19, 6:24,
17:17, 18:1, 30:3,
33:4, 45:16, 46:1,
49:23, 56:25
**attorneys** [8] - 17:25,
45:11, 45:13, 49:8,
51:10, 52:11, 61:22,
65:21
**Attorneys** [1] - 2:6
**availability** [1] - 67:8
**available** [1] - 49:24
**Avenue** [2] - 2:13,
2:18
**avoiding** [1] - 60:25
**award** [1] - 49:23
**aware** [3] - 28:5,
40:8, 53:7

# B

**background** [1] -
58:22
**ball** [1] - 65:16
**ballpark** [1] - 38:16
**bank** [3] - 20:16,
43:17, 52:6
**barred** [2] - 27:2
**barrier** [1] - 26:1
**bars** [1] - 26:16
**base** [1] - 56:24
**based** [10] - 20:21,
22:25, 25:8, 34:24,
36:21, 38:12, 42:10,
46:21, 47:3, 54:6
**basic** [2] - 10:9,
65:14
**basis** [6] - 38:9, 54:8,
58:16, 61:10, 62:18,
62:22

**beforehand** [1] -
22:21
**beginning** [1] - 40:5
**behalf** [5] - 6:25,
10:14, 10:22, 15:24,
16:20
**beneficiary** [1] - 8:1
**benefit** [19] - 7:20,
8:2, 8:20, 8:21, 9:2,
10:1, 10:18, 11:11,
12:4, 12:6, 12:13,
12:14, 13:1, 13:11,
13:12, 15:16, 21:9,
21:10, 24:15
**benefited** [10] - 7:1,
9:21, 10:8, 11:2,
11:12, 11:15, 11:20,
12:1, 15:17, 16:14
**benefits** [6] - 7:21,
16:20, 21:12, 21:13,
21:17
**BENICK** [1] - 26:7
**BERNICK** [59] - 2:17,
5:9, 6:13, 6:19, 7:14,
7:17, 9:13, 13:19,
13:22, 14:24, 15:5,
17:2, 17:21, 18:2,
18:5, 18:12, 18:20,
19:1, 19:22, 20:7,
21:5, 22:3, 22:10,
22:14, 23:7, 24:18,
24:20, 24:23, 25:24,
26:11, 27:20, 27:24,
28:10, 28:23, 29:6,
29:16, 29:25, 30:4,
30:7, 30:11, 30:17,
31:1, 31:14, 31:16,
32:5, 32:15, 41:13,
41:15, 43:4, 43:6,
44:6, 44:14, 44:17,
53:4, 54:5, 55:19,
60:3, 67:2, 67:19
**Bernick** [31] - 4:8,
6:13, 8:24, 9:20, 15:6,
15:11, 16:7, 20:3,
22:1, 22:9, 22:13,
23:4, 23:9, 24:13,
24:21, 25:22, 26:8,
26:24, 26:25, 27:23,
28:14, 29:1, 30:9,
30:14, 31:6, 44:12,
44:23, 55:25, 63:15,
67:4, 67:6
**Bernick's** [3] - 23:11,
39:22, 45:24
**best** [8] - 34:1,
47:22, 51:3, 56:11,
57:23, 58:24, 59:6,
61:24
**BETH** [1] - 2:9

**better** [5] - 17:4,
22:22, 26:13, 44:1,
67:7
**between** [2] - 40:2,
47:17
**big** [3] - 50:9, 59:21,
63:20
**bill** [2] - 39:23, 40:22
**billed** [5] - 38:5,
48:19, 53:2, 53:10,
59:22
**billing** [27] - 4:23,
4:24, 13:18, 32:19,
35:8, 38:17, 39:9,
39:18, 45:4, 45:6,
45:21, 46:3, 46:4,
46:6, 46:8, 46:21,
47:24, 49:20, 49:23,
51:4, 52:21, 52:24,
53:9, 53:19, 54:16,
55:8, 61:7
**bills** [1] - 60:5
**BIRD** [1] - 3:4
**bit** [4] - 5:11, 26:13,
26:25, 42:8
**bless** [1] - 24:23
**block** [27] - 4:23,
32:19, 38:5, 38:17,
39:9, 39:23, 45:4,
45:6, 45:21, 46:3,
46:4, 46:6, 46:8,
46:21, 47:24, 48:19,
49:20, 49:23, 51:4,
52:21, 52:24, 53:2,
53:9, 53:10, 54:16,
55:8, 61:7
**block-billed** [1] -
38:5
**blown** [1] - 51:5
**bottom** [1] - 47:5
**bottom-line** [1] -
47:5
**BOXER** [1] - 3:4
**breadth** [1] - 33:16
**breaking** [1] - 26:22
**brief** [2] - 18:21, 58:6
**briefed** [1] - 9:24
**briefing** [2] - 7:9,
40:12
**briefly** [1] - 31:20
**broad** [1] - 63:20
**broader** [1] - 34:5
**bucket** [2] - 48:8,
55:16
**buckets** [2] - 48:2,
50:13
**bulk** [1] - 10:22
**burden** [1] - 54:3
**buying** [1] - 45:23
**BY** [5] - 2:5, 2:9,

2:12, 2:17, 3:4

# C

**CALIFORNIA** [5] -
1:2, 1:15, 1:25, 4:1,
68:4
**California** [6] - 2:7,
2:7, 2:13, 2:14, 3:6,
68:8
**CALLEGUAS** [1] -
2:3
**CANNON** [1] - 2:5
**cannot** [8] - 27:7,
27:18, 28:19, 32:18,
46:7, 56:24, 57:22,
58:10
**capable** [1] - 27:4
**careful** [1] - 45:20
**carried** [1] - 16:19
**cart** [1] - 5:18
**Case** [1] - 1:7
**case** [13] - 5:21,
16:21, 17:7, 23:23,
24:2, 25:10, 34:15,
45:7, 46:18, 47:10,
53:7, 63:9
**cases** [21] - 10:4,
16:22, 33:24, 36:15,
39:10, 40:17, 46:10,
46:15, 47:8, 47:17,
47:19, 52:1, 52:20,
52:22, 55:8, 59:3,
59:12, 59:13, 60:19,
62:8
**catch** [1] - 26:5
**categories** [12] -
33:24, 50:19, 50:21,
50:23, 51:21, 59:4,
61:15, 62:12, 63:21,
63:25, 65:11, 65:13
**categorization** [4] -
59:1, 59:12, 63:6,
64:13
**categorize** [2] - 50:5,
63:22
**category** [3] - 24:10,
34:5, 61:4
**CCRR** [1] - 1:23
**cell** [1] - 26:13
**CENTRAL** [1] - 1:2
**Central** [1] - 68:8
**Century** [1] - 3:5
**certain** [12] - 4:17,
4:18, 5:20, 10:5,
13:18, 32:25, 33:11,
44:4, 48:19, 52:21,
56:3, 59:5
**CERTIFICATE** [1] -
68:1

**certify** [1] - 68:8
**cetera** [14] - 7:4, 9:4,
14:11, 23:2, 45:8,
45:9, 50:20, 50:21,
57:17, 57:18
**CHAN** [2] - 3:4, 4:11
**Chan** [2] - 4:10, 4:11
**chances** [1] - 49:1
**change** [1] - 19:15
**characterization** [2]
- 5:4, 7:22
**characterizes** [1] -
14:1
**characterizing** [1] -
15:2
**check** [3] - 35:16,
39:17, 59:25
**checked** [1] - 48:25
**choice** [1] - 42:19
**Circuit** [18] - 45:21,
46:6, 46:9, 46:12,
46:13, 46:19, 46:20,
46:23, 47:1, 47:4,
47:10, 47:18, 49:21,
52:25, 53:2, 53:8,
53:13, 53:14
**circumstance** [2] -
12:17, 65:9
**circumstances** [3] -
21:15, 48:20, 48:23
**Civil** [1] - 27:3
**claim** [1] - 62:23
**claiming** [2] - 56:7,
56:16
**Claims** [3] - 9:25,
16:17, 17:17
**clean** [1] - 13:25
**clear** [2] - 58:2,
60:19
**client** [1] - 10:4
**clients** [5] - 10:5,
11:22, 16:21, 19:16,
41:16
**co** [1] - 10:4
**co-counsel** [1] - 10:4
**code** [1] - 38:24
**Code** [1] - 68:9
**collect** [2] - 6:6, 9:22
**collected** [1] - 9:7
**comfortable** [1] -
28:1
**COMMONWEALTH**
[1] - 2:3
**COMPANY** [3] - 1:8,
2:15, 3:2
**complaining** [1] -
42:13
**complete** [4] - 8:6,
24:22, 41:22, 62:10
**completely** [3] -

14:2, 20:18, 28:1
**complex** [5] - 38:22, 39:13, 47:17, 60:19
**components** [1] - 54:16
**computer** [4] - 37:9, 37:16, 41:8, 57:9
**concede** [1] - 16:7
**concept** [1] - 11:8
**concerned** [3] - 5:13, 31:21, 37:11
**conclude** [2] - 11:15, 12:25
**concluded** [2] - 63:8, 67:20
**concludes** [1] - 64:1
**conduct** [1] - 41:8
**conference** [2] - 26:14, 68:13
**confess** [1] - 9:18
**confident** [1] - 25:8
**confirm** [1] - 67:12
**confirmed** [1] - 47:14
**conformance** [1] - 68:13
**connection** [1] - 22:6
**consequence** [1] - 47:20
**consistent** [1] - 59:1
**CONSTANTINE** [1] - 2:5
**Cont** [1] - 3:1
**contained** [2] - 5:24, 36:14
**containing** [1] - 15:11
**context** [2] - 10:17, 19:11
**continues** [1] - 16:19
**contradicted** [1] - 24:1
**contradicting** [1] - 24:3
**contrary** [1] - 14:25
**control** [1] - 17:21
**cooking** [1] - 43:20
**correct** [1] - 68:10
**correctly** [1] - 16:6
**cost** [1] - 39:9
**costs** [2] - 39:15, 39:22
**counsel** [23] - 6:5, 6:24, 9:22, 9:25, 10:4, 10:17, 10:21, 12:6, 13:10, 15:25, 16:19, 18:16, 19:13, 19:20, 20:14, 21:11, 24:14, 32:22, 33:2, 33:10, 41:7, 55:22, 59:21

**COUNSEL** [1] - 2:1
**counsel's** [2] - 16:10, 19:21
**count** [1] - 48:18
**COUNTY** [1] - 68:3
**couple** [1] - 7:18
**course** [4] - 10:25, 38:25, 51:6, 59:10
**Court** [64] - 4:16, 6:7, 7:5, 7:8, 10:21, 11:14, 12:11, 12:23, 12:25, 14:12, 14:21, 15:13, 15:15, 16:5, 19:4, 20:25, 21:13, 24:4, 24:8, 24:9, 24:11, 25:4, 25:7, 25:10, 27:2, 27:15, 27:16, 30:2, 34:14, 36:5, 39:11, 43:19, 43:21, 44:10, 45:14, 46:14, 46:16, 47:8, 47:14, 47:21, 47:24, 48:25, 49:2, 49:6, 50:20, 53:9, 53:10, 53:12, 53:22, 54:1, 54:8, 54:22, 58:20, 61:2, 62:4, 64:1, 64:6, 65:5, 65:10, 66:7, 68:7, 68:20
**COURT** [90] - 1:1, 1:24, 4:4, 4:12, 5:8, 5:12, 6:18, 6:21, 7:16, 8:23, 9:14, 13:5, 13:15, 13:21, 14:18, 15:3, 15:6, 17:11, 17:23, 18:4, 18:8, 18:13, 18:22, 19:7, 20:3, 21:2, 22:1, 22:8, 22:12, 22:16, 23:8, 24:21, 24:24, 25:13, 25:17, 26:5, 26:8, 26:24, 27:22, 28:6, 28:14, 29:1, 29:8, 29:17, 29:24, 30:2, 30:5, 30:9, 30:14, 30:22, 31:6, 31:15, 31:18, 32:7, 32:16, 35:3, 35:23, 37:3, 38:6, 40:20, 40:25, 41:4, 41:11, 41:14, 44:3, 44:12, 44:16, 44:23, 45:23, 46:12, 46:18, 49:4, 51:7, 52:5, 52:23, 55:22, 57:7, 58:9, 58:15, 59:20, 61:11, 62:16, 64:17, 65:18, 66:12, 66:19, 66:23, 67:4, 67:10, 67:17
**court** [1] - 58:19

**COURTROOM** [1] - 4:10
**Courts** [3] - 47:3, 47:12, 60:19
**crack** [1] - 9:12
**cranky** [1] - 31:19
**create** [2] - 26:1, 41:21
**created** [2] - 42:5, 45:14
**creating** [1] - 23:22
**creation** [1] - 4:21
**criticism** [1] - 59:16
**CRR** [1] - 68:20
**CSR** [2] - 1:23, 68:20
**CV** [1] - 1:7

**D**

**data** [9] - 50:2, 50:3, 50:15, 51:3, 52:4, 52:6, 53:24, 66:8, 66:10
**date** [3] - 8:6, 61:17, 66:13
**Date** [1] - 68:16
**dates** [6] - 32:12, 52:11, 56:8, 61:22, 65:22, 67:12
**David** [1] - 6:13
**DAVID** [1] - 2:17
**DAY** [1] - 2:8
**days** [2] - 51:11, 51:14
**deal** [3] - 17:9, 48:11
**deals** [1] - 8:7
**decide** [11] - 9:9, 14:11, 14:12, 19:2, 25:5, 28:20, 38:25, 52:14, 54:9, 60:23, 64:7
**decided** [9] - 11:24, 13:3, 14:1, 14:4, 21:10, 21:12, 21:16, 25:3, 25:15
**deciding** [1] - 28:13
**decision** [6] - 25:10, 28:16, 34:20, 40:1, 47:9, 56:18
**decisions** [2] - 47:4, 47:25
**declarants** [1] - 13:24
**declaration** [3] - 24:3, 26:19, 28:12
**declarations** [13] - 7:4, 8:8, 8:10, 15:14, 15:16, 15:19, 15:20, 17:8, 17:10, 22:24, 23:6, 28:9, 29:13

**declaratory** [1] - 23:13
**defend** [1] - 57:24
**DEFENDANT** [2] - 2:15, 3:2
**defendant** [5] - 24:2, 29:3, 51:6, 55:2, 66:3
**defendant's** [2] - 39:18, 39:21
**Defendants** [1] - 1:10
**defendants** [4] - 40:5, 40:11, 42:9, 55:3
**defending** [2] - 12:2, 43:18
**defense** [13] - 4:8, 5:8, 7:5, 7:7, 18:25, 56:12, 56:13, 59:21, 60:1, 60:4, 60:5, 65:24
**defer** [1] - 21:14
**define** [3] - 5:21, 42:1, 55:2
**defined** [1] - 4:25
**definitely** [1] - 30:24
**definition** [2] - 10:18, 43:23
**delineated** [2] - 4:25, 49:10
**delve** [1] - 22:13
**demonstrating** [1] - 40:6
**deny** [1] - 44:9
**deponent** [1] - 56:11
**depose** [3] - 35:20, 36:20, 38:2
**deposition** [35] - 10:12, 10:24, 12:2, 16:3, 23:22, 34:12, 35:7, 35:20, 35:22, 36:20, 36:25, 37:12, 38:2, 39:4, 51:10, 51:13, 54:20, 55:12, 55:13, 55:17, 56:7, 56:8, 56:16, 57:10, 57:11, 57:12, 57:20, 57:24, 58:6, 65:19, 65:20, 65:21, 65:22, 65:24
**depositions** [38] - 16:2, 34:4, 34:8, 34:15, 35:6, 35:13, 35:18, 36:24, 38:8, 38:10, 38:15, 38:23, 38:25, 39:2, 39:20, 39:24, 42:20, 42:21, 42:25, 43:2, 43:9, 43:19, 44:5, 51:9, 51:19, 52:10, 54:13,

55:11, 55:15, 56:6, 56:10, 58:13, 61:16, 61:17, 64:14, 64:21, 66:4, 66:6
**DEPUTY** [1] - 4:10
**derived** [1] - 37:2
**describe** [1] - 40:22
**described** [3] - 28:1, 40:24, 40:25
**description** [1] - 42:6
**detail** [9] - 11:9, 12:24, 13:3, 14:23, 35:15, 50:3, 62:25, 64:12
**detailed** [5] - 12:19, 13:7, 35:10, 36:10, 63:18
**determination** [17] - 8:25, 24:12, 27:16, 28:4, 31:9, 31:10, 33:8, 41:25, 42:10, 46:5, 46:7, 49:11, 49:17, 49:19, 52:17, 56:18, 61:2
**determine** [8] - 5:24, 8:20, 12:12, 25:5, 44:4, 46:1, 46:10, 50:5
**determined** [1] - 27:14
**development** [1] - 19:3
**difference** [1] - 21:8
**different** [11] - 32:3, 32:8, 33:18, 37:22, 38:24, 41:5, 52:2, 59:9, 63:11, 63:21
**differently** [2] - 5:11, 55:2
**difficult** [6] - 45:3, 48:11, 52:20, 59:13, 59:14, 62:3
**difficulty** [1] - 37:15
**Dillman** [3] - 2:12, 4:7, 66:24
**dinosaurs** [1] - 40:21
**directed** [1] - 27:22
**disagree** [3] - 20:18, 30:21, 32:4
**disagreement** [2] - 7:7, 9:15
**discounting** [2] - 38:19, 39:6
**discounts** [1] - 40:15
**discovery** [32] - 6:7, 6:8, 8:9, 8:17, 9:4, 10:12, 13:24, 15:22, 16:1, 19:15, 23:20, 25:11, 25:21, 26:16,

27:8, 28:4, 28:20, 29:7, 29:9, 29:10, 29:14, 31:7, 31:9, 50:19, 58:14, 58:19, 59:10, 61:15, 61:16
**discretion** [9] - 30:2, 34:20, 39:6, 43:23, 47:9, 47:10, 47:11, 47:15, 47:21
**discuss** [1] - 31:20
**discussed** [4] - 9:18, 9:19, 66:13, 66:15
**discussing** [3] - 10:7, 63:4
**dispositive** [4] - 12:9, 20:16, 28:11, 34:3
**dispute** [3] - 19:17, 27:17, 59:21
**disputed** [2] - 19:6, 23:18
**disputes** [2] - 20:5, 27:15
**disputing** [1] - 20:5
**distinguish** [1] - 47:17
**DISTRICT** [6] - 1:1, 1:2, 1:3, 2:3, 2:4
**District** [3] - 46:14, 68:7, 68:8
**dividing** [1] - 33:23
**DIVISION** [1] - 1:2
**doable** [1] - 36:18
**Docket** [1] - 33:5
**document** [1] - 61:14
**done** [49] - 7:12, 9:5, 10:2, 10:11, 10:13, 10:16, 10:18, 10:25, 11:5, 11:19, 12:5, 12:13, 13:1, 13:9, 21:9, 22:4, 22:23, 22:25, 24:7, 24:17, 27:8, 29:3, 31:25, 33:16, 33:17, 34:8, 36:1, 36:13, 37:1, 37:5, 37:16, 39:12, 39:13, 39:14, 41:17, 44:19, 46:16, 50:17, 52:8, 59:10, 60:4, 62:13, 62:18, 62:25, 63:1, 63:12, 63:20, 64:15, 66:11
**double** [1] - 66:20
**down** [5] - 14:17, 30:20, 47:5, 53:16, 67:11
**dozens** [1] - 10:24
**dragged** [1] - 43:25
**DROOKS** [1] - 3:4
**during** [10] - 9:11,

35:18, 36:21, 37:1, 43:10, 43:12, 59:10, 61:25, 64:16, 66:4

### E

**early** [1] - 8:6
**earth** [1] - 40:21
**easier** [2] - 50:10, 59:4
**easily** [1] - 7:25
**East** [1] - 3:5
**easy** [2] - 36:23, 37:16
**effort** [2] - 13:2, 39:12
**eight** [2] - 36:14, 58:4
**either** [5] - 19:17, 27:6, 28:18, 32:4, 35:13
**element** [1] - 39:8
**eliminated** [2] - 13:17, 65:3
**Elizabeth** [1] - 5:7
**emerge** [1] - 13:24
**emphasize** [1] - 45:21
**employees** [1] - 10:25
**enable** [1] - 19:3
**encompasses** [1] - 32:19
**end** [3] - 26:1, 42:17, 55:16
**engagement** [6] - 8:12, 8:13, 18:24, 22:24, 23:2, 23:15
**entertain** [1] - 30:2
**entities** [5] - 7:1, 11:16, 11:20, 19:14, 19:16
**entities'** [1] - 17:16
**entitled** [4] - 14:20, 14:22, 14:23, 16:12, 28:4, 29:6, 29:8, 68:12
**entity** [9] - 9:21, 11:1, 12:3, 12:15, 13:9, 13:11, 16:9, 17:15, 17:24
**entries** [25] - 12:19, 24:6, 35:21, 36:11, 36:14, 36:22, 36:23, 37:24, 38:4, 41:9, 41:20, 48:7, 48:10, 48:14, 49:9, 50:23, 51:9, 51:23, 51:24, 55:10, 56:8, 57:19, 62:7, 62:8

**entry** [7] - 48:17, 50:3, 52:1, 55:15, 58:5, 58:7, 58:12
**equally** [1] - 8:3
**equate** [1] - 38:4
**ERIC** [1] - 2:5
**error** [1] - 61:4
**essential** [1] - 20:13
**essentially** [1] - 51:5
**estimate** [13] - 38:7, 38:12, 52:14, 52:15, 52:16, 52:21, 52:25, 53:1, 56:15, 59:5, 61:23, 64:21, 65:22
**estimation** [4] - 45:18, 46:20, 57:22, 57:23
**et** [15] - 1:5, 7:4, 9:4, 14:11, 23:2, 45:8, 50:20, 50:21, 57:17, 57:18
**ethical** [1] - 48:22
**evaluate** [1] - 58:21
**evaluation** [1] - 56:12
**eventually** [1] - 15:23
**evidence** [2] - 42:10, 56:12
**evidence-based** [1] - 42:10
**evidentiary** [1] - 28:21
**exact** [1] - 39:19
**exactly** [10] - 7:25, 27:10, 34:11, 34:19, 34:21, 35:14, 40:11, 48:15, 55:9, 55:21
**example** [18] - 6:2, 11:23, 12:4, 34:2, 35:5, 37:6, 40:4, 49:7, 51:7, 51:12, 55:10, 55:11, 57:20, 59:6, 59:17, 65:10, 65:19
**Excel** [2] - 41:9, 57:9
**except** [1] - 55:14
**exceptions** [1] - 11:5
**excited** [1] - 27:24
**excluded** [1] - 49:22
**excuse** [3] - 34:25, 43:4, 44:17
**exercise** [4] - 12:24, 46:1, 49:22, 60:17
**exercised** [1] - 47:9
**exercises** [1] - 47:21
**Exhibit** [1] - 61:20
**exhibits** [3] - 37:7, 45:1
**Exhibits** [1] - 37:25
**exists** [1] - 50:8

**expect** [2] - 58:10, 61:19
**expectation** [1] - 15:21
**experience** [2] - 45:16, 47:23
**experienced** [3] - 34:14, 38:21, 47:25
**expert** [1] - 34:8
**explain** [2] - 12:22, 31:11
**explication** [1] - 33:2
**extent** [5] - 4:25, 10:17, 14:22, 23:14, 66:10
**extra** [2] - 39:5

### F

**face** [4] - 46:4, 55:1, 57:1, 61:6
**fact** [15] - 8:10, 17:5, 18:15, 18:22, 21:23, 23:18, 34:8, 34:21, 47:15, 48:21, 49:9, 49:20, 51:4, 60:10, 60:24
**factor** [1] - 39:17
**facts** [21] - 13:23, 13:24, 15:2, 18:6, 18:7, 19:18, 19:24, 19:25, 20:1, 20:9, 20:10, 23:15, 24:2, 24:5, 25:9, 27:17, 28:3, 28:4, 28:10, 28:23, 31:5
**factual** [17] - 6:17, 8:13, 11:9, 14:5, 15:12, 18:5, 19:3, 19:5, 19:11, 21:14, 25:6, 27:15, 29:7, 29:9, 54:15, 61:18
**fairly** [2] - 32:1, 49:5
**fall** [1] - 44:13
**falling** [1] - 44:15
**False** [3] - 9:25, 16:17, 17:17
**false** [2] - 42:4, 53:5
**far** [4] - 20:2, 36:7, 46:15, 50:7
**fashion** [2] - 44:25, 57:13
**faster** [1] - 20:23
**favor** [1] - 23:3
**Federal** [3] - 27:3, 68:6, 68:20
**FEDERAL** [1] - 1:24
**fee** [14] - 4:21, 4:22, 5:16, 5:24, 6:11, 7:13, 11:17, 11:18, 12:9,

18:17, 21:3, 23:24, 25:16, 63:3
**fees** [27] - 4:13, 4:19, 6:25, 9:22, 10:13, 16:11, 16:12, 16:23, 17:17, 18:1, 19:21, 20:17, 30:3, 33:4, 40:6, 40:9, 40:10, 40:16, 40:19, 43:13, 45:16, 46:2, 49:23, 54:12, 56:25, 60:5, 62:23
**FEES** [1] - 1:14
**figure** [9] - 44:6, 47:5, 54:2, 54:5, 57:5, 58:25, 63:7, 65:8, 66:10
**figured** [1] - 65:3
**figuring** [2] - 36:5, 59:14
**file** [5] - 14:16, 22:6, 23:16, 26:18
**finalize** [1] - 6:11
**fine** [9] - 29:16, 32:6, 32:14, 32:15, 46:18, 61:8, 64:2, 67:16
**finish** [1] - 43:4
**firms** [3] - 19:17, 36:21, 66:9
**first** [15] - 5:13, 7:19, 19:12, 23:8, 26:2, 32:12, 35:3, 35:6, 37:2, 41:15, 60:23, 63:19, 63:25, 65:7, 65:20
**FIRST** [1] - 1:24
**five** [6] - 49:2, 49:8, 51:5, 52:2, 57:12, 59:24
**five-minute** [1] - 49:2
**floor** [1] - 40:14
**Floor** [1] - 3:5
**following** [1] - 38:2
**FOR** [4] - 1:13, 2:3, 2:15, 3:2
**foregoing** [1] - 68:10
**form** [1] - 66:3
**formalism** [1] - 30:18
**formalist** [1] - 30:9
**format** [2] - 37:20, 68:12
**formed** [1] - 6:16
**forward** [4] - 12:10, 27:25, 28:3, 31:2
**foundation** [1] - 61:1
**four** [2] - 36:15, 50:21
**fourth** [1] - 24:14
**frame** [1] - 51:16
**framed** [1] - 7:25

Francisco [1] - 2:7
frankly [2] - 39:16, 41:6
front [2] - 5:2, 11:25
full [6] - 5:16, 21:3, 21:22, 21:24, 21:25, 51:5
fully [1] - 38:18
function [2] - 47:2, 51:1
fundamental [10] - 4:15, 4:16, 11:8, 13:6, 14:19, 15:4, 16:11, 16:25, 17:6, 24:12
future [1] - 66:13

## G

GARRISON [1] - 2:16
gather [1] - 46:24
gathering [1] - 4:18
gee [1] - 52:15
general [10] - 10:6, 11:7, 17:12, 17:13, 19:10, 38:12, 42:6, 51:2, 51:15, 64:18
generally [3] - 23:1, 30:12, 45:7
generate [1] - 63:12
GEORGE [1] - 1:3
given [11] - 15:18, 22:17, 33:16, 44:10, 45:1, 47:14, 51:4, 55:12, 61:20, 62:2
glean [1] - 51:15
gleaned [2] - 49:24, 49:25
God [1] - 24:23
governing [1] - 29:25
government [4] - 7:1, 11:16, 11:20, 16:9
governmental [6] - 9:21, 13:8, 13:11, 17:15, 17:16, 17:24
grains [1] - 56:5
Grand [1] - 2:13
grant [2] - 26:2, 26:5
granting [1] - 26:9
granular [5] - 55:3, 59:6, 60:20, 61:13, 61:20
granularity [6] - 36:9, 37:19, 56:4, 58:18, 59:2, 60:20, 61:2, 61:3
great [2] - 48:18, 67:17

groan [1] - 24:19
grounds [1] - 45:22
group [2] - 41:1, 50:11
groups [2] - 5:1, 45:12
guess [10] - 4:15, 13:5, 13:7, 13:12, 22:18, 23:3, 26:20, 32:17, 32:22, 55:14
guessing [2] - 56:21, 59:14
guys [5] - 32:7, 32:11, 52:12, 66:14, 67:12

## H

haircut [1] - 40:3
hand [2] - 38:21, 41:21
hang [2] - 20:7
happy [3] - 31:2, 31:3, 44:9
hard [4] - 12:15, 42:7, 44:19, 52:12
HARRY [1] - 2:6
Havian [1] - 66:24
HAVIAN [1] - 2:5
head [1] - 35:12
hear [1] - 26:9
heard [2] - 13:20, 26:11
HEARING [1] - 1:13
hearing [4] - 7:10, 24:13, 36:4, 49:1
heartbeat [1] - 41:17
held [1] - 68:11
help [2] - 50:25, 51:1
helpful [3] - 36:12, 51:18, 65:5
HENNINGAN [1] - 2:11
hereby [1] - 68:8
hole [1] - 53:16
honest [1] - 57:4
Honor [53] - 5:6, 6:13, 6:15, 7:15, 9:16, 13:19, 14:8, 14:15, 15:5, 15:10, 17:2, 19:22, 20:1, 21:18, 21:22, 22:5, 23:10, 27:20, 27:21, 27:25, 28:24, 29:20, 30:7, 31:4, 32:6, 32:14, 35:9, 36:2, 37:18, 41:13, 43:16, 44:1, 45:19, 46:16, 47:7, 50:1, 51:21, 53:4, 55:11, 57:2, 58:23,

60:3, 60:7, 62:5, 64:25, 66:17, 66:22, 67:2, 67:9, 67:16
Honor's [2] - 21:6, 21:18
HONORABLE [1] - 1:3
hook [1] - 40:14
hope [3] - 50:12, 66:19, 66:21
horse [1] - 5:19
hour [5] - 40:22, 40:23, 40:24, 58:7, 59:23
HOURIGAN [4] - 1:23, 68:6, 68:19, 68:20
hours [29] - 34:10, 34:12, 34:16, 34:25, 37:8, 38:4, 38:10, 38:14, 41:4, 42:1, 42:2, 42:20, 42:21, 48:16, 48:18, 51:19, 53:19, 54:2, 54:12, 58:19, 59:15, 59:17, 59:24, 64:22, 66:6
hundreds [7] - 33:18, 36:10, 36:13, 37:24, 39:14, 50:22, 59:9
hungry [1] - 31:18
hurt [1] - 67:2
hyperbole [2] - 22:8, 22:10

## I

idea [1] - 50:17
identified [1] - 48:13
imagine [2] - 12:15, 55:1
immediately [1] - 36:4
immersed [1] - 66:10
immune [1] - 21:18
implicate [1] - 38:24
implicating [1] - 52:1
important [1] - 31:5
impossible [5] - 12:23, 26:14, 41:23, 42:14
inability [1] - 33:13, 61:5
INC [3] - 1:9, 2:15, 3:2
incidental [4] - 7:21, 8:2, 8:21, 10:8
included [1] - 61:19
including [5] - 16:1, 16:21, 20:11, 39:10,

55:4
incomprehensible [1] - 28:25
incurred [1] - 54:17
indicate [8] - 27:1, 27:8, 27:18, 29:13, 37:4, 44:12, 51:9, 55:24
indicated [8] - 21:4, 28:18, 31:6, 42:3, 55:7, 57:8, 59:25, 60:7
indicates [2] - 43:7, 62:4
indicating [5] - 22:20, 28:7, 29:2, 29:3, 51:8
indication [2] - 40:1, 48:10
individual [6] - 7:1, 12:12, 37:11, 41:1, 62:7, 65:12
inefficiency [1] - 34:23
information [10] - 4:19, 6:6, 37:17, 43:13, 44:11, 45:1, 49:24, 52:2, 63:5, 63:23
informative [1] - 49:11
initial [2] - 5:15, 35:4
inordinate [1] - 63:17
inpatient [2] - 22:14, 22:17
insofar [6] - 5:13, 9:1, 31:21, 37:11, 56:18, 61:13
instance [2] - 60:23, 63:25
instances [1] - 58:1
instead [1] - 14:7
instructed [1] - 53:9
interactions [1] - 50:20
interrupt [2] - 8:23, 24:22
intervene [1] - 17:15
intervened [9] - 9:21, 10:2, 10:10, 10:14, 10:19, 11:1, 11:12, 19:14, 24:16
intervenes [2] - 16:10, 17:24
intervening [2] - 7:21, 8:1
intervenor [2] - 13:8, 21:10
intervenors [6] -

8:21, 13:1, 20:14, 21:12, 21:13, 21:17
inured [1] - 9:3
inures [2] - 13:10, 13:12
investigation [1] - 61:18
involved [5] - 39:20, 45:10, 45:11, 52:19, 61:22
involving [1] - 39:14
issue [67] - 4:20, 5:13, 6:2, 6:14, 6:16, 6:20, 6:21, 6:22, 7:10, 8:7, 8:13, 9:9, 9:17, 9:19, 10:6, 11:14, 11:24, 11:25, 12:9, 13:2, 13:6, 13:13, 13:25, 14:19, 15:13, 16:6, 16:9, 16:11, 16:17, 16:24, 17:5, 17:23, 18:10, 18:14, 18:21, 18:23, 19:4, 19:5, 19:13, 21:4, 22:2, 22:12, 22:13, 22:21, 23:14, 25:15, 27:4, 27:14, 27:16, 27:18, 27:19, 29:9, 31:20, 32:16, 32:19, 38:17, 42:4, 45:4, 45:6, 46:10, 53:5, 58:23, 60:4, 63:1, 63:3
issues [23] - 4:12, 4:15, 4:16, 4:17, 4:22, 5:1, 5:7, 5:11, 5:17, 5:21, 5:23, 5:24, 6:1, 6:23, 14:8, 15:4, 19:1, 19:12, 25:6, 25:21, 27:17, 31:22, 45:10
item [2] - 24:10, 62:11
itemized [2] - 61:15, 61:16
items [4] - 4:25, 38:2, 53:10, 58:18
itself [5] - 5:25, 17:6, 18:23, 26:1, 32:20

## J

J-M's [2] - 5:14, 15:25
Javier [2] - 4:6, 4:9
Jefferson [1] - 2:10
Jersey [1] - 2:10
JM [11] - 1:8, 2:15, 3:2, 4:5, 9:20, 10:24, 11:12, 11:15, 12:11, 43:11, 55:13

**joint** [2] - 4:13, 36:8
**judge** [1] - 30:16
**JUDGE** [1] - 1:3
**judgment** [20] - 11:3, 23:13, 25:7, 25:19, 25:25, 26:3, 26:6, 26:9, 26:16, 26:19, 27:4, 27:5, 27:11, 28:13, 28:16, 29:22, 54:15, 58:16
**judicial** [2] - 49:6, 68:13
**June** [1] - 68:16
**JUNE** [1] - 1:14
**justifiable** [1] - 65:17
**justified** [1] - 34:24

### K

**keep** [1] - 64:9
**kind** [10] - 8:11, 13:15, 25:6, 42:9, 43:20, 48:8, 55:15, 59:1, 60:16, 61:4
**Kirk** [1] - 2:12
**knowable** [1] - 43:9
**knowing** [1] - 63:10
**Knudsen** [1] - 65:20

### L

**laid** [1] - 63:9
**large** [1] - 13:17
**last** [7] - 12:21, 26:4, 36:3, 42:3, 56:24, 62:6, 63:4
**Law** [5] - 2:6, 2:9, 2:12, 2:17, 3:5
**law** [18] - 13:25, 15:2, 16:22, 18:23, 19:4, 19:5, 19:17, 19:19, 23:23, 24:5, 25:3, 25:6, 27:12, 28:5, 36:21, 45:22, 47:19
**lawyer** [1] - 34:11
**lawyers** [1] - 38:24
**lead** [1] - 4:21
**learn** [1] - 18:7
**least** [3] - 15:25, 47:19, 58:1
**leave** [2] - 65:24, 66:12
**leaving** [1] - 24:6
**ledger** [1] - 12:5
**legal** [25] - 4:17, 5:21, 6:11, 6:16, 6:23, 8:7, 10:6, 10:15, 11:14, 11:25, 13:6, 13:25, 14:19, 15:13,

16:6, 16:11, 16:17, 16:24, 22:21, 23:12, 23:14, 27:15, 27:16, 27:18, 27:19
**length** [2] - 17:3, 22:17
**less** [4] - 9:19, 10:9, 44:20, 51:15
**letter** [1] - 8:12
**letters** [1] - 8:14
**level** [12] - 12:24, 19:12, 34:23, 36:8, 36:18, 37:19, 38:19, 46:16, 56:3, 56:14, 64:12
**liability** [1] - 11:3
**liberty** [1] - 5:10
**light** [1] - 35:1
**likely** [1] - 34:7
**LIMAN** [1] - 2:6
**limitations** [1] - 51:4
**LINCENBERG** [1] - 3:4
**line** [3] - 35:20, 38:2, 47:5
**lines** [4] - 6:22, 35:21, 38:24, 63:13
**link** [1] - 36:10
**list** [5] - 4:7, 35:13, 57:15, 57:19, 61:14
**listed** [7] - 35:14, 36:9, 61:13, 61:14, 61:18, 62:19, 62:25
**listen** [1] - 18:2
**listing** [1] - 52:1
**lists** [1] - 35:11
**literally** [1] - 41:21
**litigate** [1] - 51:7
**litigated** [1] - 14:23
**litigates** [1] - 17:16
**litigation** [7] - 10:1, 17:22, 22:17, 23:23, 38:22, 39:13
**Litman** [1] - 4:7
**live** [1] - 40:18
**LLP** [3] - 2:5, 2:8, 2:16
**look** [17] - 12:12, 20:24, 21:7, 32:9, 33:22, 39:18, 40:10, 48:14, 50:12, 57:16, 58:12, 64:13, 65:8, 65:15, 66:8, 66:11
**looked** [4] - 39:10, 47:12, 51:2, 56:24
**looking** [3] - 21:15, 24:4, 30:19
**looks** [2] - 34:6, 38:22
**LOS** [4] - 1:15, 1:25,

4:1, 68:3
**Los** [2] - 2:14, 3:6

### M

**M's** [2] - 5:14, 15:25
**maintain** [2] - 11:4, 19:11
**maintaining** [1] - 16:15
**major** [1] - 62:12
**majority** [1] - 49:1
**MANUFACTURING** [3] - 1:8, 2:15, 3:2
**Manufacturing** [1] - 4:5
**MARELLA** [1] - 3:4
**master** [39] - 5:16, 5:22, 6:1, 6:12, 7:13, 9:10, 9:12, 17:1, 18:11, 32:25, 33:1, 33:6, 33:21, 34:13, 43:24, 46:25, 47:23, 48:2, 49:10, 49:16, 49:18, 49:19, 50:10, 50:12, 51:2, 52:6, 52:8, 52:10, 52:14, 56:17, 58:10, 58:20, 64:9, 64:13, 64:19, 64:23
**match** [1] - 62:6
**matching** [1] - 36:16
**material** [3] - 27:15, 27:17, 41:7
**materials** [8] - 4:19, 6:17, 8:16, 8:18, 20:24, 25:4, 25:11, 28:21
**Matt** [1] - 65:20
**matter** [10] - 4:4, 12:22, 14:13, 16:22, 17:25, 19:19, 24:5, 25:3, 25:5, 68:12
**matters** [2] - 29:14, 61:25
**MCKOOL** [1] - 2:11
**mean** [13] - 13:15, 22:4, 27:9, 30:7, 38:8, 41:5, 41:23, 48:4, 53:21, 58:20, 59:25, 61:18, 64:1
**means** [3] - 7:24, 34:22, 56:12
**meets** [1] - 63:6
**met** [1] - 38:15
**might** [9] - 5:15, 10:12, 12:16, 12:17, 41:22, 55:14, 61:3, 63:22, 64:1
**mind** [2] - 4:23,

49:15
**minimum** [1] - 53:21
**minor** [1] - 11:17
**minute** [1] - 49:2
**miscellaneous** [1] - 55:16
**mixing** [1] - 36:16
**money** [2] - 44:7, 47:5, 54:12
**months** [4] - 13:2, 59:10, 59:11
**most** [2] - 45:12, 64:9
**MOTION** [1] - 1:13
**motion** [32] - 12:7, 22:6, 23:13, 23:16, 25:2, 25:7, 25:19, 26:16, 26:17, 26:18, 26:19, 27:3, 27:5, 27:10, 27:11, 27:14, 28:7, 28:8, 28:16, 48:8, 48:9, 48:15, 48:17, 48:24, 49:2, 49:5, 49:8, 49:9, 50:20, 58:19, 60:22
**motions** [9] - 25:25, 30:3, 30:6, 32:9, 34:3, 39:21, 48:8, 48:11, 66:15
**mouth** [1] - 19:8
**move** [4] - 25:24, 25:25, 26:19, 44:9
**MR** [60] - 4:11, 5:9, 6:13, 6:19, 7:14, 7:17, 9:13, 13:19, 13:22, 14:24, 15:5, 17:2, 17:21, 18:2, 18:5, 18:12, 18:20, 19:1, 19:22, 20:7, 21:5, 22:3, 22:10, 22:14, 23:7, 24:18, 24:20, 24:23, 25:24, 26:7, 26:11, 27:20, 27:24, 28:10, 28:23, 29:6, 29:16, 29:25, 30:4, 30:7, 30:11, 30:17, 31:1, 31:14, 31:16, 32:5, 32:15, 41:13, 41:15, 43:4, 43:6, 44:6, 44:14, 44:17, 53:4, 54:5, 55:19, 60:3, 67:2, 67:19
**MS** [46] - 5:6, 9:16, 13:14, 15:10, 19:9, 23:10, 24:19, 25:1, 25:14, 27:21, 29:20, 32:6, 32:14, 33:19, 35:9, 36:2, 37:18, 38:11, 40:24, 41:3, 41:9, 43:3, 43:5,

45:19, 46:9, 46:15, 47:7, 50:1, 51:20, 52:20, 54:4, 54:25, 55:21, 57:1, 58:1, 58:12, 58:23, 62:5, 62:24, 64:25, 66:7, 66:17, 66:21, 67:1, 67:7, 67:16
**multipage** [1] - 36:9
**multiple** [3] - 16:21, 46:10, 51:24
**MUNICIPAL** [1] - 2:3

### N

**name** [4] - 37:13, 57:12, 61:17
**nature** [1] - 23:13
**near** [1] - 31:19
**necessarily** [6] - 15:22, 30:22, 50:9, 50:24, 65:5, 65:11
**necessary** [3] - 11:2, 12:20, 19:12
**need** [25] - 5:25, 8:9, 8:17, 9:3, 9:4, 20:22, 25:20, 27:7, 28:19, 29:14, 30:4, 33:22, 33:23, 42:16, 46:24, 53:16, 57:5, 60:18, 61:21, 64:10, 64:18, 64:22, 65:8, 66:8
**needs** [3] - 14:8, 27:8, 29:9
**negate** [1] - 16:22
**negates** [1] - 16:10
**negotiation** [1] - 44:18
**NESSIM** [1] - 3:4
**Nevada** [1] - 11:23
**never** [3] - 8:6, 36:2, 45:17
**New** [3] - 2:10, 2:18
**next** [3] - 22:2, 36:18, 38:3
**nice** [1] - 67:18
**night** [1] - 59:8
**nine** [1] - 36:14
**Ninth** [14] - 45:21, 46:9, 46:12, 46:13, 46:19, 46:20, 47:4, 47:10, 47:18, 52:25, 53:2, 53:7, 53:13
**nit** [1] - 55:5
**NO** [2] - 1:23, 68:20
**noise** [1] - 26:23
**none** [1] - 16:3
**normally** [2] - 27:9, 45:15
**nothing** [2] - 11:19,

12:13
**notice** [1] - 49:6
**notion** [2] - 23:20, 51:15
**Number** [1] - 33:5
**number** [21] - 34:10, 34:16, 34:24, 35:1, 35:2, 35:4, 35:11, 35:17, 36:22, 38:10, 39:1, 39:20, 39:21, 42:1, 43:20, 44:4, 53:19, 53:23, 65:11, 66:6
**numbers** [1] - 63:13

**O**

**o'clock** [1] - 67:14
**oath** [1] - 15:23
**object** [3] - 56:13, 58:17, 64:5
**obligated** [1] - 40:21
**obligation** [2] - 60:23, 60:25
**obliged** [1] - 43:13
**obtain** [1] - 16:23
**obvious** [1] - 55:4
**obviously** [7] - 7:5, 16:16, 21:5, 23:17, 29:8, 57:6, 64:5
**occurred** [1] - 61:17
**OF** [8] - 1:2, 1:5, 1:13, 2:1, 2:3, 68:1, 68:3, 68:4
**offer** [2] - 23:1, 23:4
**Official** [2] - 68:6, 68:20
**OFFICIAL** [2] - 1:24, 68:1
**ON** [1] - 1:13
**once** [6] - 9:21, 10:10, 14:21, 37:16, 48:13, 51:2
**One** [1] - 2:13
**one** [42] - 6:23, 7:2, 7:3, 7:11, 10:8, 11:15, 19:21, 32:1, 33:17, 35:12, 37:23, 37:24, 39:4, 39:17, 40:1, 40:6, 41:1, 41:8, 42:15, 44:13, 44:16, 45:11, 48:5, 48:23, 49:4, 51:6, 51:13, 54:17, 54:25, 55:6, 55:13, 55:18, 59:24, 62:12, 63:8, 63:10, 63:25
**ones** [1] - 39:10
**oOo** [1] - 4:3
**opportunity** [2] -

31:5, 31:7
**oppose** [3] - 28:17, 28:19, 28:20
**opposing** [4] - 25:19, 27:6, 27:7
**opposite** [1] - 7:25
**oral** [2] - 15:1, 50:19
**order** [5] - 33:22, 48:2, 49:22, 50:5, 64:6
**organization** [1] - 63:6
**otherwise** [3] - 6:17, 18:19, 56:21
**outside** [1] - 8:12
**overbilling** [1] - 49:12
**own** [7] - 5:10, 17:8, 21:12, 28:21, 40:9, 41:16, 54:15

**P**

**P.C** [1] - 2:11
**p.m** [1] - 67:20
**page** [1] - 68:12
**pages** [3] - 41:20, 50:18, 63:13
**paid** [2] - 13:9, 60:11
**PALMDALE** [1] - 2:3
**parallel** [1] - 8:15
**parcel** [1] - 9:7
**Park** [1] - 3:5
**parse** [1] - 42:24
**Parsippany** [1] - 2:10
**part** [9] - 9:6, 14:13, 23:16, 23:17, 25:14, 26:4, 38:12, 48:11, 58:3
**participated** [2] - 34:7, 64:15
**participating** [2] - 39:20, 59:8
**particular** [20] - 9:5, 11:1, 11:25, 12:1, 12:3, 12:15, 24:9, 24:10, 32:9, 34:12, 39:4, 47:13, 49:12, 52:19, 56:10, 57:15, 59:15, 61:14, 61:21
**particularly** [2] - 9:2, 36:12, 66:9
**parties** [10] - 5:17, 7:21, 8:2, 10:19, 10:20, 11:11, 12:4, 15:17, 16:21, 35:1
**parties'** [1] - 4:13
**party** [11] - 10:2, 10:10, 10:11, 10:14,

24:16, 25:19, 27:3, 27:6, 27:7, 28:16
**past** [3] - 9:18, 9:20, 10:10
**paths** [1] - 12:12
**PAUL** [2] - 2:16, 3:4
**Paul** [1] - 4:11
**pay** [2] - 66:20
**people** [7] - 30:19, 31:3, 35:1, 39:1, 40:7, 42:7, 64:14
**people's** [1] - 67:8
**perceiving** [1] - 44:25
**percent** [8] - 16:1, 39:25, 40:2, 45:25, 47:13
**percentage** [3] - 33:13, 34:20, 40:13
**Perfect** [1] - 37:9
**perfectly** [2] - 46:21, 57:4
**perform** [1] - 54:23
**performed** [1] - 6:25
**performing** [1] - 35:1
**perhaps** [2] - 23:11, 47:24
**period** [10] - 9:1, 32:2, 34:10, 35:18, 37:1, 39:2, 39:13, 43:11, 61:25, 66:4
**periods** [2] - 13:18, 59:5
**permitted** [1] - 45:21
**person** [4] - 12:3, 28:15, 34:21, 39:5
**persons** [1] - 56:7
**perspective** [1] - 16:5
**Phase** [1] - 11:3
**phone** [1] - 26:13
**phrase** [2] - 5:10, 57:15
**pick** [2] - 34:23, 55:5
**PITNEY** [1] - 2:8
**place** [4] - 37:2, 38:23, 39:7, 63:19
**places** [1] - 52:2
**plaintiff** [5] - 9:14, 27:13, 52:18
**Plaintiff** [1] - 1:6
**PLAINTIFF** [1] - 2:3
**plaintiff's** [17] - 6:5, 12:5, 13:4, 13:5, 18:16, 21:11, 24:14, 28:8, 32:22, 33:2, 33:3, 33:10, 40:16, 44:17, 56:11, 60:22, 61:12
**plaintiffs** [24] - 4:6,

5:6, 8:5, 8:9, 21:2, 28:2, 32:6, 32:17, 34:6, 35:24, 36:1, 38:9, 39:25, 40:4, 40:13, 43:22, 44:8, 51:5, 53:12, 54:11, 55:2, 55:7, 60:7, 61:12
**Plaza** [1] - 2:13
**pleadings** [1] - 14:5
**plug** [1] - 57:10
**Point** [2] - 8:3, 8:4
**point** [22] - 5:2, 9:15, 11:18, 12:8, 19:18, 20:7, 20:8, 20:20, 21:6, 21:15, 21:20, 22:19, 28:19, 29:5, 29:21, 37:3, 46:1, 47:16, 55:25, 58:24, 64:23
**pointing** [1] - 26:12
**pop** [2] - 37:10, 57:10
**portions** [1] - 13:17
**posed** [1] - 53:6
**position** [15] - 9:20, 9:23, 10:15, 11:7, 13:4, 13:5, 18:25, 20:13, 24:12, 28:22, 32:17, 39:22, 44:2, 46:8, 61:9
**positions** [1] - 19:21
**possible** [4] - 12:15, 25:5, 49:18, 55:3
**practical** [1] - 42:12
**practice** [4] - 47:25, 48:15, 50:20, 58:19
**practicing** [1] - 40:21
**precedent** [1] - 54:11
**precedents** [1] - 60:19
**precisely** [1] - 13:25
**predicates** [1] - 19:5
**prefer** [1] - 12:23
**preliminary** [1] - 52:7
**prepare** [4] - 38:13, 55:12, 57:24
**prepared** [6] - 21:24, 24:9, 25:14, 42:18, 42:19, 58:6
**preparing** [3] - 35:14, 43:8, 43:18
**prerogative** [1] - 21:6
**present** [8] - 4:11, 6:12, 8:13, 15:25, 16:3, 38:13, 59:7, 63:5
**presented** [1] - 10:23

**presumably** [6] - 24:17, 33:21, 34:13, 47:22, 51:1, 52:13
**presume** [3] - 17:14, 17:19, 27:10
**pretty** [3] - 11:8, 22:3, 40:8
**prevent** [1] - 46:5
**prevents** [1] - 46:3
**primary** [1] - 5:7
**private** [1] - 47:25
**problem** [19] - 29:15, 29:18, 30:10, 33:19, 41:2, 42:11, 42:12, 43:20, 44:3, 45:4, 45:5, 45:6, 45:13, 46:3, 48:12, 48:13, 52:5, 52:25, 57:1
**problems** [2] - 46:22, 54:25
**procedural** [1] - 30:4
**procedurally** [1] - 29:2
**procedure** [2] - 4:14, 27:9
**Procedure** [1] - 27:3
**proceeded** [1] - 11:22
**proceedings** [2] - 67:20, 68:11
**process** [5] - 25:2, 27:25, 28:2, 31:17, 55:1
**processing** [1] - 9:11
**produced** [1] - 22:25
**production** [2] - 7:3, 61:14
**proffering** [1] - 52:18
**program** [5] - 37:9, 37:16, 37:20, 41:8, 41:10
**prohibit** [1] - 19:20
**prohibited** [2] - 47:20, 49:21
**proof** [2] - 23:1, 23:4
**proportionality** [2] - 14:13, 14:17
**proposal** [1] - 53:11
**propose** [3] - 32:3, 32:8, 44:9
**proposed** [1] - 36:17
**proposing** [1] - 32:12
**proposition** [5] - 7:20, 10:6, 10:9, 20:18, 21:19
**provide** [2] - 43:13, 58:21
**provided** [3] - 29:12, 29:13, 62:3

**PUBLIC** [1] - 2:4
**pull** [3] - 35:20, 48:9, 50:22
**pulling** [1] - 52:1
**punt** [1] - 60:24
**purely** [1] - 6:16
**purposes** [3] - 28:13, 42:13, 63:3
**pursuant** [1] - 68:9
**push** [1] - 44:19
**put** [28] - 5:18, 10:20, 15:15, 15:19, 15:20, 18:10, 23:16, 24:1, 24:3, 25:4, 25:14, 25:16, 31:1, 31:2, 34:11, 34:17, 34:19, 35:7, 37:6, 37:10, 41:9, 48:2, 48:10, 52:13, 57:8, 59:20, 65:18, 67:11
**putting** [6] - 18:17, 19:8, 25:21, 30:24, 37:15, 37:20

## Q

**qualification** [1] - 25:18
**quarter** [8] - 35:12, 36:22, 37:23, 37:24, 48:6, 62:11, 63:10, 64:16
**quarters** [1] - 64:3
**questions** [1] - 6:11
**quickly** [1] - 32:1
**quite** [1] - 60:19

## R

**rabbit** [1] - 53:16
**raise** [1] - 60:1
**raised** [1] - 6:23
**randomness** [1] - 39:8
**rather** [4] - 32:12, 41:1, 57:3, 59:2
**raw** [2] - 50:2, 51:3
**re** [1] - 4:13
**reading** [1] - 7:19
**reads** [1] - 15:13
**ready** [1] - 59:8
**real** [3] - 8:1, 42:7
**reality** [1] - 41:16
**really** [14] - 5:21, 5:25, 7:22, 8:20, 18:9, 28:14, 30:19, 31:19, 40:1, 42:2, 42:5, 44:18, 48:11, 67:7
**Realtime** [1] - 68:6
**reason** [2] - 14:12,

26:8
**reasonable** [29] - 16:13, 39:1, 39:12, 40:15, 42:23, 43:1, 46:2, 49:13, 49:14, 49:23, 52:15, 52:19, 53:1, 53:19, 53:23, 54:6, 54:8, 54:9, 54:20, 56:18, 56:20, 57:22, 60:16, 61:1, 61:10, 64:16, 65:25, 66:1
**reasonableness** [12] - 4:24, 24:7, 33:9, 46:5, 46:7, 46:11, 46:20, 49:17, 50:5, 53:22, 54:23, 61:3
**reasonably** [4] - 43:22, 57:5, 58:25
**reasons** [2] - 31:11, 55:4
**recognize** [4] - 23:25, 25:12, 40:17, 41:3
**recognizes** [1] - 18:22
**reconstruct** [1] - 40:18
**record** [6] - 8:7, 14:9, 19:3, 21:7, 21:8
**records** [6] - 35:8, 35:17, 35:19, 36:21, 37:11, 37:12, 38:22, 39:18
**recover** [3] - 6:24, 17:16, 18:1
**recoverable** [10] - 10:13, 10:17, 11:13, 11:16, 12:16, 12:25, 13:10, 16:13, 17:18, 24:11
**recovering** [1] - 43:12
**recovery** [1] - 24:8
**refer** [3] - 48:7, 48:15, 56:4
**reference** [3] - 11:25, 13:3, 56:9
**referenced** [1] - 52:10
**referring** [4] - 33:3, 37:7, 56:4, 56:5
**refers** [1] - 56:10
**refuse** [1] - 53:14
**refused** [2] - 36:2, 53:13
**refusing** [2] - 22:11, 57:6
**regard** [1] - 38:16
**regardless** [2] - 11:1,

16:13
**regards** [5] - 4:20, 6:2, 6:7, 6:23, 32:18
**regulations** [1] - 68:13
**relate** [1] - 36:24
**related** [6] - 4:23, 22:3, 26:16, 34:2, 34:3, 34:4
**relates** [1] - 62:12
**relationship** [2] - 10:19, 25:12
**relationships** [1] - 23:14
**relator** [27] - 6:25, 7:20, 8:2, 8:21, 10:1, 10:2, 10:18, 10:22, 11:2, 11:11, 11:20, 12:6, 12:14, 13:2, 13:9, 13:12, 15:16, 16:20, 17:16, 17:18, 17:21, 17:24, 20:13, 21:9, 21:13, 21:17, 24:15
**relator's** [14] - 6:24, 9:22, 9:25, 10:17, 10:21, 12:6, 13:10, 16:10, 16:19, 17:17, 17:25, 19:13, 19:17, 19:20
**relators** [1] - 21:11
**relevance** [1] - 20:11
**relevant** [4] - 23:15, 25:12, 25:21, 43:14
**remainder** [2] - 24:24, 25:1
**remains** [1] - 17:21
**remember** [5] - 34:8, 58:4, 61:6, 61:7, 66:21, 66:25
**remind** [1] - 66:25
**reply** [1] - 25:20
**reported** [1] - 18:24
**REPORTER** [4] - 1:24, 26:4, 26:22, 68:1
**Reporter** [2] - 68:7, 68:20
**REPORTER'S** [1] - 1:13
**representation** [1] - 54:16
**representations** [1] - 47:4
**representatives** [1] - 66:9
**request** [1] - 60:11
**requested** [2] - 6:8, 10:21, 58:13
**requesting** [1] -

19:21
**require** [7] - 11:9, 15:22, 21:2, 41:12, 56:2, 56:3, 60:19
**required** [6] - 21:14, 21:22, 31:8, 31:10, 53:1, 60:9
**requires** [2] - 19:2, 29:9
**requiring** [2] - 33:1, 65:16
**reserve** [1] - 9:6
**resolution** [4] - 18:10, 19:12, 21:3, 66:13
**resolvable** [1] - 24:5
**resolve** [3] - 6:1, 18:14, 27:16
**resolved** [3] - 13:6, 22:21, 27:4
**resolving** [1] - 32:18
**respectfully** [1] - 55:19
**respond** [7] - 7:14, 27:6, 27:7, 29:4, 29:6, 65:24, 66:3
**response** [2] - 25:20, 25:22
**rest** [4] - 14:16, 42:23, 53:25, 60:17
**result** [2] - 34:18, 51:22
**retroactively** [2] - 6:3, 6:4
**retroactivity** [1] - 6:14
**reversed** [1] - 44:16
**review** [9] - 7:6, 8:5, 12:19, 21:19, 24:6, 44:20, 44:21, 47:11, 49:17
**reviews** [1] - 7:5
**revolve** [1] - 18:24
**RHOW** [1] - 3:4
**RIFKIND** [1] - 2:16
**rise** [1] - 23:24
**road** [2] - 14:17, 30:20
**Road** [1] - 2:10
**room** [1] - 26:13
**ROOM** [1] - 1:24
**rough** [1] - 42:9
**round** [2] - 57:3
**RPR** [1] - 68:20
**rule** [7] - 7:2, 27:2, 28:24, 29:25, 30:4, 31:4, 31:11
**ruled** [1] - 40:21
**rules** [1] - 30:5
**ruling** [3] - 4:17, 5:5,

29:1

## S

**sake** [1] - 51:22
**sample** [2] - 4:21, 35:10
**samples** [1] - 33:4
**San** [1] - 2:7
**sand** [1] - 56:5
**satisfied** [2] - 29:11, 29:12
**save** [1] - 47:5
**schedule** [3] - 4:14, 31:22, 48:25
**schedules** [3] - 32:3, 32:8, 32:13
**scheduling** [1] - 31:21
**seal** [1] - 23:16
**search** [9] - 35:19, 36:19, 37:10, 48:9, 50:15, 50:22, 52:3, 63:18
**searched** [2] - 37:21, 41:10
**searches** [3] - 41:8, 42:16, 53:17
**searching** [3] - 37:22, 41:18, 51:1
**second** [4] - 8:23, 23:23, 26:25, 53:5
**secret** [1] - 16:4
**Section** [1] - 68:9
**see** [16] - 4:16, 14:9, 22:18, 31:24, 34:6, 35:16, 36:18, 42:8, 42:9, 48:4, 48:15, 62:2, 62:3, 63:16, 65:15, 67:1
**seeking** [4] - 53:20, 60:5, 64:4, 65:14
**sees** [1] - 38:22
**selecting** [1] - 61:21
**send** [4] - 46:14, 46:19, 46:23, 47:1
**sense** [13] - 9:9, 23:11, 27:1, 28:15, 39:15, 45:8, 48:3, 50:16, 59:4, 62:10, 64:9, 65:4, 65:15
**sent** [1] - 53:16
**separate** [2] - 60:3, 66:15
**separately** [1] - 40:23
**set** [4] - 11:21, 11:23, 28:3, 63:11
**seven** [1] - 41:4
**several** [1] - 63:4

**shape** [1] - 66:3
**sheet** [1] - 62:11
**sheets** [5] - 15:23, 42:24, 42:25, 53:25, 54:14
**SHER** [47] - 2:9, 5:6, 9:16, 13:14, 15:10, 19:9, 23:10, 24:19, 25:1, 25:14, 27:21, 29:20, 32:6, 32:14, 33:19, 35:9, 36:2, 37:18, 38:11, 40:24, 41:3, 41:9, 43:3, 43:5, 45:19, 46:9, 46:15, 47:7, 50:1, 51:20, 52:20, 54:4, 54:25, 55:21, 57:1, 58:1, 58:12, 58:23, 62:5, 62:24, 64:25, 66:7, 66:17, 66:21, 67:1, 67:7, 67:16
**Sher** [26] - 4:7, 5:7, 9:14, 13:22, 14:8, 15:4, 15:7, 15:8, 17:3, 18:21, 19:7, 19:8, 23:3, 23:8, 24:24, 27:22, 29:18, 43:7, 43:17, 55:24, 55:25, 56:2, 57:7, 60:8, 66:19, 67:5
**Sher's** [1] - 25:23
**shield** [1] - 60:25
**shortcut** [1] - 29:21
**show** [1] - 48:9
**side** [3] - 12:5, 32:4, 60:1
**sides** [5] - 5:3, 11:10, 16:1, 33:20
**simple** [5] - 23:7, 25:24, 49:5, 49:8, 53:15
**simply** [6] - 26:2, 27:11, 51:18, 60:24, 61:21, 66:4
**single** [3] - 48:17, 57:11, 62:11
**sitting** [1] - 12:2
**situation** [12] - 14:4, 17:14, 18:1, 18:3, 18:5, 36:3, 47:18, 49:13, 49:24, 53:8, 65:14
**situations** [1] - 33:12
**six** [3] - 50:13, 50:18, 50:21
**size** [1] - 34:15
**slightly** [1] - 27:1
**small** [3] - 11:5, 11:19, 45:7
**smaller** [2] - 18:18,

45:7
**SMITH** [1] - 2:11
**solely** [2] - 12:13, 12:14
**solve** [3] - 42:12, 43:19, 48:12
**sometimes** [1] - 33:12
**somewhere** [1] - 40:2
**sorry** [5] - 6:18, 19:9, 22:15, 37:18, 66:17
**sort** [17] - 6:11, 9:2, 9:3, 18:25, 32:12, 34:4, 34:17, 36:17, 37:8, 38:8, 41:7, 47:23, 50:15, 51:16, 52:3, 52:13
**sorting** [1] - 51:21
**sounds** [1] - 39:11
**SOUTH** [1] - 2:3
**South** [1] - 2:13
**special** [39] - 5:16, 5:22, 6:1, 6:12, 7:13, 9:10, 9:12, 17:1, 18:11, 32:24, 32:25, 33:1, 33:5, 33:6, 33:21, 34:13, 43:24, 46:25, 47:23, 48:2, 49:10, 49:16, 49:18, 49:19, 50:10, 50:12, 51:2, 52:6, 52:8, 52:10, 52:14, 56:17, 58:10, 58:20, 64:9, 64:13, 64:18, 64:23
**specific** [3] - 33:13, 45:17, 57:13
**specifically** [3] - 34:11, 62:22, 62:24
**speculate** [3] - 56:22, 60:8, 60:9
**speculating** [2] - 59:16, 64:9
**speculation** [4] - 56:25, 58:2, 60:13, 60:14
**speculative** [1] - 60:24
**spend** [1] - 59:22
**spending** [1] - 6:5
**spent** [24] - 33:9, 38:14, 39:4, 39:5, 39:6, 39:24, 39:25, 42:2, 42:8, 43:1, 43:8, 43:10, 43:12, 43:14, 43:18, 49:1, 51:19, 54:2, 56:19, 56:20, 58:7, 59:23, 59:24, 62:6
**spreadsheet** [2] -

41:21, 41:22
**standard** [2] - 30:5, 47:11
**start** [1] - 62:9
**started** [1] - 36:5
**starting** [2] - 50:1, 50:2
**STATE** [1] - 68:4
**state** [1] - 11:23
**statement** [4] - 4:13, 5:14, 8:11, 33:12
**States** [3] - 68:7, 68:9, 68:14
**STATES** [2] - 1:1, 1:5
**statute** [3] - 6:3, 11:21, 31:25
**stenographically** [1] - 68:11
**step** [1] - 38:3
**steps** [1] - 9:7
**still** [6] - 12:12, 13:9, 17:25, 32:24, 61:9
**stop** [19] - 15:6, 17:11, 17:12, 20:3, 22:1, 23:8, 24:20, 24:21, 26:24, 26:25, 27:22, 28:6, 35:3, 44:23, 46:12, 55:22, 55:24, 58:9
**STREET** [1] - 1:24
**Street** [1] - 2:7
**strictly** [1] - 16:17
**strike** [2] - 22:7, 45:24
**striking** [1] - 45:22
**stuff** [13] - 9:12, 13:8, 22:5, 30:25, 33:16, 45:12, 49:18, 50:12, 52:7, 58:22, 60:6, 61:19
**subject** [4] - 12:18, 38:18, 49:16, 59:15
**submission** [10] - 4:18, 5:16, 7:12, 18:11, 21:21, 23:17, 33:4, 36:8, 38:1, 61:12
**submissions** [3] - 9:24, 29:7, 45:20
**submit** [1] - 22:11
**submitted** [1] - 20:24
**subset** [2] - 48:6
**substantial** [1] - 45:18
**successful** [2] - 17:18, 30:13
**sufficient** [2] - 61:2, 66:2
**suggest** [4] - 23:10, 32:8, 32:20, 51:20

**suggested** [2] - 63:15, 65:3
**suggesting** [4] - 21:21, 29:23, 63:21, 65:7
**suggestion** [1] - 41:13
**Suite** [2] - 2:7, 2:13
**summaries** [1] - 37:2
**summarized** [1] - 62:15
**summary** [26] - 23:13, 25:7, 25:19, 25:25, 26:3, 26:6, 26:9, 26:16, 26:19, 27:4, 27:5, 27:11, 28:13, 28:16, 29:22, 35:11, 36:10, 36:25, 50:17, 50:18, 62:15, 63:10, 63:11, 63:18
**supply** [2] - 28:21, 54:22
**supplying** [1] - 28:7
**support** [1] - 15:24, 28:21
**supporting** [5] - 7:4, 22:24, 23:5, 25:4, 28:8
**suppose** [4] - 12:16, 21:14, 22:20, 64:6
**supposed** [3] - 23:24, 43:21, 58:21
**supposedly** [2] - 56:20, 59:22
**surprise** [1] - 23:11
**suspect** [1] - 8:13
**sustainable** [2] - 10:16, 65:17
**systematic** [1] - 42:17

---

**T**

**table** [1] - 49:4
**TAHOE** [1] - 2:4
**task** [10] - 36:9, 38:5, 50:8, 50:9, 52:19, 53:20, 54:6, 54:8, 63:13
**tasks** [35] - 10:3, 10:5, 11:25, 33:7, 34:22, 36:11, 36:14, 36:15, 37:23, 39:14, 41:19, 42:1, 42:16, 48:24, 49:16, 50:6, 53:18, 53:23, 54:1, 54:9, 55:2, 55:3, 55:8, 59:9, 61:22, 61:23, 62:8, 62:10, 62:15, 62:17, 62:19, 62:20,

63:9, 63:11, 65:12
**TELEPHONIC** [1] - 1:13
**ten** [3] - 58:7, 58:18, 59:17
**ten-hour** [1] - 58:7
**tends** [1] - 30:12
**tentatively** [1] - 7:8
**tenth** [1] - 40:22
**term** [3] - 32:20, 37:10, 52:4
**termed** [1] - 32:19
**terms** [9] - 18:17, 20:17, 24:7, 29:2, 40:22, 40:25, 52:16, 59:23
**TERRI** [4] - 1:23, 68:6, 68:19, 68:20
**test** [1] - 7:23
**text** [1] - 41:10
**THE** [94] - 2:3, 2:15, 3:2, 4:4, 4:10, 4:12, 5:8, 5:12, 6:18, 6:21, 7:16, 8:23, 9:14, 13:5, 13:15, 13:21, 14:18, 15:3, 15:6, 17:11, 17:23, 18:4, 18:8, 18:13, 18:22, 19:7, 20:3, 21:2, 22:1, 22:8, 22:12, 22:16, 23:8, 24:21, 24:24, 25:13, 25:17, 26:4, 26:5, 26:8, 26:22, 26:24, 27:22, 28:6, 28:14, 29:1, 29:8, 29:17, 29:24, 30:2, 30:5, 30:9, 30:14, 30:22, 31:6, 31:15, 31:18, 32:7, 32:16, 35:3, 35:23, 37:3, 38:6, 40:20, 40:25, 41:4, 41:11, 41:14, 44:3, 44:12, 44:16, 44:23, 45:23, 46:12, 46:18, 49:4, 51:7, 52:5, 52:23, 55:22, 57:7, 58:9, 58:15, 59:20, 61:11, 62:16, 64:17, 65:18, 66:12, 66:19, 66:23, 67:4, 67:10, 67:17
**theirs** [1] - 54:23
**themselves** [4] - 5:25, 10:5, 15:23, 36:15
**theory** [2] - 54:8, 60:24
**thereafter** [2] - 5:17, 52:17
**therefore** [4] - 5:25,

9:4, 11:12, 17:23
**thinks** [2] - 7:8, 19:24
**third** [1] - 19:22
**thoughts** [2] - 7:17, 25:23
**thousands** [2] - 33:23, 63:12
**threatening** [1] - 44:20
**three** [4] - 36:21, 55:15, 64:2, 66:9
**threshold** [2] - 4:17, 6:22
**throughout** [1] - 8:19
**THURSDAY** [2] - 1:14, 4:1
**timetable** [2] - 66:14, 66:16
**timing** [1] - 49:3
**tiny** [1] - 50:8
**tither** [1] - 29:4
**Title** [1] - 68:9
**today** [4] - 5:5, 9:19, 43:17, 66:18
**together** [6] - 18:17, 20:14, 25:16, 32:8, 40:5, 49:4
**took** [15] - 9:20, 9:23, 10:15, 10:24, 38:7, 38:10, 38:13, 38:23, 56:23, 57:23, 61:24, 64:14, 64:21, 66:4, 66:5
**top** [1] - 35:12
**topic** [2] - 48:5
**total** [9] - 34:7, 34:10, 34:24, 39:21, 43:18, 52:18, 58:12, 61:24, 66:5
**totally** [2] - 18:20, 28:23
**track** [1] - 8:16
**TRANSCRIPT** [1] - 1:13
**transcript** [2] - 68:10, 68:12
**trial** [9] - 11:3, 34:2, 46:16, 47:8, 47:21, 51:5, 53:12, 59:6, 59:9
**tried** [2] - 12:22, 36:8
**triple** [1] - 66:20
**true** [5] - 11:4, 19:10, 28:12, 28:15, 68:10
**try** [8] - 6:11, 26:12, 36:5, 36:10, 50:4, 50:13, 51:3, 63:16
**trying** [9] - 6:6, 23:21, 29:20, 44:24,

50:7, 51:20, 62:6, 63:7, 64:8
**Tuesday** [1] - 67:9
**turn** [1] - 59:21
**turns** [1] - 18:15
**two** [16] - 5:1, 5:7, 10:24, 22:18, 31:22, 32:3, 32:8, 32:9, 36:4, 41:22, 48:24, 50:18, 51:6, 62:6, 63:15, 66:15
**type** [2] - 23:4, 40:12, 57:9
**types** [1] - 50:6
**typical** [1] - 9:25

## U

**U.S** [1] - 1:3
**ultimate** [3] - 11:3, 24:6, 24:8
**unable** [1] - 25:20
**uncommon** [1] - 47:24
**under** [8] - 8:5, 15:23, 16:17, 17:17, 21:15, 23:16, 45:21, 50:23
**understood** [2] - 9:18, 50:1
**undertook** [1] - 10:5
**undisputed** [3] - 19:14, 19:18, 25:9
**unfortunately** [1] - 66:23
**unified** [1] - 10:23
**United** [3] - 68:7, 68:9, 68:14
**UNITED** [2] - 1:1, 1:5
**unless** [5] - 26:3, 27:2, 35:7, 38:8, 58:21
**unreasonable** [3] - 34:15, 40:7, 52:16
**up** [24] - 11:21, 11:23, 11:24, 18:10, 22:6, 26:12, 26:22, 34:17, 35:4, 35:17, 35:20, 37:10, 39:11, 43:7, 43:18, 43:19, 47:1, 48:14, 48:21, 53:13, 55:16, 57:15, 58:5, 65:24
**uses** [1] - 46:11
**UTILITY** [1] - 2:4

## V

**value** [2] - 7:21, 61:6
**various** [1] - 50:6

**vast** [1] - 49:1
**view** [6] - 11:24, 12:10, 15:11, 16:6, 16:24, 28:3
**Virginia** [2] - 6:3, 31:25
**VIRGINIA** [1] - 2:3
**virtually** [5] - 11:5, 11:18, 12:9, 12:22, 47:9
**vis** [4] - 4:12, 4:19
**vs** [1] - 1:7

## W

**wait** [2] - 14:9, 43:24
**wants** [8] - 16:7, 18:21, 27:25, 35:16, 54:9, 56:13, 60:1, 65:5
**wasted** [1] - 13:2
**WATER** [2] - 2:3
**ways** [6] - 22:18, 36:5, 50:4, 50:11, 50:25, 63:22
**week** [1] - 55:15
**weeks** [3] - 36:4, 62:6, 64:2
**WEISS** [1] - 2:16
**WEST** [1] - 1:24
**WESTERN** [1] - 1:2
**WHARTON** [1] - 2:16
**whatsoever** [1] - 26:2
**whereas** [2] - 23:4, 32:1
**whole** [7] - 10:23, 12:7, 12:24, 46:1, 54:8, 58:13, 58:14
**willing** [2] - 46:21, 47:3
**witness** [4] - 37:13, 51:13, 55:13, 61:18
**witness's** [2] - 37:13, 57:12
**witnesses** [2] - 38:14, 38:15
**WOLPERT** [1] - 3:4
**woodwork** [1] - 13:7
**Word** [2] - 37:9, 37:10
**word** [13] - 7:20, 35:20, 36:19, 37:12, 38:2, 40:14, 41:17, 42:16, 48:9, 52:3, 53:16, 57:11, 59:2
**words** [19] - 5:10, 18:2, 19:8, 27:13, 29:11, 33:21, 35:5, 37:6, 46:24, 50:22,

52:9, 52:24, 56:3, 57:10, 58:15, 58:17, 64:20, 66:2, 67:10
**workflow** [1] - 15:21
**works** [2] - 13:25, 16:20
**world** [1] - 28:3
**write** [1] - 55:12
**writing** [1] - 10:20
**written** [4] - 16:18, 50:19, 61:15, 61:16
**WU** [1] - 1:3

## Y

**years** [6] - 30:12, 30:15, 30:16, 39:14, 51:6, 58:4
**yield** [1] - 36:11
**York** [2] - 2:18
**yourselves** [2] - 32:11, 55:23

**UNITED  STATES  DISTRICT  COURT**