David Bernick (*admitted pro hac vice*)
    david.bernick@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington, DC 20005
Telephone:  (202) 389-3201
Facsimile:  (202) 389-5200

Paul S. Chan – State Bar No. 183406
    pchan@birdmarella.com
Marc E. Masters – State Bar No. 208375
    mmasters@birdmarella.com
Shoshana E. Bannett – Bar No. 241977
    sbannett@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California  90067-2561
Telephone:  (310) 201-2100
Facsimile:  (310) 201-2110

Attorneys for Defendant J-M Manufacturing
Company, Inc. dba JM Eagle

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES, *et al.*,<br><br>                    Plaintiffs,<br><br>           vs.<br><br>J-M MANUFACTURING COMPANY, INC. dba JM EAGLE, *et al.*,<br><br>                    Defendants. | CASE NO. 5:06-cv-00055-GW-PJW<br><br>**DEFENDANT J-M'S OPPOSITION BRIEF RE: APPLICATION OF VIRGINIA'S 2007 FCA ATTORNEYS' FEES AMENDMENT**<br><br>Date:    August 16, 2021<br>Time:    9:30 a.m.<br><br>Assigned to Hon. George H. Wu, Courtroom 9D |

3730008.2

## **TABLE OF CONTENTS**

Page

I.      INTRODUCTION .................................................................................. 1

II.     ARGUMENT ........................................................................................ 2

    A.   The VFATA Does Not Apply Retroactively. ......................................... 2

    B.   Applying The 2007 Amendment To This Case Would Constitute
       an Impermissible Retroactive Application. .............................................. 3

        1.   *Landgraf* confirms that applying the 2007 amendment to
           this case would be impermissibly retroactive. ............................. 4

        2.   No exception to the general presumption against
           retroactive application applies. .................................................... 6

        3.   Labeling the 2007 fee provision as "procedural" or
           "collateral" does not justify its retroactive application. ............. 10

    C.   In Any Event, Section 8.01-216.3 States Attorneys' Fees Are
       Awardable Only To Virginia's OAG, Not Plaintiffs' Counsel,
       And Only For The Work Virginia's OAG Performed. ......................... 12

    D.   Under Their Own Retention Agreements, Plaintiffs' Counsel Are
       Not Entitled To Recover Attorneys' Fees Awardable to Virginia. ...... 14

III.    CONCLUSION .................................................................................. 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Adhikari v. Kellogg Brown & Root, Inc.*,
  845 F.3d 184 (5th Cir. 2017) .................................................................. 11

*Beaver v. Tarsadia Hotels*,
  816 F.3d 1170 (9th Cir. 2016) .................................................................. 4

*Berner v. Mills*,
  265 Va. 408 (2003) ........................................................................... 2, 5

*Bradley v. Sch. Bd. of City of Richmond*,
  416 U.S. 696 (1974) ....................................................................*passim*

*Davis v. U.S. Dep't of Just.*,
  610 F.3d 750 (D.C. Cir. 2010) ............................................... 6, 9, 10, 11

*Epps v. Commonwealth*,
  47 Va. App. 687 (2006), aff'd, 273 Va. 410 (2007) .......................... 14

*Fink v. Shedler*,
  192 F.3d 911 (9th Cir. 1999) .................................................................. 11

*U.S. ex rel. Galmines v. Novartis Pharms. Corp.*,
  No. CIV.A. 06-3213, 2013 WL 2649704 (E.D. Pa. June 13, 2013) ............... 2, 4

*Gordon v. Pete's Auto Serv. of Denbigh, Inc.*,
  838 F. Supp. 2d 436 (E.D. Va. 2012) .................................................... 10

*Hughes Aircraft Co. v. U.S. ex rel. Schumer*,
  520 U.S. 939 (1997) ............................................................................. 3

*Hutto v. Finney*,
  437 U.S. 678 (1978) ............................................................................ 11

*Landgraf v. USI Film Prod.*,
  511 U.S. 244 (1994) ....................................................................*passim*

*Madrid v. Gomez*,
  190 F.3d 990 (9th Cir. 1999) ................................................................ 10

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

*Maplefield Homeowners Ass'n v. Basham*,
  35 Va. Cir. 311 (1994) ........................................................................ 10

*Martin v. Hadix*,
  527 U.S. 343 (1999) ............................................................................. 9

*In re MTC Elec. Techs. S'holder Litig.*,
  74 F. Supp. 2d 276 (E.D.N.Y. 1999) ................................................... 6

*Commonwealth v. ProNurses*,
  91 Va. Cir. 197, 2015 WL 12806524 (Va. Cir., September 24, 2015) ............. 13

*Scott v. Boos*,
  215 F.3d 940 (9th Cir. 2000) ............................................................... 6

*Summers v. Dep't of Just.*,
  569 F.3d 500 (D.C. Cir. 2009) ............................................... 5, 9, 10, 11

*Thompson v. Sch. Bd. of City of Newport News, Virginia*,
  472 F.2d 177 (4th Cir. 1972) ............................................................... 9

*Tradeways, Ltd. v. Gen. Motors Corp.*,
  25 Va. Cir. 99 (1991) .......................................................................... 12

*Ward v. Allied Van Lines, Inc.*,
  231 F.3d 135 (4th Cir. 2000) ....................................................*passim*

*White v. New Hampshire Dep't of Emp. Sec.*,
  455 U.S. 445 (1982) ........................................................................... 11

*Wise Cty. Bd. of Sup'rs v. Wilson*,
  250 Va. 482 (1995) ............................................................................. 14

*Zarcon, Inc. v. N.L.R.B.*,
  578 F.3d 892 (8th Cir. 2009) ................................................... 9, 10, 11

**Statutes**

Emergency School Aid Act section 718 .................................................. 9

FCA ..................................................................................... 2, 5, 13

OPEN Government Act ......................................................................... 9

Va. Code. Ann. § 8.01–216.3(A) .......................................................... 13

DEFENDANT J-M'S OPPOSITION BRIEF RE: APPLICATION OF VIRGINIA'S 2007 FCA ATTORNEYS'
FEES AMENDMENT

Va. Code Ann. § 801-216.7 .............................................................7, 13, 14

VFATA ...............................................................................2, 3, 7, 13

Virginia Property Owners' Association Act.............................................10

Virginia's Fraud Against Taxpayers Act section 8.01-216.3 ...........................*passim*

Virginia tax code section 58.1-3109 .......................................................14

**Other Authorities**

Senate Bill 1183 (2007) ...................................................................13

DEFENDANT J-M'S OPPOSITION BRIEF RE: APPLICATION OF VIRGINIA'S 2007 FCA ATTORNEYS'
FEES AMENDMENT

## I.      INTRODUCTION

Plaintiffs' counsel are not entitled to any attorneys' fees for work allegedly performed for Virginia beyond their contractual entitlement to "5% of the full amount of any award or settlement Virginia recovers from Defendant." Now seeking to re-write their own engagement agreements, Plaintiffs argue the 2007 amendment of Virginia's Fraud Against Taxpayers Act ("VFATA") section 8.01-216.3 obligates J-M to pay attorneys' fees based upon conduct that occurred years before the statute was first amended to authorize any award of fees. Plaintiffs are wrong, for multiple reasons.

First, as the United States Supreme Court and Virginia courts have consistently recognized, there is a strong presumption against retroactive application of statutes absent a clear and manifest legislative intent to the contrary. Here, it is undisputed there is no evidence of any legislative intent to apply the 2007 amendment retroactively. Thus, there is no statutory basis to apply the 2007 amendment to this case.

Second, Plaintiffs' assertion that application of the 2007 amendment would be purely prospective is meritless. By increasing J-M's liability for past conduct and by attaching new legal consequences to events completed prior to 2007, application of the 2007 amendment would impermissibly be retroactive under governing law. Plaintiffs' suggestion that *Landgraf v. USI Film Prod.*, 511 U.S. 244 (1994), created some sort of universal exception to this retroactivity rule for attorneys' fee awards is false. The *Landgraf* Court took pains to clarify it in no way intended to "displace the traditional presumption against applying statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment." *Id*. at 278. As such, numerous cases subsequently have applied *Landgraf* to ***disallow*** the retroactive application of attorneys' fees provisions where, as here, there was no prior exposure for attorneys' fees, and the statutory fee provisions were only enacted *after* the conduct in question already had been completed.

Third, even if it were permissible to apply the 2007 amendment retroactively, Plaintiffs' counsel are not entitled to recover any attorneys' fees here because by its terms, the 2007 amendment only permits Virginia's Office of Attorney General ("OAG"), not Plaintiffs' counsel, to recover fees – and only for work performed by the OAG, not Plaintiffs' counsel. Moreover, pursuant to the express language of their own engagement agreements, Plaintiffs' counsel agreed to limit Virginia's fee obligations to 5% of any award or settlement received from J-M – and explicitly disclaimed any entitlement to additional attorneys' fees. Consequently, Plaintiffs' counsel is not entitled to any attorneys' fee recovery from J-M, and cannot recover any fees from Virginia beyond the contractually-mandated 5% share.

## II.    ARGUMENT

### A.    The VFATA Does Not Apply Retroactively.

Both federal law and Virginia law recognize the strong presumption against retroactive legislation. As noted by the United States Supreme Court in *Landgraf*, 511 U.S. at 265, "the presumption against retroactive legislation is deeply rooted in our jurisprudence." The "fundamental principles of statutory construction" mandate that a statute does not operate retroactively unless a contrary legislative intent is manifest. *Berner v. Mills*, 265 Va. 408, 413 (2003).

Here, there is no manifestation of any legislative intent to give retroactive effect to the 2007 amendment of VFATA section 8.01-216.3. Plaintiffs do not suggest otherwise. It is therefore undisputed the VFATA does ***not*** apply retroactively. *U.S. ex rel. Galmines v. Novartis Pharms. Corp*., No. CIV.A. 06-3213, 2013 WL 2649704, at *13 (E.D. Pa. June 13, 2013) (where qui tam plaintiff alleged fraud that began in 2001 and filed his complaint in 2006, the court dismissed any claims accruing before the 2003 passage of the VFATA).[1]

---

[1] A comparison of the VFATA to the federal False Claims Act ("FCA"), which is not applied retroactively and is also silent as to retroactivity, confirms the

1       **B.**     **Applying The 2007 Amendment To This Case Would Constitute an**

2               **Impermissible Retroactive Application.**

3       In an effort to sidestep this clear-cut prohibition against retroactive

4 application of VFATA section 8.01-216.3, Plaintiffs argue there is no retroactivity

5 problem here, because the relevant events controlling the statute arise prospectively,

6 from the performance of legal services after 2007, not from J-M's underlying

7 conduct between 1996 and 2006 giving rise to the VFATA claim. (Pls' Br. [Dkt.

8 2972] at 2-3.) Plaintiffs are wrong.

9       Where, as here, "attorneys' fees are being sought in part because of

10 [defendant's] conduct prior to enactment" of a new fee provision, and "Congress did

11 not say whether the new fee provision reaches back to cover this situation," it

12 "would create a retroactivity problem for the [defendant] if [the Court] applied the

13 new version" of the fee provision instead of the prior version of the statute. *Ward v.*

14 *Allied Van Lines, Inc.*, 231 F.3d 135, 141 (4th Cir. 2000). *Ward* involved a suit

15 under a federal statute against a motor carrier for loss of household goods that was

16 tendered to the carrier in 1994; the trial court awarded attorneys' fees based upon a

17 new fee provision contained in the 1995 version of the statute, which was enacted

18 after the underlying conduct had completed but before the lawsuit was filed. Noting

19 (1) that although the "suit was commenced after the date of enactment" of the new

20 fee provision, the attorneys' fees were being sought based on defendant's conduct

21 ***prior*** to enactment, and (2) the complete absence of any legislative intent to apply

22 the statute retroactively, the Fourth Circuit reversed, holding that "[a]pplying the

23 new provision would have a retroactive effect because it would 'impose new duties

24 with respect to transactions already completed.'" *Id.* at 141, *quoting Landgraf*, 511

25                   _____

conclusion the VFATA is not retroactive. *See, e.g., Hughes Aircraft Co. v. U.S. ex*

26 *rel. Schumer*, 520 U.S. 939, 946 (1997) (the 1986 amendment to the federal FCA

27 does not apply retroactively to alleged false claims that occurred prior to its

effective date).

28

U.S. at 280. The court therefore ruled the version of the statute in effect at the time the claim was tendered, rather than the new fee provision enacted in 1995, was applicable. *Id*.

### 1. *Landgraf* confirms that applying the 2007 amendment to this case would be impermissibly retroactive.

Ignoring *Ward*, Plaintiffs' rely primarily on *Landgraf*, 511 U.S. 244, in arguing application of the 2007 amendment would be purely prospective. But the retroactivity analysis in *Landgraf* comports with *Ward* – which explicitly relied upon *Landgraf* – and supports the conclusion that application of the 2007 amendment would be impermissibly retroactive.

Contrary to Plaintiffs' suggestion, *Landgraf* acknowledges the "long line of decisions applying the presumption against retroactivity," and confirms the general presumption is "***against*** applying statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment." *Id*. at 278 (emphasis added). In determining whether a statute is being applied retroactively, *Landgraf* poses three questions: (1) whether the statute contains an express statement on its proper temporal reach; and (2) if not, then whether its application would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." If for any of these reasons the statute would operate retroactively, then the "traditional presumption teaches that it does ***not*** govern," absent (3) "clear congressional intent" favoring a retroactive application. *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1187-88 (9th Cir. 2016), *citing Landgraf*, 511 U.S. at 280 (emphasis added).

Here, the first and third prongs of the *Landgraf* analysis weigh squarely ***against*** application of the 2007 amendment to this case. The total absence of any evidence of legislative intent to retroactively apply the 2007 amendment must be construed as a prohibition against retroactive application. *Novartis Pharms. Corp.*, 2013 WL 2649704, at *13 (where qui tam plaintiff alleged fraud that began in 2001

1  and filed his complaint in 2006, the court dismissed any claims accruing before the

2  2003 passage of the VFATA); *Berner v. Mills*, 265 Va. at 413 ("fundamental

3  principles of statutory construction" mandate statute does not operate retroactively

4  absent manifest legislative intent to the contrary).

5      The second *Landgraf* factor also heavily weighs against application of the

6  2007 amendment to this case. "The presumption against statutory retroactivity has

7  consistently been explained by reference to the unfairness of imposing new burdens

8  on persons after the fact." *Landgraf*, 511 U.S. at 270 (emphasis added). Thus, under

9  *Landgraf*, the retroactive effect of a statute depends on whether it "impair[s] a

10 party's rights when he acted, increase[s] a party's liability for past conduct," or

11 "attaches new legal consequences to events completed before its enactment." 511

12 U.S. at 270, 280.

13      Here, there is no dispute the belated imposition of attorneys' fees exposure on

14 J-M after the 2007 amendment would increase J-M's liability for past conduct, and

15 attach new legal consequences to conduct that was already completed before 2007.

16 The underlying J-M conduct giving rise to the FCA claims was from 1996 to 2006.

17 During this period, Virginia's FCA statute did *not* authorize the Commonwealth to

18 recover attorneys' fees even in the event it prevailed on its claims. (Indeed,

19 Plaintiffs concede the earlier version of the Virginia FCA was the operative version

20 for purposes of assessing J-M's liability under the statute.) As such, Plaintiff's

21 attempt to belatedly impose attorneys' fees liability on J-M – by applying the

22 attorneys' fees provision from the 2007 amendment to conduct that had already been

23 completed by 2006 – is an impermissible retroactive application of the statute,

24 because it would clearly increase J-M's liability for, and attach new legal

25 consequences to, conduct that had already been completed. *Summers v. Dep't of

26 Just*., 569 F.3d 500, 504 (D.C. Cir. 2009) ("application of the fee statute in this case,

27 unlike in *Bradley*, would impose an 'unforeseeable obligation' upon the defendant

28 by exposing it to liability for attorneys' fees for which it clearly was not liable

DEFENDANT J-M'S OPPOSITION BRIEF RE: APPLICATION OF VIRGINIA'S 2007 FCA ATTORNEYS'
FEES AMENDMENT

1  before the passage of the 2007 Act").

2       Plaintiffs misquote *Landgraf* in arguing the performance of legal services,

3  rather than the conduct giving rise to the claims, should be the determinative "event"

4  for retroactivity purposes. (Pls' Br. [Dkt. 2972] at 3.) In fact, the *Landgraf* test

5  focuses "on [the] parties' actions, ***not*** the date of filing of the claim." *Scott v. Boos*,

6  215 F.3d 940, 949 (9th Cir. 2000) (emphasis added); *see also, In re MTC Elec.*

7  *Techs. S'holder Litig.*, 74 F. Supp. 2d 276, 280, fn. 3 (E.D.N.Y. 1999) ("[A]nalysis

8  of retroactive effect pursuant to *Landgraf* turns on when the primary conduct at

9  issue in the suit took place, not when the complaint was filed or claims were

10  raised."). That is why the Court of Appeal in *Ward*, applying *Landgraf*, held it was

11  the date of underlying conduct that determined which version of the statute (and

12  which fee provision) governs – not the date the case was filed or the date legal

13  services were performed. *Ward*, 231 F.3d at 141; *see also, Davis v. U.S. Dep't of*

14  *Just.*, 610 F.3d 750, 751, 753-55 (D.C. Cir. 2010) (where the underlying conduct

15  predates the fee statute, "reliance on the 2007 Act would give rise to liability for

16  attorneys' fees where none existed before" and thus, would be impermissibly

17  retroactive under *Landgraf*).

18       **2.**     **No exception to the general presumption against retroactive**

19               **application applies.**

20       Tacitly acknowledging they cannot surmount *Landgraf*, Plaintiffs cite *Bradley*

21  *v. Sch. Bd. of City of Richmond,* 416 U.S. 696 (1974), to argue, in the alternative,

22  that even if there was a retroactivity problem, Plaintiffs' fees should still be

23  compensable. (Pls' Br. [Dkt. 2972] at 4-5.) But *Bradley* is inapposite.

24       *Bradley* was a school desegregation case in which the district court awarded

25  attorneys' fees to the plaintiffs based upon equitable principles, and then after the

26  lawsuit was filed, the operative federal statute was amended to expressly authorize

27  the recovery of fees; the Court upheld the award of fees under the later-enacted

28  statute, in light of the prior availability of fees under equitable principles. Unlike

6

this case, *Bradley* involved a federal "private attorney general" statute, and its reasoning for allowing attorneys' fees was inexplicably intertwined with a unique public policy interest in recognizing the "disparity in the respective abilities of the parties to protect themselves." *Bradley*, 416 U.S. at 697; *Landgraf*, 511 U.S. at 277 ("As our opinion in *Bradley* made clear, it would be difficult to imagine a stronger equitable case for an attorney's fee award than a lawsuit in which the plaintiff parents would otherwise have to bear the costs of desegregating their children's public schools."). By contract, VFATA section 8.01-216.3 is ***not*** a private attorney general statute. The public policy rationales underlying the fee shifting statutes at issue in *Bradley* or other civil rights cases do not apply here. As Plaintiffs themselves acknowledge, Virginia's entitlement to attorneys' fees and costs under section 8.01-216.3 is "distinct from the fees and costs paid to the qui tam relator as part of VFATA's 'Award to Private Plaintiff.' Compare Va. Code Ann. § 801-216.7 (describing reasonable expenses attorneys' fees and costs awarded to relator)." (Pls' Br. [Dkt. 2972] at 3.)

Additionally, unlike this case, *Bradley* did ***not*** involve the creation of a new right and remedy that did not exist prior to the amendment. Its holding was expressly founded upon the fact the plaintiff already was entitled to seek attorneys' fees even before the 1972 amendment of the Emergency School Aid Act. *Bradley*, 416 U.S. at 721 (because defendant could previously have been required to pay attorneys' fees, under general equitable principles, there was no "additional or unforeseeable obligation" imposed upon defendant by the statutory amendment). By contrast, it is undisputed here that, prior to the 2007 amendment, the VFATA did ***not*** entitle the Commonwealth to separately recover its attorneys' fees. The new attorneys' fees provision contained in the 2007 amendment was unquestionably an "additional obligation" that was by definition "unforeseeable" during the time period of J-M's underlying conduct between 1996 and 2006.

Throughout their brief, Plaintiffs clumsily attempt to limit *Landgraf* with

DEFENDANT J-M'S OPPOSITION BRIEF RE: APPLICATION OF VIRGINIA'S 2007 FCA ATTORNEYS' FEES AMENDMENT

*Bradley's* narrow holding. However, in stark contrast to *Bradley*, *Landgraf* expressly held that the change in available remedies at issue there impaired the defendant's substantive rights, and therefore would ***not*** be applied retroactively. *Landgraf*, 511 U.S. at 281. In so holding, *Landgraf* repeatedly and expressly limited *Bradley's* reach, and explicitly confirmed *Bradley* did ***not*** modify the general presumption against retroactive application: "Although that language [in *Bradley*] suggests a categorical presumption in favor of application of *all* new rules of law, we now make it clear that *Bradley* did not alter the well-settled presumption against application of the class of new statutes that would have genuinely 'retroactive' effect." *Id*. at 277. The Court continued: "*Bradley* did not take issue with the long line of decisions applying the presumption against retroactivity . . . . The authorities we relied upon in *Bradley* lend further support to the conclusion that we did not intend to displace the traditional presumption against applying statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment . . . . [I]n none of our decisions that have relied upon *Bradley* … have we cast doubt on the traditional presumption against truly 'retrospective' application of a statute." *Id*. at 279. *Landgraf* further distinguished *Bradley* as follows: "In light of the prior availability of a fee award, and the likelihood that fees would be assessed under pre-existing theories, we concluded [in *Bradley*] that the new fee statute simply 'd[id] not impose an additional or unforeseeable obligation' upon the school board.'" *Id*. at 278.

Unsurprisingly, subsequent cases have followed *Landgraf's* cabining of *Bradley* and have held that where – as here – a statutory right to attorneys' fees is created where none existed before, then the amended statute ***cannot*** be applied to the pending case, because doing so would be impermissibly retroactive. *See, e.g., Ward*, 231 F.3d at 141 (where "attorneys' fees are being sought in part because of [defendant's] conduct prior to enactment" of a new fee provision, and "Congress did not say whether the new fee provision reaches back to cover this situation," it

DEFENDANT J-M'S OPPOSITION BRIEF RE: APPLICATION OF VIRGINIA'S 2007 FCA ATTORNEYS' FEES AMENDMENT

1    "would create a retroactivity problem for the [defendant] if [the Court] applied the

2    new version" of the fee provision instead of the prior version of the statute);

3    *Summers*, 569 F.3d at 504 ("application of the fee statute in this case, unlike in

4    *Bradley*, would impose an 'unforeseeable obligation' upon the defendant by

5    exposing it to liability for attorneys' fees for which it clearly was not liable before

6    the passage of the 2007 Act"); *Davis*, 610 F.3d at 751, 753-55 (where underlying

7    conduct predates fee statute, "reliance on the 2007 Act would give rise to liability

8    for attorneys' fees where none existed before" and thus, would be impermissibly

9    retroactive under *Landgraf*); *Zarcon, Inc. v. N.L.R.B.*, 578 F.3d 892, 896 (8th Cir.

10   2009) ("Unlike the fee-shifting provision in *Bradley*, the OPEN Government Act

11   made recovery of attorney's fees possible in circumstances where they had been

12   previously forbidden. […] Applying the OPEN Government Act to this case would,

13   therefore, increase the NLRB's "liability for past conduct, [and] impose new duties

14   with respect to transactions already completed.") (quoting *Landgraf*, 511 U.S. at

15   280).[2]

16

17   _____

18   [2] The other cases cited by Plaintiffs are distinguishable for the same reason *Bradley*
     is distinguishable: they involve situations where there was a pre-existing right to
     recovery of attorneys' fees, and therefore the later statutory amendment did not

19   substantively impair a pre-existing right:

20       a. *Thompson v. Sch. Bd. of City of Newport News, Virginia*, 472 F.2d 177 (4th
21   Cir. 1972), is distinguishable because section 718 of the Emergency School Aid Act
     did not amend the existing statute to create a right that was not afforded previously
22   under the same statute. *Id*. at 178.

23       b. *Martin v. Hadix*, 527 U.S. 343 (1999), is distinguishable because it was not
24   about creation of a new legal consequence or imposition of a burden that did not
     previously exist. The new PLRA statute in *Martin* capped attorney's fees for the
25   pending case, in which the district court already had awarded attorney's fees under a
     different statute. *Id*. at 343, 350. Thus, the *Martin* plaintiffs had the preexisting
26   statutory right to attorneys' fees. The only difference caused by the new PLRA was
27   the attorneys' compensation was capped at a lower hourly rate. *Id*.

28

DEFENDANT J-M'S OPPOSITION BRIEF RE: APPLICATION OF VIRGINIA'S 2007 FCA ATTORNEYS'
FEES AMENDMENT

### 3.      Labeling the 2007 fee provision as "procedural" or "collateral" does not justify its retroactive application.

Finally, Plaintiffs overgeneralize *Landgraf's* observation – in the course of distinguishing *Bradley* – that attorneys' fee determinations are "collateral" to the main causes of action. (Pls' Br. [Dkt. 2972] at 4.) That observation was made in support of the conclusion that "the attorney's fee provision at issue in *Bradley* did not resemble the cases in which we have invoked the presumption against statutory retroactivity." *Landgraf*, 511 U.S. at 277. But as noted, *Landgraf* made clear that *Bradley* was an exception to the general presumption against retroactivity because in *Bradley*, a fee award was already available prior to the enactment of the statutory fee provision; accordingly, it was reasonable to conclude that the statutory fee provision was "collateral" in *Bradley*. *Id*.

---

c.  *Madrid v. Gomez*, 190 F.3d 990, 993 (9th Cir. 1999), is distinguishable because plaintiffs were already entitled to recover attorneys' fees but the amount of fees became subject to the PLRA cap.

d.  *Gordon* is similarly distinguishable: "Even before Section 802(b) was enacted on October 13, 2010, this Court had authority to award attorney's fees to a prevailing plaintiff under the SCRA." *Gordon v. Pete's Auto Serv. of Denbigh, Inc*., 838 F. Supp. 2d 436, 445 (E.D. Va. 2012) (noting *Landgraf's* distinction of *Bradley*).

e.  *Maplefield Homeowners Ass'n v. Basham*, 35 Va. Cir. 311 (1994) is inapposite because the statute at issue mandated retroactive application. *Id*. at *1-2 ("In drafting the Virginia Property Owners' Association Act, the legislature made clear its intent to apply the Act retroactively. This statute became effective in 1989, but the legislature specified that the statute was to apply to declarations recorded after January 1, 1959.").

Finally, Plaintiffs argue – with no case law support – that attorneys' fees are "generally" determined by the statute in force at the time of the termination of the action. The only authority they cite for this proposition is Robert Rossi's treatise. The treatise alone is obviously not binding precedent and does nothing to change the conclusion of *Landgraf*, *Ward*, *Summers*, *Davis* and *Zarcon* (above).

1    As plainly evidenced by the remainder of the *Landgraf* opinion, however,

2  *Bradley* was ***not*** intended to disturb the general presumption against retroactive

3  application, let alone establish an immutable principle of law that all attorneys' fees

4  provisions are "collateral" or "procedural" in the context of retroactivity

5  jurisprudence. Indeed, subsequent cases such as *Ward*, *Summers*, *Davis*, and *Zarcon*

6  have interpreted and applied *Landgraf* to disallow retroactive application of later-

7  enacted statutory fees provisions, demonstrating that *Landgraf's* "collateral attorney

8  fee provision" analysis is specifically limited to *Bradley*-type cases—*i.e.*, where

9  plaintiff already had a preexisting right to an attorneys' fee recovery, such that the

10  subsequent statutory amendment did not materially affect the substantive rights and

11  obligations of the parties under the statutory scheme.[3]

12    As the Fifth Circuit has explained, "when determining whether a new statute

13  operates retroactively, it is not enough to attach a label (e.g., 'procedural,'

14  'collateral') to the statute. Instead, under *Landgraf*, our retroactivity inquiry

15  demands a commonsense, functional judgment about whether the new provision

16  attaches new legal consequences to events completed before its enactment."

17  *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 204 (5th Cir. 2017) (internal

18  citations and quotations omitted). "We have followed this requirement, and have

19  'consistently rejected the retroactive application of procedural statutes which result

20  in manifest injustice'." *Fink v. Shedler*, 192 F.3d 911, 915 (9th Cir. 1999) (also

21  finding that "in *Landgraf* the Supreme Court took pains to dispel the notion that

22  retroactivity concerns have no application to procedural rules").

---

[3] Plaintiffs also cite *White* and *Hutto* in arguing attorneys' fee determinations are a procedural, collateral matter (Pls' Br. [Dkt. 2972] at 6), but both cases are inapposite, for the same reasons that *Bradley* is inapposite. Both cases relate to the civil rights private attorney general fee statute. *White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 448, 454 (1982); *Hutto v. Finney*, 437 U.S. 678, 693, fn. 21 (1978). And critically, unlike here, in both *White* and *Hutto* there was no concern over creating new fee obligations that did not exist beforehand.

11

DEFENDANT J-M'S OPPOSITION BRIEF RE: APPLICATION OF VIRGINIA'S 2007 FCA ATTORNEYS' FEES AMENDMENT

*Tradeways, Ltd. v. Gen. Motors Corp.*, 25 Va. Cir. 99 (1991), is also instructive. *Tradeways* involved an automobile that was delivered to plaintiff five months before the lemon law statute was amended to provide a prevailing plaintiff can recover its attorneys' fees. The Circuit Court of Virginia observed the cause of action arose under the lemon law "when the defective car is delivered." It expressly rejected plaintiff's contention the statutory changes were not substantive because they only affected the available remedies. The Court explained: "I find it difficult to believe that a provision which so dramatically increases the loss exposure to each party is not substantive in nature and effect. This is not simply a matter of the legislature varying the statute of limitations within which a claim must be filed; the costs and fees added by this amendment may themselves far exceed the value of the car itself. In the absence of compelling language to the contrary in the statute or its history, I am not prepared to give this amendment retrospective effect." *Tradeways, Ltd.*, 25 Va. Cir. 99. Similarly, here, the attorneys' fees now sought by Plaintiffs overwhelmingly exceed Virginia's portion of the modest penalties awarded in this case, thereby "dramatically increasing the loss exposure" to J-M. This is not simply a "collateral" matter of "procedure."

## C. In Any Event, Section 8.01-216.3 States Attorneys' Fees Are Awardable Only To Virginia's OAG, Not Plaintiffs' Counsel, And Only For The Work Virginia's OAG Performed.

Even assuming *arguendo* it was permissible to retroactively apply the 2007 amendment to authorize an award of attorneys' fees to Virginia, Plaintiffs' counsel would not be entitled to such an award – because under the express language of Va. Code Ann. § 8.01-216.3, the only authorized recipient of attorneys' fee awards is the OAG: "A person violating this section shall be liable to the Commonwealth for reasonable attorney fees and costs of a civil action brought to recover any such penalties or damages. All such fees and costs ***shall be paid to the Attorney General's Office*** by the defendant and shall not be included in any damages or civil

penalties recovered in a civil action based on a violation of this section." (Emphasis added.)

As reflected by Senate Bill 1183 (2007), the legislature intended only the OAG to be compensated for the attorneys' fees it actually incurred in maintaining an FCA action: "a violator of § 8.01-216.3 shall be liable for reasonable attorney fees, expenses, and costs associated with maintaining a civil action under § 8.01-216.3. Such fees, expenses, and costs *are to be paid to the Attorney General's Office*." (VA B. Summ., 2007 S.B. 1183 [emphasis added].)

J-M is aware of only one case in which a court has awarded attorneys' fees pursuant to section 8.01-216.3. *Commonwealth v. ProNurses*, 91 Va. Cir. 197, 2015 WL 12806524, at *6 (Va. Cir., September 24, 2015). *ProNurses* confirms this legislative intent to award the fees to the OAG, and only for fees the OAG itself incurred: "The VFATA further subjects violators to liability for reasonable attorney's fees and litigation costs resulting from the Commonwealth's civil action to recover for violations. Va. Code. Ann. § 8.01–216.3(A). *The Commonwealth proved that it incurred $21,444.75 in attorney's fees and $2,146.35 in costs to bring this action*, totaling $23,591.10. Therefore, the Court FINDS Defendants jointly and severally liable for $23,591.10." *Id.* (emphasis added).

J-M is aware of no case in which a court has awarded attorneys' fees to outside counsel who have been subcontracted by OAG under section 8.01-216.3. Nor is it an accident that Plaintiffs are unable provide the Court with any such authority, either. On its face, such an award would be contrary to the plain statutory language and underlying legislative intent to compensate the OAG, and the OAG alone, for the work that the OAG itself performed.

As a matter of law, the Court should not expand the statutory construction of section 8.01-216 by belatedly allowing Plaintiffs' counsel to recover when the intent of the statute is clear in failing to authorize any such recovery. "[T]he maxim *expressio unius est exclusio alterius* … provides that, when a statute mentions

3730008.2

13

specific items, an implication arises that items not present were not intended to be included within the scope of the statute." *Wise Cty. Bd. of Sup'rs v. Wilson*, 250 Va. 482, 485 (1995) (the omission of a duty to establish assessment ratios for computing merchants' capital tax in Virginia tax code section 58.1-3109 implied that the General Assembly did not intend the commissioners to have this authority). "When interpreting statutory language that is plain and unambiguous, [the Court is] bound by the plain meaning of that statutory language. Thus, when the General Assembly has used words that have a plain meaning, courts cannot give those words a construction that amounts to holding that the General Assembly meant something other than that which it actually expressed." *Epps v. Commonwealth*, 47 Va. App. 687, 713–14 (2006), aff'd, 273 Va. 410 (2007) (internal quotation and citations omitted). Pursuant to these statutory interpretation rules, there is no basis to allow Plaintiffs' counsel to recover its fees and costs under section 8.01-216.

### D. Under Their Own Retention Agreements, Plaintiffs' Counsel Are Not Entitled To Recover Attorneys' Fees Awardable to Virginia.

In addition to the fact the 2007 amendment only authorizes recovery of attorneys' fees by the Virginia OAG for its own work, the engagement agreements entered into between Plaintiffs' counsel and Virginia also preclude any award of attorneys' fees to Plaintiffs' counsel.

As Plaintiffs acknowledge, Virginia's entitlement to attorneys' fees and costs under section 8.01-216.3 is "distinct from the fees and costs paid to the qui tam relator as part of VFATA's 'Award to Private Plaintiff.' Compare Va. Code Ann. § 801-216.7 (describing reasonable expenses attorneys' fees and costs awarded to relator)." (Pls' Br. [Dkt. 2972] at 3.) As the Court previously ruled, Plaintiffs' counsel is not entitled to recover attorneys' fees incurred by Virginia from J-M: "[A]ny work done by relator's counsel on behalf of an intervening plaintiff – necessarily a government entity – will be compensated out of the government entity's pockets." (Dkt. 2922 [2/1/21 Ruling] at 10-11.)

1    Here, under the express terms of the 2010 and 2017 retention agreements
2    between Plaintiffs' counsel and Virginia, the only fees Virginia agreed to pay to
3    Plaintiffs' counsel were "5% of the full amount of any award or settlement Virginia
4    recovers from Defendant." (Page 3, Paragraph 10 of Retainer Agreement between
5    the Commonwealth of Virginia, Day Pitney LLP, McKool Smith PC, and
6    Constantine Cannon LLC, executed as of December 17, 2017 and lodged with the
7    Court on June 22, 2021.) Nothing in the agreements authorize or mandate the
8    payment of attorneys' fees from the Commonwealth to Plaintiffs' counsel. No
9    matter the number of hours Plaintiffs' counsel billed on behalf of Virginia,
10   ultimately Plaintiffs' counsel agreed: "Virginia shall not be obligated to pay or to
11   guarantee payment of any compensation to Special Counsel for services rendered or
12   costs inquired in the Lawsuit other than as set forth in this Retainer Agreement."
13   Thus, under their own engagement agreements with Virginia, Plaintiffs' counsel are
14   not entitled to recover attorney's fees awardable to Virginia.

15   **III.    CONCLUSION**

16       For the reasons set forth above, Plaintiffs' request for attorney's fees under
17   the 2007 amendment of the VFATA should be rejected in its entirety.

18

19   DATED: July 13, 2021                Respectfully submitted,

20                                       KIRKLAND & ELLIS LLP

21

22                                       By:    _____/s/ David Bernick_____
                                                        David Bernick
23

24

25

26

27

28

DEFENDANT J-M'S OPPOSITION BRIEF RE: APPLICATION OF VIRGINIA'S 2007 FCA ATTORNEYS'
FEES AMENDMENT

1   DATED:  July 13, 2021

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.

By:   _____
          */s/ Paul S. Chan*
                    Paul S. Chan

*Attorneys for Defendant J-M Manufacturing Company, Inc. dba JM Eagle*

DEFENDANT J-M'S OPPOSITION BRIEF RE: APPLICATION OF VIRGINIA'S 2007 FCA ATTORNEYS' FEES AMENDMENT