UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 06-55-GW-PJWx | Date | September 20, 2021 |
|---|---|---|---|
| Title | *United States of America, et al. v. J-M Manufacturing Company, Inc.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | Terri A. Hourigan | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Elizabeth J. Sher | David M. Bernick |
| Kirk Dillman | Paul S. Chan |
| Peter Broadbent | Frank Fletcher |
| Eric R. Havian | |
| Ellen Head | |

**PROCEEDINGS:** TELEPHONIC HEARING ON APPLICATION OF VIRGINIA'S 2007 FCA ATTORNEYS' FEES AMENDMENT, AND (2) RECOVERABILITY OF FEES FOR JOINT REPRESENTATION OF RELATOR AND GOVERNMENTAL ENTITY

Court and counsel confer. The proposed judgment is to be filed by no later than September 24, 2021.

The Court's Tentative Ruling is circulated and attached hereto. Matter is discussed on the record and will be addressed following appeal.

The matter is continued to October 4, 2021 at 9:30 a.m.

|  | : | 22 |
|---|---|---|
| | Initials of Preparer | JG |

<u>**United States et al v. J-M Manufacturing Company, Inc.**</u>; Case No. 5:06-cv-00055-GW-(PJWx)
Tentative Rulings on: (1) Application of Virginia's 2007 FCA Attorneys' Fees Amendment, and (2) Recoverability of Fees for Joint Representation

**I.      Background**

The long history of this case has been extensively covered in previous orders. *See United States v. J-M Mfg. Co., Inc.*, No. 06-CV-00055-GW-PJWx, 2018 WL 1801258, at *1-*4 (C.D. Cal. Apr. 12, 2018). In short, Jim Hendrix (the "Relator") brought this *qui tam*/False Claims Act ("FCA") action on behalf of over 190 federal, state, and local governmental entities in 2006. Five entities from California, Nevada and Virginia were selected as exemplar plaintiffs and a Phase One trial was conducted as to liability under the relevant FCA statutes. The jury in the Phase One Trial returned a verdict in favor of the five exemplar plaintiffs, finding that they had established falsity, materiality, and scienter. A Phase Two trial was eventually conducted on the issues of actual damages (which was tried by a jury) and civil penalties (which was tried to the Court). The Phase Two jury could not reach a verdict on actual damages and a mistrial was declared. *See* ECF No. 2765. Defendant J-M Manufacturing Company, Inc. then filed a Renewed Motion for Judgment as a Matter of Law ("JMOL"). *See* ECF No. 2809. The Court granted J-M's JMOL, concluding that "Plaintiffs failed to provide evidence at the Phase Two trial from which a reasonable jury could make a finding of an award of actual damages under the FCA that would not be erroneous as a matter of law, be totally unfounded, and/or be purely speculative." *United States v. J-M Mfg. Co., Inc.* No. 06-CV-00055-GW-PJWx, 2020 WL 4196880, at *41 (C.D. Cal. June 5, 2020). After being awarded civil penalties, Plaintiffs moved for attorneys' fees incurred to secure and defend the Phase One verdict. *See* ECF No. 2910.

In its most recent ruling, the Court addressed several legal issues regarding the awarding of attorneys' fees including: (1) whether Plaintiffs "prevailed" such that they were entitled to any attorneys' fees under state FCA statutes in California, Virginia, and Nevada (*see* ECF No. 2936 at 4-15); (2) whether Relator's counsel was entitled to any fees for work completed after intervention by a government entity (*Id.* at 15-18); (3) whether the fee award should be strictly proportional to the monetary award earned (*Id.* at 18-20); and (4) what the appropriate billing rate should be (*Id.* at 20). The Court determined that Plaintiffs had prevailed such that their counsel should be awarded fees; requested further evidence regarding the agreements between Relator's counsel and the intervening government entities; declined to adopt a strict

1

proportionality rule; and left the determination of the appropriate billing rate to the Special Master. The Court, however, was left with two outstanding issues: (1) whether the 2007 amendment to Virginia's FCA statute, the Virginia Fraud Against Tax Payers Act ("VFATA"), that allows for the awarding of attorneys' fees for work performed by intervening government counsel, would be applicable, and (2) whether attorneys' fees can be awarded for work performed by Relator's counsel that also benefits an intervening government entity given the contents of compensation agreements, which were provided to the Defendant and the Court, between Relator's counsel and the exemplar plaintiffs. *See id.* at 21-22. Based on the contents of the compensation agreements between the Relator's counsel and the exemplar plaintiffs, the Court finds that there is a third issue of whether the statutory award of attorney fees is undercut or limited by the contingent fee agreements contained in the compensation agreements. *See* Declaration of Eric Havian, Exh. A ("Tahoe Retainer"), ECF No. 2982-1.

Before the Court now is supplemental briefing directed at the remaining issues. *See* Plaintiffs' Moving Brief Re: Application of Virginia's 2007 FCA Attorneys' Fees Amendment ("Virginia Mot."), ECF No. 2972; Plaintiffs' Moving Brief Re: Recoverability of Fees for Joint Representation ("Joint Rep. Mot."), ECF No. 2974; Defendant's Opposition Brief Re: Application of Virginia's 2007 FCA Attorneys' Fees Amendment ("Virginia Opp."), ECF No. 2977; Defendant's Opposition Brief Re: Recoverability of Fees for Joint Representation ("Joint Rep. Opp."), ECF No. 2978; Plaintiffs' Reply Brief Re: Application of Virginia's 2007 FCA Attorneys' Fees Amendment ("Virginia Reply"), ECF No. 2980; Plaintiffs' Reply Brief Re: Recoverability of Fees for Joint Representation ("Joint Rep. Reply"), ECF No. 2982.

**II.    Discussion**

    A. <u>Application of Virginia's 2007 FCA Attorneys' Fees Amendment</u>

The VFATA provides for attorneys' fees to the relator regardless of whether the Commonwealth of Virginia (the "Commonwealth") intervenes. *See* VA Code Ann. § 801-216.7(A)-(B) (providing for reasonable attorneys' fees and costs regardless of whether "the Commonwealth proceeds with an action" brought by the relator); *see also Commonwealth v. Commonwealth ex rel. Hunter Lab'ys, LLC*, 296 Va. 32, 36 n.1 (2018). Initially, the VFATA did not authorize the recovery of attorneys fees for the Commonwealth when it did intervene in the FCA action. *See* 2007 VA Code Ann. § 8.01-216.3(A). The statute was amended in 2007 to also provide for attorneys' fees for the state when it elected to intervene. *See* 2007 VA Code

Ann. § 801-216.3(A) ("A person violating this section shall be liable to the Commonwealth for *reasonable attorney fees* and costs of a civil action brought to recover any such penalties or damages." (emphasis added)). The parties agree that before 2007, the VFATA only awarded the "costs of a civil action" and did not mention attorneys' fees for the Commonwealth. *See* 2004 VA Code Ann. § 801-216.3(B); 2007 Virginia Laws Ch. 569 (S.B. 1183). As this action was filed in 2006 and concerns Defendant J-M's conduct between 1996 and 2006, before the 2007 amendment to the VFATA went into effect, Defendant argues that allowing the Commonwealth to collect attorneys' fees would present retroactivity problems. Virginia Opp. 3-14. Plaintiffs disagree as they maintain that there are no issues with retroactivity for awarding attorneys' fees pursuant to the law in effect on the date legal services are rendered. Virginia Reply at 2-4. As the VFATA was amended to allow for attorneys' fees for the Commonwealth in 2007 and the Commonwealth elected to intervene in this action in February 2010, *see* ECF No. 104, Plaintiffs argue that the application of the VFATA is actually prospective, not retrospective, because the relevant performance of legal services occurred after the 2007 VFATA amendment went into effect. *Id.*

In order to determine whether a statute should be applied to pending cases, a court first asks, "whether Congress [or, here, the Virginia legislature] has expressly prescribed the statute's proper reach." *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994). If there is no congressional directive on the temporal reach of a statute, the court determines whether the application of the statute to the conduct at issue would result in a retroactive effect. *Id.* If so, then in keeping with the "traditional presumption" against retroactivity, the court presumes that the statute does not apply to that conduct. *Id; see also Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 946 (1997). A statute, however, "does not operate 'retroactively' merely because it is applied in a case antedating the statute's enactment" and deciding whether a statute operates retroactively is not "always a simple or mechanical task." *Landgraf*, 511 U.S. at 268-70. In tension with the traditional presumption against retroactivity is the rule that "a court is to apply the law in effect at the time it renders its decision." *Id.* at 263-64 (citing *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 711 (1974). To resolve this apparent tension, the court "must ask whether the new provision attaches new legal consequences to events completed before its enactment" and must consider "the nature and extent of the change in law and the degree of connection between the operation of the new rule and a relevant past event." *Id.* at

3

269-70.  If a statute is not "genuinely" or "truly" retroactive, a court can apply the law in effect at the time it renders its decision.  *Id.* at 276-80.

The Court agrees with Plaintiffs that when dealing with a statute concerning a change to the awarding of attorneys' fees, the relevant "events" are the performance of legal services, not the conduct underlying the need for representation.  *See* Virginia Mot. at 3.  This conclusion is supported by the language in *Landgraf* that attorneys' fees determinations are "collateral to the main cause of action" and "uniquely separable from the cause of action to be proved at trial."  *Landgraf*, 511 U.S. at 275-77.  Furthermore, there is a wealth of case law holding that attorneys' fees provisions are prospective when they regulate legal services performed after their enactment and retrospective when they regulate services performed before their enactment.  *See, e.g., Martin v. Hadix*, 527 U.S. 343, 360 (1999) (finding that applying the PLRA's attorneys' fees limitations after the PLRA's effective date presented "no retroactivity problem" because "the plaintiffs' attorneys were on notice that their hourly rate had been adjusted."); *Madrid v. Gomez*, 190 F.3d 990, 994 ("The district court erred, however, in refusing to apply the PLRA's attorneys' fees limitations in its June 1997 order because it awarded fees for services performed *after* the enactment." (emphasis in original)); *Thompson v. Sch. Bd. of City of Newport News, Virginia*, 472 F.2d 177, 178 (4th Cir. 1972) (majority holding that "only legal services rendered after the effective date of" a statute are compensable).

Here, as in *Hadix*, Defendant J-M was on notice that the 2007 VFATA Amendment provided for attorneys' fees for the Commonwealth when the Commonwealth decided to intervene in this action in February 2010.  *See* ECF No. 104.  J-M cannot plausibly claim unfairness or disruption of settled expectations applies here.  *See Landgraf,* 511 U.S. at 265-66 ("Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted.").  The Court thus finds that the 2007 VFATA amendment was prospective, not retroactive, in this case because it had been in effect for nearly three years when the Commonwealth decided to intervene in this action.  The Court further notes that even if it were to find the application of the amendment facially retroactive, a closer inspection would reveal that the new provision clearly does not attach "new legal consequences to events completed before its enactment."  *Landgraf*, 511 U.S. at 269-70.  Even without the 2007 VFATA amendment, J-M would have been liable for the Relator's attorneys' fees when it performed its

offending conduct between 1996 and 2006, and J-M had no idea during that time whether the Commonwealth would eventually intervene and reduce their burden for attorneys' fees under the old iteration of VFATA.

The Court also rejects J-M's separate arguments that attorneys' fees can only be paid to the Virginia Attorney General's Office.  Virginia Opp. at 12-15.  While the Court recognizes that Va. Code Ann. § 801-216.3 states that "[a]ll such fees and costs shall be paid to the Attorney General's Office," there is nothing in the statute that prevents the Attorney General from retaining Special Counsel and contractually agreeing to pass those fees to the Special Counsel.  That is precisely what happened here.  *See* Virginia Mot. at 1; Virginia Reply at 7-8.  J-M provides no authority indicating that the requirement that fees and costs go to the Attorney General's Office also limits the type of contractual agreements the Attorney General can enter into.

In conclusion, the Court finds that the 2007 VFATA amendment was not retroactive because it had been in effect for years when the Commonwealth decided to intervene in February 2010.  Defendant J-M is thus liable for the attorneys' fees of the Commonwealth after it intervened in 2010.

### B. Recoverability of Fees for Joint Representation

The second issue concerns whether Relator's counsel can recover attorneys' fees for work performed that reasonably benefitted both the Relator and the intervening governmental entities.  The parties agree that Defendant is liable for the attorneys' fees for the Relator, and that the state FCA statutes for California and Nevada do not provide attorneys' fees for the government after it intervenes.  Joint Rep. Opp. at 8-9.  The Court held *supra* that Defendant is also liable for the attorneys' fees for the Commonwealth of Virginia that were incurred after the effective date of the 2007 VFATA amendment.  The present situation is further complicated by the unique fact that Relator's counsel also served as intervening government counsel for the exemplar plaintiffs from California and Virginia and assisted in the representation of Nevada in the Phase One trial.  *See* Joint Rep. Opp. at 3-6.  Given that Plaintiffs' counsel represented the Relator and Virginia, where attorneys' fees should be awarded, and also represented or assisted Nevada and California, where attorneys' fees should not be awarded, throughout a combined proceeding, the question is what attorneys' fees can counsel recover and does the law require some kind of apportionment?

5

Plaintiffs argue that "[a]s long as the work Plaintiffs' Counsel performed was reasonably necessary to advance the legal claims of the Relator, it is entirely *irrelevant* that such work also advanced the claims of government intervenors." See Joint Rep. Mot. at 1 (emphasis in original). In support of their argument, Plaintiffs offer three principles of law that govern fee applications generally and are applicable in this instance: (1) "where attorney work is performed to advance multiple claims simultaneously, courts cannot artificially apportion that work among the several claims and cannot view the lawsuit as 'a series of discrete claims;'" (2) "where work is done to advance both a successful fee-bearing claim and a non-fee-bearing claim, fees for that work are recoverable;" (3) "where an attorney represents a client entitled to recover fees, the joint representation of other clients who are not entitled to fees does not defeat or diminish the right to recover fees incurred on the fee-bearing claim." See Joint Rep. Reply at 1.

In return, Defendant argues that during the Phase One Trial, Plaintiffs' counsel were prosecuting the claims controlled by the intervening governmental entities and took pains to exclude references to Mr. Hendrix's status as Relator during trial. See Joint Rep. Opp. at 4-6. Defendant further argues that the state FCA statutes dictate that after the government intervenes, the action "shall be conducted" by the government, not by Relator's counsel. See *id.* at 7-9. Finally, Defendant argues that the present situation is unique and distinguishable from other cited FCA cases because Plaintiffs' counsel is serving as counsel for *both* Relator and the government intervenors. *Id.* at 9-12.

The Court agrees with Plaintiffs that Plaintiffs' counsel is entitled to attorneys' fees for work necessarily incurred to advance the claims of the Relator and Virginia, even if it also advanced the claims of California and Nevada. First, even if Plaintiffs tried to exclude references to Hendrix as Relator during trial, the law is clear that in an FCA action, the Relator remains a party to the action and is given "unrestricted participation" in the litigation even after the government intervenes. See *U.S. ex rel. Roby v. Boeing Co.*, 995 F. Supp. 790, 796 (S.D. Ohio 1998) ("The relator is given 'unrestricted participation' in the litigation, subject to a request for limitation by the Government or the defendant on a showing of delay, interference, harassment, or undue burden."); *U.S. ex rel. Stillwell v. Hughes Helicopters, Inc.*, 714 F. Supp. 1084, 1091 (C.D. Cal. 1989) (discussing how in California, defendants may "limit the relator's unrestricted participation in the litigation on a showing of delay, interference, harassment, or undue burden."). Just because the Relator was not mentioned at trial does not mean Plaintiffs'

6

counsel was not participating in other ways in the action in the role of Relator's counsel.  And even if Plaintiffs' counsel held themselves out as representing only the intervening governmental entities during trial, there is no reason to believe that the hours necessarily incurred to advance the positions of California or Nevada did not predominantly coincide with the hours necessarily incurred to advance the position of Virginia, where attorneys' fees are awarded by statute.[1]

Second, Defendant has failed to meaningfully respond to Plaintiffs' three principles of law supporting their argument that the fees are recoverable.  *See* Joint Rep. Reply at 1.  The Court is unswayed by Defendant's attempts to distinguish Plaintiffs' authority by arguing that the cited cases either do not concern the FCA or do not have a single counsel representing both the relator and the intervening government entities.  *See* Joint Rep. Opp. at 9-13.  The Court agrees with Plaintiffs that the FCA statutes "specifically envision [] participation and assistance by a relator after the government intervenes in a *qui tam* action," regardless of whether the relator and government share counsel.  *See U.S., ex rel. Abbott-Burdick v. Univ. Med. Assocs.*, No. 2:96-1676-12, 2002 WL 34236885, at *15 (D.S.C. May 23, 2002) (awarding attorneys' fees to the relator for a period during which the relator's paralegals worked "exclusively" in a government office at the direction of the government); *see U.S. ex rel. Roby*, 995 F. Supp. at 795 (awarding attorneys' fees to the relator after government intervention even though relator was accused of "pursuing separate discovery, respond[ing] separately to each of the pleadings, and assert[ing] separate theories" and relator conceded it was "looking into separate facts").  Third, while it is true that after the government decides to intervene, the government has primary authority for "conduct[ing] the action," there is no indication that the relevant FCA state statutes meant to limit the government in any way in sharing the litigation burden with other counsel, including Relator's counsel.  *See* Joint Rep. Reply at 10-11.  The Court cannot agree with Defendant's interpretation of state FCA statutes that would serve to limit the capabilities of the intervening government entities to contract and enter into agreements with special counsel for additional expertise or to share the burden of litigation.

While the Court sides with Plaintiffs as a matter of law, the Court is aware that the instant

---

[1] It should be remembered that Plaintiffs' current motion for attorney's fees arises primarily from work performed during the initiation of the action and up to the verdict in the Phase One trial.  In those efforts, there would be much more of a commonality or cross-over of interests amongst the relator and plaintiffs.  For example, the efforts and goal of establishing liability under the various FCA statutes which were mostly based upon the federal statute would be virtually identical amongst all of the parties on the plaintiffs/relator's side.  Therefore, work performed for the relator and/or an exemplar plaintiff would overlap and be very difficult to separate or distinguish.

situation presents unique challenges owing to the fact that Relator's counsel has also contracted to be counsel for the intervening governments. It certainly seems possible that work usually handled by intervening government counsel was "pushed" to Relator's counsel in this instance such that the Relator's attorneys' fees are disproportionately large. The Court views such issues, however, as touching on the reasonableness of attorneys' fees. When the Special Master finally approaches the question of reasonableness of Plaintiffs attorneys' fees, he or she must take into consideration the reasonableness of the fees based on the current factual scenario, where work that was necessarily incurred and benefits the Relator and Virginia should be awarded fees and work that exclusively supports California and Nevada should not.[2] In conclusion, the Court finds most of Defendant's arguments as touching on the reasonableness of the fees, which will not be resolved at present.

    C.  <u>Effect of Contingent Fee Arrangements</u>

Plaintiffs have provided to the Court and Defendant, copies of their engagement agreements with the Commonwealth of Virginia. Like their agreements with the South Tahoe Public Utility District, *see* Tahoe Retainer ¶ 9, the engagement agreement with Virginia states that the Commonwealth would pay to Relator's counsel 5% of the full amount of any award or settlement Virginia recovers from Defendant to compensate Relator's counsel for their services. Defendant argues that Plaintiffs' engagement agreements do not allow for collection of attorneys' fees because the agreements only specify an award of 5% of the total recovery. *See* Joint Rep. Opp. at 6-7.

The Court disagrees. Both the Virginia and Tahoe agreements explicitly state that intervening government entity "agrees to cooperate fully in the prosecution of any claim by [Relator's counsel] for court awarded expenses, costs, or fees." *See* Tahoe Retainer ¶ 13. Such language indicates that the retainer agreements left open the possibility that Relator's counsel could also apply for court awarded fees, as those awarded by VFATA. Furthermore, Defendant provides no authority supporting his argument, while Plaintiffs submit that several courts have found that nothing in the federal FCA prevents counsel from receiving both statutory attorneys'

---

[2] The Court imagines a process where the burden will be on Plaintiffs to identify the tasks and hours that involved Nevada or California and justify how the tasks advanced the Relator or Virginia's positions as they submit their application for attorneys' fees. The Special Master can then review those tasks and justifications, then exclude the hours that the Special Master believes were not necessarily incurred or did not reasonably advance the position of the Relator or Virginia. It is likely that similar issues as those caused by block billing will arise, so the Special Master might need to ultimately apply percentage reductions or take other remedial measures if necessary.

fees and a contingency fee.  *See United States v. Cooper Health Sys.*, 940 F. Supp. 2d 208, 216 (D.N.J. 2013) (collecting cases that "have acknowledged the existence of fee arrangements in *qui tam* litigation which allow lawyers to receive both a statutory fee and a contingency fee without offset").

### III. CONCLUSION

Based on the foregoing discussion, the Court finds that Plaintiffs' counsel are entitled to attorneys' fees accrued by the Commonwealth of Virginia after the effective date of the 2007 amendment to VFATA.  The Court also finds that Plaintiffs' counsel are entitled to attorneys' fees incurred for work performed that reasonably benefitted the Relator or Virginia and the intervening governmental entities.  Finally, the Court find that the fees of Plaintiffs' counsel are not limited to 5% of the total recovery as indicated in their engagement agreements.