# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASES

This Settlement Agreement and Mutual Releases (hereinafter, the "Agreement") was opened for signature April 18, 2025, and is made and entered into by and among the following:

A.    The State of Nevada, The State of New Mexico, The Commonwealth of Virginia, Alameda County Water District, Castaic Lake Water Agency, City of Chino, City of Colton, City of Corona, Dublin San Ramon Services District, Elsinore Valley Municipal Water District, Helix Water District, Irvine Ranch Water District, City of Livermore, Moulton Niguel Water District, North Marin Water District, City of Oxnard, Padre Dam Municipal Water District, Paradise Irrigation District, City of Pomona, Rancho California Water District, City of Ripon, City of Sacramento, City of San Buenaventura, City of San Diego, County of San Diego, City of San Jose, City of Santa Cruz, City of Santa Maria, City of Santa Rosa, Soquel Creek Water District, Spring Valley Sanitation District, Sweetwater Authority, City of Vallejo, Western Municipal Water District, and Town of Yountville, all of which intervened in the Federal Action (collectively, "Government Plaintiffs");

B.    John Hendrix, on behalf of himself and as partial assignee of the claims of all Real Parties in Interest as defined herein ("Relator") (together with all Government Plaintiffs, collectively, "Plaintiffs"); and

C.    J-M Manufacturing Co., Inc. (now d/b/a JM Eagle) ("J-M" or "Defendant").

## 1.    RECITALS

WHEREAS, the operative Fifth Amended Complaint filed in the Federal Action (as defined herein) alleges violations by Defendant of Federal and various State False Claims Acts and was brought in the names of certain governmental entities identified in the complaint;

- 1 -

WHEREAS, the Parties have reached a settlement subject to the terms and conditions set forth herein;

WHEREAS, to avoid the delay, expense, inconvenience, and uncertainty of protracted litigation of these disputed claims, and as a result of a mutual desire to settle their disputes, the Parties wish to resolve their differences relating to the Federal Action and have reached a full, fair, and final settlement as set forth in this Agreement;

WHEREAS, this Agreement shall not be admissible as evidence of, or an admission of, or otherwise used to allege, any fault or liability of any of the Parties in any claim, action, lawsuit in any federal or state court, arbitration, or other proceeding;

WHEREAS, this Agreement does fully and finally resolve any and all claims by the Relator and the other Plaintiffs against J-M;

WHEREAS, the Parties request the consent of the United States of America to the dismissal of the Federal Action pursuant to the Federal False Claims Act, which express advance consent, however, shall not be a condition to this Agreement.

NOW, THEREFORE, the Parties hereby agree as follows:

## 2.    AGREEMENT

In reliance on the representations contained herein and in consideration of the mutual promises, agreements, releases, covenants, and conditions contained in the recitals above and the provisions set forth below, the receipt and sufficiency of such consideration being hereby acknowledged, the Parties agree to settle their disputes regarding the Claims pursuant to the terms stated below.

## 3.    DEFINITIONS

The following definitions shall apply in this Agreement:

- 2 -

3.1     The term "Action" shall mean and refer to the Federal Action, as defined herein.

3.2     The term "Claims" shall mean and refer to all the claims that were alleged or that could have been alleged or advanced in the Action.

3.3     The term "Effective Date" shall mean and refer to the latest of: (a) the approval of the settlement by the governing authorities of all of the Government Plaintiffs; (b) execution of this Agreement by all of the Parties; or (c) entry of the Order of the United States District Court for the Central District of California approving the Agreement, and that Order becoming a Final Order, pursuant to Paragraph 6.3 below.

3.4     The term "Federal Action" shall mean and refer to the legal action captioned *United States, et al., ex rel. John Hendrix v. J-M Manufacturing Company, Inc., et al.*, Case No. ED CV 06-00055GW, pending in the United States District Court for the Central District of California.

3.5     The term "J-M Released Parties" shall mean and refer to J-M and to each of its respective present and former predecessors, successors, heirs, trustees, subsidiaries, parents, assigns, divisions and each of the current and former shareholders, officers, directors, employees, managers, partners, principals, associates, owners, agents, agencies, departments, devisees, servants, attorneys, advisors, insurers, and other representatives of any of the foregoing, and all persons acting by, through, under, or in concert with J-M.

3.6     The term "J-M" shall mean J-M Manufacturing Company, Inc. (d/b/a J-M Eagle).

3.7     The term "Parties" shall mean and refer collectively to the Government Plaintiffs, the Relator, and Defendant, and the term "Party" shall mean and refer to any individual Government Plaintiff, the Relator, or Defendant.

- 3 -

122028455.10

3.8    The term "<u>Plaintiffs</u>" shall mean Relator, Government Plaintiffs, and Real Parties in Interest unless otherwise specified.

3.9    "<u>Plaintiffs' Counsel</u>" shall mean and refer to the law firms that have appeared in the Actions for the Relator or any Plaintiff.

3.10    The term "<u>Real Parties in Interest</u>" shall mean and refer to all the cities, water districts or other government entities identified in the Federal Action (other than the Government Plaintiffs) on whose behalf the Relator instituted or has prosecuted the Federal Action.

3.11    The term "<u>Warranty</u>" shall refer to the April 1, 2010, 50-year warranty described on the JM Eagle website, a copy of which is attached hereto as Exhibit <u>A</u>.

**4.    CONSIDERATION**

4.1    All Plaintiffs shall be included in the Warranty for all acquisitions of the J-M PVC pipe specified in the Warranty. The Warranty shall apply to J-M Eagle pipe supplied to (a) projects where the purchase price of the pipe was paid or reimbursed by Plaintiffs, and/or (b) private development projects. The Warranty shall apply and be administered in good faith according to its terms.

4.2    Except for the States of Nevada and New Mexico and the Commonwealth of Virginia, which are addressed below, each Government Plaintiff agrees that J-M will be treated the same as all other suppliers or materials and will be eligible for inclusion as an "approved manufacturer" of PVC pipe on any list of "approved manufacturers" maintained by that Plaintiff, subject to J-M's initial and continued compliance with that Plaintiff's established requirements for PVC pipe, without reference to the existence of this Action.

4.3    The State of Nevada agrees on behalf of the State of Nevada, State Public Works Division, that J-M will be treated like all other suppliers of materials and included as an

- 4 -

"approved manufacturer," and this litigation cannot be raised as a basis to deny inclusion or reinstatement. Further, with regard to Nevada's political subdivisions and water districts implicated in this litigation and settlement, Nevada agrees to recommend to all of them that: (1) J-M be treated like all other suppliers of materials and be allowed to apply for inclusion or reinstatement on any "approved manufacturer" list maintained by said local entity, subject to J-M's compliance with the established protocol and process of each such entity, and (2) the Federal Action should not be raised as a basis to deny inclusion or reinstatement.

4.4      The Commonwealth of Virginia agrees that for purposes of any Commonwealth agency, department or division, J-M will be treated like all other suppliers of materials and will be allowed to apply for inclusion or reinstatement on any "approved manufacturer" list maintained by any agency, department or division of the Commonwealth, and the Federal Action cannot be raised as a basis to deny inclusion or reinstatement. Further, with regard to Virginia's political subdivisions and water districts implicated in this litigation and settlement, the Commonwealth agrees to recommend to all of them that: (1) J-M be treated like all other suppliers of materials and be allowed to apply for inclusion or reinstatement on any "approved manufacturer" list maintained by said local entity, subject to J-M's compliance with the established protocol and process of each such entity; and (2) the Federal Action should not be raised as a basis to deny inclusion or reinstatement.

4.5      The State of New Mexico agrees that for purposes of any State agency, department or division, J-M will be treated like all other suppliers of materials and will be allowed to apply for inclusion or reinstatement on any "approved manufacturer" list maintained by any agency, department or division of the State, and the Federal Action cannot be raised as a basis to deny inclusion or reinstatement. Further, with regard to New Mexico's political subdivisions and water districts implicated in this litigation and settlement, New Mexico agrees to recommend to any that inquire that : (1) J-M be treated like all

- 5 -

other suppliers of materials and be allowed to apply for inclusion or reinstatement on any "approved manufacturer" list maintained by said local entity, subject to J-M's compliance with the established protocol and process of each such entity; and that (2) the Federal Action should not be raised as a basis to deny inclusion or reinstatement.

4.6     The Parties agree that the consideration set forth in this section shall resolve, fully and finally, all the Released Claims.

## 5.    BASIS OF SETTLEMENT

Defendant does not admit liability for any claim alleged in the Action, and this Agreement shall not be construed as an admission of any wrongdoing or liability by Defendant.

## 6.    GOOD FAITH AND FAIRNESS FINDINGS

6.1     Each of the Parties agrees that this Agreement is fair, adequate and reasonable under all the circumstances in accordance with 31 U.S.C. § 3730(c)(2)(B) and similar state statutes and is in good faith in accordance with Sections 877 and 877.6 of the California Code of Civil Procedure and similar state statutes.

6.2     Within three (3) business days after the date of signature of the last signatory to this Agreement and delivery of fully executed copies of the Agreement to all Parties (with facsimiles and PDF versions of signatures constituting acceptable binding signatures for purposes of this provision), and no later than May 5, 2025, the Parties shall jointly apply to the United States District Court for the Central District of California, for an Order in the Federal Action, pursuant to 31 U.S.C. § 3730(c)(2)(B), and similar state statutes, that this Agreement is fair, adequate and reasonable under all the circumstances.  A proposed form of Order is attached as Exhibit B.

- 6 -

122028455.10

6.3      The Parties shall use reasonable efforts (including but not limited to affidavits or declarations and argument) to obtain entry of such proposed order and to seek to cause such order to become a final and non-appealable order without amendment or modification thereto or limitation thereof (a "Final Order") as soon as possible.  "Final Order" shall mean an order or judgment of the court in the Federal Action or other court of competent jurisdiction with respect to the applicable subject matter and parties which has not been reversed, stayed, modified or amended and as to which (a) any right to appeal or seek certiorari, review, re-argument, stay, rehearing or further proceedings has expired and no appeal or petition for certiorari, review, re-argument, stay, rehearing or further proceedings is pending, or (b) an appeal has been taken or petition for certiorari, review, re-argument, stay, rehearing or further proceedings has been filed and (i) such appeal or petition for certiorari, review, re-argument, stay, rehearing or further proceedings has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, re-argument, stay, rehearing or further proceedings was sought, and (ii) the time to appeal further or seek certiorari, review, re-argument, stay, rehearing or further proceedings has expired and no such appeal or petition for certiorari, review, re-argument, stay, rehearing or further proceedings is pending.  This Agreement is expressly conditioned upon the entry of such Final Order in form and substance reasonably acceptable to J-M.

## 7.      DISMISSAL OF ACTIONS

7.1      Within three (3) business days following the Court's Final Order approving the settlement (the "Approval Order"), the Parties shall file Stipulations of Dismissal with Prejudice in the Federal Action, with the Stipulations in the form attached hereto as Exhibit C.

- 7 -

7.2.    The Parties agree that each side will bear their own fees and costs with regard to this litigation, including the settlement, except those that are the subject of the Court's final ruling on Phase 1 fees and costs entered on March 13, 2025 (Dkt. 3310) ("Fees and Costs Order").  The parties further agree that no party will use this settlement to support or oppose any demand for, or challenge to, existing or additional fees or costs, including but not limited to any appeal of the Fees and Costs Order.  Relator's Counsel specifically agree they will not seek any additional fees or costs in connection with the negotiation and effectuation of this settlement.

7.3    In the event that the Approval Order to be sought by the Parties pursuant to Paragraphs 6.2 and 6.3 is denied, this Agreement shall fail.  In such event, the Parties shall act in good faith to modify the settlement and/or the proposed Order to render it acceptable to the Court, or the Parties shall re-commence litigation subject to the Court's existing Orders and Judgments.

**8.    RELEASES**

8.1    Subject to the other provisions and limitations set out in this Agreement and effective as of the date the Approval Order issues from the Court, the Government Plaintiffs and the Relator, on behalf of himself and the Real Parties in Interest, for themselves, their governing authorities, boards, and commissions, officers, agents, employees, administrators, successors, and assigns (collectively, the "Plaintiff Releasors"), do hereby forego, release, and forever discharge J-M and each of the J-M Released Parties, from any and all actions; grounds for complaint; causes of action, in law or in equity, in contract, in tort, or otherwise; suits; guarantees of indebtedness; suretyships; debts; liens; contracts; agreements; promises; liability, including all direct and/or indirect liability (including, without limitation, vicarious liability); judgments, claims including civil claims pursuant to the federal False Claims Act, 31 U.S.C. §§ 3729-

- 8 -

3733, the state False Claims Acts and Fraud Against Taxpayer Acts of each of the State parties hereto; demands; damages; losses; costs; expenses; proceedings, whether sealed or unsealed (including attorneys' fees, expert fees, treble damages, civil penalties, punitive damages, costs, and expenses of every kind and however denominated); defenses; set-offs; or recoupments, of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, which the Plaintiff Releasors, or any of them, now have, ever had, or shall have against the Defendant Releasees, or any of them, arising out of or in any way connected with the Claims or Action or the facts alleged or asserted or which could have been alleged or asserted in the Claims or in the Action. Without limiting the generality of the foregoing, and to the fullest extent that the Relator and each of the other Plaintiffs are capable under applicable law, this release fully discharges and releases each J-M Released Party from (i) any obligation to pay damages, restitution, fines and/or penalties arising from the allegations made, or which could have been brought and made in the Federal Action, (ii) any obligation to the Relator or his attorneys, including any Relator's share, expenses, attorneys' fees, and costs associated with the Federal Action to which Relator or his attorneys may be entitled, except those that are the subject of the Court's Fees and Costs Order; and (iii) any obligation to pay any attorneys' fees, expenses and costs of the Plaintiffs or their attorneys associated with the Action, except those that are the subject of the Court's Fees and Costs Order.

8.2    Subject to the other provisions and limitations set out in this Agreement and effective as of the date the Approval Order issues from the Court, Defendant, for itself as well as each of Defendant's respective past and present affiliates, parents, subsidiaries, divisions, branches, departments, agencies, predecessors, successors, and the heirs, principals, employees, associates, owners, stockholders, assigns, devisees, agents, distributors, directors, officers, representatives, insurers, lawyers, and predecessors and successors in interest, and each of them (collectively,

- 9 -

"Defendant Releasors"), does hereby forego, release, and forever discharge the Government Plaintiffs, the Relator, in his individual capacity and in his capacity on behalf of the Real Parties in Interest, as well as each of their respective past and present affiliates, governing authorities, boards, commissions, agents, administrators, parents, subsidiaries, divisions, branches, departments, agencies, predecessors, successors, and the heirs, principals, employees, associates, owners, stockholders, assigns, devisees, agents, distributors, directors, officers, representatives, insurers, lawyers, and predecessors and successors in interest, and each of them, and all persons acting by, through, under, or in concert with them (collectively, the "Plaintiff Releasees") from any and all actions; grounds for complaint; causes of action, in law or in equity, in contract, in tort, or otherwise; suits; guarantees of indebtedness; suretyships; debts; liens; contracts; agreements; promises; liability, including all direct and/or indirect liability (including, without limitation, vicarious liability); claims; demands; damages; losses; costs; expenses; defenses; set-offs; or recoupments, of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, which Defendant Releasors, or any of them, now have, ever had, or shall have against the Plaintiff Releasees, or any of them, arising out of or in any way connected with the Claims or Action or related to the investigation or litigation of claims or the facts alleged or asserted or which could have been alleged or asserted in the Claims or in the Action.

      8.3    The Parties understand, acknowledge and agree that (i) they have each performed an independent investigation of the allegations of fact and law made in connection with the Federal Action, and (ii) they each may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Federal Action. Nevertheless, it is the Parties' intention to resolve their disputes pursuant to the terms of this Agreement and thus, in furtherance of their intentions, the Agreement shall remain in full

122028455.10

force and effect notwithstanding the discovery of any additional or different facts or law, or changes in law with respect to the subject matter of the Federal Action, and the Agreement shall not be subject to rescission or modification by reason of any such changes or differences in fact or law. The Parties, and each of them, acknowledge their awareness of California Civil Code § 1542, which reads:

> **A general release does not extend to claims that the creditor does not know or suspect to exist in his or her favor at the time of executing the release, and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

Being aware of this statute, the Parties, and each of them, freely waive his and its protection with respect to the releases given and received in this Agreement. The Parties similarly expressly waive all protections, rights and benefits conferred by any law of any state or territory of the United States, or any principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542. The Parties acknowledge that the inclusion of "unknown claims" among the claims released in this Agreement was separately bargained for and was a material element of the settlement and this Agreement.

8.4    Notwithstanding any other term of this Agreement, including the release provisions above, the following is specifically reserved and excluded from the scope and terms of the releases, or is beyond the scope of and is not covered by this Agreement, as applicable: Any claims based upon such obligations as are created by this Agreement.

122028455.10

## 9.    GENERAL PROVISIONS

9.1     **Voluntary Agreement.**  The Parties have been represented by their respective attorneys throughout the negotiation and execution of this Agreement and have not relied upon any advice or representation of opposing parties or their attorneys in entering into this Agreement.  The Parties have entered into this Agreement freely, without compulsion, and with full understanding and voluntary acceptance of its terms and they hereby assume the risk of any mistake of fact in connection with the true facts involved, which may now be unknown.

9.2     **Entire Agreement.**  This Agreement, together with all its Exhibits, constitutes the entire agreement between the Parties with respect the subject matter contained herein and represents the final, complete, and exclusive expression of the terms and conditions of the Agreement between the Parties.  All prior or contemporaneous agreements between the Parties, oral or written, with respect to the subject matter of this Agreement are merged herein and superseded hereby.  The Parties each acknowledge that no Party, or any agent of any Party, has made any promise, representation, or warranty whatsoever, express or implied, not contained herein concerning the subject matter hereof, to induce the Parties (or any individual Party named or referred to herein) to execute this Agreement, and each Party acknowledges that it has not executed this Agreement in reliance on any such promise, representation, or warranty. Notwithstanding anything in this paragraph, prior settlement agreements executed in this action involving any government entities that are not parties to this Agreement are not merged herein or superseded hereby.  The failure by any of the Parties to enforce at any time, or for any period of time, any one or more of the terms or conditions of this Agreement, or a course of dealings between the Parties, shall not be a waiver of such terms or conditions or of such Party's right thereafter to enforce each and every term and condition of this Agreement.

- 12 -

9.3     **Amendment.**  This Agreement may not be altered, amended, modified, or otherwise changed in any respect whatsoever except by a writing duly executed by the Parties hereto.

9.4     **Survival Of Agreement.**  If any provision of this Agreement, or the application thereof, shall for any reason or to any extent be construed by a court of competent jurisdiction to be unfair, unreasonable or inadequate, or determined not to have been entered in good faith, or to be invalid or unenforceable, the remainder of this Agreement, and application of such provision to other circumstances, shall remain in effect and be interpreted so as best reasonably to effect the intent of the Parties.  Provided, however, that if the Court does not enter the order finding that this Agreement is fair, adequate and reasonable and made in good faith as set forth in Paragraphs 6.2 and 6.3 herein, then this Agreement shall forthwith be null and void.

9.5     **Joint Drafting; Headings.**  This Agreement has been negotiated at arm's length and between and among persons sophisticated and knowledgeable in the matters dealt with in this Agreement.  In addition, this Agreement was drafted by experienced and knowledgeable legal counsel for each of the Parties.  For purposes of construction, this Agreement shall be deemed to have been negotiated and drafted jointly by all of the Parties hereto, and no ambiguity shall be resolved against any Party by virtue of its participation in the drafting of this Agreement. No presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.  The Agreement shall be construed neutrally and shall not be applied more strictly against one Party than against another.  The provisions of this Agreement shall be interpreted in a reasonable manner to effectuate the purposes of the Parties and this Agreement.  Headings are for convenience only and shall not limit or expand the substance of the Agreement.

- 13 -

9.6 **Successors And Assigns.** This Agreement shall be binding upon each Party and its respective assigns, successors, transferees, heirs, executors, and administrators.

9.7 **Reasonable Efforts And Cooperation.** The Parties agree to use reasonable efforts to cooperate with each other in good faith and will, without further consideration, execute and deliver further documents or instruments and take such other action as may reasonably be necessary to carry out and effectuate the purposes of this Agreement.

9.8 **Governing Law; Venue.** This Agreement shall be governed by the laws of the United States, and as to state law matters, by the law of the State of California. The Parties agree that the exclusive jurisdiction and venue for any dispute relating to this Agreement or to the Federal Action arising between and among any Parties under this Agreement shall be the United States District Court for the Central District of California and that the United States District Court for the Central District of California shall retain continuing jurisdiction over the enforcement of this Agreement and all releases, including for purposes of issuing preliminary or permanent injunctive relief in protection of jurisdiction to enforce the terms, conditions and releases provided for in this Agreement.

9.9 **Compromise; Liability Denied.** It is understood and agreed by the Parties hereto that this Agreement is a compromise of disputed claims and allegations and that each Party denies liability for all claims and allegations asserted against it in the Actions. Neither the execution of this Agreement, nor the consideration therefore shall be construed as an admission as to the merits of any such claim or allegation, or as an admission of any allegation of law or fact by any Party hereto.

9.10 **Authority Of Signatories.** Each person signing this Agreement represents and warrants that he or she has full authority to sign this Agreement on behalf of the Party for whom

he or she is signing and warrants that he or she has the ability to bind that Party to the obligations and commitments set forth herein.  The signatories for the Government Plaintiffs, and each of them, represent that they are signing this Agreement in their official capacities and that they are authorized to execute this Agreement and thereby to bind their respective organizations.  The signatories for J-M represent that they are authorized by J-M to execute this Agreement on its behalf and thereby to bind it.  Relator represents and warrants only that he has the authority to sign this Agreement on his own behalf and that he has the ability to bind the Real Parties in Interest on whose behalf he has asserted claims only to the extent permitted by law.  Relator disclaims any ability to bind any Real Party in Interest beyond the extent permitted by law.

  9.11  **Counterparts.**  Duplicate originals of this Agreement will be executed by the Parties.  This Agreement may be executed in one or more counterparts, each of which shall constitute an original and all of which shall together constitute one and the same agreement.

  9.12  **Plaintiffs' Ownership of Claims.**  Plaintiffs, and each of them, represent that they have not assigned, pledged, or hypothecated any right, title or interest in their claims set forth in the Actions, in whole or in part, to any third party, whether contingent or non-contingent or accrued or non-accrued.

**[SIGNATURES BEGIN ON FOLLOWING PAGE]**

122028455.10

IN WITNESS WHEREOF, the Parties have executed this Agreement.

**State of Nevada**
**Office of the Attorney General**
**Aaron D. Ford, Attorney General**

By: _____

Title: _Deputy Attorney General_

Date: _4/22/25_

**State of New Mexico**
**Office of the Attorney General**
**Raul Torrez, Attorney General**
**Deputy Attorney General Billy Jiminez**

By: _____

Title: _____

Date: _____

**The Commonwealth of Virginia**
**Office of the Attorney General**
**Jason S. Miyares, Attorney General**

By: _____

Title: _____

Date: _____

**Alameda County Water District**

By: _____

Title: _____

Date: _____

- 16 -

122028455.8

IN WITNESS WHEREOF, the Parties have executed this Agreement.

**State of Nevada**
**Office of the Attorney General**
**Aaron D. Ford, Attorney General**

By:_____

Title:_____

Date:_____

**State of New Mexico**
**Office of the Attorney General**
**Raul Torrez, Attorney General** Jimenez
**Deputy Attorney General Billy Jiminez**

By: _____

Title: Deputy Attorney General

Date: 4/23/25

**The Commonwealth of Virginia**
**Office of the Attorney General**
**Jason S. Miyares, Attorney General**

By:_____

Title:_____

Date:_____

**Alameda County Water District**

By:_____

Title:_____

Date:_____

- 16 -

IN WITNESS WHEREOF, the Parties have executed this Agreement.

**State of Nevada**
**Office of the Attorney General**
**Aaron D. Ford, Attorney General**

By:_____

Title:_____

Date:_____

**State of New Mexico**
**Office of the Attorney General**
**Raul Torrez, Attorney General**
**Deputy Attorney General Billy Jiminez**

By:_____

Title:_____

Date:_____

**The Commonwealth of Virginia**
**Office of the Attorney General**
**Jason S. Miyares, Attorney General**

By: _*[signature]*_____

Title: _Senior Assistant Attorney General_

Date: _April 23, 2025_____

**Alameda County Water District**

By:_____

Title:_____

Date:_____

- 16 -

IN WITNESS WHEREOF, the Parties have executed this Agreement.

**State of Nevada**
**Office of the Attorney General**
**Aaron D. Ford, Attorney General**

By:_____

Title:_____

Date:_____


**State of New Mexico**
**Office of the Attorney General**
**Raul Torrez, Attorney General**
**Deputy Attorney General Billy Jiminez**


By:_____

Title:_____

Date:_____


**The Commonwealth of Virginia**
**Office of the Attorney General**
**Jason S. Miyares, Attorney General**


By:_____

Title:_____

Date:_____


**Alameda County Water District**

By:_____

Title: GENERAL MANAGER

Date: 4/22/2025

- 16 -

122028455.8

**Castaic Lake Water Agency** (Now Known as Santa Clarita Water Agency)

By: _____

Title: General Manager

Date: 04/21/25


**City of Chino**

By: _____

Title: _____

Date: _____


**City of Colton**

By: _____

Title: _____

Date: _____


**City of Corona**

By: _____

Title: _____

Date: _____


**Dublin San Ramon Services District**

By: _____

Title: _____

Date: _____

- 17 -

122028455.8

**Castaic Lake Water Agency**

By:_____

Title:_____

Date:_____


**City of Chino**

By:_____

Title: City Manager_____

Date: 4/22/25_____


**City of Colton**

By:_____

Title:_____

Date:_____


**City of Corona**

By:_____

Title:_____

Date:_____


**Dublin San Ramon Services District**

By:_____

Title:_____

Date:_____

- 17 -

**Castaic Lake Water Agency**

By:_____

Title:_____

Date:_____


**City of Chino**

By:_____

Title:_____

Date:_____


**City of Colton**

By:_____

Title: Mayor Frank J. Navarro

Date: 4/22/2025


**City of Corona**

By:_____

Title:_____

Date:_____


**Dublin San Ramon Services District**

By:_____

Title:_____

Date:_____

- 17 -

**Castaic Lake Water Agency**

By:_____

Title:_____

Date:_____


**City of Chino**

By:_____

Title:_____

Date:_____


**City of Colton**

By:_____

Title:_____

Date:_____


**City of Corona**

By: *Jacob Ellis*

Title: City Manager

Date: 4/21/2025

**Approved as to Form**

By: *James Gilpin*

Best, Best & Krieger LLP
Special Counsel, City of Corona


**Dublin San Ramon Services District**

By:_____

Title:_____

Date:_____

- 17 -

122028455.8

**Castaic Lake Water Agency**

By:_____

Title:_____

Date:_____


**City of Chino**

By:_____

Title:_____

Date:_____

**City of Colton**

By:_____

Title:_____

Date:_____


**City of Corona**

By:_____

Title:_____

Date:_____


**Dublin San Ramon Services District**

By:_____

Title:_____

Date:_____

- 17 -

**Elsinore Valley Municipal Water District**

By: _____

Title: General Manager

Date: April 21, 2025

**Helix Water District**

By: _____

Title: _____

Date: _____

**Irvine Ranch Water District**

By: _____

Title: _____

Date: _____

**City of Livermore**

By: _____

Title: _____

Date: _____

**Moulton Niguel Water District**

By: _____

Title: _____

Date: _____

- 18 -

I22028455 8

**Elsinore Valley Municipal Water District**

By:_____

Title:_____

Date:_____


**Helix Water District**

By:_____

Title:_____

Date:_____


**Irvine Ranch Water District**

By:_____

Title:_____

Date:_____


**City of Livermore**

By:_____

Title:_____

Date:_____


**Moulton Niguel Water District**

By:_____

Title:_____

Date:_____

- 18 -

122028455.8

**Elsinore Valley Municipal Water District**

By:_____

Title:_____

Date:_____

**Helix Water District**

By:_____

Title:_____

Date:_____

**Irvine Ranch Water District**

By:_____

Title:_Paul A. Cook, General Manager_

Date:_ April 21, 2025 _____

**City of Livermore**

By:_____

Title:_____

Date:_____

**Moulton Niguel Water District**

By:_____

Title:_____

Date:_____

- 18 -

**Elsinore Valley Municipal Water District**

By:_____

Title:_____

Date:_____


**Helix Water District**

By:_____

Title:_____

Date:_____


**Irvine Ranch Water District**

By:_____

Title:_____

Date:_____


**City of Livermore**

By:_____

_Jason Alcala_

Title:_ City Attorney_____

Date:_ 4 - 22 - 2025_____


**Moulton Niguel Water District**

By:_____

Title:_____

Date:_____

- 18 -

**Elsinore Valley Municipal Water District**

By:_____

Title:_____

Date:_____

**Helix Water District**

By:_____

Title:_____

Date:_____

**Irvine Ranch Water District**

By:_____

Title:_____

Date:_____

**City of Livermore**

By:_____

Title:_____

Date:_____

**Moulton Niguel Water District**

By: _Matt Collrh_

Title: _ASSISTANT GENERAL MANAGER_

Date: _4/22/25_

- 18 -

**North Marin Water District**

By: _Craig S_____

Title: _General Counsel_

Date: _April 23, 2025_

**City of Oxnard**

By:_____

Title:_____

Date:_____


**Padre Dam Municipal Water District**

By:_____

Title:_____

Date:_____


**Paradise Irrigation District**

By:_____

Title:_____

Date:_____


**City of Pomona**

By:_____

Title:_____

Date:_____

- 19 -

**North Marin Water District**

By:_____

Title:_____

Date:_____

**City of Oxnard**

By:_____

Title: *Assistant City Attorney*

Date: *April 22, 2025*

**Padre Dam Municipal Water District**

By:_____

Title:_____

Date:_____

**Paradise Irrigation District**

By:_____

Title:_____

Date:_____

**City of Pomona**

By:_____

Title:_____

Date:_____

- 19 -

**North Marin Water District**

By:_____

Title:_____

Date:_____


**City of Oxnard**

By:_____

Title:_____

Date:_____


**Padre Dam Municipal Water District**

By:_____

Title:_CEO/General Manager_____

Date:_April 21, 2025_____


**Paradise Irrigation District**

By:_____

Title:_____

Date:_____


**City of Pomona**

By:_____

Title:_____

Date:_____

- 19 -

122028455.8

**North Marin Water District**

By:_____

Title:_____

Date:_____


**City of Oxnard**

By:_____

Title:_____

Date:_____


**Padre Dam Municipal Water District**

By:_____

Title:_____

Date:_____


**Paradise Irrigation District**

By:_____

Title: General Counsel

Date: April 21, 2025


**City of Pomona**

By:_____

Title:_____

Date:_____

- 19 -

North Marin Water District

By:_____

Title:_____

Date:_____

City of Oxnard

By:_____

Title:_____

Date:_____

Padre Dam Municipal Water District

By:_____

Title:_____

Date:_____

Paradise Irrigation District

By:_____

Title:_____

Date:_____

City of Pomona

By: _Les Scott_____

Title: _City Manager_____

Date: _4/21/25_____

Approved As to Form:
_Sonia R. Carvalho_____ - 19 -
City Attorney, Sonia R. Carvalho
122028459.8    Date: April 21, 2025

**Rancho California Water District**

By: _____

Title: General Manager
_____

Date: 4/21/2025
_____

**City of Ripon**

By: _____

Title: _____

Date: _____

**City of Sacramento**

By: _____

Title: _____

Date: _____

**City of San Buenaventura**

By: _____

Title: _____

Date: _____

**City of San Diego**

By: _____

Title: _____

Date: _____

- 20 -

**Rancho California Water District**

By:_____

Title:_____

Date:_____

**City of Ripon**

By: *[signature]*

Title:_____ MAYOR _____

Date:_____ 4-30-25 _____

**City of Sacramento**

By:_____

Title:_____

Date:_____

**City of San Buenaventura**

By:_____

Title:_____

Date:_____

**City of San Diego**

By:_____

Title:_____

Date:_____

- 20 -

**Rancho California Water District**

By:_____

Title:_____

Date:_____


**City of Ripon**

By:_____

Title:_____

Date:_____


**City of Sacramento**

By: Pravani Vandeyar (Apr 21, 2025 12:24 PDT)
_____

Title: Director of Utilities
_____

Date: Apr 21, 2025
_____


**City of San Buenaventura**

By:_____

Title:_____

Date:_____


**City of San Diego**

By:_____

Title:_____

Date:_____

- 20 -

122028455.8

**Rancho California Water District**

By:_____

Title:_____

Date:_____


**City of Ripon**

By:_____

Title:_____

Date:_____


**City of Sacramento**

By:_____

Title:_____

Date:_____


**City of San Buenaventura**

By:_____

Title:___ Sr. Assistant City Attorney

Date:___ 4/22/25


**City of San Diego**

By:_____

Title:_____

Date:_____

- 20 -

**Rancho California Water District**

By:_____

Title:_____

Date:_____


**City of Ripon**

By:_____

Title:_____

Date:_____


**City of Sacramento**

By:_____

Title:_____

Date:_____


**City of San Buenaventura**

By:_____

Title:_____

Date:_____


**City of San Diego**

By: ___Mark Ankcorn___ _/s/_____

Title: __Sr. Chief Deputy City Attorney___

Date: __April 21, 2025_____

- 20 -

122028455.8

**County of San Diego**

By: _____

Title: _Senior Deputy County Counsel_

Date: _4/24/25_

**City of San Jose**

By: _____

Title: _____

Date: _____

**City of San Ramon**

By: _____

Title: _____

Date: _____

**City of Santa Cruz**

By: _____

Title: _____

Date: _____

**City of Santa Maria**

By: _____

Title: _____

Date: _____

- 21 -

122028455.8

**County of San Diego**

By:_____

Title:_____

Date:_____

**City of San Jose**

By:_____

Title: CITY ATTORNEY

Date: 4.22.25

**City of San Ramon**

By:_____

Title:_____

Date:_____

**City of Santa Cruz**

By:_____

Title:_____

Date:_____

**City of Santa Maria**

By:_____

Title:_____

Date:_____

- 21 -

122028455.8

**County of San Diego**

By:_____

Title:_____

Date:_____


**City of San Jose**

By:_____

Title:_____

Date:_____


**City of San Ramon**

By:_____

Title:_____

Date:_____


**City of Santa Cruz**

By: _Matt Huffaker_____

Title:_City Manager_____

Date:_4/22/2025_____


**City of Santa Maria**

By:_____

Title:_____

Date:_____

- 21 -

**County of San Diego**

By:_____

Title:_____

Date:_____


**City of San Jose**

By:_____

Title:_____

Date:_____


**City of San Ramon**

By:_____

Title:_____

Date:_____


**City of Santa Cruz**

By:_____

Title:_____

Date:_____


**City of Santa Maria**

By:_____

Title:_____

Date:_____

- 21 -

**City of Santa Rosa**

By:_____
     Adam S. Abel, Assistant City Attorney
Title: City of Santa Rosa

Date: May 6, 2025


**Soquel Creek Water District**

By:_____

Title:_____

Date:_____


**Spring Valley Sanitation District**

By:_____

Title:_____

Date:_____


**Sweetwater Authority**

By:_____

Title:_____

Date:_____


**City of Vallejo**

By:_____

Title:_____

Date:_____


- 22 -

**City of Santa Rosa**

By:_____

Title:_____

Date:_____

**Soquel Creek Water District**

By: _Melanie Mowac_

Title: _GENERAL MANAGER_

Date: _April 23, 2025_

**Spring Valley Sanitation District**

By:_____

Title:_____

Date:_____

**Sweetwater Authority**

By:_____

Title:_____

Date:_____

**City of Vallejo**

By:_____

Title:_____

Date:_____

- 22 -

122028455.8

**City of Santa Rosa**

By:_____

Title:_____

Date:_____


**Soquel Creek Water District**

By:_____

Title:_____

Date:_____


**Spring Valley Sanitation District**

By:_____

Title:_Senior Deputy County Counsel_

Date:_4/24/25_


**Sweetwater Authority**

By:_____

Title:_____

Date:_____


**City of Vallejo**

By:_____

Title:_____

Date:_____

- 22 -

**City of Santa Rosa**

By:_____

Title:_____

Date:_____


**Soquel Creek Water District**

By:_____

Title:_____

Date:_____


**Spring Valley Sanitation District**

By:_____

Title:_____

Date:_____


**Sweetwater Authority**

By: *Cehs Zut*

Title: *General Manager*

Date: *April 21, 2025*


**City of Vallejo**

By:_____

Title:_____

Date:_____

- 22 -

**City of Santa Rosa**

By:_____

Title:_____

Date:_____


**Soquel Creek Water District**

By:_____

Title:_____

Date:_____


**Spring Valley Sanitation District**

By:_____

Title:_____

Date:_____


**Sweetwater Authority**

By:_____

Title:_____

Date:_____


**City of Vallejo**

By:_____

Title: CHIEF ASSISTANT CITY ATTORNEY

Date: 5-1-25

- 22 -

122028455.8

**Western Municipal Water District**

By: _____

Title: _____

Date: _____

**Town of Yountville**

By: _____

Title: _____

Date: _____

**Relator John Hendrix, on behalf of himself and Real Parties in Interest**

By: _____

Date: _____

**J-M Manufacturing Co., Inc.**

By: _____

Title: _____

Date: _____

- 23 -

**Western Municipal Water District**

By:_____

Title:_____

Date:_____


**Town of Yountville**

By: *Brad Raulston*
_____

Title: Town Manager
_____

Date: 4/21/2025 | 9:53 AM PDT
_____


**Relator John Hendrix, on behalf of himself and Real Parties in Interest**

By:_____

Date:_____


**J-M Manufacturing Co., Inc.**

By:_____

Title:_____

Date:_____


- 23 -

**Western Municipal Water District**

By:_____

Title:_____

Date:_____


**Town of Yountville**

By:_____

Title:_____

Date:_____


**Relator John Hendrix, on behalf of himself and Real Parties in Interest**

By:_____

Date:_____


**J-M Manufacturing Co., Inc.**

By:_____

Title:_____

Date:_____

- 23 -

**Western Municipal Water District**

By:_____

Title:_____

Date:_____

**Town of Yountville**

By:_____

Title:_____

Date:_____

**Relator John Hendrix, on behalf of himself and Real Parties in Interest**

By:_____

Date:_____

**J-M Manufacturing Co., Inc.**

By:_____

Title:_____ Walter Wang, CEO

Date:_____ April 21, 2025

- 24 -

# EXHIBIT A

# JM Eagle 50-Year Warranty



# NOTICE OF RETROACTIVE EXTENSION OF LIMITED WARRANTY

Pipe certified to the standards of the American Water Works Association (AWWA) for water distribution, transmission and force sewer mains including C900, C905, C909, C901 and C906 products manufactured by JM Eagle™ (hereinafter "Products")* are now backed by our unprecedented fifty (50) year limited warranty. (See www.jmeagle.com for full details). JM Eagle™ is proud to announce that it is so confident in the quality of its products, that effective April 1, 2010, it will retroactively extend similar warranty protection for Product manufacturing defect failures. For any Products manufactured by JM Eagle™ and purchased from JM Eagle™ since December 1, 1982, JM Eagle™ will retroactively extend fifty (50) year warranty protection for any manufacturing defect that causes failure on or after April 1, 2010. As set forth in detail below, to be eligible for this retroactive extension, the Products need only have been manufactured by JM Eagle™, contain the original stencil markings, have been purchased since December 1, 1982, and failed on or after April 1, 2010. The fifty (50) year retroactive extended warranty will begin to run on the date of invoice for purchase from JM Eagle™ and will expire fifty (50) years from that date.

# EXTENDED RETROACTIVE LIMITED WARRANTY

## 1. PERIODS AND SCOPE OF COVERAGE

JM Eagle™ warrants through this retroactive extension of Limited Warranty that its pipe products certified to the standards of the American Water Works Association for water distribution, transmission and force sewer mains including C900, C905, C909, C901 and C906 products manufactured by JM Eagle™ (each a "Product" and collectively, the "Products")* were manufactured in accordance with any of the following AWWA, ASTM, ANSI/NSF, and UL standards then in existence as follows: **(1)** AWWA C900 and ASTM 1784 cell class 12454; Gaskets meet ASTM F477; Joints meet ASTM D3139; ANSI/NSF-61, UL 1285 for the C900, **(2)** AWWA C905 and ASTM 1784 cell class 12454; Gaskets meet ASTM F477; Joints meet  ASTM D3139;ANSI/NSF-61, UL 1285 for C905, **(3)** AWWAC909 and UL 1285; Gaskets meet ASTM F477; Joints meet ASTM D3139 for C909 and **(4)** AWWA C901/906, ASTM D2239, ASTM D2737, ASTM D3035, F714, cell class per ASTM D3350, PPI listed material (TR-4) PE3408/3608 & PE4710, ASNI/NSF-14 for C901 and C906. JM Eagle™ warrants that each of these Products manufactured by JM Eagle™ left our plant free from defects in workmanship and materials. These Products as manufactured by JM Eagle™ are retroactively backed by our extended, unprecedented fifty (50) year Limited Warranty. This Limited Warranty provides that Products manufactured by JM Eagle™ met the applicable then-existing quality standards stated above and that are published by the AWWA, ASTM International (ASTM), American National Standards Institute/ NSF International (ANSI/NSF) and Underwriters Laboratories (UL).

If any Product fails after April 1, 2010 and is determined within fifty (50) years from the date of invoice by JM Eagle™ to be defective because it failed to meet the above stated standards, JM Eagle™ will then provide replacement product of the same type, size and quantity of the product and costs related to this replacement** or issue credits, offsets or a combination thereof for the wholesale purchase price of the defective product.

## 2. EXCLUSIONS FROM COVERAGE AND EXCLUSIVE REMEDY:

Products manufactured by JM Eagle™ are marked with JM Eagle, PW Eagle or US Poly stencil markings. This limited warranty excludes any Product not manufactured by JM Eagle™, even if it is sold by JM Eagle™, and also excludes defects or failures caused after shipment by:

- improper installation (including, without limitation, misalignment),
- use in improper applications or conditions or in conjunction with improper materials (including, without limitation, improper lubricants, pastes, solvents or sealants),
- contact with aggressive chemical agents, freezing or overheating of liquids in the Product, or unusual pressure surges or pulsation,
- vibration,
- temperature shocking,
- U.V. degradation,
- failure to adhere to JM Eagle™'s instructions concerning the proper handling, installation, testing and use of the Product,
- failure to adhere to applicable standards set forth by local laws, codes, or regulations and the applicable industry standards, or
- any other improper activities not listed above or damage caused by the fault or negligence of anyone other than JM Eagle™.



**THE WARRANTIES IN THIS LIMITED WARRANTY ARE THE ONLY WARRANTIES APPLICABLE TO THE PRODUCTS.  THERE ARE NO OTHER WARRANTIES, REPRESENTATIONS OR CONDITIONS OF ANY KIND, EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE, WITH RESPECT TO THE PRODUCTS SUPPLIED HEREUNDER INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.  ALL SUCH WARRANTIES ARE HEREBY SPECIFICALLY DISCLAIMED AND JM EAGLE™ SHALL NOT BE LIABLE IN THIS RESPECT NOTWITHSTANDING JM EAGLE™'S ACTUAL KNOWLEDGE OF THE PRODUCT'S INTENDED USE OR ANY ADVICE OR REPRESENTATIONS THAT MAY HAVE BEEN RENDERED BY JM EAGLE™ CONCERNING THE DESIGN, MANUFACTURE, FABRICATION, SALE, USE, INSTALLATION OR PROVISION OF THE PRODUCTS. NO STATEMENT, CONDUCT OR DESCRIPTION BY JM EAGLE™ OR ITS REPRESENTATIVES, IN ADDITION TO OR BEYOND THIS LIMITED WARRANTY, SHALL CONSTITUTE A WARRANTY.**

**BUYER AGREES THAT ITS SOLE AND EXCLUSIVE REMEDY FOR BREACH OF THIS LIMITED WARRANTY, AND THE SOLE AND EXCLUSIVE OBLIGATION OF JM EAGLE™ IN RESPECT OF ANY CLAIMS FOR BREACH OF THIS LIMITED WARRANTY, SHALL BE, (1) THE REPLACEMENT OF THE SAME TYPE, SIZE AND LIKE QUANTITY OF NON-DEFECTIVE PRODUCT, AT THE ORIGINAL POINT OF DELIVERY, AND COSTS DIRECTLY RELATED TO THIS REPLACEMENT***, OR (2) CREDITS, OFFSETS, OR A COMBINATION THEREOF, FOR THE WHOLESALE PURCHASE PRICE OF THE DEFECTIVE PRODUCT.  IN NO EVENT SHALL JM EAGLE™ BE LIABLE FOR LOST PROFITS, LOSS OF GOODWILL, LOSS OF BUSINESS OPPORTUNITIES, DAMAGE TO REPUTATION, SPECIAL DAMAGES, INDIRECT DAMAGES, DELAY DAMAGES, PUNITIVE DAMAGES, EXEMPLARY DAMAGES, CONSEQUENTIAL DAMAGES OR INCIDENTAL DAMAGES.**

### 3.  REQUIREMENTS FOR MAKING CLAIMS:

Every claim for breach under this warranty shall be void unless it is made in writing to JM Eagle™ and postmarked **within five business (5) days** of the date the defect was discovered or in the exercise of ordinary care should have been discovered and, in any event, the claim must also be made within fifty (50) years of the date of the JM Eagle™ invoice. As noted above, Products manufactured by JM Eagle™ are marked with JM Eagle™, PW Eagle or US Poly stencils. This limited warranty excludes any Product not manufactured by JM Eagle™, even if it is sold by JM Eagle™.

Any claim for breach of warranty must be sent to:

*Product Assurance Department*
*JM Eagle*
*5200 W. Century Boulevard*
*Los Angeles, CA, 90045*

For questions regarding claims, the Product Assurance Department may be also contacted at 1-800-621-4404 or JMWebSupport1@jmeagle.com.

No claim under this limited warranty will be valid unless (1) proof of purchase with the date thereof as well as a description of the alleged defect in reasonable detail is presented to the satisfaction of JM Eagle™, (2) written permission and/or a Return Goods Authorization (RGA) is obtained from JM Eagle™, (3) JM Eagle™ is given a meaningful and reasonable opportunity to inspect the allegedly defective Product and its installation at the site and (4) at JM Eagle™'s request, representative samples of the allegedly defective Product are returned to JM Eagle™ in accordance with JM Eagle™'s instructions.

---

\*    Products covered by this Limited Warranty include similar PW Eagle and US Poly products manufactured by JM Eagle after July 1, 2007.
\*\*   JM Eagle's Conroe Texas plant in the process of obtaining ISO 9001 certification. The other plants are already certified to ISO 9001.
\*\*\*  Replacement costs shall be reasonable and based on industry standard cost parameters such as those listed in the RS Means Assemblies Cost Data Book.

# EXHIBIT B

## PROPOSED ORDER OF DISMISSAL WITH PREJUDICE OF CLAIMS AGAINST J-M

Pursuant to Rule 41(a) of the Federal Rules of Civil Procedure and the *qui tam* provisions of the federal False Claims Act, the California, Delaware, District of Columbia, Florida, Indiana, Illinois, Massachusetts, and Nevada False Claims Acts, and the New Mexico and Virginia Fraud Against Taxpayers Acts, the State of Nevada, the State of New Mexico, the Commonwealth of Virginia, Alameda County Water District, Castaic Lake Water Agency, City of Chino, Dublin San Ramon Services District, City of Livermore, Moulton Niguel Water District, North Marin Water District, City of Oxnard, Paradise Irrigation District, City of Pomona, City of Ripon, City of Sacramento, City of San Buenaventura, County of San Diego, City of Santa Cruz, City of Santa Maria, City of Santa Rosa, Soquel Creek Water District, Spring Valley Sanitation District, City of Vallejo, Town of Yountville, City of Colton, City of Corona, Elsinore Valley Municipal Water District, Helix Water District, Padre Dam Municipal Water District, Rancho California Water District, Sweetwater Authority, Western Municipal Water District, Irvine Ranch Water District, City of San Diego, City of San Jose, Relator John Hendrix (the "Relator") and J-M Manufacturing Co., Inc. ("J-M") (collectively the "Parties"), acting through their counsel of record, have previously submitted to this Court an executed Settlement Agreement and Mutual Release and, following noticed motion, this Court has previously approved that Settlement Agreement and Mutual Release as fair, adequate, and reasonable under all the circumstances, and the Parties have now filed with this Court a Stipulation of Dismissal with Prejudice of Claims Against J-M and for Order of Dismissal with Prejudice (the "Stipulation"). Upon due consideration the Court hereby approves the Settlement Agreement and the Stipulation.

WHEREFORE, IT IS ORDERED, that

1. The above captioned Civil Action is dismissed with prejudice as to J-M.
2. Each party shall be responsible for his or its own expenses, attorneys' fees, expert fees and costs, except as otherwise provided for in the Settlement Agreement and Mutual Release.
3. The Court shall retain jurisdiction to enforce the terms, conditions, and releases of the Parties' Settlement Agreement and Mutual Release to the extent reasonably necessary and appropriate.

IT IS SO ORDERED this _____ day of _____, 2025.

_____
[COURT SIGNATURE LINE]

# EXHIBIT C

# Proposed form of Stipulation of Dismissal

1   ELIZABETH J. SHER *(Admitted Pro Hac Vice)*
    esher@daypitney.com
2   DAY PITNEY LLP
3   1 Jefferson Road
    Parsippany, New Jersey  07054
4   Telephone: (973) 966-6300
5   Facsimile: (973) 966-1015

6   **Attorneys for [entity]**

7                   UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9
    UNITED STATES, THE STATES OF          Case No. ED CV-06-00055-GW(PJWx)
10  CALIFORNIA, DELAWARE,
11  FLORIDA, ILLINOIS, INDIANA,           Hon. George H. Wu
    NEVADA, NEW MEXICO, NEW
12  YORK, and TENNESSEE, THE              **STIPULATION OF DISMISSAL**
    COMMONWEALTHS OF                      **WITH PREJUDICE**
13  MASSACHUSETTS AND VIRGINIA,
14  and THE DISTRICT OF COLUMBIA
    *ex rel*. JOHN HENDRIX,
15
16                   Plaintiffs,
17
          v.
18
19  J-M MANUFACTURING COMPANY,
    INC., d/b/a JM Eagle, a Delaware
20  corporation, and FORMOSA
    PLASTICS CORPORATION, U.S.A.,
21  a Delaware corporation,
22
23                   Defendants.

24
25
26
27
28

1        IT IS HEREBY STIPULATED AND AGREED, by and between Plaintiff

2   [ENTITY] and Defendant J-M Manufacturing Co., Inc. (now known as J-M Eagle),

3   by and through undersigned counsel, that in accordance with the Settlement

4   Agreement and Mutual Release executed by both parties, the above-captioned action

5   is hereby dismissed in its entirety with prejudice and without costs or attorneys' fees

6   to either party, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).

7

8       **Local Rule 5-4.3.4(a)(2)(i) Compliance:  Filer attests that all other**

9   **signatories listed concur in the filing's content and have authorized this filing**

10

11  DATED: June _ , 2025      By: /s/  Elizabeth J. Sher

12                       ELIZABETH J. SHER (Admitted Pro Hac Vice)

13                       esher@daypitney.com

14                       DAY PITNEY LLP

15                       1 Jefferson Road

                           Parsippany, New Jersey 07054

16                       Tel: (973) 966-6300

                           Fax: (973) 966-1015

17                       **Attorneys for Plaintiff [ENTITY]**

18  DATED: June _ , 2025      By: /s/  Paul S. Chan

19                       PAUL S. CHAN (State Bar No. 183406)

20                       pchan@birdmarella.com

                           BIRD, MARELLA, BOXER, WOLPERT,

21                       NESSIM, DROOKS, LINCENBERG & RHOW,

                           P.C.

22                       1875 Century Park East, 23rd Floor

23                       Los Angeles, California  90067-2561

                           Telephone:  (310) 201-2100

24                       Facsimile:  (310) 201-2110

25

26                       **Attorneys for Defendant J-M Manufacturing Co., Inc.**

27

28

121856265.2